UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES MATIELLA,                           )
                                            )
        Plaintiff,                          )
                                            )        Civil Action No. 21-cv-2112
    vs.                                     )
                                            )
MURDOCK STREET LLC,                         )
                                            )
        Defendant/Third Party Plaintiff,    )
                                            )
    vs.                                     )
                                            )
EWORA, LLC and                              )
IFG GROUP, LLC                              )
                                            )
        Third-party Defendants.             )

**[PROPOSED] ORDER**

THIS CAUSE is before the Court on Plaintiff's Motion for Sanctions Against Defendant

Murdock Street LLC ("Defendant" or "Murdock Street") Due to Defendant's Willful Refusal to

Produce Documents Violations of Court Orders and Defendant's Willful and Negligent Spoliation

of Relevant Discovery Materials Including Emails and Text Messages. As set forth herein, the

Motion is granted.

**BACKGROUND**

Defendant is the owner and developer of a six-story new construction apartment building

located at 3619 Georgia Avenue NW, Washington, DC 20018 ("Defendant's Property"). ECF No.

1 at ¶ 11. Plaintiff owns the adjacent rowhouse at 770 Princeton Place NW, Apt. B, Washington,

DC 20010 ("Plaintiff's Property"). *Id.* at ¶ 9. Plaintiff filed his Complaint for negligence, trespass

and injunctive relief on August 6, 2021 to recover for significant damages Defendant caused to

Plaintiff's rowhouse through Defendant's construction of its large multi-use condominium building next door. ECF No. 1.

On September 22, 2021, Defendant filed its Answer and Affirmative Defenses. ECF No. 5. Defendant denied Plaintiff's allegations and asserted the following six conclusory affirmative defenses: (1) "Plaintiff's claims fail to state a claim upon which relief can be granted"; (2) "Plaintiff cannot establish proximate cause"; (3) "Plaintiff failed to mitigate his alleged damages"; (4) "the conduct of parties other than [Defendant] proximately caused the alleged harms"; (5) "Plaintiff's alleged damages, if any, are speculative and thus not recoverable"; (6) "Plaintiff's claim for injunctive relief is barred because Plaintiff has an adequate remedy at law." ECF No. 5 at pg 7.

On October 19, 2021, Plaintiff served the following discovery requests to Defendant, all of which directly pertained to the Complaint and Defendant's purported affirmative defenses: (a) First Set of Requests for Admission; (b) First Set of Interrogatories; and (c) First Set of Requests for Production of Documents. On November 18, 2021, Defendant served purported responses to Plaintiff's October 19, 2021 discovery requests. Objectively, however, Defendant's responses were drastically insufficient. *See id.* To illustrate, Defendant provided *zero* documents and failed to even sign its interrogatory answers. *Id.* Defendant interposed general, boilerplate objections to Plaintiff's First Set of Requests for Production of Documents. *Id.* Defendant failed to specify if any documents were withheld on the basis of any objections and Defendant failed to produce a privilege log. *Id.*

After meeting and conferring, the parties filed a Joint Report Regarding Discovery Dispute on December 21, 2021. ECF No. 9. Defendant represented that, among other things, it "continues to search for documents that are responsive to Plaintiff's First Set of Requests for Production of

Documents and has full intention to produce documents by December 22, 2021" and that it "agrees to produce documents pursuant to Plaintiff's request for '[a]ll documents relating to any material issue in this case' and '[a]ll documents relating to any allegations in the Complaint." *Id.* at 2. At that point in December 2021, however, Defendant's principal never even looked at the discovery requests. Keskin Dep., 41:22-25, Apr. 22, 2022.

On December 21, 2021, the Court entered a minute order asking the parties to provide an update by December 28, 2021 through a Joint Status Report stating whether Defendant complied with its agreed upon supplemental discovery responses. Min. Ord., Dec. 21, 2021. Defendant completely failed to comply. In the parties' December 28, 2021 Joint Status Report Regarding Discovery Dispute, Defendant admitted that it "has not provided the amended discovery responses discussed in the joint report regarding this discovery dispute." ECF No. 11 at 3. Defendant blamed the "holiday season and COVID affecting our families, workplaces and communities" as the reason for its non-compliance. *Id.* Defendant claimed it would comply and produce the responsive documents by January 18, 2021. *Id.*

Accordingly, on January 3, 2022, the Court entered a minute order mandating the parties update the Court by January 21, 2022 on Defendant's outstanding discovery. Min. Ord., Jan. 3, 2022. On January 7, 2022, the parties filed a Joint Report and Request Regarding Discovery Dispute, agreeing to an order (1) requiring Defendant to serve amended responses to Plaintiff's requests for production "with a substantial document production" by January 18, 2022, (2) requiring Defendant to serve verified answers to Plaintiff's interrogatories by January 18, 2022 and (3) reserving on an award of attorneys' fees to Plaintiff. ECF No. 13. The Court memorialized the agreed order in its January 7, 2022 minute order. Min. Ord., Jan. 7, 2022.

Defendant again failed to comply. By January 18, 2022, Defendant failed to serve the court-ordered verified answers to Plaintiff's interrogatories. Moreover, although Defendant served some documents, it was hardly a complete "substantial document production." Defendant produced just 139 documents and failed to produce among other things any emails, text messages, WhatsApp messages, invoices or contracts with its general contractor. *Id.* Plaintiff memorialized Defendant's continued non-compliance in Plaintiff's Status Report Regarding Discovery Dispute filed January 24, 2022. ECF No. 14.

On February 20, 2022, the Court set a status conference for March 4, 2022 to consider Defendant's discovery non-compliance. Min. Ord., Feb. 20, 2022. After the conference, the Court entered a minute order stating "Defendant must produce documents by 5:00 p.m. on 3/11/2022 or the possibility of sanctions imposed." Min. Ent., Mar. 4, 2022. The Court entered another minute order on March 7, 2022 in which it recognized that Defendant produced documents to Plaintiff that "were not organized as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i)" and therefore ordered Defendant reproduce its documents in an organized manner with Bates Stamps no later than 5:00 p.m. on March 11, 2022. Min. Ord., Mar. 7, 2022. Defendant eventually reproduced its response but failed to provide the material responsive documents and his non-compliance continued.

## I.     DURING HIS DEPOSITION, DEFENDANT ESSENTIALLY ADMITTED TO DESTROYING AND CONCEALING EVIDENCE

Defendant's non-compliance persisted and became even more egregious when Plaintiff took the deposition of Defendant's principal and sole owner John Keskin. On April 22, 2022, Plaintiff took Keskin's deposition as the person most knowledgeable pursuant a Notice of Taking Deposition served April 6, 2022. In deposition, Keskin testified to, among other things, the following:

1. Kreskin keeps some miscellaneous documents, bills and tax documents, for Murdock Street LLC in a small file cabinet at his physical office, Keskin Dep., 23:24-25, 24:16-25, Apr. 22, 2022.
2. However, Keskin does not normally receive anything for Murdock Street, LLC by mail. *Id.* at 27:5-9.
3. Instead, Keskin receives correspondence for Murdock via the following email addresses: johnKeskin@outlook.com and john@unitedgranite.us. *Id.* at 27:10-23.
4. Keskin also uses a smart phone for Murdock company emails, under phone number (***) ***-8811. *Id.* at 29:1-5.
5. Keskin uses his smart phone to send texts related to Murdock Street. *Id.* at 29:16-18.
6. Keskin uses that same phone to communicate via WhatsApp regarding Murdock. *Id.* at 29:21-30:1.
7. Keskin conducts Murdock's business mainly by email and prefers to keep a paperless business. *Id.* at 33:13-23.
8. Contracts for Murdock would be sent and stored via Keskin's Outlook email. *Id.* at 34:14-24.
9. Keskin typically throws away paper copies of things like contracts if he has them on email. *Id.* at 35:10-18.
10. However, Murdock has no document retention policy. *Id.* at 35:24-36:1.
11. Murdock does not retain documents in any kind of principled way. *Id.* at 36:2-8.
12. Instead, Keskin throws away Murdock documents that Keskin does not think are important. *Id.* at 37:9-11.
13. Keskin has had two or three desktop computers since 2017 for Murdock but only has one left that he uses. *Id.* at 37:22-38:5.
14. Keskin thinks the first time he ever saw Plaintiff's first request for production was in January 2022. *Id.* at 41:22-25.
15. The first time Keskin checked his emails for responsive documents was in January or February 2022. *Id.* at 43:7-11.
16. Keskin deletes his emails. *Id.* at 44:20-21.
17. Keskin's policy on deleting emails is to delete anything feels has no importance. *Id.* at 44:22-45:1.
18. Keskin deletes his emails daily or once every couple days. *Id.* at 45:13-17.
19. Keskin allegedly does not recall if he has deleted emails related to Murdock. *Id.* at 45:18-20.
20. Keskin also thinks he deletes his text messages. *Id.* at 46:8-9.
21. Keskin claims he deletes his text messages "to try to make some space." *Id.* at 46:12-14.
22. Keskin deletes his WhatsApp messages if he needs space. *Id.* at 46:24-47:2.
23. There is no space limit on his Outlook emails. *Id.* at 47:7-9.
24. Even though there is no space limit on his Outlook emails, Keskin deletes emails if he deems unimportant. Keskin deletes them "[t]o make the search, in the future, easier." *Id.* at 47:12-14.

25.    Keskin claims he did not delete the contract for construction of Defendant's Property on Georgia Avenue, which Defendant failed to produce. *Id.* at 48:8-11.

26.    Instead, Keskin claimed he had a computer crash in 2018 and lost thousands if not millions of emails stored on his hard drive. *Id.* at 48:12-22.

27.    Keskin claims almost 95% of his emails from before 2017 and 2018 are gone. *Id.* at 49:1-7.

28.    Keskin claims he switched his computer at the time of the alleged Outlook crash. *Id.* at 50:11-13.

29.    Keskin admitted that if any emails are still missing after the alleged crash in 2018, he deleted them. *Id.* at 51:18-52:1.

30.    In response to Plaintiff's request for production, Defendant produced zero emails. *Id.* at 52:11-13.

31.    In response to Plaintiff's request for production, Defendant produced zero text messages. *Id.* at 52:15-17.

32.    In response to Plaintiff's request for production, Defendant produced zero WhatsApp messages. *Id.* at 52:18-20.

33.    Yet, Keskin exchanged emails related to Murdock with Faith Guner, the general contractor for Defendant's Property. *Id.* at 54:5-7.

34.    Keskin estimated he exchanged probably a "couple hundred" emails with Guner related to Murdock. *Id.* at 54:17-19.

35.    Keskin admitted he exchanged text messages related to Murdock with Guner. *Id.* at 54:8-10.

36.    Keskin admitted he exchanged WhatsApp messages with Guner related to Murdock. *Id.* at 11-13.

37.    Keskin claims he had lots of text messages with Guner and exchanged text messages with Guner every week during the construction of Defendant's Property. *Id.* at 55:18-24.

38.    When searching for communications with Guner, Keskin even claims he found documents related to the construction of Murdock Street building. *Id.* at 56:20-23. Yet Keskin did not produce any documents.

39.    The Department of Consumer and Regulatory Affairs ("DCRA") temporarily stopped construction of Defendant's Property. Yet, Keskin claims he has no documentation with his lending bank, DCRA or anyone else regarding the work stoppage. *Id.* at 62:21-63:9.

40.    There is a written contract between Murdock Street and the general contractor regarding Defendant's Property, which was either in Keskin's email or on his desktop. *Id.* at 67:19-22.

41.    Keskin admitted he must have provided a written contract to his lending bank. *Id.* at 67.

42.    Yet, Keskin failed to look for the contract when searching through his emails in response to the RFP. *Id.* at 68:9-14.

43.    Keskin first became aware of Plaintiff's claims that the construction caused issues and damage to Plaintiff's property, from conversations with Guner during the exaction in 2017 or 2018. *Id.* at 74:12-22.

6

44. When Keskin asked Guner about Plaintiff's claim, Keskin says Guner told him some of the issues were resolved, but not all. *Id.* at 70:11-17.

45. Keskin had communications with his lending bank regarding short payments for construction of Defendant's Property based on inspector's reports. *Id.* at 79:21-80:2.

46. Yet, Keskin does not recall if he ever saw an inspector's report. Defendant may have asked for a report and may have seen one but claims he does not remember. *Id.* at 82:6-10.

47. Keskin claimed that he found out literally the day before his deposition that there may be insurance policies on the construction of Defendant's Property. *Id.* at 91:23-92:1.

48. Keskin claimed his insurance company initially told him there were no insurance policies providing coverage for Plaintiff's claims for Defendant's Property. *Id.* at 97:15-17.

49. Instead, Keskin's insurance company told him the policies were on the general contractor as the insured, not Murdock. *Id.* at 97:19-20.

50. Keskin allegedly does not know if he deleted information on insurance payments and insurance premiums that were sent by email. *Id.* at 98:21-24.

51. Keskin claimed he does not know if he received and deleted drawings for the Defendant's Property from the general contractor. *Id.* at 100:15-25.

52. Keskin claims there could be some information and documents regarding an insurance renewal for coverage on Defendant's Property in his email and he would not delete it. *Id.* at 105:13-22.

53. Yet, Keskin claimed he had no idea whether an insurance policy for Murdock got terminated for non-payment. *Id.* at 106:19-21.

54. Keskin claimed he has no clue if he had 2, 9, or 43 different conversations with his insurance representative Maggie Chenault regarding insurance policies for this matter. *Id.* at 109:10-18.

55. Keskin is not sure if he misspelled Plaintiff's name Matiella in Keskin's email searches responsive to the RFP. *Id.* at 118:19-22.

56. Keskin did not search for "Charles," Plaintiff's first name, when conducting his alleged email searches for responsive documents to the RFP. *Id.* at 119:23-25.

57. Keskin claimed he searched for Plaintiff's Property's street name "Princeton Place" in his emails, but not in quotes, and claims he scanned through the emails and allegedly found nothing. *Id.* at 119:15-120:13.

58. Keskin did not search for the house number "770" or DCRA in his email searches responsive to the RFP. *Id.* at 120:17-18.

59. Kreskin did not search for "DCRA" in his email searches responsive to the RFP. *Id.* at 120:19-20.

60. Keskin has not disclosed to his real estate broker the existence of this lawsuit. *Id.* at 134:7-9.

61. Keskin has not disclosed to his lending bank the existence of this lawsuit or Plaintiff's claim. *Id.* at 143:20-24.

62. In response to the RFP, Keskin gave *zero* documents to his lawyer. None of the 139-page document production was produced by Keskin. *Id.* at 136:2-4.

63.     Keskin claims he found *no* documents responsive to the RFP to give to his lawyers. *Id.* at 136:12-14.

64.     Yet, Keskin claims he does not dispute, and that no one could dispute, that the construction and excavation of Defendant's Property caused some of the cracking on Plaintiff's building. *Id.* at 139:17-21.

65.     According to Keskin, no one could dispute or claim that "this was related to construction." *Id.*

66.     Keskin just claims he does not know who is responsible as "it could have been anybody." *Id.* at 139:25:-140:1.

## II.    **DEFENDANT'S NON-COMPLIANCE CONTINUED AFTER HIS DEPOSITION**

Following his deposition, Defendant produced a feigned supplemental production consisting of 123 pages on May 6, 2022. The supplemental production consisted entirely of insurance policies and an April 27, 2022 letter denying coverage under a 2019-2020 policy issued in the name of IFG Group, LLC. *Id.* Notably absent were any emails, text messages, WhatsApp messages, contracts with the general contractor, invoices from the general contractor, communications with the bank, communications with Defendant's insurance providers, communications with the DCRA, communications with anyone, or any other documents at all. *Id.*

## III.    **THE SPOLIATED, NONEXISTENT OR CONCEALED EVIDENCE**

The categories of spoliated, nonexistent or concealed evidence include without limitation the following.

1.     No emails.
2.     No text messages.
3.     No WhatsApp messages.
4.     No emails with general contractor and third-party defendant Ewora, LLC.
5.     No emails with general contractor and third-party defendant IFG Group, LLC.
6.     No text messages with general contractor and third-party defendant Ewora, LLC.
7.     No text messages with general contractor and third-party defendant IFG Group, LLC
8.     No WhatsApp messages with general contractor and third-party defendant Ewora, LLC.
9.     No WhatsApp messages with general contractor and third-party defendant IFG Group, LLC.

10. No emails with the general contractor's principal Faith Guner.

11. No text messages with the general contractor's principal Faith Guner.

12. No WhatsApp messages with the general contractor's principal Faith Guner.

13. No contract between Defendant and its contractor/third-party defendant Ewora, LLC.

14. No contract between Defendant and its contractor/third-party defendant IFG Group, LLC.

15. No emails, texts or WhatsApp communications with Defendant's insurance company, including Maggie Chenault.

16. No records of any payments to Defendant's general contractors Ewora, LLC and IFG Group, LLC.

17. No emails with Defendant's construction loan bank, Main Street Bank.

18. No documents related to any short payments from Main Street Bank to Defendant's general contractor.

19. No documents at all from Main Street Bank.

20. No inspection reports from Main Street Bank or of its inspectors.

21. No communications with any inspector from the bank.

22. No communications with the DCRA.

23. No documents from the DCRA.

24. No communications with Defendant's real estate broker regarding Plaintiff's claim.

25. No documents related to the work stoppage on Defendant's Property.

26. No communications related to the work stoppage on Defendant's Property.

27. No invoices from Defendant's general contractor.

28. No documents related to Plaintiff's claims.

29. No other documents relating to any material issue in this case.

30. No other documents relating to any allegations in the Complaint.

31. No documents relating to Plaintiff.

32. No documents exchanged between Plaintiff and Defendant.

33. No communications exchanged between Plaintiff and Defendant.

34. No documents exchanged between Defendant and any third party relating to Plaintiff.

35. No communications exchanged between Defendant and any third party relating to Plaintiff.

36. No documents exchanged between Defendant and any third party relating to Plaintiff's Property.

37. No communications exchanged between Defendant and any third party relating to Plaintiff's Property.

38. No documents relating to Plaintiff's Property exchanged between Defendant and any general contractor(s) for the construction of Defendant's Property.

39. No documents relating to Plaintiff's Property exchanged between Defendant and any subcontractors who have performed work on Defendant's Property.

40. No documents relating to Plaintiff's Property exchanged between Defendant and any architect(s) who have performed work on Defendant's Property.

41. No documents relating to Plaintiff's Property exchanged between Defendant and any engineer(s) who have performed work on Defendant's Property.

42. No communications relating to Plaintiff's Property exchanged between Defendant and any general contractor(s) for the construction of Defendant's Property.

43. No communications relating to Plaintiff's Property exchanged between Defendant and any subcontractors who have performed work on Defendant's Property.

44. No communications relating to Plaintiff's Property exchanged between Defendant and any architect(s) who have performed work on Defendant's Property.

45. No communications relating to Plaintiff's Property exchanged between Defendant and any engineer(s) who have performed work on Defendant's Property.

46. No other documents relating to any insurance policies applicable to Defendant's Property which are currently in effect or that have been in effect with coverage since January 1, 2019, in which Defendant is a named insured (this includes without limitation a copy of the policy).

47. No other documents relating to any insurance policies applicable to Plaintiff's Property which are currently in effect or that have been in effect with coverage since January 1, 2019, in which Defendant is a named insured (this includes without limitation a copy of the policy).

48. No other documents relating to any actions Defendant have taken to file an insurance claim regarding any alleged damages to Plaintiff's Property.

49. No documents supporting Defendant's allegation that "Plaintiff's claims fail to state a claim upon which relief can be granted," as alleged in Defendant's first affirmative defense (ECF No. 5 at 7).

50. No documents supporting Defendant's allegation that "Plaintiff's claims are barred because Plaintiff cannot establish proximate cause," as alleged in Defendant's second affirmative defense (ECF No. 5 at 7).

51. No documents supporting Defendant's allegation that "Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate his alleged damages," as alleged in Defendant's third affirmative defense (ECF No. 5 at 7).

52. No documents supporting Defendant's allegation that "the claims alleged by Plaintiff cannot be maintained in whole in part [sic] because the conduct of parties other than Murdock proximately caused the alleged harms, if any," as alleged in Defendant's fourth affirmative defense (ECF No. 5 at 7).

53. No documents supporting Defendant's allegation that "Plaintiff's alleged damages, if any, are speculative and thus not recoverable," as alleged in Defendant's fifth affirmative defense (ECF No. 5 at 7).

54. No documents relating to claims other than from Plaintiff that the construction of Defendant's Property caused damage to their real property.

55. No documents relating to all actions, if any, that Defendant took while constructing Defendant's Property to prevent any damage to Plaintiff's Property.

56. No documents relating to any claim that it was not reasonably foreseeable that construction of Defendant's Property could cause damage to Plaintiff's Property.

57. No documents relating to all actions Defendant took to remedy any issues set forth by the DCRA regarding Plaintiff's Property.

58. No documents relating to any actions taken with respect to the following remedial measures from the May 13, 2021 report issued by the Illegal Construction Unit of the DCRA:

   a. Underpinning the front and courtyard walls to arrest and fix the cracks on the walls of Plaintiff's Property;

   b. Replacing the front stairs of Plaintiff's Property and areas of the front yard;

   c. Replacing the displaced rear deck post footing and restoration of the rear yard;

   d. Replacing or fixing the floor cracks observed in the basement's finished floor;

   e. Monitoring the existing building façade to ensure no settling is occurring through the installation of a monitoring device in September 2020; and,

   f. Replacing the cracked façade brick construction.

59. No documents sent to the DCRA relating to Plaintiff's Property.

60. No documents received from the DCRA relating to Plaintiff's Property.

61. No communications with the DCRA relating to Plaintiff's Property.

62. No non-privileged communications from Ercan John Keskin regarding Plaintiff's Property.

63. No communications with Gregory Heelan from the Illegal Construction Unit of the DCRA.

64. No communications with Paloma A Romanita Santiago.

65. No communications with Nadhira Batcha.

66. No communications with Soretti LLC.

67. No communications with Fisherman Men Church Lord.

68. No documents relating to anything Defendant dispute from the A&A Consultants, Inc. engineer's report attached to the Complaint as (ECF No. 1, Ex. B).

69. No documents showing Defendant abided by District of Columbia Mun. Reg. tit. 12 § A 3307.1 by protecting Plaintiff's Property from damage during construction alteration, repair, demolition or raze of Defendant's Property.

70. No documents referenced in Defendant's answers to Plaintiff's interrogatories in this matter.

71. No litigation hold notices.

72. No reports from any experts Defendant retained in this matter.
73. No documents provided to any experts Defendant retained in this matter that Defendant intend to testify at trial.
74. No documents relating to the damage to Plaintiff's Property that Defendant admits was caused by the construction.
75. Essentially no documents, communications or ESI at all as it relates to this matter and Plaintiff's request for production.

## IV.    LEGAL STANDARD

### A.    The Court can Impose Sanctions under Rule 37(e).

Federal Rule of Civil Procedure 37(e) governs sanctions for the failure to preserve ESI. *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 43 (D.D.C. 2019). Pursuant to Rule 37(e), if "[ESI] that should have been preserved in the anticipation of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court can (1) "order measures no greater than necessary to cure the prejudice," or, upon finding "that the party acted with the intent to deprive another party of the information's use in the litigation," (2) "presume that the information was unfavorable to the party, instruct the jury that it may or must presume the information was unfavorable to the party, or dismiss the action or enter a default judgment." *Id.* (*citing* Fed. R. Civ. P. 37(e)).

### B.    The Court can Impose Sanctions under its Inherent Powers.

Courts have the inherent power to impose sanctions for the spoliation of evidence. *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 43–44 (D.D.C. 2019). Such sanctions include a default judgment, fines, and awards of attorneys' fees and expenses. *Id.* (*citing* See *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995). Sanctions for the destruction of documents or evidence with notice of their potential usefulness in litigation can also include preclusion of certain lines of argument that might have been advanced by the culpable party, and an adverse inference. *Zhi Chen v. D.C.*, 839 F. Supp. 2d 7, 12–13 (D.D.C. 2011) (*citing* JAMIE S. GORELICK, STEPHEN

12

MARZEN & LAWRENCE SOLUM, DESTRUCTION OF EVIDENCE § 3.16, at 117–22 (1989 & 2010 Supp.); *Shepherd*, 62 F.3d at 1478–79; *D'Onofrio v. SFX Sports Group, Inc.*, 2010 WL 3324964, at *5 (D.D.C. Aug. 24, 2010).

**C.      The Court can Impose Sanctions under Rule 37(b)(2).**

Rule 37 supplies district courts broad discretion to sanction a party who fails to obey an order to provide or permit discovery. *DL v. D.C.*, 274 F.R.D. 320, 324 (D.D.C. 2011) (*citing* Fed. R. Civ. P. 37(b)(2)). The sanctions available listed in Rule 37(b)(2)(A)(i)–(vii) include imposing the following orders:

> *(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;*
>
> *(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;*
>
> *(iii) striking pleadings in whole or in part;*
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A) (emphasis added). Moreover, "[i]nstead of or in addition to" the orders above, the court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

## V.    SPOLIATION SANCTIONS ARE APPROPRIATE UNDER RULE 37(e)

### A.    Defendant's Emails, Text Messages, Invoices and Documents should have been Preserved.

A party must "preserve potentially relevant evidence ... 'once [that party] anticipates litigation.'" *Zhi Chen*, 839 F. Supp. 2d at 12–13 (*citing D'Onofrio*, 2010 WL 3324964, at \*5 (*quoting Smith v. Café Asia*, 246 F.R.D. 19, 21 n. 2 (D.D.C.2007)); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y.2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."). A party who fails to preserve evidence "runs the risk of being justly accused of spoliation," which courts define as "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation," and find itself the subject of sanctions. *Id.* (*citing D'Onofrio*, 2010 WL 3324964 at \*5 & n. 5).

Here, the Defendant was clearly under a duty to preserve relevant emails, text messages, contracts, invoices and other documents directly related to the construction of Defendant's six-story multi-use condominium building adjacent to Plaintiff's townhouse. Defendant admitted he first became aware of Plaintiff's claims "when we started -- when we were doing the construction, especially the excavation." Keskin Dep., 57:22-25, Apr. 22, 2022. The general contractor specifically told him. *Id.* at 58:4-10. Since then, Defendant reasonably should have anticipated litigation.

### B.    Defendant Failed to Take Reasonable Steps to Preserve his ESI.

Whenever a party "reasonably anticipates litigation," the party "must ... put in place a 'litigation hold' to ensure the preservation of relevant documents." *Borum*, 332 F.R.D. 38, 45–46 (D.D.C. 2019) (*citing Nunnally v. District of Columbia*, 243 F. Supp. 3d 55, 73 (D.D.C. 2017)

14

(*quoting Zubulake*, 220 F.R.D. at 218); *see also GenOn Mid-Atlantic, LLC v. Stone & Webster*, Inc., 282 F.R.D. 346, 357 (S.D.N.Y. 2012) (finding "a degree of culpability sufficient to permit the imposition of sanctions" where company failed to issue written litigation hold after it contemplated litigation); *Acorn v. Cty. of Nassau*, 2009 WL 605859 (E.D.N.Y. Mar. 9, 2009) (finding that party acted with gross negligence where it imposed a "verbal" litigation hold rather than a "formal" one). Here, Defendant essentially took no steps whatsoever to preserve his ESI after reasonably anticipating litigation. Far from a litigation hold, Defendant's preservation strategy was essentially to delete anything Defendant subjectively felt was unimportant. This was not reasonable under the circumstances.

### C.    Defendant's ESI is Irremediably Lost.

Rule 37(e) allows for sanctions when lost ESI is irretrievable from another source, including other custodians. *Borum*, 332 F.R.D. at 46. Here, Defendant's emails and text messages are irremediably lost because they cannot be restored or replaced through additional discovery. The e-mails and text messages could only be recovered from one source, Defendant's principal Keskin, who claims he deleted them and particularly for any emails prior to 2018, they are not recoverable after his email system crashed. Defendant has failed to provide or identify any alternate sources. Because Defendant cannot fully recover Keskin's e-mails, no amount of discovery will confirm the extent to which information was lost. Accordingly, Defendant irremediably lost ESI that should have been preserved.

### D.    Sanctions are Appropriate under both Rule 37(e)(1) and 37(e)(2).

### i.    Sanctions are Appropriate under Rule 37(e)(1).

Sanctions under Rule 37(e)(1) are available when a party suffers prejudice from the loss of the spoliated ESI. *Borum*, 332 F.R.D. at 47. To evaluate prejudice, the Court considers the ESI's

importance in the litigation. *Id.* (*citing* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). Prejudice can range "along a continuum from an inability to prove claims or defenses to little or no impact on the presentation of proof." *Id.* (*citing Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018). Overall, "[t]he rule leaves judges with discretion to determine how best to assess prejudice in particular cases." *Id.* (*citing* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. A party "must only come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been.'" *Id.* (*citing Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 430 (W.D.N.Y. 2017). Monetary sanctions are an appropriate remedy for violations of Rule 37(e)(1). *Borum*, 332 F.R.D. at 50 (*citing Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *13 (S.D.N.Y. June 20, 2019) ("[I]f the ... prejudice to the movant 'lies in the extra time and expense [it incurred] ... [in] obtain[ing] relevant discovery from third parties, monetary sanctions may be a sufficient cure.")

Here, Defendant's destroyed emails and text messages might have been revealing of his knowledge and participation in causing Plaintiff's damages. Defendant essentially defends this case by saying it was not his fault that Plaintiff suffered damages and he instead relied solely on the advice of the general contractor and, ostensibly, the fact that the bank for his construction loan continued to fund the project. The destroyed emails and text messages might have been evidence completely to the contrary and show Defendant's involvement, negligence and perhaps intentional culpability for the dangerous cracks and other damages caused to Plaintiff's townhouse. Accordingly, at a minimum, the Court awards monetary sanctions, including attorneys' fees and costs, as a remedy under Rule 37(e)(1). Such attorneys' fees include, without limitation, all attorneys' fees incurred in meeting and conferring on discovery non-compliance, drafting and

16

filing the discovery status reports and attending the court conferences on Defendant's discovery non-compliance.

### ii.        Sanctions are Appropriate under Rule 37(e)(2).

Sanctions are available under Rule 37(e)(2), when "the [spoliating] party acted with intent to deprive another party of the [ESI's] use in the litigation." *Borum*, 332 F.R.D. at 48 (*citing* Fed. R. Civ. P. 37(e)(2)). If the party acted with intent, no separate showing of prejudice is required because "the finding of intent . . . can support . . . an inference that the opposing party was prejudiced by the loss of information." *Id.* (*citing* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). For example, in *GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833, at *7 (D. Del. July 12, 2016), the court found sufficient intent where a company employee, in violation of company policy, intentionally deleted e-mails that should have been preserved for business purposes. In *O'Berry v. Turner*, 2016 WL 1700403, at *4 (M.D. Ga. Apr. 27, 2016), the court found sufficient intent based on "irresponsible and shiftless" behavior where an employee printed, and eventually lost, a single paper copy of information that it should have preserved and that the employee lost track of. In *Brown Jordan Int'l v. Carmicle*, 2016 WL 815827 (S.D. Fla. Mar. 2, 2016), the court inferred the requisite intent when a terminated employee intentionally damaged his company-owned laptop immediately following his termination. *See also, e.g.*, *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 625 (2d Cir. 2018) (finding sufficient intent where employees manually deleted thousands of files and e-mails, used data-wiping software shortly before forensic examination, and updated operating systems during litigation period, which cleared out data regarding their program usage); *Beaven v. U.S. Dept. of Justice*, 622 F.3d 540, 554 (6th Cir. 2010) (finding sufficient intent where defendants destroyed folder of evidence that they knew would be needed as direct evidence to pursue claims). Once the court finds intent, it

can do any of the following: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

Here, Defendant intentionally deprived Plaintiff with the use of his emails and text messages. Like in *GN Netcom*, Keskin, an employee of Defendant, intentionally deleted emails that should have been preserved for business purposes. Like in *O'Berry*, Defendant engaged in irresponsible behavior by deleting emails and ultimately losing them once his email server allegedly crashed in 2018. Like in *Klipsch Grp.* Defendant manually deleted emails and files and updated his operating systems during the time which he should have anticipated litigation. Because he intentionally deprived Plaintiff of the use of his emails and text messages, no finding of prejudice is required and the Court can award sanctions under Rule 37(e)(2). The Court (A) presumes that the lost information on the emails and text messages was unfavorable to Defendant; (B) instructs any fact finder that the information was unfavorable to Defendant; and (C) enters a default judgment against Defendant.

## VI.  <u>SPOLIATION SANCTIONS, INCLUDING ADVERSE EVIDENTIARY INFERENCES, ARE APPROPRIATE UNDER THE COURT'S INHERENT AUTHORITY</u>

Under its inherent authority, "a district court may impose issue-related sanctions," such as an adverse inference instruction, "whenever a preponderance of the evidence establishes that a party's misconduct has tainted the evidentiary resolution of the issue." *Zhi Chen*, 839 F. Supp. 2d at 12–13 (*citing Shepherd*, 62 F.3d at 1478). To obtain an adverse inference, the requesting party must show the following: (A) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (B) the destruction or loss was accompanied by a "culpable state of mind"; and (C) the evidence that was destroyed or altered was "relevant" to the

claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it. *Id.* (*citing Mazloum v. District of Columbia Metro. Police Dep't*, 530 F.Supp.2d 282, 291 (D.D.C.2008) (citation omitted).

A.    **Defendant had an Obligation to Preserve its Emails, Texts, Contracts, Invoices and other related documents.**

As discussed above, Defendant had an obligation to preserve its emails, texts and other related documents as soon as litigation became reasonably anticipated. This began, at a minimum, once Defendant discovered Plaintiff's claims from speaking with its general contractor when construction began. At that point it should have been, and was, readily apparent to Defendant that all of Plaintiff's communications regarding the construction were potentially highly relevant to Plaintiff's claims. The fact that Defendant failed to preserve his emails, text messages and other relevant documents is indisputable.

B.    **Defendant had a Culpable State of Mind.**

To justify an adverse inference instruction under the Court's inherent authority, the spoliation of evidence need not be purposeful as negligent spoliation may suffice. *Zhi Chen*, 839 F. Supp. 2d at 12–13 (*citing Mazloum v. District of Columbia Metro. Police Dep't*, 530 F.Supp.2d at 292–93); *accord Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir.2002) (holding culpable state of mind factor is satisfied by showing that evidence was destroyed either knowingly or negligently "because each party should bear the risk of its own negligence"); *More v. Snow*, 480 F.Supp.2d 257, 275 (D.D.C.2007) (holding an adverse inference may be applied even if deliberate or reckless conduct is not present); *Zubulake*, 229 F.R.D. at 431 (S.D.N.Y.2004) (holding culpable state of mind for purpose of spoliation inference includes ordinary negligence).

Here, Defendant was at least negligent in failing to preserve its emails, text messages, contracts and other relevant documents. In light of Defendant's clear obligation to preserve the emails and text messages, it was pure negligence for Defendant's principal Keskin to either not delete them or at least ensure that he has a copy. Moreover, Defendant's cavalier attitude toward his discovery obligations in this matter shows that his failure to preserve the emails, texts, and other documents was not just negligent but grossly negligent. The level of carelessness evident in the behavior of Defendant's principal Keskin leads to the inescapable finding that Defendant's spoliation was grossly negligent. Accordingly, Defendant has the "culpable state of mind" required to warrant an adverse inference instruction.

**C.     The Destroyed Evidence was Relevant to Plaintiff's Claims and Defendant's Defenses.**

For purposes of an adverse inference, relevance means "not only the ordinary meaning of the term, but also that the destroyed evidence would have been favorable to the movant." *Zhi Chen*, 839 F. Supp. 2d at 12–13 (*citing Zubulake*, 229 F.R.D. at 431; *Residential Funding Corp.*, 306 F.3d at 108–09). Moreover, relevance may be "inferred if the spoliator is shown to have a sufficiently culpable state of mind." *Id.* (*citing Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, 783 F.Supp.2d 736, 743 (S.D.N.Y. 2011) (holding that when the moving party "adduces evidence that its opponent destroyed potential evidence (or otherwise rendered it unavailable) in bad faith or through gross negligence . . ., that same evidence of the opponent's state of mind will frequently also be sufficient to permit a jury to conclude that the missing evidence is favorable to the party") (*quoting Residential Funding Corp.*, 306 F.3d at 109). As discussed *supra*, Defendant's actions in allowing the emails, texts and other related documents to be deleted with no copies was at least grossly negligent. Therefore, a reasonable factfinder could also find that the destroyed evidence

was adverse to Defendant. Accordingly, the "relevance" requirement is satisfied. Because all three elements are sufficiently satisfied, the Court enters the following adverse inference:

> **Defendant destroyed or otherwise failed to produce its responsive emails, texts, and WhatsApp communications because Defendant was aware that this evidence was unfavorable to Defendant and that it was favorable to Plaintiff.**

Plaintiff also respectfully requests that the Court also consider enhanced sanctions such as the striking of Defendant's affirmative defenses or the entry of default on elements of Plaintiff's claims. This would include, without limitation, striking affirmative defenses 2 through 5 (that Plaintiff cannot establish proximate cause, failed to mitigate his damages, that parties other than Defendant caused Plaintiff's damages, and that Plaintiff's damages are speculative and not recoverable). This also would include, without limitation, entering default on Plaintiff's claim for negligence, or at a minimum finding duty and breach as a matter of law, and entering default on Plaintiff's claim for trespass.

## VII.   SANCTIONS, EXPENSES AND ATTORNEYS' FEES ARE APPROPRIATE UNDER RULE 37(b)(2)

Rule 37(b)(2) supplies broad discretion to sanction a party that fails to obey an order to provide or permit discovery. *DL v. D.C.*, 274 F.R.D. 320, 324–25 (D.D.C. 2011) (*citing* Fed. R. Civ. P. 37(b)(2); *Bonds v. District of Columbia*, 93 F.3d 801, 807 (D.C.Cir.1996) ("Under Rule 37, the district court has broad discretion to impose sanctions for discovery violations."); *Flynn v. Dick Corp.*, 481 F.3d 824, 835 (D.C.Cir.2007) (acknowledging that the district court has broad discretion in managing discovery, and "[t]his deference [accorded by the circuit] extends to the district court's imposition of discovery sanctions"); *Mojarad v. Aguirre*, 2006 WL 785415, at *10 (D.D.C. March 27, 2006) (acknowledging that the list of sanctions enumerated in Rule 37(b)(2)(A) is neither exhaustive nor mutually exclusive, and "the court may impose [more than one of the enumerated sanctions] at the same time[ ]"; "[t]he imposition of the number and type of sanctions

employed under [Rule 37(b)(2)(A)] is left to the discretion of the trial judge") (citations omitted); *Handy v. Veilleux & Roth*, No. CIV.A.00–2336, 2006 WL 3791387, at \*8 (D.D.C. Dec. 22, 2006) ("Indeed, the 'district court has been delegated a good deal of discretion in making discovery orders and enforcing them with sanctions [.]' ") (citation omitted); *United States v. Proceeds of Drug Trafficking Transferred to Certain Foreign Bank Accounts*, 252 F.R.D. 60, 62–63 (D.D.C.2008) ("Sanctions are integral to the operation of the judicial system [,]" and Rule 37 "allows the court to apply a variety of sanctions to any party in a case.") (citations omitted)).

## A. Defendant Violated Two Court Orders to Provide Discovery.

Obtaining discovery sanctions under Rule 37(b) merely requires the moving party "clear two hurdles before it may access the Rule's sanctioning mechanisms: (1) there must be a discovery order in place, and (2) that order must be violated." *DL v. D.C.*, 274 F.R.D. 320, 325 (D.D.C. 2011). "Once those two hurdles are cleared, the Rule allows for several specific types of sanctions, including dismissal of the action and default judgment." *Id.* (*citing* 37(b)(2)(A)(i)–(vii).

Here, at least two discovery court orders were in place which Defendant violated. First, the Court ordered on January 7, 2022 that Defendant provide a "substantial document production" and verified interrogatories by January 18, 2022. Min. Ord., Jan. 7, 2022. Defendant failed to comply. By January 18, 2022, Defendant failed to serve the court-ordered verified answers to Plaintiff's interrogatories. Moreover, although Defendant served some documents, it was hardly a complete "substantial document production." Defendant produced just 139 documents and failed to produce among other things any emails, text messages, WhatsApp messages, invoices or contracts with its general contractor. *Id.*

Second, the Court ordered on March 4, 2022 that "Defendant must produce documents by 5:00 p.m. on 3/11/2022 or the possibility of sanctions imposed." Min. Ent., Mar. 4, 2022. The

22

Court entered another order on March 7, 2022 in which it recognized that Defendant produced documents to Plaintiff that "were not organized as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i)" and therefore ordered Defendant reproduce its documents in an organized manner with Bates Stamps no later than 5:00 p.m. on March 11, 2022. Min. Ord., Mar. 7, 2022. Defendant reproduced its response but failed to provide the material responsive documents. Defendant failed to produce any supplemental documents until May 6, 2022, long after his April 22, 2022 deposition and nearly two months after the March 11, 2022 deadline. Even then, Defendant's untimely production was hardly substantial as it produced a feigned supplemental production consisting of 123 pages of insurance policies and a letter denying insurance coverage.

### B.    The Court Awards Sanctions under Rule 37(b)(2)(A)(i)-(iv).

When determining whether to impose sanctions such as issue preclusion or striking parts of pleadings, the court considers "whether the sanction is necessary to avoid prejudice to the aggrieved party and, to the extent the sanction is designed to deter future abuses, whether it is supported by a finding of flagrant or egregious misconduct." *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 226–28 (D.D.C. 2015) (citations omitted). The Court can consider "the nature of the resulting prejudice, whether deterrence is necessary to protect the integrity of the judicial system, and what effect, if any, plaintiffs' dilatory or contumacious conduct [has had] on the court's docket." *Id.*

#### 1.    Prejudice to Plaintiff.

A party's failure to abide by discovery deadlines is prejudicial "when it prevents the opposing party from timely reviewing relevant evidence." *Id.* (*citing Moore v. Napolitano*, 723 F.Supp.2d 167, 181–82 (D.D.C.2010) (finding prejudice where the opposing party failed to timely produce relevant documents); *Klayman v. Judicial Watch, Inc.*, 256 F.R.D. 258, 262 (D.D.C.2009)

23

("Plaintiff's conduct has severely prejudiced Defendants by preventing them from reviewing any documentary evidence relating to Plaintiff's damages or alleged defenses to counterclaims.")). Here, Plaintiff has been prevented from timely reviewing essentially any substantive evidence in the case regarding Defendant's construction of the large condominium whether the construction caused substantial damage to Plaintiff's building. Plaintiff specifically requested discovery on each of Defendant's affirmative defenses, which Defendant failed to provide. Defendant already sat for his deposition. The deadline to amend pleadings and add parties has long passed on January 3, 2022. ECF No. 7. Plaintiff was unable to adequately obtain an expert as a result of Defendant's failure to produce discovery and Plaintiff's Rule 26(a)(2) deadline already passed on May 6, 2022. And the discovery deadline of June 17, 2022 is just weeks away. Accordingly, Plaintiff has been severely prejudiced by Defendant's discovery violations.

### 2.    Deterrence.

Courts routinely hold that "[t]he district court's interest in deterrence is a legitimate one, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Shatsky*, 312 F.R.D. at 227. Deterrence is "an especially important consideration" when a party has displayed "protracted recalcitrance" throughout the discovery process. *Id.* (*citing Jankins v. TDC Mgmt. Corp. Inc.*, 21 F.3d 436, 445 (D.C.Cir.1994) (finding that sanctions were appropriate "[g]iven the defendants' willful misconduct" and the need "to deter misconduct by others"); *Moore*, 723 F.Supp.2d at 184 (finding that severe sanctions were appropriate because lesser sanctions had not deterred the defendant's "history of protracted recalcitrance").

Here, Defendant has been given a plethora of chances to comply with its discovery obligations and the Court has been more than lenient. Yet, Defendant's protracted recalcitrance

continues. Although Plaintiff pushed for sanctions sooner, the Court respectably ordered the parties to meet and confer multiple times. The parties came up with agreed upon deadlines, which Defendant ignored. The Court memorialized deadlines in multiple court orders, which Defendant ignored. Sanctions are necessary not only to remedy the prejudice to Plaintiff but also to stop Defendant's pattern of misconduct that has become far too extensive to go unpunished.

### 3.     Prejudice to the Judicial System

Parties cannot "pick and choose when to comply with a court order" depending on their own "unilaterally determined excuses or justifications not to comply with the order." *Shatsky*, 312 F.R.D. at 228. There exists "importance per se in not allowing a party to ignore orders" to guarantee that the litigation does not "descend into chaos." *Id.* When "a party's conduct has interfered with the Court's ability to preside over an orderly and efficient discovery process, the equities certainly warrant sanctions." *Id.* Here, Defendant has done exactly what is prohibited by picking and choosing what orders to comply with and ignoring orders so that the litigation descends into chaos.

Accordingly, sanctions are certainly warranted. Plaintiff respectfully requests the Court exercise its discretion under Rule 37(b)(2) and an order striking Defendant's affirmative defenses 2 through 5 (that Plaintiff cannot establish proximate cause, failed to mitigate his damages, that parties other than Defendant caused Plaintiff's damages, and that Plaintiff's damages are speculative and not recoverable), prohibiting Defendant from entering into evidence any of the unproduced, spoliated, nonexistent or concealed evidence set forth above, entering default on Plaintiff's claim for negligence, or at a minimum finding duty and breach as a matter of law, and entering default on Plaintiff's claim for trespass.

25

**C.        The Court Awards Attorneys' Fees under Rule 37(b)(2)(C).**

Rule 37(b)(2)(c) emphasizes that "[i]nstead of or in addition to the orders above, the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *DL*, 274 F.R.D. at 325. Defendant's failure to comply with the orders was not substantially justified and no other circumstances make an award of expenses unjust. Defendant failed to even look at the discovery requests until January 2022, long after they were already due and its counsel already provided its initial insufficient response. Defendant failed to even provide any of the documents its counsel produced in its production. The Court already reserved on an award of attorneys' fees and even threatened sanctions. There are no excuses. Defendant has no respect for the discovery process. Accordingly, expenses and attorneys' fees are be awarded.

## FURTHER FINDINGS

The Court notes Plaintiff's compliance with Local Rule 7.

Plaintiff's Motion is GRANTED.  Sanctions are appropriate on this record. Accordingly, the Court hereby grants the following sanctions and it is therefore ORDERED, ADJUDGED and DECREED:

1.    The Court enters the following adverse inference:

**Defendant destroyed or otherwise failed to produce its responsive emails, texts, and WhatsApp communications because Defendant was aware that this evidence was unfavorable to Defendant and that it was favorable to Plaintiff.**

2.    Defendant's affirmative defenses 2 through 5 are hereby stricken.

3.    Plaintiff is awarded default on the liability elements of Plaintiff's claim for negligence. Duty, breach and causation are established as a matter of law.

26

4.      Plaintiff is awarded default on the liability elements of Plaintiff's claim for trespass.

5.      Plaintiff is awarded entitlement to the totality of his reasonable attorneys' fees and costs incurred in litigating these discovery matters.

6.      Counsel for the parties shall meet and confer within 10 days on an amount of reasonable attorneys' fees to be awarded, and if the parties do not agree, the Court will set a briefing schedule to determine the amount of reasonable attorneys' fees and costs to be awarded to Plaintiff.

Done and ordered in Chambers in _____ Washington, DC, on this _____ day of _____, 2022.

_____
TANYA S. CHUTKAN
UNITED STATES DISTRICT COURT JUDGE