UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHARLES MATIELLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 21-cv-2112 |
| vs. | ) | |
| | ) | |
| MURDOCK STREET LLC, and | ) | |
| EWORA, L.L.C. and | ) | |
| IFG GROUP, LLC, and | ) | |
| CITY CONCRETE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| MURDOCK STREET LLC, | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| EWORA, L.L.C. and | ) | |
| IFG GROUP, LLC | ) | |
| | ) | |
| Third-party Defendants. | ) | |
| | ) | |
| | ) | |
| EWORA, L.L.C. and | ) | |
| IFG GROUP, LLC, | ) | |
| | ) | |
| Fourth-Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY CONCRETE CORPORATION, | ) | |
| | ) | |
| Fourth-Party Defendant. | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff Charles Matiella, through counsel, files this Amended Complaint for $1,250,000

in damages to be paid by Defendants Murdock Street LLC ("Murdock"), EWORA, L.L.C.

("EWORA"), IFG Group, LLC ("IFG") and City Concrete Corporation ("City Concrete"), and for injunctive relief against all Defendants.

## PARTIES

1.      Plaintiff is a natural person, a resident of the District of Columbia, and the record owner of real property located at 770 Princeton Place NW, Apt. B, Washington, DC 20010.

2.      Defendant Murdock is a Virginia limited liability company with a principal address of 14000 Thunderbolt Pl, Ste. R, Chantilly, VA 20151 in Loudoun County, VA.

3.      Defendant EWORA is a Virginia limited liability company with a principal address of 1311 Mayflower Dr., McLean, VA, 22101 in Fairfax County, VA.

4.      Defendant IFG is a Virginia limited liability company with a principal address of 1311 Mayflower Dr., McLean, VA, 22101 in Fairfax County, VA.

5.      Defendant City Concrete is a Virginia stock corporation with a principal address of 9284 Corporate Cir., Manassas, VA, 20110 in Fairfax County, VA.

## JURISDICTION AND VENUE

6.      There is complete diversity between the parties pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of the District of Columbia and all Defendants are citizens of Virginia.

7.      Defendant Murdock is a citizen of Virginia, inclusive of all its members. Defendant Murdock has one member, Ercan John Keskin, who is a Virginia resident.

8.      Defendants EWORA and IFG are citizens of Virginia, inclusive of all their members. Upon information and belief, Defendants EWORA and IFG are both owned and operated by the same sole member, Fatih Guner, who is a Virginia resident.

9.      Defendant City Concrete is a corporation and resident of Virginia.

10.     The amount in controversy requirements of 28 U.S.C. § 1332 are satisfied because more than $75,000 is at issue, exclusive of costs, interest and attorneys' fees.

11.     This action properly lies in the District of Columbia pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims in this action occurred within this District.

12.     The real properties at issue in this case are within the District of Columbia.

13.     Venue is appropriate in this court.

**FACTS COMMON TO ALL ALLEGATIONS**

14.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set out herein.

15.     At all relevant times, Plaintiff has been the owner of a 2,784 square foot multi-family rowhouse located at 770 Princeton Place NW, Apt. B, Washington, DC 20010 ("Plaintiff's Property").

16.     The building on Plaintiff's Property sits atop a 1,731 square foot tract of land.

17.     Directly adjacent to Plaintiff's Property, to the west, is a 4,699 square foot tract of land with an address of 3619 Georgia Avenue NW, Washington, DC 20018 which has been owned at all relevant times by Defendant Murdock ("Defendant Murdock's Property").

18.     In 2019, 2020 and into 2021, construction had been in progress at Defendant Murdock's Property.[1] The construction included excavation, heavy drilling and other major construction activity.

---

[1] Plaintiff expressly reserves all rights to amend the Complaint to include additional co-defendants as necessary. This includes, but is not limited to, Defendant's architect, engineer and all other unnamed subcontractors.

19.     As of May 2021, Defendant Murdock had constructed a new, six-story, 27-unit condominium building with ground floor retail on Defendant Murdock's Property. The building which Defendant Murdock built on Defendant Murdock's Property is named The Exchange. As of May 2021, at least one unit in The Exchange had apparently been sold. The Exchange's website is attached as Ex. A.

20.     During Defendant Murdock's construction of The Exchange on Defendant Murdock's Property, Defendant Murdock or personnel hired by Defendant Murdock, under Defendant Murdock's direction, caused the foundation of Plaintiff's Property to be defective, dislodged, cracked and unsafe. The construction, excavation and drilling on Defendant Murdock's Property, at Defendant Murdock's direction and ordered by Defendant Murdock, caused reverberations of the earth or other elements connected to Plaintiff's Property or on Plaintiff's Property to vibrate. Defendant Murdock's actions directly caused substantial and serious damage to Plaintiff's Property.

21.     The heavy excavation, drilling and other major construction activity involved in developing The Exchange on Defendant Murdock's Property directly caused the damage to Plaintiff's Property.

22.     Defendant Murdock failed to protect Plaintiff from the damage to Plaintiff's Property caused by the actions undertaken by Defendant Murdock on Defendant Murdock's Property.

23.     Somewhat to Defendant Murdock's credit, Defendant Murdock admitted that Defendant Murdock's actions caused the damage to Plaintiff's Property. Over the past two years, while acknowledging the damage that Defendant Murdock caused to Plaintiff's Property, Defendant Murdock made remedial attempts to address and rectify the damage to Plaintiff's

Property. However, Defendant Murdock's attempts to address and rectify the damage to Plaintiff's Property were insufficient.

24.     Due to Defendant Murdock's continued failure to remedy the problems and the severe damage to Plaintiff's Property, Plaintiff lodged a formal Amended Complaint against Defendant Murdock with the Illegal Construction Unit of the District of Columbia Department of Consumer & Regulatory Affairs ("DCRA").

25.     On May 7, 2021, the Illegal Construction Unit of the DCRA held a meeting to address the protection of Plaintiff's Property.

26.     On May 13, 2021, a report was issued detailing the insufficient remedial measures which Defendant Murdock supposedly had taken to address the damage caused to Plaintiff's Property:

  A.  Underpinning the front and courtyard walls to arrest and fix the cracks on the walls of Plaintiff's Property;

  B.  Replacing the front stairs of Plaintiff's Property and areas of the front yard;

  C.  Replacing the displaced rear deck post footing and restoration of the rear yard, however, this was not completed;

  D.  Replacing or fixing the floor cracks observed in the basement's finished floor, however, Defendant Murdock failed to initiate this aspect of its attempts at remediation;

  E.  Monitoring the existing building façade to ensure no settling is occurring through the installation of a monitoring device in September 2020; and,

  F.  Replacing the cracked façade brick construction.

27.     Defendant Murdock persisted in failing to effectively remedy the damage to Plaintiff's Property and Defendant Murdock's attempts at remediation were drastically insufficient.

28.     At Plaintiff's insistence, a structural engineer evaluated the problems that Defendant Murdock caused at Plaintiff's Property. In the structural engineer's June 7, 2021 report, the structural engineer made the following findings:

Subject: 770 Princeton PL NW, Unit B, Washington, D.C. 20010 (Plaintiff's Property)

A.     An excavation was made immediately adjacent to the existing townhouse. As the excavation progressed a soldier pile and lagging retaining wall was installed. The soldier piles were H-piles of undetermined length and the lagging consisted of wood planks. The soldier piles were installed in pre-drilled holes with concrete placed in the annular space around the H-piles.

B.     A portion of the masonry (brick) foundation wall appears to have fallen out from beneath the townhouse as the excavation progressed.

C.     Settlement of the floor was indicated by light beneath an entry door at the threshold.

D.     Underpinning of the foundation wall was performed. A photo shows that the existing building is supported on a continuous wall footing bearing on soil. Subsequent photos show that the excavation extended below the underpinning. Also, subsequent photos show that the excavation extended below the bottoms of soldier piles used for a soldier pile and lagging retaining wall.

E.     The depth of the excavation is estimated to be 25-feet based on the heights of the personnel shown in the photos. Water was seen in the excavation, but the source is unknown.

F.     The soldier pile and lagging retaining wall had no walers, rakers or cross-bracing. The depth of the soldier piles to provide adequate lateral passive earth resistance could not be determined from the photographs. However, the photos did not indicate backfill in the space behind lagging between the walls of the excavation. The backfill closes the void and prevents the lateral movement of the soil into the void space. The lateral movement of the subsoil results in settlement of the structure. Also noted, the soil settled from beneath the sidewalk and the brick planter wall separated from the walk at the entryway.

G.     Another photo shows soil flowing out from beneath the lagging. Other photos show cracks in the masonry bearing walls and settling of a support for the deck. Also, there are cracks around doorways and at lintels.

H.  Photos show interior walls and ceiling with cracks and plastic sheeting above the interior stairs. The plastic sheeting may be indicative of water dripping from the ceiling.

I.  Water dripping from the ceiling may be due to roof leakage. Any roof leakage occurring may be caused by a tear in the membrane roofing material due to settlement and/or outward movement of the building wall.

J.  Some brick restoration work was performed. However, the photos indicated that the front wall of the residence was braced during the restoration. The reason for the bracing is unknown. Additionally, a new entry walk and stairs were provided.

K.  In the opinion of the undersigned, settlement of the building may continue until the soil migrates to fill-in the voids created by the excavation and void space behind the lagging. Continued settlement will result in further structural damage to the building and compromise its structural integrity. Movement of the bearing walls may result in the joists slipping out of their pockets and the floors or roof collapsing. Also, further settlement may adversely affect underground utilities servicing the building.

L.  The building should be closely monitored for further settlement/movement and the underground utilities should be verified for continuity.

The engineer's report is attached as Ex. B.

29.  Despite the DCRA action, Defendant Murdock persisted in failing to fund a meaningful evaluation of the damage to Plaintiff's Property that Defendant Murdock caused.

30.  Plaintiff reasonably believes that Plaintiff's Property has become an unsafe structure and it is currently uninhabitable.

31.  Due to evacuation for safety reasons, due to the damage that Defendant Murdock caused, Plaintiff has lost the use of Plaintiff's Property.

32.  A composite set of photographs of Plaintiff's Property is attached as Ex. C.

33.  Plaintiff does not feel safe living in Plaintiff's Property or for Plaintiff's Property to be inhabited at all.

34.     Plaintiff reasonably believes that the building on Plaintiff's Property will have to be knocked down or razed to ensure the safety and protection of human life as well as property.

35.     Defendant Murdock should be ordered to pay for the demolition and full rebuild of Plaintiff's Property.

36.     Defendant Murdock should be ordered to pay for the loss of use sustained by Plaintiff as to Plaintiff's Property. Upon information and belief, for reasons unknown, Defendant Murdock has failed to properly file an insurance claim which would likely cover the damages to Plaintiff's Property.

37.     Defendant Murdock, or Defendant Murdock's insurer, should be ordered to pay for all damages sustained by Plaintiff including, the mounting out of pocket costs and expenses incurred by Plaintiff as a result of the damage that Defendant Murdock caused to Plaintiff's Property, which includes all litigation-related costs and reasonable attorneys' fees.

38.     District of Columbia Mun. Reg. tit. 12 § A 3307.1 provides as follows:

> Adjoining public and private property shall be protected from damage during construction alteration, repair, demolition or raze of a premises at the expense of the person causing the work.  Protection must be provided for lots, and for all elements of a building or other structure, including, but not limited to, footings, foundations, party walls, chimneys, vents, skylights, porches, decks, roofs, roof outlets, roof structures and flashing. Provisions shall be made to control water runoff and erosion during construction or demolition or raze activities.

39.     Defendant Murdock violated the above-referenced regulations.

40.     Defendant Murdock failed to remedy the dangerous conditions that Defendant Murdock caused to Plaintiff's Property.

41.     The work performed on Defendant Murdock's Property is inherently dangerous, as the subject work entails excavation, drilling and other heavy construction activity with heavy equipment.

42.	Because the work performed by Defendant Murdock in building The Exchange is inherently dangerous, under the specific factual circumstances, Defendant Murdock's duty of care owed to Plaintiff was non-delegable.

43.	Plaintiff adhered to and satisfied all notice and cure requirements of Section 3307, or such requirements were waived.

44.	The market value of Plaintiff's Property is approximately $1,000,000 with a safe and structurally-sound building. In the current condition, however, Defendant Murdock's actions have decimated the value of Plaintiff's Property, rendering it virtually non-transferrable.

45.	Plaintiff's Property has been rendered unsafe, uninhabitable, unusable and unsaleable. Plaintiff has been wrongly subjected to risk and potential liability to third-parties as a result of the dangerous conditions caused by Defendant Murdock.

### Negligence of General Contractors EWORA and IFG

46.	Defendant Murdock used Defendants EWORA and IFG as the general contractors for the construction at Defendant Murdock's Property.

47.	In 2017, Defendant Murdock engaged Defendant IFG to develop the condominium complex at The Exchange.

48.	In 2017, Defendant Murdock and/or Defendant IFG engaged Defendant EWORA to construct The Exchange. Defendant Murdock refers to EWORA as the "builder." Defendant IFG claims IFG retained EWORA as "to manage the construction activities" at The Exchange.

49.	Both EWORA and IFG are owned and operated by the same principal, Fatih Gunner and are sister companies.

50.	Defendants IFG and EWORA's work at Defendant Murdock's Property included the construction necessary to excavate the land upon which The Exchange would be built.

51.    At all relevant times, Defendants EWORA and IFG were responsible for the construction and development of The Exchange.

52.    Moreover, Defendants EWORA and IFG interfaced with the DCRA regarding issues at Plaintiff's Property and The Exchange.

53.    Together with Defendant Murdock, Defendants EWORA and IFG were involved in and responsible for addressing the numerous Stop Work Orders issued by DCRA regarding the construction work at The Exchange.

54.    Together with Defendant Murdock, Defendants EWORA and IFG were involved in and responsible for addressing the alleged issues at the Plaintiff's Property as it pertains to the DCRA.

55.    Together with Defendant Murdock, Defendants EWORA and IFG were involved in and responsible for addressing the DCRA's May 13, 2021 report detailing remedial measures necessary to address the damages at Plaintiff's Property.

56.    Together with Defendant Murdock, Defendants EWORA and IFG were involved in and responsible for addressing various Visual Monitoring Reports to observe any existing pre-construction and structural damages at the Plaintiff's Property.

57.    Together with Defendant Murdock, Defendants EWORA and IFG were involved in and responsible for submitting plans to the DCRA to obtain the construction permit for Defendant Murdock's Property.

58.    Defendant Murdock has asserted that Defendants EWORA and IFG are directly responsible for any damages to Plaintiff's Property caused by the construction of The Exchange.

**Negligence of Subcontractor City Concrete**

59.    On or about October 23, 2017, Defendant EWORA entered into a contract with City Concrete for City Concrete to provide labor and material for the construction of The Exchange at Defendant Murdock's Property.

60.    Thereafter, City Concrete performed construction work at Defendant Murdock's Property.

61.    City Concrete purportedly completed all its work at The Exchange, pursuant to its contract with EWORA and in furtherance of the development of the property for The Exchange.

62.    According to Defendants EWORA and IFG, the construction activities that occurred at Defendant Murdock's Property set forth in this Amended Complaint were "developed, planned, and performed by City Concrete."

63.    According to Defendants EWORA and IFG, "[t]o the extent that Plaintiff's Property was trespassed on and/or otherwise damaged, it was due to the acts or omissions of City Concrete."

64.    Accordingly, along with Defendants Murdock, EWORA and IFG, Defendant City Concrete is responsible for Plaintiff's damages.

65.    Plaintiff retained counsel and agreed to pay its counsel's reasonable attorneys' fees.

## COUNT I – NEGLIGENCE

### Against Defendant Murdock

66.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1-65 as if fully set out herein.

67.     Defendant Murdock owed a duty of care to Plaintiff.

68.     Defendant Murdock owed Plaintiff a duty, *inter alia*, to protect Plaintiff because Plaintiff is the owner of adjacent property. Defendant Murdock had a duty to exercise common prudence in maintaining Defendant Murdock's Property in such a way as to prevent injury to Plaintiff as an owner of adjacent property.

69.     The work performed by Defendant Murdock or the personnel hired by Defendant Murdock on Defendant Murdock's Property, is inherently dangerous, as the subject work entailed excavation, drilling and other heavy construction activity. Accordingly, Defendant Murdock's duty of care was non-delegable to any third-party.

70.     Defendant Murdock breached its duty of care to Plaintiff.

71.     Defendant Murdock's breach of duty proximately caused substantial damages to Plaintiff.

72.     Plaintiff's principal damages of approximately $1,250,000 include the $1,000,000 approximate market value of Plaintiff's Property, which has been severely damaged and rendered uninhabitable, and loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

## COUNT II – TRESPASS

### Against Defendant Murdock

73.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1-65 as if fully set out herein.

74.     Defendant Murdock caused or committed a physical invasion or unauthorized entry of a person or thing onto Plaintiff's Property as described herein.

75.     The physical invasion or unauthorized entry resulted in interference with Plaintiff's possessory interest in Plaintiff's Property.

76.     Defendant Murdock had at least some control over the inanimate object or objects which invaded Plaintiff's Property.

77.     As a result of Defendant Murdock's trespass, Plaintiff was severely damaged.

78.     Plaintiff's principal damages of approximately $1,250,000 includes the $1,000,000 approximate market value of Plaintiff's Property, which has been severely damaged and rendered uninhabitable, and loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

## COUNT III – INJUNCTIVE RELIEF

### Against Defendant Murdock

79.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1-65 as if fully set out herein.

80.     Because of safety concerns and to preserve evidence, Defendant Murdock should be enjoined from further construction activity on Defendant Murdock's Property pending a resolution to this litigation.

81.     Defendant Murdock should be ordered to take all reasonable and prudent actions to prevent spoliation and to preserve relevant evidence, including the allowance of Plaintiff's full and unfettered access to Defendant Murdock's Property and applicable files. If evidence is spoliated, Plaintiff will suffer irreparable harm.

82.     Defendant Murdock should be ordered to purchase insurance coverage of at least $5,000,000, naming Plaintiff as an insured and identifying Plaintiff's Property as an insured location with sufficient coverage to fully indemnify Plaintiff and including but not limited to an indemnification of Plaintiff as to any actual or potential liability to third-parties which is the result of the unsafe conditions on Plaintiff's Property.

83.     Defendant Murdock should be ordered to escrow, through cash, a letter of credit, a bond, or otherwise, at least $1,250,000 to satisfy the damages caused to Plaintiff and/or Plaintiff's Property.

84.     Defendant Murdock should be ordered to promptly pay for a comprehensive set of testing to determine the structural integrity of Plaintiff's Property and whether Plaintiff's Property can be safely occupied.

85.     Defendant Murdock should be ordered to obtain estimates for the razing of the current building on Plaintiff's Property and the construction of a new building on Plaintiff's Property.

86.     Defendant Murdock should be ordered to knock down the existing building on Plaintiff's Property and fully pay for the construction of a new building on Plaintiff's Property having equal or greater value.

**COUNT IV – NEGLIGENCE**

**Against Defendant EWORA**

87.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-65 as if fully set out herein.

88.    Defendant EWORA owed a duty of care to Plaintiff.

89.    Defendant EWORA owed Plaintiff a duty, *inter alia*, to protect Plaintiff because Plaintiff is the owner of adjacent property. Defendant EWORA had a duty to exercise common prudence in constructing and developing Defendant Murdock's Property in such a way as to prevent injury to Plaintiff as an owner of adjacent property.

90.    The work performed by Defendant EWORA or the personnel hired by Defendant EWORA on Defendant Murdock's Property, is inherently dangerous, as the subject work entailed excavation, drilling and other heavy construction activity. Accordingly, Defendant EWORA's duty of care was non-delegable to any third-party.

91.    Defendant EWORA breached its duty of care to Plaintiff.

92.    Defendant EWORA's breach of duty proximately caused substantial damages to Plaintiff.

93.    Plaintiff's principal damages of approximately $1,250,000 include the $1,000,000 approximate market value of Plaintiff's Property, which has been severely damaged and rendered uninhabitable, and loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

**COUNT V – TRESPASS**

**Against Defendant EWORA**

94.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-65 as if fully set out herein.

95.    Defendant EWORA caused or committed a physical invasion or unauthorized entry of a person or thing onto Plaintiff's Property as described herein.

96.    The physical invasion or unauthorized entry resulted in interference with Plaintiff's possessory interest in Plaintiff's Property.

97.    Defendant EWORA had at least some control over the inanimate object or objects which invaded Plaintiff's Property.

98.    As a result of Defendant EWORA's trespass, Plaintiff was severely damaged.

99.    Plaintiff's principal damages of approximately $1,250,000 includes the $1,000,000 approximate market value of Plaintiff's Property, which has been severely damaged and rendered uninhabitable, and loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

**COUNT VI – INJUNCTIVE RELIEF**

**Against Defendant EWORA**

100.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-65 as if fully set out herein.

101.    Because of safety concerns and to preserve evidence, Defendant EWORA should be enjoined from further construction activity on Defendant Murdock's Property pending a resolution to this litigation.

102.   Defendant EWORA should be ordered to take all reasonable and prudent actions to prevent spoliation and to preserve relevant evidence, including the allowance of Plaintiff's full and unfettered access to Defendant Murdock's Property and applicable files. If evidence is spoliated, Plaintiff will suffer irreparable harm.

103.   Defendant EWORA should be ordered to purchase insurance coverage of at least $5,000,000, naming Plaintiff as an insured and identifying Plaintiff's Property as an insured location with sufficient coverage to fully indemnify Plaintiff and including but not limited to an indemnification of Plaintiff as to any actual or potential liability to third-parties which is the result of the unsafe conditions on Plaintiff's Property.

104.   Defendant EWORA should be ordered to escrow, through cash, a letter of credit, a bond, or otherwise, at least $1,250,000 to satisfy the damages caused to Plaintiff and/or Plaintiff's Property.

105.   Defendant EWORA should be ordered to promptly pay for a comprehensive set of testing to determine the structural integrity of Plaintiff's Property and whether Plaintiff's Property can be safely occupied.

106.   Defendant EWORA should be ordered to obtain estimates for the razing of the current building on Plaintiff's Property and the construction of a new building on Plaintiff's Property.

107.   Defendant EWORA should be ordered to knock down the existing building on Plaintiff's Property and fully pay for the construction of a new building on Plaintiff's Property having equal or greater value.

## COUNT VII – NEGLIGENCE

### Against Defendant IFG

108.   Plaintiff incorporates by reference the allegations contained in Paragraphs 1-65 as if fully set out herein.

109.   Defendant IFG owed a duty of care to Plaintiff.

110.   Defendant IFG owed Plaintiff a duty, *inter alia*, to protect Plaintiff because Plaintiff is the owner of adjacent property. Defendant IFG had a duty to exercise common prudence in developing and constructing Defendant Murdock's Property in such a way as to prevent injury to Plaintiff as an owner of adjacent property.

111.   The work performed by Defendant IFG or the personnel hired by Defendant IFG on Defendant Murdock's Property, is inherently dangerous, as the subject work entailed excavation, drilling and other heavy construction activity. Accordingly, Defendant IFG's duty of care was non-delegable to any third-party.

112.   Defendant IFG breached its duty of care to Plaintiff.

113.   Defendant IFG's breach of duty proximately caused substantial damages to Plaintiff.

114.   Plaintiff's principal damages of approximately $1,250,000 include the $1,000,000 approximate market value of Plaintiff's Property, which has been severely damaged and rendered uninhabitable, and loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

**COUNT VIII – TRESPASS**

**Against Defendant IFG**

115.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-65 as if fully set out herein.

116.    Defendant IFG caused or committed a physical invasion or unauthorized entry of a person or thing onto Plaintiff's Property as described herein.

117.    The physical invasion or unauthorized entry resulted in interference with Plaintiff's possessory interest in Plaintiff's Property.

118.    Defendant IFG had at least some control over the inanimate object or objects which invaded Plaintiff's Property.

119.    As a result of Defendant IFG's trespass, Plaintiff was severely damaged.

120.    Plaintiff's principal damages of approximately $1,250,000 includes the $1,000,000 approximate market value of Plaintiff's Property, which has been severely damaged and rendered uninhabitable, and loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

**COUNT IX – INJUNCTIVE RELIEF**

**Against Defendant IFG**

121.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-65 as if fully set out herein.

122.    Because of safety concerns and to preserve evidence, Defendant IFG should be enjoined from further construction activity on Defendant Murdock's Property pending a resolution to this litigation.

123.    Defendant IFG should be ordered to take all reasonable and prudent actions to prevent spoliation and to preserve relevant evidence, including the allowance of Plaintiff's full and unfettered access to Defendant Murdock's Property and applicable files. If evidence is spoliated, Plaintiff will suffer irreparable harm.

124.    Defendant IFG should be ordered to purchase insurance coverage of at least $5,000,000, naming Plaintiff as an insured and identifying Plaintiff's Property as an insured location with sufficient coverage to fully indemnify Plaintiff and including but not limited to an indemnification of Plaintiff as to any actual or potential liability to third-parties which is the result of the unsafe conditions on Plaintiff's Property.

125.    Defendant IFG should be ordered to escrow, through cash, a letter of credit, a bond, or otherwise, at least $1,250,000 to satisfy the damages caused to Plaintiff and/or Plaintiff's Property.

126.    Defendant IFG should be ordered to promptly pay for a comprehensive set of testing to determine the structural integrity of Plaintiff's Property and whether Plaintiff's Property can be safely occupied.

127.    Defendant IFG should be ordered to obtain estimates for the razing of the current building on Plaintiff's Property and the construction of a new building on Plaintiff's Property.

128.    Defendant IFG should be ordered to knock down the existing building on Plaintiff's Property and fully pay for the construction of a new building on Plaintiff's Property having equal or greater value.

**COUNT X – NEGLIGENCE**

**Against Defendant City Concrete**

129.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-65 as if fully set out herein.

130.    Defendant City Concrete owed a duty of care to Plaintiff.

131.    Defendant City Concrete owed Plaintiff a duty, *inter alia*, to protect Plaintiff because Plaintiff is the owner of adjacent property. Defendant City Concrete had a duty to exercise common prudence in developing and constructing Defendant Murdock's Property in such a way as to prevent injury to Plaintiff as an owner of adjacent property.

132.    The work performed by Defendant City Concrete or the personnel hired by Defendant City Concrete on Defendant Murdock's Property, is inherently dangerous, as the subject work entailed excavation, drilling and other heavy construction activity. Accordingly, Defendant City Concrete's duty of care was non-delegable to any third-party.

133.    Defendant City Concrete breached its duty of care to Plaintiff.

134.    Defendant City Concrete's breach of duty proximately caused substantial damages to Plaintiff.

135.    Plaintiff's principal damages of approximately $1,250,000 include the $1,000,000 approximate market value of Plaintiff's Property, which has been severely damaged and rendered uninhabitable, and loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

## COUNT XI – TRESPASS

### Against Defendant City Concrete

136. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-65 as if fully set out herein.

137. Defendant City Concrete caused or committed a physical invasion or unauthorized entry of a person or thing onto Plaintiff's Property as described herein.

138. The physical invasion or unauthorized entry resulted in interference with Plaintiff's possessory interest in Plaintiff's Property.

139. Defendant City Concrete had at least some control over the inanimate object or objects which invaded Plaintiff's Property.

140. As a result of Defendant Murdock's trespass, Plaintiff was severely damaged.

141. Plaintiff's principal damages of approximately $1,250,000 includes the $1,000,000 approximate market value of Plaintiff's Property, which has been severely damaged and rendered uninhabitable, and loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

## COUNT XII – INJUNCTIVE RELIEF

### Against Defendant City Concrete

142. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-65 as if fully set out herein.

143. Because of safety concerns and to preserve evidence, Defendant City Concrete should be enjoined from further construction activity on Defendant Murdock's Property pending a resolution to this litigation.

144.    Defendant City Concrete should be ordered to take all reasonable and prudent actions to prevent spoliation and to preserve relevant evidence, including the allowance of Plaintiff's full and unfettered access to Defendant Murdock's Property and applicable files. If evidence is spoliated, Plaintiff will suffer irreparable harm.

145.    Defendant City Concrete should be ordered to purchase insurance coverage of at least $5,000,000, naming Plaintiff as an insured and identifying Plaintiff's Property as an insured location with sufficient coverage to fully indemnify Plaintiff and including but not limited to an indemnification of Plaintiff as to any actual or potential liability to third-parties which is the result of the unsafe conditions on Plaintiff's Property.

146.    Defendant City Concrete should be ordered to escrow, through cash, a letter of credit, a bond, or otherwise, at least $1,250,000 to satisfy the damages caused to Plaintiff and/or Plaintiff's Property.

147.    Defendant City Concrete should be ordered to promptly pay for a comprehensive set of testing to determine the structural integrity of Plaintiff's Property and whether Plaintiff's Property can be safely occupied.

148.    Defendant City Concrete should be ordered to obtain estimates for the razing of the current building on Plaintiff's Property and the construction of a new building on Plaintiff's Property.

149.    Defendant City Concrete should be ordered to knock down the existing building on Plaintiff's Property and fully pay for the construction of a new building on Plaintiff's Property having equal or greater value.

**WHEREFORE**, Plaintiff prays that this Court enter judgment in his favor and against all Defendants, jointly and severally, as follows:

A. Incidental damages of approximately $1,250,000;

B. Consequential damages of an amount to be determined;

C. An injunction enjoining Defendants from further construction activity on Defendant Murdock's Property pending a resolution to this litigation;

D. An order directing Defendants to take all reasonable and prudent actions to prevent spoliation and to preserve relevant evidence, including the allowance of Plaintiff's full and unfettered access to Defendant Murdock's Property and applicable files;

E. An order directing Defendants to purchase insurance coverage of at least $5,000,000, naming Plaintiff as an insured and identifying Plaintiff's Property as an insured location with sufficient coverage to fully indemnify Plaintiff and including but not limited to an indemnification of Plaintiff as to any actual or potential liability to third-parties which is the result of the unsafe conditions on Plaintiff's Property;

F. An order directing Defendants to escrow, through cash, a letter of credit, a bond, or otherwise, at least $1,250,000 to satisfy the damages caused to Plaintiff and/or Plaintiff's Property;

G. An order directing Defendants to promptly pay for a comprehensive set of testing to determine the structural integrity of Plaintiff's Property and whether Plaintiff's Property can be safely occupied;

H. An order directing Defendants to obtain estimates for the razing of the current building on Plaintiff's Property and the construction of a new building on Plaintiff's Property;

I. An order directing Defendants to knock down the existing building on Plaintiff's Property and fully pay for the construction of a new building on Plaintiff's Property having equal or greater value;

J. Plaintiffs' reasonable attorneys' fees and costs;

K. Prejudgment interest; and,

L. Such other and further relief as this Court deems just and proper in these circumstances.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By:    */s/ Kenneth E. Chase*
Kenneth E. Chase
Chase Law & Associates, P.A.
1141 71st Street
Miami Beach, FL 33141
Tel: (305) 402-9800
Fax: (305) 402-2725
Email: kchase@chaselaw.com

*Attorneys for Plaintiff Charles Matiella*

## CERTIFICATE OF SERVICE

I, Kenneth E. Chase, hereby certify that I served the foregoing via CM/ECF on January 26, 2023, which serves an electronic copy on all counsel and registered users of record.

By:    */s/ Kenneth E. Chase*
Kenneth E. Chase

# EXHIBIT A

The Exchange

# THE EXCHANGE

About
Floor Plans
Neighborhood
Contact

REGISTER



IN PARK VIEW DC

# THE EXCHANGE



## CONDOS

one bedroom / one bath

one bedroom + den / one bath

two bedroom / two bath

—

private balconies

private roof decks

private storage

—

ground level retail



# THE EXCHANGE

About
Floor Plans
Neighborhood
Contact

**REGISTER**



← →

# EUROPEAN INSPIRED DESIGN

Striking and unique, these residences have been designed with you in mind.  Sensible and efficient, the floor plans are perfect for an inspiring home office by day and ideal for entertaining by night.

The design team has traveled far and wide to select the finest of European finishes.  The selected materials come together to create residences with an understated elegance.  Not flashy, but bold: just like you.

The floors are crafted of the finest hardwoods.  The bathroom and shower enclosures are built of large format Italian tile stretching to the ceiling.  The floor-to-ceiling windows illuminate the sleek and spacious European kitchens - worthy of the finest design magazines.  Elegance and craftsmanship is at every corner.



# THE E CHANGE

About
Floor Plans
Neighborhood
Contact

REGISTER

# FLOOR PLANS

⟨

⟩



About
Floor Plans
Neighborhood
Contact

REGISTER

*Pursuant to the District of Columbia Inclusionary Zoning program, income restricted units are available at this development. Please contact the Department of Housing and Community Development at www.dhcd.dc.gov regarding the availability of such units and requirements for registration in the Inclusionary Zoning program.*



About
Floor Plans
Neighborhood
Contact

REGISTER

Developed by IFG Group, LLC

Sales and Marketing by GreenLine Real Estate - 202.525.5236 - 2216 14th St, NW Washington, DC 20009 - Equal Housing Opportunity

# EXHIBIT B



# A&A CONSULTANTS, INC.

**1800 Pine Hollow Road, Suite 4A**
**McKees Rocks, PA  15136**

Telephone: (412) 323-2200
Fax: (412) 323-2202

---

**Civil, Structural & Geotechnical Engineers**

To: Gregory Heelan, Program Manager,                                               June 7, 2021
     Illegal Construction Unit
     1100 4th St SW, Washington, D.C. 20024

Subject: 770 Princeton PL NW, Unit B, Washington, D.C. 20010

In accordance with your request, photographs and videos of the subject project were reviewed by the undersigned on June 3 and 7, 2021. The results of this review are as follows:

1. An excavation was made immediately adjacent to the existing townhouse. As the excavation progressed a soldier pile and lagging retaining wall was installed. The soldier piles were H-piles of undetermined length and the lagging consisted of wood planks. The soldier piles were installed in pre-drilled holes with concrete placed in the annular space around the H-piles..

2. A portion of the masonry (brick) foundation wall appears to have fallen out from beneath the townhouse as the excavation progressed.

3. Settlement of the floor was indicated by light beneath an entry door at the threshold.

4. Underpinning of the foundation wall was performed. A photo shows that the existing building is supported on a continuous wall footing bearing on soil. Subsequent photos show that the excavation extended below the underpinning. Also, subsequent photos show that the excavation extended below the bottoms of soldier piles used for a soldier pile and lagging retaining wall.

5. The depth of the excavation is estimated to be 25-feet based on the heights of the personnel shown in the photos. Water was seen in the excavation, but the source is unknown.

6. The soldier pile and lagging retaining wall had no walers, rakers or cross-bracing. The depth of the soldier piles to provide adequate lateral passive earth resistance could not be determined from the photographs. However, the photos did not indicate backfill in the space behind lagging between the walls of the excavation. The backfill closes the void and prevents the lateral movement of the soil into the void space. The lateral movement of the subsoil results in settlement of the structure. Also noted, the soil settled from beneath the sidewalk and the brick planter wall separated from the walk at the entryway.

7. Another photo shows soil flowing out from beneath the lagging. Other photos show cracks in the masonry bearing walls and settling of a support for the deck. Also, there are cracks around doorways and at lintels.

8. Photos show interior walls and ceiling with cracks and plastic sheeting above the interior stairs. The plastic sheeting may be indicative of water dripping from the ceiling.

9. Water dripping from the ceiling may be due to roof leakage. Any roof leakage occurring may be caused by a tear in the membrane roofing material due to settlement and/or outward movement of the building wall.

10. Some brick restoration work was performed. However, the photos indicated that the front wall of the residence was braced during the restoration. The reason for the bracing is unknown. Additionally, a new entry walk and stairs were provided.

In the opinion of the undersigned, settlement of the building may continue until the soil migrates to fill-in the voids created by the excavation and void space behind the lagging. Continued settlement will result in further structural damage to the building and compromise its structural integrity. Movement of the bearing walls may result in the joists slipping out of their pockets and the floors or roof collapsing. Also, further settlement may adversely affect underground utilities servicing the building.

The building should be closely monitored for further settlement/movement and the underground utilities should be verified for continuity.


_____
Al Ahmed, P.E., Ph.D.

_____
Jack T. Roseman, P.E.

# EXHIBIT C





































































































