## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**CHARLES MATIELLA**

           **Plaintiff,**

v.

**MURDOCK STREET LLC, *et al.*,**

           **Defendants.**


**MURDOCK STREET, LLC,**

           **Third-Party Plaintiff,**

v.

**EWORA, L.L.C., *et al.*,**

           **Third-Party Defendants.**

</td><td>

**Case No. 21-cv-2112 (TSC/GMH)**

</td></tr>
</table>

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is (1) the Motion for Sanctions filed by Plaintiff Charles Matiella ("Plaintiff") against Defendant Murdock Street, LLC ("Defendant" or "Murdock Street"), ECF No. 26; and (2) Plaintiff's Motion to Supplement the Record related to his motion for sanctions, ECF No. 58.  Both motions have been fully briefed and are ripe for resolution.  Upon consideration of the parties' briefs, the parties' argument at the January 30, 2023 hearing, and the entire record herein,[1] Plaintiff's motion to supplement the record will be granted, and Plaintiff's motion for sanctions will be granted in part and denied in part.

---

[1] The relevant docket entries for purposes of this Memorandum Opinion and Order are: (1) Plaintiff's Motion for Sanctions, ECF No. 26; (2) Murdock Street's Memorandum in Opposition thereto, ECF No. 27; (3) Plaintiff's Reply in support of his motion for sanctions, ECF No. 29; (4) Plaintiff's motion to supplement the record, ECF No. 58; (5) Murdock Street's response to the motion to supplement, ECF No. 59; and (6) Plaintiff's reply in support of his motion to supplement, ECF No. 62.

# I.    BACKGROUND

## A.    Procedural History

Plaintiff initiated this case in August 2021 when he filed his complaint against Murdock Street related to damage to his property that he alleges resulted from a construction project on property owned by Murdock Street.  ECF No. 1.  Plaintiff owns the property located at 770 Princeton Place NW, Apt. B, Washington DC 20010 ("Plaintiff's property").  ECF No. 50 at 2.  Murdock Street, a Limited Liability Company with one member, John Keskin, owns the property at 3619 Georgia Avenue NW, Washington DC, 20018 ("Murdock Street's property"), which is adjacent to Plaintiff's property.  *Id.* at 2–3.  In brief, Plaintiff alleges that between 2019 and 2021, a condominium building named The Exchange was constructed on Murdock Street's property.  *Id.* at 3–4.  Plaintiff contends that Murdock Street, "or personnel hired by [Murdock Street], under [its] direction," caused "substantial and serious damage" to Plaintiff's property.  *Id.*  Other defendants named in the First Amended Complaint include EWORA, L.L.C. ("EWORA") and IFG Group, LLC ("IFG"), which were the "general contractors" for the construction project, and City Concrete Corporation, ("CCC"), the subcontractor who "provide[d] labor and material" used to construct The Exchange.  *Id.* at 2, 9, 11.

In February 2022, Murdock Street filed a Third-Party Complaint against EWORA and IFG.  ECF No. 15 at 1–2.  The Third-Party Complaint was served in April 2022.  ECF Nos. 23 & 24.  In September 2022, EWORA and IFG filed a motion for leave to file a Fourth-Party Complaint against CCC.  ECF No. 36; ECF No. 36-3 at 3.  In January 2023, after the undersigned was referred this matter for full case management, Plaintiff sought leave to file an amended complaint which added CCC as a defendant and brought claims directly against EWORA and IFG.  ECF No. 48.  In January 2023, the undersigned granted Plaintiff leave to file the amended complaint and directed

the parties to propose an amended schedule for the completion of discovery and dispositive motions given the addition of the new claims and parties. ECF No. 54 at 4. In March 2023, the undersigned held a scheduling conference and set a schedule for the parties to conduct discovery and brief dispositive motions. *See* ECF No. 71.

## B.    Plaintiff's and Murdock Street's Discovery Dispute

Meanwhile, a discovery dispute between Plaintiff and Murdock Street percolated to the surface in early 2022. That dispute is the subject of Plaintiff's motion for sanctions which this Memorandum Opinion resolves. Briefly, the parties' dispute arises from Plaintiff's contention that Murdock Street should be sanctioned for failing to comply with a January 7, 2022 order directing it to serve verified answers to Plaintiff's interrogatories and amended responses to his document requests, along "with a substantial document production," by January 18, 2022. Minute Order (Jan. 7, 2022); *see also* ECF No. 26 at 29. Plaintiff also alleges that Murdock Street violated a March 4, 2022 minute entry when it failed to supplement its January production of documents with new material responsive to his discovery requests by March 11, 2022. Minute Entry (March 4, 2022); *see also* ECF No. 26 at 29. Finally, Plaintiff seeks sanctions for Murdock Street's alleged spoliation of evidence. *See* ECF No. 26 at 20–27. Plaintiff's spoliation argument is based primarily on representations made by Murdock Street's owner in a deposition in April 2022 concerning his alleged failure to preserve material that Plaintiff claims would have been responsive to his discovery requests. *See id.* at 11–14. To put Plaintiff's motion for sanctions in context, these key events are outlined in more detail below.

1.    Murdock Street's Response to the Court's Minute Entries and Orders in January and March 2022

Plaintiff served its discovery requests on Murdock Street in October 2021, which included interrogatories, requests for admissions, and requests for production of documents. ECF No. 26-1

at 2–35.  According to Plaintiff, in November 2021, Murdock Street provided its responses to Plaintiff's discovery requests but produced no documents and did not verify under oath its answers to Plaintiff's interrogatories.  ECF No. 26 at 8; ECF No. 26-1 at 37–101.

Following a failed meet and confer to address Murdock Street's responses, the parties notified Judge Chutkan's chambers of their dispute on December 2, 2021.  ECF No. 9.[2]   In their joint report, Murdock Street conceded that it had not signed its responses to Plaintiff's interrogatories nor produced any documents in response to his document requests, but represented that it intended to do so by December 22, 2021, as requested by Plaintiff.  *Id.* at 2–3.  For his part, Plaintiff requested an order compelling Murdock Street to, in relevant part, provide a "full document production" and verified answers to Plaintiff's interrogatories by December 22, 2021, and an award of attorney's fees in the amount of $2,000.  *Id.* at 1–2.  In two minute orders issued on the same day, Judge Chutkan ordered the parties to update the Court by December 28, 2021 concerning whether Murdock Street's supplemental responses and production on December 22 resolved their dispute and set a status conference for January 4, 2022 in the event the dispute was not resolved by then.  Minute Orders (Dec. 21, 2021).

In a December 28, 2021 joint status report Plaintiff represented that Murdock Street had served neither verified answers to his interrogatories nor any additional documents on December 22, 2021, or any time thereafter.  ECF No. 11 at 1–2.  Plaintiff again requested an order compelling Murdock Street to serve a "full document production" and verified answers to his interrogatories, and an award of attorney's fees, this time in the amount of $4,000.  *Id.* at 2.  Murdock Street acknowledged in the joint report that it had not provided Plaintiff with any additional discovery on December 22, 2021, or thereafter, citing the impact of the holiday season, COVID-related work

---

[2] The December 2, 2021 report was filed on the docket on December 22, 2021.  ECF 9.

issues, and Plaintiff's failure to join necessary third parties to the case. *Id.* at 3. Murdock Street requested that it be permitted three additional weeks—until January 18, 2022—to provide those responses. *Id.* In response, Judge Chutkan vacated the January 4, 2022 status conference and ordered the parties to file a joint status report on or before January 21, 2022 to update the Court as to whether Murdock Street's pledged January 18 response to Plaintiff's discovery requests had resolved their dispute. Minute Order (Jan. 3, 2022).

Four days later, on January 7, 2022, Plaintiff and Murdock Street filed a joint request that the Court issue a consent order, the entry of which would "abate potentially unnecessary motion practice and . . . conserve judicial and party resources." ECF No. 13 at 1. Specifically, the parties requested that Murdock Street be ordered to serve, by no later than January 18, 2022, verified answers to Plaintiff's interrogatories and amended responses to his document requests along "with a substantial document production." *Id.* Using the parties' proposed language verbatim, Judge Chutkan issued the consent order on January 7, 2022. Minute Order (Jan. 7, 2022) (the "January 7 Order").

In the discovery motion before the Court, Plaintiff seeks sanctions, in part, for Murdock Street's compliance—or lack thereof—with the January 7 Order. According to a status report filed by Plaintiff on January 24, 2022, Murdock Street did not serve verified answers to Plaintiff's interrogatories by January 18, 2022, as required by the January 7 Order, nor did it request an extension of time from the Court to do so. ECF No. 14 at 1. Further, although Murdock Street served Plaintiff with amended responses and a production of documents responsive to Plaintiff's document requests by January 18, 2022 (the "January 2022 document production"), Plaintiff stated in the status report that he was "not satisfied" with Murdock Street's document production. *Id.*; *see*

*also* Transcript of March 4, 2022 hearing before Judge Chutkan at 7–8 (Draft Transcript in Chambers); ECF No. 26-1 at 383–84.

In response, the Court set a hearing for March 4, 2022 to address the discovery dispute. Minute Order (Feb. 20, 2022). At that hearing, Defendant's counsel conceded that Murdock Street had not served verified responses to Plaintiff's interrogatories until the day prior to the hearing in violation of the Court-ordered January 18 deadline. Transcript of March 4, 2022 hearing before Judge Chutkan at 6–8 (Draft Transcript in Chambers). Defendant's counsel attributed that delay to Murdock Street's sole owner being out of the country but offered no excuse as to why an extension of the Court-ordered deadline for production of the verified responses was not sought on that basis. *Id.* As for the sufficiency of Murdock Street's January 2022 document production, Defendant's counsel represented that Murdock Street had produced "around 140 pages" of documents to Plaintiff on January 18, 2022 as ordered by the Court, and that the production included "[a]ll the documents . . . that [Murdock Street] had in its possession." *Id*.

Judge Chutkan made no determination at the hearing whether Murdock Street's January document product was "substantial" as the January 7 Order directed. Judge Chutkan did note that the number of documents produced by Murdock Street "does seem rather paltry," but stated that it "can't order them to produce what isn't there." *Id.* at 13, 17. The Court also learned at the hearing that Murdock Street's January 2022 document production was not organized in a fashion that Plaintiff could determine which documents were responsive to which interrogatory as required Federal Rule of Civil Procedure 34(b)(2)(E)(i). *Id.* at 12, 14–15; *see also* Fed. R. Civ. Proc. 34(b)(2)(E)(i) ("A party must . . . organize and label [documents] to correspond to the categories in the [document] request."). Accordingly, at the hearing, Judge Chutkin ordered Murdock Street to reproduce its documents by March 11, 2022 at 5:00 p.m. organized consistent with Rule

34(b)(2)(E)(i). Transcript of March 4, 2022 hearing before Judge Chutkan at 14–15, 17–18 (Draft

Transcript in Chambers). A minute entry entered on the docket on March 4, 2022 (the "March 4

Minute Entry") and an order issued on March 7, 2022 (the "March 7 Minute Order") memorializes

the Court's ruling at the hearing. The March 4 Minute Entry provides:

> Minute Entry: Status Conference held on 3/4/2022 before Judge Tanya S. Chutkan:
> Defendant must produce documents by 5:00 p.m. on 3/11/2022 or the possibility of
> sanctions imposed.

Minute Entry (Mar. 4, 2022). The March 7 Order states:

> MINUTE ORDER: The court held a discovery conference in this matter on March
> 4, 2022. At that conference, it came to the court's attention that the documents that
> Defendant had produced to Plaintiff were not organized as required by Federal Rule
> of Civil Procedure 34(b)(2)(E)(i). It was thereby ORDERED that Defendant repro-
> duce its documents in an organized manner, with Bates Stamps no later than 5:00
> PM on Friday, March 11, 2022.

Minute Order (Mar. 7, 2022). Plaintiff does not dispute that Murdock Street re-produced its doc-

uments organized consistent with Rule 34(b)(2)(E)(i) on or before March 11, 2022. ECF No. 26

at 10; Transcript of January 30, 2023 hearing before Judge Harvey at 29 (Draft Transcript in Cham-

bers).

2.    Plaintiff's Deposition of Murdock Street's Owner, John Keskin

One month later, in April 2022, Plaintiff took the deposition of Defendant's principal and

sole owner, John Keskin. ECF No. 26-1 at 250–431. Four aspects of Keskin's testimony are rel-

evant to Plaintiff's motion for sanctions: (1) Keskin's notice of Plaintiff's claim that his property

was damaged during construction at the Murdock Street property; (2) Keskin's communications

regarding Plaintiff's claim; (3) Keskin's search for records responsive to Plaintiff's discovery re-

quests; and (4) Keskin's retention and alleged destruction of Murdock Street records.

Regarding Keskin's knowledge of Plaintiff's claims that his property was damaged during

construction at the Murdock Street property, Keskin testified that he "think[s]" he was first made

7

aware by Fatih Guner, the owner of the general contractors for the development (i.e., EWORA and IFG), that Plaintiff was complaining that "construction may cause some issues, some damage to his property" during excavation at the site, which he "think[s] . . . could be 2017 or [20]18." ECF No. 26-1 at 323; *see also id.* at 302–03.   Keskin testified that he thought Plaintiff's claims were resolved when the D.C. Department of Consumer and Regulatory Affairs ("DCRA") lifted the stop work orders that it had issued (apparently based on Plaintiff's complaint) and construction was permitted to continue at the Murdock Street property. *Id.* at 310–12, 318–20, 333–35. According to Defendant, Murdock Street has never been a party to a lawsuit prior to this case. ECF No. 27 at 4.  For his part, Keskin has limited litigation experience,[3] and testified that he does not know what a litigation hold notice is.  ECF No. 26-1 at 256, 350.

As for Keskin's communications regarding Plaintiff's claims that his property had been damaged, Keskin recalled during his deposition that there was "no other person that [he] was in touch with" other than Guner related to Plaintiff's claims and that he only spoke to Guner over the phone about Plaintiff, not in writing.  *Id.* at 302, 306–08, 366, 379, 393–94.    He further stated that the "only communication[s]" he had in his emails related to The Exchange construction site were with Guner, and that he did not exchange emails with DCRA.  *Id.* at 302, 306, 370, 379, 393–94.  Nor did he interact with any other contractors or third parties related to Plaintiff's claims.  *Id.* at 370.  With regard to Main Street Bank, which financed the construction at Murdock Street's property, Keskin testified that he worked with Main Street Bank to procure the construction loan, and that he had occasional contact with the bank regarding payments, but never regarding Plaintiff.

---

[3] Keskin testified that he has given one prior deposition in a traffic accident case where he was the defendant.  ECF No. 26-1 at 256.  Plaintiff asserts that Keskin was also "recently" deposed in another case in Virginia where he is a defendant.  ECF No. 29 at 2.  It is not clear from the record what that case concerns or whether Keskin's deposition in that matter preceded his deposition or his search for documents in response to Plaintiff's discovery requests in this case.  *Id.*

*Id.* at 259, 311–15, 370.  As to insurance information relevant to the construction, Keskin testified

that he did not "recall receiving insurance forms," and that he initially was under the impression

from the insurance company that there was no applicable insurance policy, but that he had learned

the day prior to his deposition in April 2022 that Murdock Street "may" have an insurance policy.

*Id.* at 342–43, 353–59.

Regarding Murdock Street's search for records responsive to Plaintiff's discovery requests,

Keskin testified that he is the sole owner and employee of Murdock Street, LLC, which has one

physical location, a single rented office in shared office space.  *Id.* at 259, 262–64, 380–81.  Keskin

testified that Murdock Street is a "paperless business" where most everything is done via email.

*Id.* at 282.  In response to Plaintiff's discovery requests, Keskin testified that in early 2022 he

searched his email for "anything related to . . . Plaintiff" and "couldn't find anything." *Id.* at 292–

93.  He searched his email using two methods: he electronically searched for "Matiella" and

Princeton Place—the street on which Plaintiff's property is located—using the search tool function

on his email; and he "visually checked" every email he exchanged with Guner to see if any com-

munication was related to Plaintiff or his property.  *Id.* at 292–93, 302, 367–70, 378.  Keskin

averred that he identified no emails related to Plaintiff or Plaintiff's property using either search

method.  *Id.* at 292, 367–70, 378.  Keskin also read through all of his phone text messages to and

from Guner and found nothing related to Plaintiff's claims.  *Id.* at 370–71.

Finally, regarding document retention and destruction of records generally, Keskin testified

that Murdock Street does not have a document retention policy, but that he retains all "business-

related documents" and only deletes "meaningless emails," like an email that merely says "thank

you." *Id.* at 296–97, 350–52.  He stated that he deletes some emails "[t]o make the search, in the

future, easier" but only if the emails "have no importance." *Id.* at 296.  Similarly, he deletes text

messages and WhatsApp messages if he "need[s] space" on his phone. *Id.* at 295–96. Relatedly, Keskin testified that he suffered a "computer crash back in, I think, 2018" that resulted in the loss of "thousands, if not millions" of emails. *Id.* at 297. In an attempt to recover those lost emails, he used "software . . . tools" to successfully recover some emails from 2017 and 2018 but he testified that, at the time of his deposition, he has very few emails from before then. *Id.* at 298.

   3.   Murdock Street's Supplemental Productions Following Keskin's Deposition

Following Keskin's deposition, Murdock Street made a supplemental production of documents to Plaintiff in May 2022, which consisted of a 2017-2018 insurance policy for Murdock Street and an April 2022 letter from an insurer denying coverage for Plaintiff's claims under a 2019-2020 policy issued in the name of IFG. *See* ECF No. 26-1 at 433–555.

In February 2023, Murdock Street made another production of documents to Plaintiff that Murdock Street represented were documents recovered in the fall of 2022 after a forensic computer consultant processed a laptop and cell phone belonging to Keskin. ECF No. 58 at 4; Transcript of January 30, 2023 hearing before Judge Harvey at 32–33, 36–37 (Draft Transcript in Chambers). According to Plaintiff, that supplemental production contained 12,071 pages, and included documents that Plaintiff contends were responsive to his document requests including a thread of emails on which Keskin was copied with a subject line containing Plaintiff's name and address, as well as correspondence regarding DCRA stop work orders relating to Plaintiff and his property. *Id.*

   4.   Plaintiff's Motion for Sanctions

Sandwiched between those two supplemental productions, Plaintiff filed his motion for sanctions against Murdock Street in May 2022. ECF No. 26. In it, Plaintiff argues that he is entitled to sanctions: (1) pursuant Federal Rule of Civil Procedure 37(e)(1) and the Court's inherent authority for Murdock Street's alleged spoliation of evidence; and (2) pursuant to Rule 37(b)

10

for Murdock Street's alleged violation of this Court's January 7 Order and March 4 Minute Entry. *See generally* ECF No. 26.  Regarding spoliation, Plaintiff argues that, after Murdock Street was on notice of Plaintiff's claims it unreasonably and intentionally failed to preserve evidence when its "strategy was essentially to delete any[] [email or text] Defendant subjectively felt was unimportant." *Id.* at 21–28.  Regarding the alleged violation of this Court's orders, Plaintiff argues that Murdock Street violated the January 7 Order because it failed to provide verified answers to Plaintiff's interrogatories by January 18, 2022, and, "although Defendant served some documents [by that date] it was hardly a complete 'substantial document production,'" which Plaintiff interprets this Court's January 7 Order as requiring. *Id.* at 29.  Plaintiff's position with respect to the March 4 Minute Entry is somewhat less clear.  He appears to interpret that minute entry as an order of the Court requiring Murdock Street to produce all "material responsive documents" by March 11, 2022. *Id.*  Plaintiff says that did not occur as is evidenced by Murdock Street's subsequent production of documents in May 2022. *Id.*

As potential sanctions for those violations, Plaintiff seeks reimbursement of his attorney's fees related to meeting and conferring, attending court hearings, drafting status reports, and bringing the motion for sanctions related to the parties' discovery dispute. *Id.* at 23, 25, 32–33.  Plaintiff also seeks more severe penalties, including court orders: striking certain of Murdock Street's affirmative defenses; prohibiting it from entering into evidence any spoliated evidence; or entering default on Plaintiff's claim for negligence and/or for trespass. *Id.* at 32.

In its opposition to the motion for sanctions, Murdock Street argues that it was not on notice of a duty to preserve evidence with respect to Plaintiff's claims, and even if it was, Plaintiff has not established that anything relevant to his claims ever existed in Murdock Street's possession, much less that it was intentionally destroyed.  ECF No. 27 at 7–14.  Nor, says Murdock Street, has

Plaintiff shown that any such spoliated evidence cannot be recovered from third parties or through additional discovery. *Id.* As related to its alleged violation of this Court's orders, Murdock Street asserts that any violation it may have committed does not warrant sanctions.

Argument was heard on Plaintiff's motion for sanctions on January 30, 2023. The motion is now ripe for resolution.

Following the hearing on the motion for sanctions, Plaintiff's filed a motion to supplement the record. ECF No. 58. In it, Plaintiff sets forth additional facts related to the content of Murdock Street's production of documents in February 2023 for the Court's consideration when adjudicating the sanctions motion. ECF No. 58 at 4; ECF No. 62 at 2–4. Murdock Street opposes that motion for multiple reasons, including that Plaintiff failed to meaningfully meet and confer with counsel for Murdock Street before its filing in violation of Local Rule 7(m). ECF No. 59. Despite this deficiency, the undersigned has considered Plaintiff's additional factual proffer in rendering its decision on the motion for sanctions. Because it does not move the needle in Plaintiff's favor with respect to his sanctions motion, the undersigned grants Plaintiff's motion to supplement the record.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 37 empowers the Court to sanction parties and counsel who fail to comply with its orders or the rules of discovery. *See* Fed. R. Civ. P. 37.[4]   Under Rule

---

[4] To address Murdock Street's alleged spoliation of evidence, Plaintiff requests sanctions under Rule 37(e) *and* the Court's inherent authority. ECF No. 26 at 21, 25, 28. "[Although] a court may use its inherent power to impose sanctions, it should instead rely on the Federal Rules of Civil Procedure if feasible." *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 44 (D.D.C. 2019) (alteration in original) (quoting *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 369 (E.D.N.Y. 2013) (declining to review whether sanctions were appropriate pursuant to the court's inherent authority where it found that the federal rules were "up to the task" (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991))). In particular, courts in this Circuit have declined to analyze sanctions for spoliation of ESI under the court's inherent authority because Rule 37(e) is sufficient to address such an issue. *See Bethel v. Rodriguez*, No. 20-cv-1940, 2022 WL 2157065, at *2 n.4 (D.D.C. June 15, 2022) (declining to analyze sanctions under inherent authority because Rule 37(e) specifically addresses sanctions for spoliation of ESI); *Borum*, 332 F.R.D. at 44 ("Here, the loss of electronic evidence stored on e-mails falls squarely within the scope of Rule 37(e)[.]"); *see also* Fed. R. Civ. P.

37, the district court has "broad discretion to respond, or not to respond, to alleged abuses of the discovery process." *Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 14 (D.C. Cir. 2015) (quoting *Exum v. Gen. Elec. Co*., 819 F.2d 1158, 1164 (D.C. Cir. 1987)).

### A.  Sanctions under Rule 37(e)

Rule 37(e) of the Federal Rules of Civil Procedure governs a court's inquiry in deciding whether to impose sanctions for the failure to preserve electronically stored information or "ESI." Under Rule 37(e)(1), when "[ESI] that should have been preserved in the anticipation of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," a court may "order measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).  Upon a finding "that the party acted with the intent to deprive another party of the information's use in the litigation," a court is empowered under Rule 37(e)(2) to impose more serious sanctions, including "presum[ing] that the information was unfavorable to the party; . . . instruct[ing] the jury that it may or must presume the information was unfavorable to the party; or . . . dismiss[ing] the action or enter[ing] a default judgment."  Fed. R. Civ. P. 37(e)(2).

### B.  Sanctions under Rule 37(b)

Federal Rule of Civil Procedure 37(b) governs the sanctions available when a party fails to comply with a court order.  *See* Fed. R. Civ. P. 37(b).  Under that Rule, "[i]f a party . . . fails to

---

37(e) advisory committee's note to 2015 amendment ("[The amended rule] authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures. It therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used.").  As in *Borum*, this matter concerns the alleged loss of electronic evidence stored on email, as well as text messages, and therefore "falls squarely within the scope of Rule 37(e)."  *Borum*, 332 F.R.D. at 44 (citing Fed. R. Civ. P. 37(e)).  Moreover, Plaintiff does not appear to assert spoliation of any non-ESI documents.  Accordingly, the undersigned finds that it is appropriate to evaluate Plaintiff's motion pursuant to the Federal Rules only and without reference to its inherent authority to impose sanctions.  *See Bethel*, 2022 WL 2157065, at *2 n.4; *Borum*, 332 F.R.D. at 44.

obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). The Rule lists several sanctions a court may issue for such violations, including: (1) striking pleadings; (2) treating certain matters as conceded; (3) staying proceedings until the offending party complies with the court's order; (4) dismissing the party's claims in whole or in part; and (5) entering a de-fault judgment against the offending party. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi). Rule 37(b)(2)(C) also provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

### III.   DISCUSSION

#### A.   Sanctions under Rule 37(e)

Under Rule 37(e), "'[t]o show that evidence was destroyed,' the movant 'must first show that the evidence existed.'" *Bethel*, 2022 WL 2157065, at *3 (quoting *Mannina v. District of Columbia*, 437 F. Supp. 3d 1, 8 (D.D.C. 2020)); *see Mahaffey v. Marriott Int'l, Inc.*, 898 F. Supp. 2d 54, 60–61 (D.D.C. 2012) (declining to impose sanctions for destruction of documents where the movant argued that documents *should* have existed but did not identify evidence that the documents actually existed); *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008).

A court must then determine if the alleged spoliation occurred after a duty to preserve was triggered.  A party has a duty to preserve potentially relevant evidence only in "anticipation . . . of litigation," Fed. R. Civ. P. 37(e), a duty that exists only when "litigation is reasonably foreseeable," *Gerlich v. U.S. Dep't of Just.*, 711 F.3d 161, 170 (D.C. Cir. 2013); *see also Borum*, 332 F.R.D. at 45 (same); *Hedgeye Risk Mgmt., LLC v. Heldman*, 412 F. Supp. 3d 15, 32 (D.D.C. 2019) (declining

to sanction party's destruction of USB drives because "[a]t that time, no litigation was pending, none had been threatened, and there is no evidence that litigation was anticipated").  The party moving for sanctions has "the burden to establish that [the opposing party] lost or destroyed" the allegedly spoliated evidence "once a duty to preserve it attached."  *Ball v. George Washington Univ.*, 798 F. App'x 654–55 (D.C. Cir. 2020) (quoting *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1478 (D.C. Cir. 1995)).  Because some litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation, a court should be sensitive to the non-moving party's "sophistication with regard to litigation and evaluating preservation obligations."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Finally, the movant must show that the spoliated evidence "cannot be restored or replaced through additional discovery," including from other custodians or third parties.  *Ball v. George Washington Univ.*, 2018 WL 4637008, at *1 (D.D.C. Sept. 27, 2018) (quoting Fed. R. Civ. P. 37(e)); *see Borum*, 332 F.R.D. at 46.  Because ESI often exists in multiple locations, loss from one source may be deemed harmless under Rule 37(e) when substitute information can be found elsewhere.  *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Applying those standards here, Plaintiff's motion under Rule 37(e) fails for three independent reasons.  Plaintiff did not establish:  (1) when, if ever, a duty to preserve arose for Murdock Street; (2) whether Murdock Street destroyed evidence with the requisite level of culpability under Rule 37(e)(1) or Rule 37(e)(2); or (3) whether any allegedly spoliated evidence existed in the first place that is now irremediably lost and cannot be retrieved through other discovery.

1.      Duty to Preserve Evidence

On the present record, it is not at all clear when Murdock Street was under a duty to pre-serve evidence or, relatedly, whether any alleged destruction of ESI occurred after that date.  Plain-tiff makes little effort to develop a coherent timeline of either critical event.  Even assuming that Keskin's first notification during construction at the Murdock Street property of complaints that Plaintiff's property may have been damaged would suffice to trigger a duty to preserve infor-mation—a conclusion the undersigned need not and does not reach—Keskin's testimony in that regard is ambiguous.  He stated during his deposition that he "think[s]" he was so notified "during the excavation.  I mean, it could be 2017 or [20]18.  I don't remember."  ECF 26-1 at 323.  More-over, Keskin testified that he thought Plaintiff's complaints were resolved after DCRA lifted stop work orders and allowed the construction to resume.  ECF No. 26-1 at 306, 310–12, 318–20, 324, 333–35.  Plaintiff makes no effort to demonstrate when that occurred or assess how it impacts any duty to preserve ESI by Murdock Street that otherwise may have arisen.  ECF No. 26 at 21.  On that mush of a record, Plaintiff has not established when, if ever, Murdock Street reasonably should have anticipated litigation in this matter.  This is especially the case because Keskin appears to be the kind of litigant who is "less familiar with preservation obligations than others who have con-siderable experience in litigation," and for whom, according to the advisory committee notes, a more stringent application of the Rule should be avoided.  Fed. R. Civ. P. 37(e) advisory commit-tee's note to 2015 amendment.

The other side of the coin is equally unclear.  That is, Plaintiff also has not established when any alleged destruction or loss of ESI occurred and whether that was before or after any duty to preserve arose.  *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("[Rule 37(e)] does not apply when information is lost before a duty to preserve arises.").  With respect to

the computer crash, the best Keskin could muster at his deposition is that it occurred sometime "back in, I think, 2018"—which may have been before or after when any duty to preserve arose. ECF No. 26-1 at 297. When, if ever, Keskin deleted ESI relevant to Plaintiff's claims pursuant to his practice of deleting "meaningless emails" is anybody's guess. *Id.* at 351–52. Given these facts, the Court is left to speculate that documents may have been lost (or not) after the duty to preserve was triggered (or not). "The 'burden of proof' is on [Plaintiff] . . . and he has not met it" here. *Bethel*, 2022 WL 2157065, at *4.

2.      Culpable Destruction or Loss of Relevant Evidence

Even assuming Plaintiff had established the point at which Murdock Street's duty to preserve information arose and that relevant information was thereafter destroyed or lost, Plaintiff has not established that Defendant did so with the culpable state of mind that Rule 37(e) requires. The most serious sanctions permitted by the Rule—including an adverse evidentiary instruction or entry of a default judgment—are triggered under subsection (e)(2) only if the movant can establish that the non-moving "party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). There is no evidence to suggest that occurred here. As Plaintiff conceded at the January 2023 hearing, nothing in the record indicates that Keskin's computer crash was anything other than a mishap or gives reason to doubt Keskin's sworn testimony about the matter. Transcript of January 30, 2023 hearing before Judge Harvey at 23 (Draft Transcript in Chambers); *see also Feist v. Paxfire, Inc.*, No. 11-cv-5436, 2016 WL 4540830, at *4 (S.D.N.Y. Aug. 29, 2016) (distinguishing a computer crash "unrelated to the litigation" from the intentional choice to clear browsing history). As the advisory committee notes to Rule 37(e) state, the Rule is not meant to apply to the destruction of information "outside the party's control" such as when a "computer room . . . flood[s], a 'cloud' service . . . fail[s], a malign software attack . . .

disrupt[s] a storage system, and so on."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  While a court may, in such situations, "assess the extent to which a party knew of and protected against such risks," *id.*, the record on that score has not been developed here.  The Court knows only that a computer crash occurred, not what efforts were taken to avoid it or to preserve any information before it occurred.

Even were the undersigned to consider —as some courts have when addressing potential sanctions for spoliation—whether the non-moving party has made reasonable efforts to recover data that was unintentionally lost, there would still be an insufficient basis for sanctions here.  *See Beck v. Test Masters Educ. Servs., Inc.*, 289 F.R.D. 374, 378 (D.D.C. 2013) (finding that party "disregard[ed]" its "preservation obligations" by failing to make "any serious effort to recover the data" after a computer crash wiped out emails the party had a duty to preserve); *see also Robinson v. Renown Reg'l Med. Ctr.*, No. 16-cv-00372, 2017 WL 2294085, at *3 (D. Nev. May 24, 2017) (finding that data potentially lost in a computer crash was not recoverable, and therefore no sanctions were warranted under Rule 37(e)).  Keskin testified that he attempted to recover his lost emails with "software . . . tools" and had some success, recovering emails from 2017 and 2018. ECF No. 26-1 at 297–98.  Moreover, in the fall of 2022, Murdock Street had a computer consultant perform a "forensic analysis" of Keskin's computer and cell phone which resulted in the recovery of emails and other records, over 12,000 pages of which were produced to Plaintiff.  ECF No. 58 at 4; ECF No. 59 at 2; Transcript of January 30, 2023 hearing before Judge Harvey at 32–33, 36–37 (Draft Transcript in Chambers).  On this record, the undersigned can hardly find that no "serious effort to recover the [lost] data" has been made.  *See Beck*, 289 F.R.D. at 378.

Nor is there a basis for sanctions under Rule 37(e)(2) based on Keskin's practice of periodically deleting emails he deemed "meaningless" or "unimportant"—such as an email that simply

says "thank you"—or of deleting text messages if he "need[ed] space" on his phone.  ECF No. 26-1 at 295-296, 350–52.  Where, as here, a party intentionally deleted ESI for personal reasons, and the movant puts forward no evidence of the party's intent to deprive the non-movant of documents, although it may constitute "significantly inadequate record-keeping practices," it "does not satisfy the stringent standard of Rule 37(e)(2)."  *Borum*, 332 F.R.D. at 49.  Nor does that practice—at least as it was described under oath by Keskin—run afoul of Rule 37(e)(1)'s less demanding culpability standard.  Under that subsection, a court may "order measures no greater than necessary to cure the prejudice" when the movant establishes that "[ESI] that should have been preserved in the anticipation of litigation is lost because a party failed to take reasonable steps to preserve it."  Fed. R. Civ. P. 37(e)(1).  Assuming the truthfulness of Keskin's testimony (as Plaintiff has provided the Court with no compelling reason to doubt it), deleting "unimportant" or "meaningless" ESI was not unreasonable, or at least not so unreasonable as to justify sanctions under the Rule.  Stated differently, Keskin testified that he deleted unimportant ESI, not ESI relevant to Plaintiff's claims or responsive to his discovery requests.  Plaintiff suggests that testimony should not be believed and that a more nefarious motivation should be implied, but he has not provided a sufficient evidentiary basis for the Court to do so.  *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 507 (S.D.N.Y. 2022) ("Sanctions are not warranted merely because information is lost; the evidence must be shown to have been 'relevant.'" (quoting *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 438 (S.D.N.Y. 2010))); *see also* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("This rule recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection.").

>    3.      Existence of Spoliated Evidence that is Irremediably Lost

Finally, Plaintiff has not established beyond speculation that any alleged spoliated evidence existed that has been irremediably lost. Plaintiff's primary argument appears to be that in a construction project of size of The Exchange, there must be more documentation than what Murdock Street produced in response to Plaintiff's document requests, and therefore the Court should disbelieve Keskin's testimony and infer he spoliated evidence. *See* ECF No. 26 at 14, 21; ECF No. 29 at 3–4, 7–8. On the record of this case, the Court sees no fair basis to do that. Absent evidence that specific responsive records have been spoliated, such an argument boils down to an assertion that more records responsive to Plaintiff's discovery requests *should* exist, which is generally insufficient to entitle a party to sanctions for spoliation of evidence. *See Mannina*, 437 F. Supp. 3d at 8 (finding no spoliation of evidence where the movant asked the court to infer the existence of records from deposition testimony that such records should exist); *Mahaffey*, 898 F. Supp. 2d at 61 (finding no spoliation of evidence where the movant claimed that certain documents should have been created per party's procedures and testimony, but put forth no evidence that documents actually existed); *Rude v. The Dancing Crab at Washington Harbour, LP*, 245 F.R.D. 18, 23 (D.D.C. 2007) (finding no spoliation of evidence where the movant put forth no evidence that security cameras were in use on the relevant date or that security tapes existed). Indeed, "[c]ourts supervising discovery are often confronted by the claim that the production made is so paltry that there must be more that has not been produced or that was destroyed." *Hubbard*, 247 F.R.D. at 29. Such "[s]peculation that there is more will not suffice[.]" *Id*.

Seeking to alter that outcome, Plaintiff asserts in his motion to supplement the record that among the 12,071 pages of documents Murdock Street produced in February 2023 that were recovered from Keskin's laptop and phone by a forensic consultant, there were approximately eight

pages of emails on which Keskin was copied that contained Plaintiff's name in the subject line and

some "correspondence regarding" the stop work orders issued by DCRA.  ECF No. 58 at 4.  Plain-

tiff does not include the dates, contents, or identities of the senders or recipients of this correspond-

ence, but nonetheless argues that it demonstrates that "Defendant Murdock Street possessed dis-

coverable and responsible materials at all relevant times."  *See id.*  Given that these communica-

tions were—according to Murdock Street's counsel—"resurrected" by a forensic computer con-

sultant following Keskin's computer crash, the undersigned finds them an insufficient basis to take

the leap Plaintiff desires.[5]  *See* Transcript of January 30, 2023 hearing before Judge Harvey at 33,

54–55 (Draft Transcript in Chambers).  Stated another way, their recovery, without more, does not

undermine Keskin's testimony that at the time he conducted his more rudimentary search, he found

no responsive communications.  *See Bethel*, 2022 WL 2157065, at *4 ("Given these facts, the

Court has no basis to speculate that the [documents were] lost [when the duty to preserve was

triggered].  The 'burden of proof' is on [Plaintiff] . . . and he has not met it.").

  In any event, Plaintiff has now received those records in discovery, which provides an

independent basis to deny his motion for sanctions under Rule 37(e).  Again, for sanctions to be

imposed under that Rule, the movant must establish that the destroyed or lost ESI "cannot be re-

stored or replaced through additional discovery."  Fed. R. Civ. P. 37(e)(1).  Here, not only have

the records identified in Plaintiff's motion to supplement the record been recovered and produced,

but the rest of the alleged spoliated evidence that Plaintiff still seeks, if it ever existed, are records

or communications (i.e., emails and texts) that may be recovered from other parties in discovery.

---

[5] Moreover, at the January hearing, counsel for Murdock Street explained that this supplemental production did not consist of 12,071 pages of documents relevant to Plaintiff's claims or even responsive to his discovery requests.  *See* Transcript of January 30, 2023 hearing before Judge Harvey at 33–34 (Draft Transcript in Chambers).  Instead, Murdock Street's counsel asserts these documents represent an overproduction by Murdock Street of all "resurrected" records having any relation to the construction at issue in an effort to address Plaintiff's claim that Keskin destroyed a large swath of relevant material.  *Id.*

Keskin testified at his deposition that his only point of contact related to this construction site was Guner, the general contractor and owner of EWORA and IFG, both parties in this case.  ECF No. 26-1 at 306, 366, 369.  Plaintiff may seek any communications between Keskin and Guner about Plaintiff's property from EWORA and IFG.  Similarly, the bank records Plaintiff seeks may be subpoenaed from the bank.[6]  Accordingly, Plaintiff has fallen short of establishing that any records that may have existed, and at some point were in Murdock Street's possession, are irretrievable through discovery from another party or a third party.

### B.    Sanctions under Rule 37(b)

Only where a party "fails to obey an order to provide or permit discovery" may a court issue sanctions under Rule 37(b)(2)(A) or award reasonable attorney's fees under Rule 37(b)(2)(C).  *See* Fed. R. Civ. P. 37(b)(2).  Rule 37(b)(2)(A) "requires the moving party to demonstrate . . . (1) [that] there is a discovery order in place, and (2) that the discovery order was violated." *Coltrane v. Wilkins*, 340 F.R.D. 476, 480 (D.D.C. 2022) (alterations in original) (quoting *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 292 F.R.D. 53, 56 (D.D.C. 2013)).  Plaintiff contends that Murdock Street ran afoul of Rule 37(b)(2)(A) when it failed to comply with: (1) the January 7 Order directing that it provide a "substantial document production" and verified interrogatories answers by January 18, 2022; and (2) the March 4 Minute Entry directing the it to "produce documents by 5:00 p.m. on 3/11/2022 or the possibility of sanctions imposed."  ECF No. 26 at 29.  Each contention will be addressed in turn.

---

[6] At the January 2023 hearing, Plaintiff represented that he had received documents from Main Street Bank in September 2022, including corporate organization documents, documents related to the construction at the Murdock Street property, and communications.  Transcript of January 30, 2023 hearing before Judge Harvey at 4, 18–22 (Draft Transcript in Chambers).  Again, this production of documents would tend to show that bank records have not been irremediably lost.

1.    January 7 Order

The text of the January 7 Order reflected, verbatim, language jointly proposed by the parties.  ECF No. 13.  According to a joint status report filed on January 7, 2022, the Court's entry of the proposed consent order would "abate potentially unnecessary motion practice and . . . conserve judicial and party resources."  *Id.*  The Court entered the parties' proposed order on the same day that the status report was filed.  The January 7 Order stated in pertinent part:

> [I]t is hereby ordered that Defendant shall serve amended responses to Plaintiff's First Set of Requests for Production of Documents with a substantial document production by January 18, 2022, and Defendant shall serve verified answers to Plaintiff's First Set of Interrogatories by January 18, 2022.

Minute Order (Jan. 7, 2022).

Plaintiff argues that Murdock Street violated the January 7 Order in two ways.  First, although Plaintiff concedes that Murdock Street served amended responses to his document requests and a production of documents by January 18, 2022, Plaintiff argues that Murdock Street's January 2022 document production violated the January 7 Order because it was not a "*complete* 'substantial document production.'"  ECF No. 26 at 29 (emphasis added).  Plaintiff contends it was not "complete" because Defendant's January 2022 document production did not include emails, text messages, or contracts with IFG and EWORA.  *Id.*  But the January 7 Order did not require a *complete* document production, only a "substantial document production."  Minute Order (Jan. 7, 2022).  Again, the text of that order was adopted by the Court verbatim from the language proposed by the parties on January 7, 2022.  *Compare id. with* ECF No. 13.  Had Plaintiff and Murdock Street wanted the consent order to require a "complete" document production by January 18, 2022, they could have requested that,[7] but that apparently was not the deal they struck, and, accordingly, that

---

[7] In December 2021, for example, Plaintiff twice requested a court order compelling Murdock Street to provide a "full document production," both times without Defendant's consent.  ECF No. 9 at 1–2; ECF No. 11 at 1–2.  Judge Chutkan declined to issue both orders.  *See* Minute Order (Dec. 21, 2021); Minute Order (Jan. 3, 2022).

was not what the January 7 Order required.  Because Rule 37(b)(2)(A) allows sanctions only for a party's failure to comply with a court order, the undersigned is bound by the language of the consent order the parties proposed and the Court issued.

The undersigned cannot say that Murdock Street's January 2022 document production failed to satisfy the January 7 Order's less demanding requirement that it be "substantial."  Minute Order (Jan. 7, 2022).  The production consisted of 138 pages of documents, including: an agreement between EWORA and CCC related to construction at the Murdock Street property; a certificate of liability insurance for CCC; engineering reports related to the alleged impact of the construction on Plaintiff's property and efforts made to monitor and remediate that impact; photos of the alleged damage to Plaintiff's property taken by an engineering firm; a plan to monitor the settlement of the building on Plaintiff's property; stop work orders issued by DCRA relating to the alleged damage the construction caused to Plaintiff's property; a building permit for underpinning of the existing façade wall and replacement of the front step at Plaintiff's property; and a stop work order compliance review request submitted by the owner of EWORA and IFG.  ECF No. 26-1 at 103-241.  All those documents appear material to Plaintiff's claims.  Accordingly, the undersigned does not find that Murdock Street failed to make a "substantial document production" by January 18, 2022, such that it violated the January 7 Order.

Further, counsel for Murdock Street represented that its January 2022 document production included "[a]ll the documents . . . that [Murdock Street] had in its possession" at that time.  Transcript of March 4, 2022 hearing before Judge Chutkan at 6–8 (Draft Transcript in Chambers).   At least some of the ESI that Plaintiff says was missing from the January 2022 document production apparently took the effort of a forensic computer consultant to resurrect following the crash of Keskin's computer.  *See* ECF No. 58.  The recovered ESI has now been produced to Plaintiff, and

any additional discovery he may need based on that ESI can be pursued in the extended discovery period which the undersigned recently granted at Plaintiff's request.[8]  ECF No. 53; Minute Order (Jan. 31, 2023); ECF No. 71.  On this record, the undersigned finds there is no basis to sanction Murdock Street under Rule 37(b)(2)(A) for failure to make a "substantial document production" by January 18, 2022 as required by the January 7 Order.

More successful is Plaintiff's second argument that Murdock Street failed to provide verified interrogatories answers by January 18, 2022, as the January 7 Order required.[9]  It is undisputed that Murdock Street did not do so, nor did it request an extension of time from the Court to provide its verified answers.  ECF No. 14 at 1; ECF No. 27 at 14.  Indeed, at that March 4, 2022 hearing, Defendant's counsel conceded that Murdock Street had not served its verified answers until the day prior to the hearing in violation of the Court-ordered January 18 deadline, and he offered no excuse for why Plaintiff did not seek an extension of that deadline.  Transcript of March 4, 2022 hearing before Judge Chutkan at 6–8 (Draft Transcript in Chambers).  Accordingly, the undersigned finds that Murdock Street violated the January 7 Order when it failed to serve verified answers to Plaintiff's interrogatories by January 18, 2022, thereby triggering potential sanctions under Rule 37(b)(2)(A).

---

[8] For similar reasons, also unavailing is Plaintiff's suggestion that Murdock Street's May 2022 supplemental production of insurance documents demonstrates that it violated the January 7 Order.  Keskin testified that an insurance company or broker originally told him in late 2021 or early 2022 that Murdock Street was not insured.  ECF No. 26-1 at 345–47.  However, just prior to his April 2022 deposition, the insurance company or broker seemingly reversed itself and stated that Murdock Street "may" be insured under a policy, and that it would check again to see if there was an effective policy naming Murdock Street as an insured during construction.  *Id.* at 355–59, 362-63.  The May 2022 supplemental production appears to be the result of that inquiry and consists of a 2017-2018 policy for Murdock Street and a letter dated April 27, 2022—following Keskin's deposition—denying coverage under a 2019-2020 policy for IFG.  *Id.* at 433–555.  Accordingly, Keskin's testimony and the insurance documents themselves provide a reasonable explanation for their delayed production, and any possible prejudice to the Plaintiff from that delayed production is ameliorated by the repeated extensions of discovery after the insurance documents were produced.

[9] To be properly verified, interrogatory answers must be answered "fully in writing under oath" signed by "[t]he person who makes the answers[.]"  Fed. R. Civ. P. 33(b); *see also* LCvR 11.2 (verification requires a statement that the writing "is subscribed as true under penalty of perjury").

Choosing an appropriate sanction under Rule 37(b), however, "should be guided by the concept of proportionality between offense and sanction." *Klayman v. Jud. Watch, Inc.,* 6 F.4th 1301, 1312 (D.C. Cir. 2021) (quoting *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996), *cert. denied,* 142 S. Ct. 2731 (2022), *reh'g denied,* 143 S. Ct. 57 (2022)).  Here, the undersigned sees little real prejudice that resulted from the delay between when Murdock Street was ordered to serve its verified answers and when it finally did so, especially given that Plaintiff has been granted multiple extended periods of discovery following Murdock Street's late production of its verified answers.  *See Caldwell v. Ctr. for Corr. Health & Pol'y Stud., Inc.*, 228 F.R.D. 40, 46 (D.D.C. 2005) (finding that delay in receiving answers to interrogatories did not prejudice plaintiff where the discovery deadline was subsequently extended); *Peterson v. Hantman*, 227 F.R.D. 13, 17 (D.D.C. 2005) (declining to impose sanctions for discovery delay where both parties sought extensions of the discovery period).  Indeed, at the January 30, 2023 hearing, Plaintiff's counsel conceded that Plaintiff had suffered no prejudice from the delay.  Transcript of January 30, 2023 hearing before Judge Harvey at 6–7 (Draft Transcript in Chambers).  Accordingly, the undersigned finds that the more severe sanctions permitted by Rule 37(b)(2)(A)(i)–(vi) are not appropriate here for Murdock Street's violation of this Court January 7 Order.  *See* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi) (permitting as possible penalties for violation of a discovery order, evidentiary sanctions and adverse jury instructions, the striking of pleadings, and dismissal of claims or entry of default judgment).

Nevertheless, Plaintiff seeks, under Rule 37(b)(2)(C), recovery of his attorney's fees arising from his efforts to compel Murdock Street to provide verified answer to his interrogatories as required by Federal Rule of Civil Procedure 33(b).  Rule 37(b)(2)(C) "makes an award of reason-

able expenses, including attorney's fees, *mandatory* upon a party's failure to comply with a discovery order, unless the Court finds that 'the failure was substantially justified or other circumstances make an award of expenses unjust.'" *Coltrane v. Wilkins*, 340 F.R.D. 476, 484 (D.D.C. 2022) (quoting Fed. R. Civ. P. 37(b)(2)(C)). The undersigned has previously ordered a defendant to pay attorney's fees pursuant to that Rule who joined with the plaintiff to request that the court enter a consent order setting discovery deadlines, then "failed to adhere" to those deadlines or ask for an extension. *Martinez v. Asian 328*, *LLC*, No. 15-cv-1071, 2016 WL 1698261, at *5 (D.D.C. Apr. 27, 2016); *see also Cobell v. Babbit*, 188 F.R.D. 122, 140 (D.D.C. 1999) (awarding attorney's fees as a contempt sanction where the defendants "proposed a clear and unambiguous order for [the] court's signature" but proceeded to violate the order once it was signed). The undersigned sees no reason to reach a different result here. Murdock Street joined with Plaintiff to request the entry of a consent order setting a discovery deadline, and then proceeded to neither meet the Court-ordered deadline nor ask for an extension of time to do so. Moreover, Murdock Street has offered nothing to suggest that its failure to provide its verified answers was "substantially justified" or that other circumstances render an award of attorney's fees unjust. Fed. R. Civ. P. 37(b)(2)(C). Absent either of those circumstances, Rule 37(b)(2)(C) mandates the award of reasonable attorney's fees and costs. *See Coltrane*, 340 F.R.D. at 484; *Martinez*, 2016 WL 1698261, at *6. Accordingly, the undersigned will permit Plaintiff to submit, pursuant to Rule Rule 37(b)(2)(C), a petition for reasonable attorney's fees and costs caused by the failure of Murdock Street to comply with the January 7 Order that it provide verified answers to Plaintiff's interrogatories by January 18, 2022.[10] Fed. R. Civ. P. 37(b)(2)(C).

---

[10] The parties are encouraged to meet and confer concerning an award of reasonable fees and costs in this regard, thereby avoiding further costly litigation over the matter.

2.       March 4 Minute Entry

Plaintiff's argument that Murdock Street should be sanctioned under Rule 37(b)(2)(A) for violating the March 4 Minute Entry fails.  ECF No. 26 at 29.  As an initial matter, the Rule permits sanctions only for violation of *court orders*.  *See* Fed. R. Civ. P. 37(b)(2)(A).  The March 4 Minute Entry was not an order of the court; rather, it reflected what Judge Chutkan ordered during the March 4, 2022 discovery hearing, and did not require—as Plaintiff contends—Murdock Street to supplement its January 2022 document production with new material responsive to his discovery requests by March 11, 2022.  ECF No. 26 at 29.

A brief review of what transpired at the March 4 hearing makes that clear.  The hearing was held to address "the parties' discovery dispute," namely, Murdock Street's compliance with the Court's January 7 Order.  Minute Order (Feb. 20, 2022).  At the hearing, other than to note that Murdock Street's January 2022 document production seemed "rather paltry," Judge Chutkan did not set a new deadline for it to supplement its January 2022 document production with new material responsive to Plaintiff's discovery requests.  Transcript of March 4, 2022 hearing before Judge Chutkan at 13, 17 (Draft Transcript in Chambers).  Indeed, after Murdock Street's counsel represented that the January 2022 document production included everything in his client's possession, Judge Chutkan stated that she "can't order them to produce what isn't there."  *Id.*

The Court also learned at the hearing that Murdock Street's January 2022 document production was not organized in a fashion allowing Plaintiff to readily determine which documents were responsive to which of his document requests as required Federal Rule of Civil Procedure 34(b)(2)(E)(i).  *Id.* at 12, 14–15; *see also* Fed. R. Civ. Proc. 34(b)(2(E)(i) ("A party must . . . organize and label [documents] to correspond to the categories in the [document] request.").  Ac-

cordingly, Judge Chutkan ordered Murdock Street to re-organize its January 2022 document production consistent with the requirements of Rule 34(b)(2)(E)(i), and *reproduce* it to Plaintiff by March 11, 2022 at 5:00 p.m.  Transcript of March 4, 2022 hearing before Judge Chutkan at 14–15, 17–18 (Draft Transcript in Chambers).

Both the minute entry and order following the hearing reflect Judge Chutkan's directive that Murdock Street comply with the requirements of Rule 34(b)(2)(E)(i) and reproduce its January 2022 document production.  The March 4 Minute Entry was entered on the docket immediately following the hearing.  It states:

> Minute Entry: Status Conference held on 3/4/2022 before Judge Tanya S. Chutkan: Defendant must produce documents by 5:00 p.m. on 3/11/2022 or the possibility of sanctions imposed.

Minute Entry (Mar. 4, 2022).  To the extent that docket entry is unclear, the next entry on the docket—the March 7 Order—provides the necessary clarification.  It states:

> MINUTE ORDER: The court held a discovery conference in this matter on March 4, 2022.  At that conference, it came to the court's attention that the documents that Defendant had produced to Plaintiff were not organized as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).  It was thereby ORDERED that Defendant reproduce its documents in an organized manner, with Bates Stamps no later than 5:00 PM on Friday, March 11, 2022.

Minute Order (Mar. 7, 2022).  Nevertheless, Plaintiff reads the March 4 Minute Entry as requiring Murdock Street to produce, by March 11, 2022, additional documents responsive to his discovery requests beyond those it had already produced in January 2022.  ECF No. 26 at 29.  Because, as explained, that is not what the March 4 Minute Entry said—and, in any event, the minute entry was not an order of the Court—no sanctions are warranted on that basis.[11]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to supplement the record, ECF No. 58, is

---

[11] Plaintiff does not dispute that Murdock Street reproduced its documents organized consistent with Rule

**GRANTED**, and Plaintiff's motion for sanctions, ECF No. 26, is **GRANTED IN PART** and
**DENIED IN PART.**  Plaintiff is permitted to file a petition for attorney's fees related to Mur-
dock Street's delay in producing verified answers to Plaintiff's interrogatories.

       **SO ORDERED.**


Date:  March 29, 2023

                                            _____
                                            G. MICHAEL HARVEY
                                            UNITED STATES MAGISTRATE JUDGE

---

34(b)(2)(E)(i) on or before March 11, 2022.  ECF No. 26 at 10; Transcript of January 30, 2023 hearing before Judge
Harvey at 29 (Draft Transcript in Chambers).  Accordingly, Murdock Street complied with what Judge Chutkan or-
dered at the hearing, and no sanctions are warranted on that basis either.