**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **CHARLES MATIELLA**<br><br>             **Plaintiff,**<br>      v.<br><br>**MURDOCK STREET LLC,** *et al.*,<br><br>             **Defendants.**<br><br><br>**MURDOCK STREET, LLC,**<br><br>             **Third-Party**<br>             **Plaintiff,**<br>      v.<br>**EWORA, L.L.C.,** *et al.*,<br><br>             **Third-Party**<br>             **Defendants.** |

**Case No. 21-cv-2112 (GMH)**

**MEMORANDUM OPINION AND ORDER**

This action concerns whether the construction of a condominium building damaged a town-house next door owned by the Plaintiff Charles Matiella.  Plaintiff alleges that the heavy construction and excavation activity seriously damaged the townhouse, rendering it uninhabitable.  *See* ECF No. 50, ¶¶ 15, 17, 18, 20, 28, 30.  Plaintiff brings this action under negligence and trespass theories against the owner of the condominium building property, the two companies who operated as the general contractor for its construction, and the subcontractor involved in the excavation.  He also seeks injunctive relief related to the restoration of his property.

Pending before the Court are the following motions: (1) the joint Motion to Dismiss and Motion to Strike, ECF No. 64, filed by Defendants EWORA, L.L.C. ("EWORA) and IFG Group LLC ("IFG"), and (2) the Motion to Dismiss, ECF No. 83, filed by Defendant City Concrete Cor-poration ("City Concrete").  Both motions have been fully briefed and are ripe for resolution, and

the Court finds that no hearing is necessary to resolve either motion. *See* LCvR 7(f) ("A party may in a motion or opposition request an oral hearing, but its allowance shall be within the discretion of the Court."). Upon consideration of the parties' briefs, and the entire record herein,[1] both motions are granted in part and denied in part.

## I.     BACKGROUND

### A.     The Amended Complaint

Plaintiff's original complaint was filed August 6, 2021, against Defendant Murdock Street, LLC ("Murdock Street"). ECF No. 1. With the leave of court, Plaintiff filed an Amended Complaint on January 26, 2023, adding defendants EWORA and IFG, as well as City Concrete. ECF No. 50. In relevant part, the Plaintiff alleges the following.

Plaintiff owns the property located at 770 Princeton Place NW, Apt B, Washington DC 20010 ("Plaintiff's Property"). ECF No. 50, ¶¶ 1, 15. Defendant Murdock Street owns the adjacent property at 3619 Georgia Avenue NW, Washington DC, 20018 ("Murdock Street's Property"), where Plaintiff alleges a condominium building named "The Exchange" was constructed. *Id*., ¶¶ 17, 19. Defendant EWORA was the "builder" retained to "manage the construction activities" at The Exchange, and Defendant IFG was the "develop[er]" of the condominium complex at The Exchange." *Id*., ¶¶ 47, 48. Both companies are referred to as "general contractors" for the project and are "owned and operated by the same principal, Fatih [Guner], and are sister companies." *Id*., ¶¶ 8, 46, 48, 49. Defendant City Concrete was the subcontractor who "provide[d] labor and material" for the construction of The Exchange. *Id*., ¶ 59.

---

[1] The relevant docket entries for purposes of this Memorandum Opinion and Order are: (1) the Amended Complaint, ECF No. 50, filed by Plaintiff Charles Matiella ("Plaintiff"); (2) EWORA and IFG's Motion to Dismiss and Motion to Strike, ECF No. 64 ("EWORA and IFG's motion"); (3) Plaintiff's Memorandum in Opposition thereto, ECF No. 67; (4) EWORA and IFG's Reply in support their motion, ECF No. 70; (5) City Concrete's Motion to Dismiss, ECF No. 83 ("City Concrete's Motion"); (6) Plaintiff's Memorandum in Opposition thereto, ECF No. 86; and (7) City Concrete's Reply in support of its motion, ECF No. 87. The page numbers cited herein are those assigned by the Court's CM/ECF system.

Regarding the timeline of events, Plaintiff alleges that in 2017, Defendant Murdock Street engaged Defendant IFG to develop the condominium complex, and in 2017, one of those two defendants then engaged Defendant EWORA to construct or "manage the construction activities." *Id.*, ¶ 48.   In turn, EWORA retained City Concrete "on or about October 23, 2017" to perform construction activities at The Exchange.  *Id.*, ¶ 59.  "Thereafter," City Concrete performed the construction work.  *Id.*, ¶ 60.   In 2019, 2020, and 2021, Plaintiff alleges that "construction had been in progress" at Murdock Street's Property, including "excavation, heavy drilling and other major construction activity."  *Id.*, ¶ 18.   Construction activities at The Exchange were completed as of May 2021.  *Id.*, ¶ 19.

Plaintiff alleges that the construction damaged his property that was adjacent to The Exchange.  Specifically, he alleges that the "heavy excavation, drilling and other major construction activity" caused "reverberations of the earth or other elements connected to Plaintiff's property" which caused "serious damage" to it, including causing its foundation "to be defective, dislodged, cracked and unsafe."  *Id.*, ¶¶ 20, 21.  According to the Amended Complaint, Defendant Murdock Street "admitted that [its] actions caused the damage to Plaintiff's property."  *Id.*, ¶ 23.  Over "the past two years," Plaintiff alleges, "Defendant Murdock made remedial attempts to address and rectify the damage" to Plaintiff's property, but those efforts were ultimately "insufficient."  *Id.* Due to Defendant Murdock Street's "failure to remedy the problems and severe damage" to Plaintiff's property, Plaintiff filed a complaint with the Illegal Construction Unit of the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA").  *Id.*, ¶ 24.  On May 7, 2021, DCRA held a meeting to address the protection of Plaintiff's property and issued a May 13, 2021

report "detailing the insufficient remedial measures" taken to address the damage caused to Plaintiff's property. *Id.*, ¶ 26.   One of those measures had involved the installation of a monitoring device in September 2020 to "ensure no settling is occurring" in the building façade. *Id.*, ¶ 26.E.

The Amended Complaint also includes findings of a June 2021 report by a structural engineer who "evaluated the problems that Defendant Murdock [Street] caused" at Plaintiff's Property. *Id.*, ¶ 28.   According to that engineer's report, during the construction of The Exchange, an excavation was made "adjacent" to Plaintiff's property, which included the installation of a "soldier pile and lagging retaining wall."[2] *Id.*, ¶ 28.A.   The soldier pile and lagging retaining wall had "no walers, rakers or crossbracing,"[3] and photographs of the excavation did not indicate any "backfill in the space behind [the] lagging between the walls of the excavation" to "close[] the void and prevent[] the lateral movement of the soil into the void space." *Id.*, ¶ 28.F.   The report also refers to photographs depicting "soil flowing out from beneath the lagging." *Id.*, ¶ 28.G.   The report states that the "lateral movement of the subsoil results in settlement of the structure." *Id.*, ¶ 28.F.   The report notes that soil had "settled from beneath the sidewalk and the brick planter wall separated from the walk at the entryway" to Plaintiff's house. *Id.*   Further, it states that settlement or outward movement of the building wall may have caused roof leakage, which may in turn have

---

[2] A soldier pile retaining wall system generally consists of piles, which are vertical steel or concrete beams installed at specific spacing intervals to hold "lagging," which are wood or concrete planks placed horizontally between the piles. Together, the piles and lagging form a wall to retain soil as an excavation proceeds. *See, e.g.*, Deep Excavations: Soldier Pile Walls: Information, Advantages & Disadvantages, https://perma.cc/9VMV-KKDL (last visited July 17, 2023); Deep Foundations Institute Glossary, Soldier Pile, https://perma.cc/ME7Q-JKCV (last visited July 21, 2023); Z. Hiobil et al, *Revising the Concepts of the Soldier Pile Wall*, XIII ICSMFE 919, 919 (1994) *available at* https://perma.cc/X8CN-DLLX.

[3] Walers, rakers, and crossbracing are all methods of supporting the wall of an excavation. A waler is a beam that runs parallel to the face of the retaining wall to distribute the pressure evenly. *What Are Walers in Construction*, HPD Construction, (Mar. 21, 2022) https://perma.cc/R8QQ-W9KU.   A raker is a beam that supports the wall diagonally from the ground inside the excavation like "an enormous kickstand" for the shoring wall.   Michael Diez de Aux, *How Tiebacks, Rakers, and Struts Support Shoring Walls*, Skyrise Cities, https://perma.cc/C9VZ-RFEY (last visited July 21, 2023). Crossbracing involves "diagonal bracing" to provide internal stability to existing rectangular frames. Christopher Gorse, et al., *Oxford Dictionary of Construction, Surveying and Civil Engineering* 98 (1st ed. 2012).

caused water dripping from the ceiling. *Id.*, ¶ 28.I.  Photographs also reportedly showed "cracks in the masonry bearing walls and settling of a support for the deck" on Plaintiff's property, as well as cracks around doorways, at lintels, and on interior walls and the ceiling of the property. *Id.*, ¶ 28.G.  In the opinion of the engineer:

> [S]ettlement of [Plaintiff's] building may continue until the soil migrates to fill-in the voids created by the excavation and void space behind the lagging.  Continued settlement will result in further structural damage to the building and compromise [of] its structural integrity.  Movement of the bearing walls may result in the joists slipping out of their pockets and floors or roof collapsing.  Also, further settlement may adversely affect underground utilities servicing the building.

*Id.*, ¶ 28.K.; *see also id.* at 34–35.

As a result of the damage to his property, Plaintiff alleges that the townhouse on his property "has become an unsafe structure and it is currently uninhabitable." *Id.*, ¶ 30.  Plaintiff asserts that the building "will have to be knocked down or razed to ensure the safety and protection of human life as well as property," and that Defendant Murdock Street should be ordered to pay "for the demolition and full rebuild," pay for the "loss of use sustained by Plaintiff's property," and pay for Plaintiff's mounting out of pocket costs and expenses he has incurred as a result of the damage caused to his property. *Id.*, ¶¶ 34–37.

Plaintiff alleges that Defendant Murdock Street's actions or inaction with respect to his adjacent property violated D.C. Mun. Regs. tit. 12, § 3307A, which states in relevant part:

> Adjoining public and private property shall be protected from damage during construction, alteration, repair, demolition or raze of a premises at the expense of the person causing the work. Protection must be provided for lots, and for all elements of a building or other structure, including, but not limited to, footings, foundations, party walls, chimneys, vents, skylights, porches, decks, roofs, roof outlets, roof structures and flashing. Provisions shall be made to control water runoff and erosion during construction or demolition or raze activities.

D.C. Mun. Regs. tit. 12, § 3307A; *see also* ECF No. 50, ¶¶ 38–39.  Further, Plaintiff alleges that because the work performed in building The Exchange entailed "excavation, drilling, and other heavy construction activity with heavy equipment" it was "inherently dangerous" and therefore the duty of care that Defendant Murdock Street owed to Plaintiff was "non-delegable." ECF No. 50, ¶¶ 41–42.  Accordingly, Plaintiff sues Defendant Murdock Street for negligence (Count I), trespass (Count II), and for injunctive relief related to the restoration of his property (Count III). *See id.*, ¶¶ 66–86.

Plaintiff also brings claims directly against EWORA, IFG, and City Concrete.  As to EWORA and IFG, Plaintiff alleges that their work as the developer, builder and and/or general contractor for the construction of Murdock Street's property included managing "the construction necessary to excavate the land upon which The Exchange would be built." *Id.*, ¶ 50.  Plaintiff also claims that EWORA and IFG were "involved in and responsible for" (1) addressing the "numerous Stop Work Orders" issued by DCRA, including ones related to Plaintiff's Property; (2) addressing the May 13, 2021 report detailing remedial measures to address damages to Plaintiff's Property; (3) addressing visual monitoring reports related to damages to Plaintiff's Property; and (4) submitting plans to the DCRA to obtain the construction permit. *Id.*, ¶¶ 53–57.  Plaintiff claims that Defendant Murdock Street "has asserted that Defendants EWORA and IFG are directly responsible for any damages to Plaintiff's Property caused by the construction of The Exchange." *Id.*, ¶ 58.  Accordingly, Plaintiff sues them, like Defendant Murdock Street, for negligence (Counts IV and VII), trespass (Counts V and VIII), and for injunctive relief related to the restoration of Plaintiff's property (Counts VI and IX). *Id.*, ¶¶ 87–128.

As for Defendant City Concrete, Plaintiff alleges that it entered into a contract "to provide labor and material for the construction of The Exchange[.]" *Id.*, ¶ 59.  Thereafter, City Concrete

performed construction work.  *Id.*, ¶ 60.  Plaintiff then alleges that, according to Defendants

EWORA and IFG, the construction activities at The Exchange were "developed, planned, and

performed by City Concrete," and City Concrete's actions and omissions caused any trespass

and/or damage to Plaintiff's property.  *Id.*, ¶¶ 62, 63.  Accordingly, like the other defendants,

Plaintiff sues City Concrete for negligence (Count X), trespass (Count XI), and for injunctive relief

(Count XII).  *Id.*, ¶¶ 129–149.

### B.      EWORA and IFG's Motion to Dismiss

EWORA and IFG first argue that the Amended Complaint should be dismissed under Fed-

eral Rule of Civil Procedure 12(b)(6) because the statute of limitations bars the claims against

them.[4]  Although they concede that Plaintiff should receive the benefit of tolling of the statute of

limitations because of D.C. Superior Court administrative orders related to the COVID-19 pan-

demic, EWORA and IFG argue that Plaintiff's claims are nevertheless barred because (1) Plaintiff

has not pleaded a date of accrual of either his injuries or of his discovery of them; and (2) the

Amended Complaint does not relate back to the original complaint under Federal Rule of Civil

Procedure 15(c).  ECF No. 64-1 at 5–12.  They next argue that (1) Plaintiff did not state a claim

for negligence against EWORA (Count IV) or IFG (Count VII); (2) Plaintiff did not plead facts

rendering EWORA and IFG liable for any negligence perpetuated by City Concrete; and (3) Plain-

tiff did not state a claim for trespass against EWORA (Count V) or IFG (Count VIII).  *Id.* at 12–

19.  EWORA and IFG alternatively request that, pursuant to Rule 12(f), the Court strike Plaintiff's

---

[4] Defendants EWORA and IFG assert in their reply that Plaintiff misinterpreted their arguments, as they were not
arguing that the statute of limitations barred Plaintiff's claims but rather that the Amended Complaint lacked factual
content sufficient to state a claim.  ECF No. 70 at 2-4.  This was not clear to the Court.  *See* ECF No. 64-1 at 10 ("If
the construction activities that Plaintiff seeks to hold Defendants liable for were performed prior to January 7, 2019—
and the FAC provides no reason to conclude otherwise—then Plaintiff's negligence and trespass claims are un-
timely."); *id.* at 12 ("Plaintiff may not . . . assert that his claims against EWORA and IFG are timely.").  Although the
statute of limitations argument could be consider conceded, the Court nevertheless considers below some of the issues
raised by Defendants related to the statute of limitations.

requests for injunctive relief, which are set out both as separate counts in the Complaint (Counts VI and IX) and as a demand in the prayer for relief. *Id.* at 20–23

Plaintiff responds that his pleading is sufficient. As to the statute of limitations, Plaintiff argues that because the Amended Complaint does not conclusively establish that his claims are time-barred, the motion should be denied on that basis. ECF No. 67 at 4–5. As to his negligence claim, Plaintiff contends that the Amended Complaint contains sufficient factual allegations to plausibly state a claim for negligence. *Id.* at 5–8. Plaintiff also argues that it is premature at this procedural stage to determine whether EWORA and IFG are liable for any negligence committed by City Concrete. *Id.* at 8–14. Plaintiff asserts that he has plausibly stated a claim for trespass. *Id.* at 14–15. Finally, Plaintiff argues that striking his requests for injunctive relief under Rule 12(f) is not appropriate because his requests are not redundant, immaterial, impertinent, or scandalous. *Id.* at 15–18.

### C.    City Concrete's Motion to Dismiss

Defendant City Concrete raises similar issues in its motion to dismiss. First, it argues generally that Plaintiff has failed to allege facts indicating that "City Concrete did anything to cause Plaintiff's alleged damage," appearing to argue that both the negligence and trespass claims against City Concrete do not state a claim upon which relief can be granted. ECF No. 83 at 4. Second, City Concrete argues that the claims against it are barred by the statute of limitations, asserting that because Plaintiff has not stated any facts about when the alleged excavation and damage began, the Court cannot determine whether it has authority to grant Plaintiff relief under the statute of limitations. *Id.* at 5–7. City Concrete seeks dismissal on that basis or, in the alternative, an order directing Plaintiff to file a more definite statement of his claims pursuant to Federal Rule of Civil Procedure 12(e). *Id.* at 7; ECF No. 87 at 2–3. Third, City Concrete argues that reverberations

and vibrations from construction work are not a physical invasion amounting to trespass under D.C. law.  ECF No. 83 at 7–8.  Finally, it asserts that Plaintiff's claims for injunctive relief should be dismissed because he has an adequate remedy at law, and some of Plaintiff's injunctive requests are not provided for by D.C. law.  *Id.* at 8–10.

Plaintiff responds by first arguing that City Concrete's motion to dismiss was not authorized by this Court's scheduling order permitting it to file a "responsive pleading."  ECF No. 86 at 5–6.  On the merits, Plaintiff contends that he has alleged sufficient facts to plausibly state a claim for negligence against City Concrete.  *Id.* at 7–8.  Plaintiff argues that the statute of limitations argument fails because the Amended Complaint is not conclusively time barred on its face.  *Id.* at 8–10.  Regarding his trespass claim, Plaintiff argues that he has plausibly alleged trespass.  *Id.* at 10–12.  Finally, Plaintiff asserts that his requests for injunctive relief are proper under D.C. law and should not be dismissed.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6)

In a complaint, a plaintiff must provide a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . .claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint on the basis that it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). While a plaintiff need not make "detailed factual allegations" to avoid dismissal, he or she must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To meet this standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Generally, a court must accept as true the well-pleaded factual allegations contained in the complaint, *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), and construe those allegations "in the light most favorable to the plaintiff[ ]," *Vick v. Brennan*, 172 F. Supp. 3d 285, 295 (D.D.C. 2016). "In assessing a Rule 12(b)(6) motion, a court may consider 'the facts contained within the four corners of the complaint' along with 'any documents attached to or incorporated into the complaint, matters of which the court may take judicial notice, and matters of public record.'" *Yazzie v. Nat'l Org. for Women*, No. 19-cv-3845, 2021 WL 1209347, at *6 (D.D.C. Mar. 30, 2021) (internal citations omitted) (first quoting *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 28 (D.D.C. 2006), then quoting *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011)).

### B.      Motion for a More Definite Statement under Rule 12(e)

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) ("If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e)."). "Consistent with Rule 8(a)'s liberal pleading requirements, courts are reluctant to compel a more definite statement pursuant to Rule 12(e)." *McQueen v. Woodstream Corp.*, 244 F.R.D. 26, 34 (D.D.C. 2007) (citing *Latch String, Inc. v. The Rouse Co.*, No. 76-cv-1502, 1977 WL 1346, at *1 (D.D.C. Jan. 4, 1977)). More, [t]o prevent Rule 12(e) from becoming a substitute for discovery, courts will generally deny a motion for a more definite statement where the information sought may be obtained in discovery." *Id.*

C.      **Motion to Strike under Rule 12(f)**

Rule 12(f) permits a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  This decision is "vested in the trial judge's sound discretion . . . [;] [h]owever, a motion to strike is a drastic remedy that courts disfavor." *Shaw v. District of Columbia*., No. 17-cv-738, 2018 WL 5044248, at *2 (D.D.C. Sept. 11, 2018) (second alteration in original) (internal citation omitted) (quoting *Gates v. District of Columbia*, 825 F. Supp. 2d 168, 169 (D.D.C. 2011)); *see also Barnes v. District of Columbia*, 289 F.R.D. 1, 26 (D.D.C. 2012) ("Motions to Strike are strongly disfavored and require the Court to consider alternatives.").  Although Rule 12(f) does not require a showing of prejudice, "courts view motions to strike portions of a complaint with such disfavor that many courts will grant such a motion only if the portions sought to be stricken as immaterial are also prejudicial or scandalous." *Makuch v. FBI*, No. 99-cv-1094, 2000 WL 915767 at *2 (D.D.C. Jan 7, 2000).  "In the rare instance that a motion to strike is granted, the submission to which it is directed 'should be pruned with care,' rather than completely scrapped." *Meyer v. Panera Bread Co*., No. 17-cv-2565, 2018 WL 5017747, at *4 (D.D.C. Oct. 16, 2018) (internal citation omitted) (quoting *Johnson v. M&M Commc'ns, Inc*., 242 F.R.D. 187, 189 (D. Conn. 2007)).

### III.     DISCUSSION

As a preliminary matter, the Court dispenses with Plaintiff's contention that City Concrete's motion to dismiss was somehow improperly filed.  Plaintiff cites cases regarding what constitutes a "responsive pleading" for the purposes of Federal Rule of Civil Procedure 15 to argue that the instant motion filed by City Concrete was not authorized by the April 11, 2023 Memorandum Opinion and Order of this Court setting aside the entry of default.  ECF No. 86 at 2, 5–6; *see* ECF No. 78.  However, setting aside an entry of default does not deprive the party of the ability to

file a motion to dismiss.  *See Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 9 (D.D.C. 2005) ("Courts routinely allow defendants to file a motion to dismiss in place of an answer despite a prior entry of default.").  Moreover, this Court's Local Civil Rules instruct that "upon the granting of a motion to vacate an entry of default, or a judgment by default, or both, the movant shall have 14 days within which to answer or otherwise respond to the complaint."  LCvR 7(g).  City Concrete's filing complies with this Court's Order and this Court's Local Civil Rules.  Accordingly, the Court considers the merits of the arguments raised by Defendants EWORA, IFG, and City Concrete in their motions.

### A.    The Statute of Limitations Does Not Warrant Dismissal At this Early Stage

The D.C. Circuit has "repeatedly held" that "courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." *Firestone v. Firestone*, 76 F.3d 1205, 1208–09 (D.C. Cir. 1996) (per curiam).  A motion to dismiss may be granted on statute of limitations grounds "only if the complaint on its face is conclusively time barred." *Toggas v. Wachovia Mortgage, FSB,* 2020 WL 3103966, at *6 (D.D.C. June 11, 2020) (quoting *McQueen*, 244 F.R.D. at 31); *see also Zorgani v. District of Columbia*, No. 17-cv-2360, 2022 WL 1491133, at *4 (D.D.C. May 11, 2022) ("[A] defendant is entitled to succeed on a Rule 12(b)(6) motion to dismiss brought on statutes of limitations grounds only if the facts that give rise to this affirmative defense are clear on the face of the plaintiff's complaint." (quoting *Lattisaw v. District of Columbia*, 118 F. Supp. 3d 142, 153 (D.D.C. 2015))).   To prove that conclusive bar, "no reasonable person could disagree on the date on which the cause of action accrued." *Toggas,* 2020 WL 3103966, at *6 (citing *McQueen,* 244 F.R.D. at 32).  Where there is a factual dispute bearing on the statute of limitations, a motion to dismiss should be denied. *See Capitol Servs. Mgmt.*, *Inc. v. Vesta Corp.*, 933 F.3d 784, 789 (D.C. Cir. 2019) (reversing the grant of a motion to dismiss

where the factual question of when the plaintiff had notice of claim was not resolved by the face of the complaint); *de Csepel v. Republic of Hungary*, 613 F. Supp. 3d 255, 305 (D.D.C. 2020) ("[M]otions to dismiss based on a limitations defense are disfavored because resolution generally requires the development of a record and the adjudication of factual issues." (quoting *de Csepel v. Republic of Hungary*, 808 F. Supp. 2d 113, 139 (D.D.C. 2011)); *see also Williams-Jones v. La-Hood*, 656 F. Supp. 2d 63, 68 (D.D.C. 2009) (denying a motion to dismiss where a factual dispute existed regarding when the plaintiff knew or should have known of the conduct in question). Moreover, at the motion to dismiss stage, defendants "are not entitled to offer their own evidence— even if uncontested—but must rely, instead, exclusively on the factual allegations contained in [the] complaint." *Marzorati v. MedStar-Georgetown Med. Ctr.*, *Inc.*, 265 F. Supp. 3d 24, 26 (D.D.C. 2017).

Defendants have not cleared that high bar here. They have not demonstrated at this early stage of the proceedings that the allegations contained in the Amended Complaint "conclusively" demonstrate that Plaintiff's claims are time barred using the traditional accrual rule. *Toggas,* 2020 WL 3103966, at *6 (quoting *McQueen,* 244 F.R.D. at 32). Even had Defendants done so, it would be improper to dismiss on limitations grounds because whether to apply the discovery rule or continuing tort doctrine in this case raises questions of fact not properly adjudicated at this early stage of the litigation.

Generally, the timeliness of a cause of action depends on three things: (1) the length of the appropriate limitations period, (2) the date that the cause of action accrued and the limitations period began to run, and (3) the date the relevant claims were filed with the court. Taking the last issue first, the Court will assume for purposes of this decision that Plaintiff's claims were raised

on January 18, 2023, the date when he first sought leave to file the Amended Complaint.[5,6] The length of the limitations period for the causes of action at issue is also fairly easy to determine. Under the law of the District of Columbia,[7] for both negligence claims and for claims to recover for "an injury to real or personal property"—which includes trespass claims—a litigant must bring suit within three years from when the claim accrues. D.C. Code § 12-301(3), (8); *see L'Enfant Plaza E.*, *Inc. v. John McShain, Inc.*, 359 A.2d 5, 6 (D.C. 1976) (finding that D.C. Code § 12-301(3) was "controlling statutory provision" for trespass actions); *see also Tolbert v. Nat'l Harmony Mem'l Park*, 520 F. Supp. 2d 209, 212 (D.D.C. 2007) (similar). But here, as Defendants agree, Plaintiff should benefit from an additional one year and twelve days to the limitations period because of the D.C. Superior Court's tolling of D.C. Code statute of limitations beginning on

---

[5] Because no party addresses the issue on the merits, the Court assumes at this stage without deciding that the Amended Complaint does not relate back to the original complaint as to EWORA, IFG, and City Concrete pursuant to Rule 15(c)(1)(C). *See* Fed. R. Civ. P. 15(c)(1)(C).

[6] EWORA and IFG do not contest that January 18, 2023 is the operative date for the Amended Complaint. ECF No. 64-1 at 9-10. City Concrete appears to assert that the operative date is January 26, 2023, the date that the Amended Complaint was separately docketed. ECF No. 83 at 7. This Court's January 30, 2023 Order explaining its decision to grant Plaintiff's motion to amend, ECF No. 54, did not identify an operative date for the Amended Complaint; however, the Court finds that the operative date for the Amended Complaint in this case is January 18, 2023, the date the motion was filed. *See Ealy-Simon v. Liberty Med. Supply*, No. 05-cv-14059, 2007 WL 1521628, at *3 (S.D. Fla. May 23, 2007); *accord Pompey v. Lumpkin*, 321 F. Supp. 2d 1254, 1258 n.2 (M.D. Ala. 2004), *aff'd sub nom. Pompey v. Fulmer*, 127 F. App'x 473 (11th Cir. 2005); *Wallace v. Sherwin Williams Co.*, 720 F. Supp. 158, 159 (D. Kan. 1988).

[7] In a diversity case like this one, the limitations period and accrual date are questions of state law. *See A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945)) (explaining that "a federal court sitting in diversity looks to the state law to determine whether a cause of action based upon state law has expired"). For purposes of choice of law, the District of Columbia "treat[s] statutes of limitations as procedural, and therefore almost always mandate[s] application of the District's own statute of limitations." *Id.* (citing *Namerdy v. Generalcar*, 217 A.2d 109, 113 (D.C. 1966) ("[A] limitation on the time of suit is procedural and is governed by the law of the forum.")).

March 18, 2020,[8] due to the COVID-19 pandemic.[9]  ECF No. 64-1 at 10; ECF No. 83 at 6–7; *see also Fragola v. Kenific Grp., Inc.*, No. 21-cv-1423, 2022 WL 1908824, at *3 (D.D.C. June 3, 2022) (in diversity case, taking judicial notice of the D.C. Superior Court administrative orders, and find-ing that they tolled all D.C. Code statutes of limitations from March 18, 2020 until March 30, 2021, the date that the limitations period began to run again).  Therefore, assuming that Plaintiff's claims had not expired prior to the beginning of the tolling period on March 18, 2020,[10] and giving Plaintiff the benefit of the full tolling period, his negligence and trespass claims would be deemed

---

[8] *See* Order, Joint Committee on Judicial Administration for the District of Columbia Courts, https://perma.cc/NTL9-ESJE (Mar. 18 2020) (authorizing D.C. Courts to, *inter alia*, toll deadlines); Order, Superior Court of the District of Columbia, https://perma.cc/P2DC-8XCL (issued Mar. 18, 2020, amended Mar. 19, 2020) (tolling statute of limitations through May 15, 2020); Order, Superior Court of the District of Columbia, https://perma.cc/C4FN-C4VQ (May 14, 2020) (tolling statute of limitations until June 19, 2020; Order, Superior Court of the District of Columbia, https://perma.cc/C4UX-K6L9 (June 19, 2020) (tolling statute of limitations through August 14, 2020); Order, Superior Court of the District of Columbia, https://perma.cc/PE5N-BBNM (Aug. 13, 2020) (tolling statute of limitations through November 9, 2020);  Order, Superior Court of the District of Columbia, https://perma.cc/2V4F-8L48 (Nov. 5, 2020) (tolling statute of limitations through January 15, 2021); Order, Superior Court of the District of Columbia, https://perma.cc/F9RC-CW7F (Jan. 13, 2021) (tolling statute of limitations through March 31, 2021);  Order, Superior Court of the District of Columbia, https://perma.cc/6M4D-R2US (Mar. 30, 2021) (ending tolling of statute of limita-tions).

[9] Under the doctrine articulated in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts that sit pursuant to their diversity jurisdiction are "to apply state substantive law and federal procedural law."  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  The statute of limitations is substantive under the *Erie* doctrine.  *A.I. Trade*, 62 F.3d at 1458 (citing *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945)).  Following this doctrine, federal courts around the country sitting in diversity have applied state COVID-era tolling provisions as substantive law, even where the diversity cases were initially filed in federal court.  *See Ceriani v. Dionysus, Inc.*, 599 F. Supp. 3d 365, 369 (E.D. Va. 2022) (finding that state COVID-19 emergency orders tolled the statute of limitations for state law claims in a diversity case filed initially in federal court); *accord Timboe v. Clark*, No. 20-cv-08719, 2022 WL 991721, at *4–5 (N.D. Cal. Mar. 31, 2022); *Cain v. Cty. of Niagara*, No. 20-cv-1710, 2022 WL 616795, at *7 (W.D.N.Y. Mar. 2, 2022); *Liberty Mut. Ins. Co. v. Murphy*, No. 20-cv-01961, 2021 WL 2784264, at *4 (D. Md. July 2, 2021); *Allen v. Sherman Operating Co.*, LLC, 520 F. Supp. 3d 854, 866 (E.D. Tex. 2021); *Bownes v. Borroughs Corp.*, No. 20-cv-964, 2021 WL 1921066, at *2 (W.D. Mich. May 13, 2021); *Murden v. Wal-Mart*, No. 20-cv-2505, 2021 WL 863201, at *2–3 (W.D. Tenn. Mar. 8, 2021);  *Allen v. Sherman Operating Co., LLC*, No. 20-cv-290, 2021 WL 860458, at *7–11 (E.D. Tex. Feb. 18, 2021); *Argueta v. City of Galveston*, No. 20-cv-367, 2021 WL 137664, at *2 (S.D. Tex. Jan. 14, 2021); *Lewis v. City of Edmond*, No. 19-cv-489, 2020 WL 6275174 (W.D. Okla. Oct. 26, 2020).

[10] The D.C. Circuit has declined to find that the D.C. Superior Court's administrative orders during the pandemic had a tolling effect where "the statute of limitations on [plaintiff's] claims expired nearly a year before the Superior Court paused statutes of limitations in connection with the COVID-19 pandemic."  *400 E St. SW, LLC v. Chevron U.S.A. Inc.*, No. 21-7075, 2022 WL 2677091, at *1, 3 (D.C. Cir. July 12, 2022).

timely filed on January 18, 2023 (when Plaintiff sought leave to file the Amended Complaint) as long as they accrued on or after January 7, 2019.

But that is where the clarity ends.  Determining when the statute of limitations began to run on Plaintiff's claims—i.e., their accrual date—is not readily determinable from the face of the Amended Complaint.  And because the Court cannot determine when the limitations period on Plaintiff's claims began to run, it cannot say at this early stage of the proceedings that those claims are "conclusively time barred." *Toggas,* 2020 WL 3103966, at *6 (quoting *McQueen,* 244 F.R.D. at 32).  Determining when a claim accrues for purposes of the statute of limitations can be challenging even when the factual record is complete, which is far from the case here.  A negligence claim accrues under D.C. law when the "injury result[s]," *Hanna v. Fletcher*, 231 F.2d 469, 472 (D.C. Cir. 1956), and a trespass claim "accrue[s] on the date of the trespass," *L'Enfant Plaza E.*, 359 A.2d at 7.  However, the D.C. Court of Appeals also applies the "discovery rule" whereby "accrual occurs . . . when a party knows or by the exercise of reasonable diligence should know: (1) of the injury; (2) the injury's cause in fact; and (3) of some evidence of wrongdoing." *Commonwealth Land Title Ins. Co. v. KCI Techs*., *Inc.*, 922 F.3d 459, 464 (D.C. Cir. 2019) (alteration in original) (quoting *Capitol Place I Assocs. L.P. v. George Hyman Constr. Co.*, 673 A.2d 194, 199 (D.C. 1996), *superseded in part on other grounds by* D.C. Code § 16-4406(c)).  This "equitable doctrine" is designed to "preserve claims in circumstances where the fact of injury or breach 'may not be readily discernible at the time when it actually incurred.'" *Commonwealth*, 922 F.3d at 464–65 (quoting *Ehrenhaft v. Malcolm Price, Inc*., 483 A.2d 1192, 1202 (D.C. 1984)).  Even more challenging, "allied with the discovery rule" is the "continuing tort" doctrine.  *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 548 (D.C. 2002).  Under this doctrine, a "continuing tort" can be established for statute of limitations purposes by showing "'(1) a continuous and repetitious

wrong, (2) with damages flowing from the act as a whole rather than from each individual act, and (3) at least one injurious act . . . within the limitation period.'" *Id.* at 547–48 (alteration in original) (quoting *DeKine v. District of Columbia*, 422 A.2d 981, 988 n.16 (D.C. 1980)).  This doctrine is appropriately applied in situations where "the wrongfulness and injuriousness of tortious activity may be discernible only from the continuation over time of a course of conduct." *Id.* at 548.  In sum, the "running of the limitations period is tolled until the continuation of the wrongful conduct renders the existence of the cause of action sufficiently manifest to permit the victim to seek recovery." *Id.*

Both the discovery rule and continuing tort doctrine may be at play in determining when the statute of limitations began to run with respect to Plaintiff's claims that the construction activities next door caused damage to his property.  The parties do not meaningfully engage with either doctrine in their briefing on the motions to dismiss.  Setting that deficiency to the side, a review of the Amended Complaint reveals few of the facts needed to ascertain the date of the alleged damage or injury to Plaintiff's property, much less those needed to determine whether and how the discovery rule and continuing tort doctrine may apply to the limitations calculation.   Plaintiff claims that EWORA retained City Concrete "on or about October 23, 2017 to perform construction activities at The Exchange," and that "[t]hereafter" City Concrete "performed construction work" which apparently concluded "[a]s of May 2021."  ECF No. 50, ¶¶ 19, 59, 60.  The construction included the "excavation, heavy drilling and other major construction activity," that Plaintiff blames for the damage to his property, *id.*, ¶ 18, but as for the date when that injurious activity occurred the Amended Complaint states only that "construction [was] in progress" in  "2019, 2020 and into 2021," *id.*  Based on that limited record, the Court cannot say definitively Plaintiff's

claims are "conclusively time barred,"[11] *Toggas,* 2020 WL 3103966, at *6 (citing *McQueen,* 244 F.R.D. at 32), a conclusion that Defendants themselves acknowledge.  ECF No. 64-1 at 8 ("This failure to specify when this work took place makes it impossible for Defendants to determine whether Plaintiff's claims are timely."); ECF No. 83 ("Because Plaintiff has not stated any facts indicating when the alleged excavation and resulting damage began, this Court cannot even make an initial determination whether it has, or may have, authority to . . . grant the Plaintiff relief.").[12] Indeed, accepting the allegations in the Amended Complaint as true, the Court finds that it is plausible that the damage to Plaintiff's occurred on or after January 7, 2019.

As for Plaintiff's discovery of the alleged damage to his property, the Amended Complaint again reveals little.  It alleges that on May 7, 2021, DCRA's Illegal Construction Unit held a meeting to address the protection of Plaintiff's property in response to a "formal Amended Complaint filed by Plaintiff," and that a few days later a report was issued "detailing the insufficient remedial measures . . . taken to address damage caused to Plaintiff's property."  ECF No. 50, ¶ 26.  One of

---

[11] Although City Concrete contends that the damage to Plaintiff's property occurred at "the very beginning of the construction in 2017 or at the latest in early 2018," this timeframe is not alleged in the Amended Complaint, nor, despite City Concrete's assertions, do the DCRA website or the photos attached to the Amended Complaint conclusively establish that the damage occurred in this earlier time period.  ECF No. 83 at 6; *see generally* ECF No. 50.

[12] Unsurprisingly, Defendants complain that the paucity of detail in the Amended Complaint concerning when the damage to Plaintiff's property occurred makes it impossible for them to argue that the statute of limitations bars Plaintiff's claims at this early stage.  ECF No. 64-1 at 8; ECF No. 83 at 7.  But because the statute of limitations is an affirmative defense under Fed. R. Civ. P. 8(c)(1), a plaintiff need not anticipate and preemptively dispute a statute of limitations argument in a complaint.  *See Jones v. Changsila,* 271 F. Supp. 3d 9, 24 (D.D.C. 2017) (citing *Connors v. Hallmark & Son Coal Co.,* 935 F.2d 336, 343 n.12 (D.C. Cir. 1991) (finding that the plaintiffs were "not obliged to anticipate" the affirmative defense of the statute of limitations in their complaint)).  For the same reason, the Court denies City Concrete's motion for a more definite statement under Rule 12(e) to require Plaintiff to provide more "facts indicating when the alleged excavation and resulting damage began . . . [so that] Court can[] . . . make an initial determination" concerning whether the statute of limitations has run with respect to Plaintiff's claims.  ECF No. 83 at 7. Where a plaintiff has satisfied the pleading requirements of Rule 8—which the Court finds below Plaintiff has done here—to the extent the defendant "needs additional facts to determine which affirmative defenses are available," there is "no reason to direct [plaintiff] to file a more definite statement."  *Maynard v. Melton,* No. 17-cv-2612, 2021 WL 6845008, at *13 (D.D.C. Apr. 7, 2021), *report and recommendation adopted,* 2023 WL 1963919 (D.D.C. Feb. 10, 2023).  Rather, discovery will provide City Concrete with the opportunity to establish the "additional facts" it needs "to determine which affirmative defenses are available."  *Id.*

those remedial measures apparently involved the installation of a monitoring device in September 2020 to "ensure no settling [was] occurring" in the façade of the building on Plaintiff's property. *Id.*, ¶ 26.E.  Even assuming that the installation of the monitoring device would be sufficient to trigger D.C.'s discovery rule—a conclusion the Court need not and does not reach here—September 2020 is still well within the three-year statute of limitations period, and that is without giving Plaintiff the benefit of the additional year and twelve days of tolling provided during the pandemic by D.C. Superior Court order.  Potential application of the continuing tort doctrine to Plaintiff's claims is no clearer from the facts alleged in the Amended Complaint, but if it is applicable here it may work further in Plaintiff's favor.

This is all to say that "fact-bound question[s] that [are] not suitable for resolution at the motion-to-dismiss stage" abound with respect to Defendants' statute of limitations defense.  *He Depu v. Oath Holdings, Inc.*, 531 F. Supp. 3d 219, 240 (D.D.C. 2021).  Accordingly, dismissal under Rule 12(b)(6) on the basis of statute of limitations would be erroneous.  *See Capitol Servs.*, 933 F.3d at 789.

## B.    Plaintiff Has Stated Claims for Negligence Against EWORA, IFG, and City Concrete

### 1.    Plaintiff has stated a claim for negligence directly against Defendants EWORA and IFG

Under D.C. law, to state a claim for negligence, a plaintiff must allege "'[a] duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach.'" *Azzam v. Rightway Dev. Inc.*, 789 F. Supp. 2d 110, 117 (D.D.C. 2011) (alteration in original) (quoting *District of Columbia v. Harris*, 770 A.2d 82, 87 (D.C. 2001)).  The Court finds that Plaintiff plausibly stated a negligence claim against Defendants EWORA and IFG.

In seeking dismissal for failure to state a claim, Defendants EWORA and IFG first appear to claim that they owed no duty to Plaintiff, arguing that the mere existence of Stop Work Orders did not impose on them any "special duty to Plaintiff."  ECF No. 64-1 at 13; *see also* ECF No. 50, ¶ 53.  To the extent Defendants EWORA and IFG are arguing that developers and contractors engaging in major construction work own no duty of care to adjoining property owners, Defendants are incorrect.   Generally, "[w]hether there is a duty of care is a question of law."  *Heidi Aviation, LLC v. Jetcraft Corp.*, 573 F. Supp. 3d 182, 197 (D.D.C. 2021) (quoting *Presley v. Commercial Moving & Rigging, Inc.*, 25 A.3d 873, 883 (D.C. 2011)).  "To determine whether a party owes a duty of care to another party, courts "rely on the concept of 'foreseeability'" and look to the "relationship between the plaintiff and the defendant."  *Hedgepeth v. Whigtman Walker Clinic*, 22 A.3d 789, 793–94 (D.C. 2011).  If the injury that befell the plaintiff was "reasonably foreseeable" to the defendant, then courts will usually conclude that the defendant owed the plaintiff a duty to avoid causing that injury; if the injury was not "reasonably foreseeable," then there was no duty.  *Id.* at 793 (collecting cases).

In this case, Plaintiff alleges that Defendants owed him a duty of care because of his status as an adjoining landowner to the Defendants' construction project.  ECF No. 50 ¶¶ 88, 89, 109, 110.  Specifically, Plaintiff alleges in the Amended Complaint that Defendants EWORA and IFG had "a duty to exercise common prudence in constructing and developing Defendant Murdock's Property in such a way as to prevent injury to Plaintiff as an owner of adjacent property."  *Id.*, ¶¶ 89, 110.  There is authority in D.C. law to support the finding of such a duty of care between construction contractors (and those who supervise them) and the owners of property adjacent to the construction.  *See Tolu v. Ayodeji*, 945 A.2d 596, 603 n.5, 604 (D.C. 2008) (denying summary judgment and finding individuals exercising control over construction work had duty to "exercise reasonable care to

avoid reasonably foreseeable harm to a neighbor" as possessors who had "supervisory control over" the land); *Levy v. Schnabel Found. Co.*, 584 A.2d 1251, 1255 (D.C. 1991) (finding that evidence was sufficient to a support jury verdict finding negligence against contractors where  experts testified that the "applicable standard of care for persons engaged in sheeting, shoring and underpinning was to take all necessary steps to prevent any movement that would cause damage to adjacent properties"); *Mullan v. Hacker*, 49 A.2d 640, 642–43 (Md. 1946) (finding that an excavator has a duty to perform excavation with due care to avoid "occasion[ing] greater danger to the adjoining owner");[13] *see also Arnold's Hofbrau, Inc. v. George Hyman Const. Co.*, 480 F.2d 1145, 1148 (D.C. Cir. 1973) ("[O]ne who undertakes to act has a duty to act carefully and if he fails to do so, he may be held liable in negligence.") citing Restatement (Second) of Torts, Section 323 (1964)); D.C. Mun. Regs. tit. 12, § 3307A ("Adjoining public and private property shall be protected from damage during construction, alteration, repair, demolition or raze of a premises at the expense of the person causing the work.").  While the outer bounds of the duty and/or standard of care[14] that Plaintiff was owed as an adjoining landowner to the construction project next door should await further development of the record, to the extent Defendants are arguing for dismissal because no such duty was owed him, their motion is denied.

Next, Defendants EWORA and IFG posit that Plaintiff has failed to allege facts supporting a finding that they breached any such duty to Plaintiff.  ECF No. 64-1 at 13.  The Court disagrees. Plaintiff has plausibly alleged facts from which a reasonable inference can be drawn that EWORA

---

[13] "[D]ecisions of the Court of Appeals of Maryland are 'accorded the most respectful consideration by [District of Columbia] courts' . . . because 'District of Columbia common law is derived from Maryland law.'" *English v. United States,* 25 A.3d 46, 54 n. 11 (D.C. 2011) (first quoting *In re Estate of Turpin,* 19 A.3d 801, 809 n. 11 (D.C. 2011), then quoting *Roberts–Douglas v. Meares,* 624 A.2d  405, 419 n. 20 (D.C. 1992)).

[14] "The questions of duty of care and standard of care are separate inquiries under [D.C.] case law, but they often overlap." *Gilbert v. Miodovnik,* 990 A.2d 983, 990 n.5 (D.C. 2010); *see also Newborn v. United States,* 238 F. Supp. 2d 145, 149 (D.D.C. 2002) (observing that the questions of duty of care and standard of care appear "merged—or, perhaps, blurred—into a single question in the District of Columbia"), *aff'd,* 84 Fed. App'x. 97 (D.C. Cir. 2003).

and IFG breached their duty of care owed an adjacent landowner.  Plaintiff alleges that EWORA and IFG were the general contractors for the construction at The Exchange.  ECF No. 50, ¶ 46. IFG was retained as the developer for the project, and EWORA was "the builder" retained "to manage the construction activities" at the property.  *Id*., ¶ 48.  Together, Plaintiff alleges they "were responsible for the construction and development of The Exchange."  *Id*., ¶ 51.  Plaintiff further alleges that both Defendants' work "included the construction necessary to excavate the land upon which The Exchange would be built."  *Id*., ¶ 50.  It is that "heavy excavation, drilling and other major construction activity" that Plaintiff alleges caused "reverberations of the earth or other elements connected to [his] property" which caused "serious damage" to it, including causing its foundation "to be defective, dislodged, cracked and unsafe."  *Id*., at ¶¶ 20–21.  The Amended Complaint also incorporates the findings of an engineer's report that notes that "a portion of the masonry (brick) foundation wall appears to have fallen out from beneath [Plaintiff's] townhouse as the excavation progressed."  *Id*., ¶ 28.B.   The engineering report further states that excavation included the installation of a "soldier pile and lagging retaining wall."  *Id.*, ¶ 28.A.  However, the soldier pile and lagging retaining wall allegedly had "no walers, rakers or cross-bracing" and photos of the excavation "did not indicate backfill in the space behind [the] lagging between the walls of the excavation," which would have "close[d] the void and prevent[ed] the lateral movement of the soil into the void space."  *Id.*, ¶ 28.F.  The report also refers to photos depicting "soil flowing out from beneath the lagging."  *Id.*, ¶ 28.G.  Absent the necessary backfill, the engineer report states that "lateral movement of the subsoil results in settlement of the structure."  *Id.*, ¶ 28.F.  In fact, the report claims, "soil settled from beneath the sidewalk and the brick planter wall separated from the walk at the entryway" to Plaintiff's house.  *Id.*   Further, the report notes that settlement or outward movement of the building wall may have caused roof leakage, which may in turn have

caused water dripping from the ceiling.  *Id.*, ¶ 28.F, H.  The report notes that photos show that there were, in fact, "cracks in the masonry bearing walls and settling of a support for the deck," as well as "cracks around doorways and at lintels" and on "interior walls and ceiling" of Plaintiff's property.  *Id.*, ¶ 28.G.   In the opinion of the engineer:

> [S]ettlement of [Plaintiff's] building may continue until the soil migrates to fill-in the voids created by the excavation and void space behind the lagging.  Continued settlement will result in further structural damage to the building and compromise [of] its structural integrity.  Movement of the bearing walls may result in the joists slipping out of their pockets and floors or roof collapsing.  Also, further settlement may adversely affect underground utilities servicing the building.

*Id.*, ¶ 28.K; *see also id.* at 34–35.

In other words, taking the facts alleged and all reasonable inferences in favor of Plaintiff, Plaintiff claims that, as developers, builders, and/or general contractors for The Exchange, Defendants EWORA and IFG were responsible for the negligent construction and excavation of that development which damaged his property in violation of the duty of care owed him as an adjoining landowner, either through vibrations affecting his property or other actions.  Moreover, the lack of backfill left open a void between the walls of the excavation behind the lagging retaining wall, which in turn led to lateral movement of soil beneath Plaintiff's house causing settling and other related damage.  *Id.*, ¶ 28.  Plaintiff has therefore plausibly alleged defects in construction and excavation resulting in damage to his house on the property adjacent to the construction, putting Defendants on notice of the allegations against them.  Such allegations are not mere "labels and conclusions."  *Simms v. District of Columbia*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Accordingly, the Court finds that Plaintiff has "describe[d] the circumstances in which the [defendants] allegedly did not fulfill their duty" and has therefore adequately pleaded breach of the duty to prevent foreseeable injury to Plaintiff's property.  *Millennium Square Residential Ass'n v. 2200 M St. LLC*, 952 F. Supp. 2d 234, 246 (D.D.C. 2013).

Finally, Defendants argue that "Plaintiff has not demonstrated that a particular act or omission by Defendants proximately caused injury to his property," faulting the Amended Complaint for failing to "note a specific date on which an act or omission . . . resulted in injury to his property." ECF No. 64-1 at 14. Defendants are essentially arguing that Plaintiff's claims cannot go forward unless he can identify at this early stage which specific hammer blow caused which crack to the foundation of his home, and which Defendant wielded the hammer. The Court finds that Rule 8(a)'s requirement of a "short and plain statement of the claim" imposes no such obligation in a case such as this where information related to the proximate cause determination is unlikely to be in Plaintiff's possession prior to him engaging in discovery of the Defendants' actions and omissions during the three-year construction project next door, and the assessment of proximate cause will likely require consideration of expert testimony. *See Beach TV Props.*, *Inc. v. Solomon*, 324 F. Supp. 3d 115, 127 (D.D.C. 2018) (noting that substantive questions regarding proximate cause are "better addressed later, at the summary judgment stage, or perhaps after, with the benefit of a full record from discovery, including expert opinions"). Rather, at the motion to dismiss stage, where "'it is not absolutely clear that the defendant's negligence *could not* have been a proximate cause of the harm asserted by the plaintiff,' the Court 'must deny [the defendant's] motion to dismiss[.]'" *Heidi Aviation*, 573 F. Supp. 3d at 203 (second alteration in original) (quoting *Bradley v. NCAA*, 249 F. Supp. 3d 149, 168 (D.D.C. 2017)). The Court finds that is the case here; that is, it "cannot conclude that proximate cause does not exist" with respect to Defendants EWORA and IFG, which were either the general contractor, developer and/or builder of The Exchange. *Id.* In sum, Plaintiff has pleaded sufficient facts to plausibly allege negligence by both EWORA and IFG.

2.      Plaintiff has stated a claim for negligence against Defendant City
        Concrete

Defendant City Concrete takes issue principally with the fact that Plaintiff's allegations regarding its negligence rely in part on the representations of Defendants EWORA and IFG, which Plaintiff apparently obtained through discovery in this matter.  ECF No. 83 at 4.  Namely, the Amended Complaint alleges that, "[a]ccording to Defendants EWORA and IFG, '[t]o the extent that Plaintiff's Property was trespassed on and/or otherwise damaged, it was due to the acts or omissions of City Concrete.'"  ECF No. 50, ¶ 63 (alteration in original).  City Concrete calls that statement a "naked assertion" that is "insufficient as a matter of law."  ECF No. 83 at 4. At this point in the proceedings, however, the Court must take that statement as true.  The fact that it was allegedly made by entities who should have knowledge of who did what during construction as it relates to the alleged damage to Plaintiff's property—by virtue of their roles as either general contractor, developer and/or builder of The Exchange—makes that statement more compelling, not less.  City Concrete's real issue is that the statement is not specific enough in that it does not "indicated what work City Concrete did or did not do at the Property" or "how any work by City Concrete caused Plaintiff's alleged injury or damages."  ECF No. 83 at 4.  But Plaintiff's other allegations fill in those gaps.  The Amended Complaint alleges—again "according to Defendants EWORA and IFG"—that "the construction activities that occurred at Defendant Murdock's Property set forth in this Amended Complaint were 'developed, planned, and performed by City Concrete.'"  ECF No. 50, ¶ 62.  The Amended Complaint further alleges that City Concrete "completed all its work at The Exchange pursuant to its contract with EWORA," that it "provide[d] labor and material for the construction of The Exchange," and that the work it, or personnel hired by it, performed "entailed [the] excavation, drilling and other heavy construction activity" which damaged Plaintiff's property through vibrations and "reverberations of the earth," thereby allegedly

breaching the duty of care City Concrete owed Plaintiff, an adjoining landowner. *Id.*, ¶¶ 20, 59, 132.

Essentially Plaintiff is claiming that City Concrete negligently performed the work detailed in the Amended Complaint for which it also seeks to hold Defendants EWORA and IFG responsible, whether in the alternative or as joint tortfeasors. *See* Fed. R. Civ. P. 8(d)(3) (authorizing a party to "set out [two] or more statements of a claim or defense alternatively or hypothetically, either in a single count . . . or in separate ones"); *McNamara v. Picken,* 950 F. Supp. 2d 125, 128 (D.D.C. 2013) (a plaintiff "need not use particular words to plead in the alternative as long as it can be reasonably inferred that this is what [it was] doing" (quoting *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 536–37 (S.D.N.Y. 2002))). The Court found in Section II.B.1. that those allegations were sufficient to plausibly state a claim against Defendants EWORA and IFG. The Court makes the same finding with respect to Defendant City Concrete.

3.     Plaintiff has stated a claim for negligence against Defendants EWORA and IFG based on City Concrete's alleged negligence

EWORA and IFG assert that to the extent City Concrete's actions caused Plaintiff's damages, EWORA and IFG are not liable because City Concrete was an independent contractor. ECF No. 64-1 at 14. EWORA and IFG thus request that the Court dismiss Plaintiff's negligence counts against them for this independent reason. *Id.*

Under D.C. law, "the general rule" is that "an employer of an independent contractor is not liable for physical harm caused by the acts or omissions of the contractor." *Wilson v. Good Humor Corp.*, 757 F.2d 1293, 1301 (D.C. Cir. 1985); *see also Washington Area Metro. Transit Auth. v. L'Enfant Plaza Properties Inc.*, 448 A.2d 864, 868 (D.C. 1982). This rule "bristles with a series of long-standing exceptions," however, which fall within three general categories: (1) negligence of the employer in selecting, instructing, or supervising the contractor, (2) non-delegable duties of

the employer, arising out of some relation toward the public, and (3) work which is specially, peculiarly, or inherently dangerous. *See id*; *see also* Restatement (Second) of Agency, § 219 (1958). The inquiry as to the application of the independent contractor rule, and its exceptions, to a particular case is normally fact-specific and not generally suitable for resolution on a motion to dismiss. *Anderson v. Washington Metro. Area Transit Auth.*, No. 91-cv-646, 1991 WL 197024, at *2 (D.D.C. Sept. 18, 1991) (questions of whether subcontractors were independent contractors or were subject to exceptions were not resolvable on a motion to dismiss); *see Taylor v. Tellez*, 610 A.2d 252, 255 (D.C. 1992) (denying summary judgment where questions of fact precluded a finding on whether a contractor's work excavating the land adjacent to that of the plaintiff's fell under the exception for inherently dangerous work); *see also Howell*, 607 A.2d at 505 ("The existence of that danger and knowledge of it by the employer are normally questions of fact for the jury"). The Court finds that is the case here, and therefore denies Defendants' EWORA and IFG's motion to dismiss on that basis.

In this case, Plaintiff has alleged that the heavy construction work performed next door which damaged his property was inherently dangerous as it entailed excavation, drilling, and other heavy construction activity. *See* ECF No. 50, ¶ 90. The D.C. Circuit has explained that the "inherently dangerous" exception applies both to "generically hazardous activities—work that, regardless of the skill with which it is undertaken, poses a danger to others," as well as situations where the employer "has reason to know that his independent contractor is likely, under particular circumstances, to endanger others absent reasonable precautions" and "depending on the entire situation under examination." *Wilson*, 757 F.2d at 1303 (emphasis omitted) (quoting *Vale v. Bonnett,* 191 F.2d 334, 338 (D.C. Cir. 1951))*; see District of Columbia v. Howell*, 607 A.2d 501, 506 (D.C. 1992) (holding that a jury could reasonably find that "hands-on" chemistry activity making

sparklers with eight- and nine-year-old children was "inherently dangerous," thus making employer liable for independent contractor's negligence). Hence the doctrine extends to activities which may be dangerous in the circumstances under which they are performed. *See Wilson,* 757 F.2d at 1304–05. The existence of that danger and knowledge of it by the employer are normally questions of fact for the jury. *Levy,* 587 A.2d at 209; *L'Enfant Plaza Properties,* 448 A.2d at 868 ("Whether a particular kind of work is inherently dangerous is essentially a relative determination based upon the facts of the particular case."). Although Defendants' argument "eventually may be found to have merit,"[15] whether City Concrete falls under an exception to the independent contractor rule "cannot be determined on a motion to dismiss." *Anderson*, 1991 WL 197024, at *2; *see Taylor*, 610 A.2d at 255. Accordingly, Defendants EWORA and IFG's request to dismiss Plaintiff's claims of negligence against them based on application of that rule is denied.

### C.   Plaintiff Has Stated Claims for Trespass Against EWORA, IFG, and City Concrete

Under D.C. common law, "[t]respass . . . requires '(i) an unauthorized entry (ii) onto the plaintiff's property (iii) that interferes with the plaintiff's possessory interest.'" *Robinson v. Farley,* 264 F. Supp. 3d  154, 163 (D.D.C. 2017) (quoting *Council on Am.–Islamic Relations Action Network, Inc. v. Gaubatz,* 793 F. Supp. 2d 311, 344 (D.D.C. 2011)); *see also Turpin v. Ray*, 613 F. Supp. 3d 186, 215 (D.D.C. 2020) (same). Liability does not require a defendant to have "specific intent to invade unlawfully the property of another," *Nat'l Tel. Co-op. Ass'n v. Exxon Corp.*, 38 F. Supp. 2d 1, 12 (D.D.C. 1998) (quoting *Balt. Gas and Elec. Co. v. Flippo,* 684 A.2d 456, 461 (Md. App. 1996)); rather, a plaintiff must allege only that the defendant "intend[s] the act which

---

[15] The Court observes, however, that the D.C. Court of Appeals has affirmed a trial court decision, following a bench trial, that the excavation and heavy construction activities presented in the case fell within the "inherently dangerous" exception to the independent contractor rule. *See L'Enfant Plaza Properties, Inc*., 448 A.2d at 868 (affirming trial court finding that a "deep open-cut excavation directly under the city's water main" was inherently dangerous).

amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what [the defendant] willfully does," *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 93 (D.D.C. 2010) (quoting *Nat'l Tel.*, 38 F. Supp. 2d at 12).

The Amended Complaint alleges the following related to Plaintiff's claim of trespass. Plaintiff asserts that soil from under his house settled and "flow[ed] out from beneath the lagging" of the retaining wall built on Murdock Street's Property resulting in damage to Plaintiff's building, and that the "settlement of the building [on his property] may continue until the soil migrates" to fill the voids created by Defendant's excavation and the void space left behind the lagging.   ECF No. 50, ¶ 28.F, G.   He also claims that Defendants' "construction, excavation and drilling . . . caused reverberations of the earth or other elements connected to Plaintiff's Property or on Plaintiff's Property to vibrate," which in turn "caused the foundation of Plaintiff's Property to be defective, dislodged, cracked and unsafe." *Id.*, ¶ 20.   Thus, Plaintiff appears to allege two different theories of trespass: (1) that Defendant's alleged negligent excavation led to the movement of soil and settlement of Plaintiff's house, causing cracks and other damage; and (2) that reverberations and vibrations caused by Defendant's heavy construction, excavation and drilling led to "substantial and serious damage" to the property. *Id.*

The allegations related to Plaintiff's first theory—that the excavation at Murdock Street's Property resulted in damage caused by the movement of soil under the lagging of the retaining wall—do not state a claim for trespass.  At a minimum, District of Columbia law requires a trespass to involve an "*entry upon* someone else's real or personal property." *Nat'l Tel.,* 38 F. Supp. 2d at 12 (quoting *Balt. Gas and Elec. Co.*, 684 A.2d at 461 (emphasis added)); *see also, e.g., Turpin*, 613 F. Supp. 3d at 215 ("Trespass has three elements: '(i) an *unauthorized entry* (ii) *onto the plain-*

*tiff's property* (iii) that interferes with the plaintiff's possessory interest." (emphasis added) (quoting *Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 118 (D.D.C. 2018))).  Here, Plaintiff has not alleged an entry onto his property.  Instead, the allegations describe an exodus: soil from Plaintiff's property "flow[ed] out" from beneath the lagging on Murdock Street's Property and possibly moved "lateral[ly] to "close[] the void" between the lagging and the walls of the excavation.  ECF No. 50, ¶ 28.G.  As such, Plaintiff has not pleaded the required elements of a cause of action for trespass based on the movement of soil from his property to the adjacent property.[16]

Plaintiff's second theory—that Defendants committed the tort of trespass when vibrations from their allegedly negligent work on Murdock Street's Property caused damage to Plaintiff's Property—requires more discussion.  State courts are divided on whether intangible incursions onto property—vibrations, odors, particulate matter—can constitute a trespass.  Those courts taking the traditional view seek to "preserve the separate identities of trespass and nuisance."  *Adams v. Cleveland-Cliffs Iron Co.*, 602 N.W.2d 215, 221 (Mich. Ct. App. 1999).  Such courts generally

---

[16] Plaintiff also alleges that

> [u]nderpinning of the foundation wall was performed.  A photo shows that the existing building is supported on a continuous wall footing bearing on soil. Subsequent photos show that the excavation extended below the underpinning. Also, subsequent photos show that the excavation extended below the bottoms of soldier piles used for a soldier pile and lagging retaining wall.

ECF No. 50, ¶ 28.D.  "In underpinning, the foundation of an existing house, building or similar structure is supported or strengthened.  Reinforcement of the existing foundation, strengthening of the soil through the introduction of expanding filler or extension of the foundation will provide a greater surface area for distributing the load."  Chauncey Crail, *How Much Does Underpinning Foundation for a House Cost in 2023?*, Forbes.com (Feb. 8, 2023, 10:00 AM), https://perma.cc/3SWX-RJT6.  Defendant makes it clear that the underpinning work was among the "remedial measures which Defendant Murdock supposedly had taken to address the damage caused to Plaintiff's Property."  ECF No. 50, ¶ 26.  There is no allegation in the Amended Complaint that such measures were unauthorized; indeed, the most reasonable interpretation of the allegations in the Amended Complaint is that Murdock Street's "remedial attempts to address and rectify the damage to plaintiff's Property" were done with Plaintiff's consent.  ECF No. 50, ¶ 23.  The underpinning work cannot be the basis for a trespass claim.  *See Democracy Partners*, 285 F. Supp. 3d at 118 (noting that any entry must be unauthorized to constitute a trespass).  Moreover, to the extent that Plaintiff intends to assert such a claim based on the "excavation extend[ing] below the underpinning" and the "bottoms of the soldier piles," ECF No. 50, ¶ 28.D, there is insufficient information in the Amended Complaint to suggest that the excavation extended under Plaintiff's land.

reason that trespass requires an interference with the *right to exclusive possession* of land and intangible intrusions affect only the *use and enjoyment of the land*, which is protected by nuisance law.  So, for example, Michigan's intermediate appellate court has held that

> Recovery for trespass to land in Michigan is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession.  Once such an intrusion is proved, the tort has been established, and the plaintiff is presumptively entitled to at least nominal damages.  Where the possessor of land is menaced by noise, vibrations, or ambient dust, smoke, soot, or fumes, the possessory interest implicated is that of use and enjoyment, not exclusion, and the vehicle through which a plaintiff normally should seek a remedy is the doctrine of nuisance.  To prevail in nuisance, a possessor of land must prove significant harm resulting from the defendant's unreasonable interference with the use or enjoyment of the property.

*Adams*, 602 N.W.2d at 222 (emphasis omitted); *see also, e.g.*, *Barnes v. Birds Eye Foods*, No. 10-cv-541, 2011 WL 13362363, at *5–6 (W.D. Mich. 2011) (relying on *Adams* and stating that the plaintiff had failed to "muster a single Michigan decision suggesting that the Michigan Supreme Court would or should refuse to apply . . . [its] reasoning"); *Shrage v. Con Edison Co.*, 188 N.Y.S.3d 691, 694 (N.Y. App. Div. 2023) ("[C]ourts have precluded trespass claims where the entry or intrusion was intangible, such as the occurrence of vibrations, shading of a plaintiff's property, or a permeating odor or vapors of gasoline.  Generally, intangible intrusions, such as by noise, odor, or light alone, are treated as nuisances, not trespass [because] they interfere with nearby property owners' use and enjoyment of their land, not with their exclusive possession of it." (alterations in original) (internal citation omitted) (quoting *Ivory v. Int'l Bus. Machines Corp.*, 983 N.Y.S.2d 110, 129–30 (N.Y. App. Div. 2014)));  Other jurisdictions, however, follow the so-called "modern theory" of trespass—although its provenance may go as far back as the early 20th century, *see In re Worldcom, Inc.*, No. 06-cv-2134, 2010 WL 334980, at *5 (S.D.N.Y. Jan. 29, 2010) (citing *King v. Vicksburg Ry. & Light Co.*, 42 So. 204, 204–05 (Miss. 1906), for the proposition that "Mississippi law recognizes trespass caused by an intangible invasion only to the extent

that it causes physical damage to the property")—which recognizes that "invasions of intangible matter are actionable in trespass . . . if they cause substantial damage to the plaintiff's property, sufficient to be considered an infringement on the plaintiff's right to exclusive possession of the property." *John Larkin, Inc. v. Marceau*, 959 A.2d 551, 554 (Vt. 2008); *see also, e.g.*, *Davis v. Georgia-Pac. Corp.*, 445 P.2d 481, 483 (Or. 1968) ("The traditional concept that a trespass must be a direct intrusion by a tangible and visible object . . . has been abandoned in [Oregon]. . . .   [Rather,] 'we . . . define trespass as any intrusion which invades the possessor's protected interest in exclusive possession, whether that intrusion is by visible or invisible pieces of matter or by energy which can be measured only by the mathematical language of the physicist.'" (quoting *Martin v. Reynolds Metals Co.*, 32 P.2d 790, 794 (Or. 1960)).   That is, "[r]ecovery allowed in . . . trespass actions predicated upon noise, gas emissions, or vibration intrusions has, in each instance, been predic[a]ted upon the deposit of particulate matter upon the plaintiffs' property or on actual physical damage thereto." *Goldstein v. Exxon Mobil Corp.*, No. 17-cv-2477, 2023 WL 2667757, at *5 (C.D. Cal. Feb. 27, 2023) (ellipses in original) (quoting *Wilson v. Interlake Steel Co.*, 32 Cal.3d 229, 233 (1982)), *appeal dismissed sub nom. Navarro v. Exxon Mobil Corp.*, No. 23-55278, 2023 WL 4234263 (9th Cir. May 18, 2023); *see also, e.g.*, *Barton v. Ovintiv Mid-Continent, Inc.*, No. 20-cv-1098, 2021 WL 1566451, at *3 (W.D. Okla. Apr. 21, 2021) ("Oklahoma law allows a trespass claim for an intangible intrusion if a plaintiff pleads 'substantial damage to the property.'" (quoting *Beal v. Western Farmers Elec. Co-op*, 228 P.3d 538, 541 (Okla. Civ. App. 2009))); *Maddy v. Vulcan Materials Co.*, 737 F. Supp. 1528, 1539 (D. Kan. 1990) ("The modern trend departs from the traditional rule by finding that intangible invasions of the plaintiff's property may constitute a trespass.   However, the modern trend also departs from traditional trespass rules by refusing to infer damage as a matter of law, thereby eliminating the right to nominal damages.   The

plaintiff claiming trespass must prove that the intangible invasion resulted in substantial damages to the plaintiff's land."); *Smith v. Lockheed Propulsion Co.*, 247 Cal. App. 2d 774, 784 (Cal. Ct. App. 1967) ("Actionable trespass may be committed indirectly through concussions or vibrations.").

The D.C. Court of Appeals has not definitively ruled on the issue.[17]   However, as noted above, District of Columbia courts "may look to Maryland common law for guidance since 'the District of Columbia derives its common law from Maryland[.]'"  *Solid Rock Church, Disciples of Christ v. Friendship Pub. Charter Sch.*, 925 A.2d 554, 561 (D.C. 2007) (quoting *West v. United States*, 866 A.2d 74, 79 (D.C. 2005)); *see also, e.g.*, *Bloom v. PNC Bank, N.A.*, __ F. Supp. 3d __, __, 2023 WL 2681906, at *2 (D.D.C. 2023) ("[S]ince there is no District law on point, we should look to Maryland law first . . . because the District of Columbia derives its common law from that state and because District of Columbia courts have in the past looked to Maryland law for guidance." (ellipses in original) (quoting *Conseco Indus.*, *Ltd. v. Conforti & Eisele, Inc.*, 627 F.2d 312, 315–16 (D.C. Cir. 1980))).  Precedent from Maryland courts and precedent interpreting the law of Maryland both suggest that the State recognizes the modern theory allowing litigants to state a claim of trespass based on intangible incursions onto their property.  The Maryland Court of Appeals has acknowledged (albeit in dicta in a case involving an incursion of mud from one property

---

[17] Relying on *National Telephone*, City Concrete appears to argue that D.C. law does not recognize a trespass accomplished by an intangible intrusion, *see* ECF No. 87 at 4, but that case holds no such thing.  There, the plaintiff claimed that the defendant had trespassed when "gasoline contamination . . . migrated from Exxon's underground storage tanks to [National Telephone's] adjacent property."  *Nat'l Tel.*, 38 F. Supp. 2d at 3.  The court found that the defendant's actions of placing the tanks beneath its property lacked the requisite volition to hold it liable under a trespass theory.  *Id.* at 4, 13.  It reasoned that "the act that Exxon volitionally intended was to place [the tanks] beneath its property.  That act did not result in a trespass.  Moreover, with [National Telephone's] claim for negligent storage and operation of [the tanks] dismissed, there is no basis to hold Exxon liable for negligent trespass."  *Id.* at 13 (internal citation omitted).  That is, *National Telephone* addressed the intent requirement of a trespass claim.  It did not suggest that the tort of trespass must be based on a tangible intrusion onto another's land.

onto an adjacent property) that a litigant can state a claim for trespass "by an inanimate *or intangible* object" where the defendant has "some connection with or some control over that object." *Rockland Bleach & Dye Works Co. v. H.J. Williams Corp.*, 219 A.2d 48, 54 (Md. 1966) (emphasis added).  Maryland's intermediate appellate court more recently addressed a claim for trespass based on the incursion of cigarette smoke from a townhouse into another—an intangible intrusion—under both the traditional theory and the modern theory, ultimately affirming its dismissal because the plaintiff had argued neither that there was an invasion of the property by tangible matter nor that the property had been damaged by the intangible matter.  *See Schuman v. Greenbelt Homes, Inc.*, 69 A.3d 512, 526 (Md. Ct. Spec. App. 2013).  In *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, a court in Southern District of New York reviewed Maryland's law of trespass and rejected as "hyper-technical" the defendant's argument that the state required a "tangible invasion" of property rather than mere "penetration by smoke, dust, soot, or other micro-particles."  457 F. Supp. 2d 298, 313–16 (S.D.N.Y. 2006) (first quoting *Exxon Corp. v. Yarema*, 516 A.2d 990, 1004 (Md. Ct. Spec. App.1986), then quoting the record).

This Court similarly finds that the District of Columbia would follow the "modern" theory and recognize that a trespass can occur where intangible invasions, such as "noise, gas emissions, or vibration intrusions," have caused serious "physical damage" to property.  *Goldstein*, 2023 WL 2667757, at *5.  Plaintiff's Amended Complaint sufficiently alleges that vibrations caused significant damage to his property: "The construction, excavation and drilling on Defendant Murdock's Property . . . caused reverberations of the earth or other elements connected to Plaintiff's Property or on Plaintiff's Property to vibrate.  Defendant Murdock's actions directly caused substantial and serious damage to Plaintiff's Property."  ECF No. 50, ¶ 20.  Indeed, Plaintiff alleges that the damage is so great that the structure "has become . . . unsafe . . . and it is currently uninhabitable." *Id.*,

¶ 30.

Plaintiff's allegations also meet the other requirements for a cause of action for trespass. "[L]iability for trespass will not be imposed unless the trespass was intentional, the result of reck-lessness, negligence, or the result of extra hazardous activity." *Goldstein*, 2023 WL 2667757, at *5 (quoting *Wilson v. Interlake Steel Co.*, 649 P.2d 922, 924 (Cal. 1982); *see also* Restatement (Second) of Torts, §§ 158 ("One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally . . . enters land in the possession of the other . . . ."), 165 ("One who recklessly or negligently, or as a result of an abnormally dangerous activity,  enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, but only if, his presence or the presence of the thing or the third person upon the land causes harm to the land . . . .").  As noted above, the standard for an intentional trespass is met where the defendant "intend[s] the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the imme-diate or inevitable consequence of what [the defendant] willfully does." *Acosta Orellana*, 711 F. Supp. 2d at 93 (quoting *Nat'l Tel.*, 38 F. Supp. 2d at 12).  The Amended Complaint sufficiently alleges that Defendants intentionally engaged in the excavation and drilling that Plaintiff claims caused the vibrations that damaged his property, *see* ECF No. 50, ¶¶ 20 ("The construction, exca-vation and drilling on Defendant Murdock's Property [was] at Defendant Murdock's direction and ordered by Defendant Murdock . . . ."), 50 ("Defendants IFG and EWORA's work at Defendant Murdock's Property included the construction necessary to excavate the land . . . ."), 60 ("City Concrete performed construction work at Defendant Murdock's Property."); the intrusion of those vibrations onto his property was, if not an "inevitable" consequence of the work, certainly an "im-mediate" one.   *Acosta Orellana*, 711 F. Supp. 2d at 93.  But even if there were no intentional

trespass, Plaintiff has alleged that the excavation and drilling were negligently performed and, as discussed above, those claims survive Defendants' motions to dismiss.  Therefore, he has stated a claim for trespass under a negligence theory.  Defendants' motions to dismiss the counts of trespass are denied.

### D.    Plaintiff's Requests for Injunctive Relief

Defendants EWORA and IFG have moved under Rule 12(f) to strike Plaintiff's standalone claims for injunctive relief (Counts VI and IX) and requests for injunctions in his prayer for relief. ECF No. 64-1 at 20–24.  City Concrete seeks the same for itself—dismissal of the standalone injunction claim against it (Count XII) and of Plaintiff's requests for injunctive relief in his claim for relief—but under Rule 12(b)(6).  ECF No. 83 at 8–10.  The Court will grant Defendants' motions as to Amended Complaint standalone counts for injunctive relief (Counts VI, IX, and XII), but deny them without prejudice as to Plaintiff's requests for injunction in his prayer for relief.

When faced with a request to find that a complaint's demand for relief is legally insufficient, courts have utilized both Rule 12(f) and Rule 12(b)(6).  Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  That said, "'absent a strong reason for so doing,' courts will generally 'not tamper with pleadings'" pursuant to Rule 12(f).  *Bey v. Wash. Metro. Area Transit Auth.*, 341 F. Supp. 3d 1, 11 (D.D.C. 2018) (quoting *Nwachukwu v. Rooney*, 362 F. Supp. 2d 183, 190 (D.D.C. 2005)). Motions to strike under Rule 12(f) are typically denied "unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action."  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, Nos. 19-cv-3379, *et al.*, 2020 WL 5016922, at *10 (D.D.C. Aug. 25, 2020) (quoting 5C Wright & Miller Fed. Prac. & Proc. § 1382

(3d ed. 2020)).  Specifically with respect to motions to strike a prayer for relief, courts have found such requests premature if such relief is generally provided for by law.  *See Simba v. Fenty*, 754 F. Supp. 2d 19, 23 (D.D.C. 2010) (denying a motion to strike a prayer for injunctive relief because Title VII provides for injunctive relief); *see also Smith v. Washington Post Co*., 962 F. Supp. 2d 79, 84–85 (D.D.C. 2013) (denying a motion to strike a prayer for injunctive relief where it was not clear from the face of the complaint that the plaintiff lacked standing to pursue injunctive relief); *United States v. Retta*, 840 F. Supp. 2d 262, 269 (D.D.C. 2012) (denying a motion to strike a request for liquidated damages where the statute provided for recovery of liquidated damages).

Other courts have found that when a party requests dismissal of all or part of a complaint based on legal insufficiency, such a request is properly brought under Rule 12(b)(6), not Rule 12(f).  *See Logan v. Jones Lang LaSalle Americas, Inc*., No. 18-cv-2278, 2019 WL 1960208, at *4 (D.D.C. May 2, 2019) ("[Rule 12(f)] is not 'a proper way to procure the dismissal of all or a part of a complaint based on the legal insufficiency of the pleading.'" (alteration in original) (quoting *Koch v. White*, 134 F. Supp. 3d 158, 164 (D.D.C. 2015))); *see also Strojnik v. Evans Hotels, LLC*, No. 19-cv-650, 2019 WL 2918176, at *3 (S.D. Cal. July 8, 2019) ("A Rule 12(f) motion does not provide a basis to strike a request for injunctive relief because such relief directly relates to the merits of the underlying claims.").  Nevertheless, even under Rule 12(b)(6), courts have found that when a party challenges the "substantive basis" for a request for injunctive relief—that is, "the propriety of any particular remedy"—such a challenge is "premature." *Base One Techs*., *Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015) ("Insofar as Defendants attack the substantive basis for such relief, it is premature at this stage to consider the propriety of any particular remedy.").  Rather, as stated in the Restatement (Second) of Torts, "[i]n the usual case, the factors of appro-

priateness [of injunctive relief] . . . are appraised as of the time of the order or judgment." Restatement (Second) of Torts § 935 (1979). In considering whether to grant or deny an injunction, a "court . . . comes to grips with the actualities of the situation" at the conclusion of the case, "including those that have developed pending suit[.]" *Id.* cmt. a; *see also Johnson v. Mao*, 174 F. Supp. 3d 500, 524 (D.D.C. 2016) ("[A]ny requests for injunctive relief will be addressed, if necessary, as a remedy at the conclusion of the case."); *Shume v. Pearson Educ. Inc*., 306 F. Supp. 3d 117, 130 (D.D.C. 2018) (dismissing standalone claims for equitable or declaratory relief but holding that if the plaintiff "believes she is entitled" to such relief under her remaining claims, "she may request it at the appropriate time").

Applying that case law here, the Court will grant Defendants' requests to dismiss the standalone claims seeking injunctive relief—Counts VI, IX, and XII—because those counts are not causes of action but merely state a form of relief. *See Base One*, 78 F. Supp. 3d at 199; *see also Weir v. United States*, 518 F. Supp. 3d 1, 11 (D.D.C. 2021 ("Count Eleven is only a request for declaratory and injunctive relief; it is not a separate cause of action. Because [the count] does not include a cause of action, the Court will dismiss it." (internal citations omitted)). Moving to Defendants' challenges to Plaintiff's prayer for injunctive relief, the undersigned finds that under either of the approaches used by the courts in this Circuit, striking or dismissing Plaintiff's requests for injunctive relief is not appropriate at this early procedural stage. Under Rule 12(f), Defendants have not shown that Plaintiff's requests for relief are "redundant, immaterial, impertinent, or scandalous" warranting this extraordinary measure. *Nwachukwu*, 216 F.R.D. at 178. Nor have Defendants shown that Plaintiff's prayer for relief "may cause some form of significant prejudice to one or more of the parties to the action." *In re Rail Freight*, No. 19-cv-03379, 2020 WL 5016922, at *10. Moreover, injunctive relief has been historically available in addressing torts against land,

subject to factors including the adequacy of other remedies, a plaintiff's laches or unclean hands, relative hardship to the defendant, interests of third persons, and practicability of framing and enforcing an order or judgment.  *See* Restatement (Second) of Torts §§ 933, 936, 937 cmt.a (1979). Accordingly, Defendants' request to "strike [Plaintiff's] prayer for relief is premature" and is denied without prejudice.  *Simba*, 754 F. Supp. 2d at 23.  Defendants' request fares no better under a Rule 12(b)(6) analysis.  Because they challenge the "substantive basis" of Plaintiff's many requests for injunctive relief, their challenge is "premature."  *Base One Techs.*, 78 F. Supp. 3d at 199.  Accordingly, Defendants' motions, whether characterized as motions to dismiss or  motions to strike, are granted in part as to Counts VI, IX, and XII of the Amended Complaint, but are denied as premature with respect to the prayer for relief.  Plaintiff may seek injunctive relief if he prevails on his claims.  Whether his requests for injunctive relief will succeed is an issue for another day.

## IV.   CONCLUSION

For the foregoing reasons, Defendants EWORA and IFG's motion, ECF No. 64, and City Concrete's motion, ECF No. 83, are both **GRANTED IN PART** and **DENIED IN PART**, as stated above.  Those Defendants are hereby **ORDERED** to file an Answer to Plaintiff's Amended Complaint on or before August 4, 2023, *see* Fed. R. Civ. P. 12(a)(4)(A)**.**

Date:  July 21, 2023

                                                     _____

                                                     G. MICHAEL HARVEY
                                                     UNITED STATES MAGISTRATE JUDGE