# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES MATIELLA,
      Plaintiff,
      vs.
MURDOCK STREET LLC, and
EWORA, L.L.C. and
IFG GROUP, LLC,
CITY CONCRETE CORPORATION, and
LUIS CONSTRUCTION,
      Defendants.

EWORA, L.L.C. and
IFG GROUP, LLC,
      Counterclaimants,
      vs.
CHARLES MATIELLA,
      Counter-Defendant.

EWORA, L.L.C. and
IFG GROUP, LLC,
      Cross-claimants,
      vs.
CITY CONCRETE CORPORATION,
      Crossclaim-Defendant.

MURDOCK STREET LLC,
      Cross-claimant,
      vs.
EWORA, L.L.C. and
IFG GROUP, LLC, and
CITY CONCRETE CORPORATION, and
LUIS CONSTRUCTION, INC.,
      Crossclaim-Defendants.

Civil Action No. 1:21-cv-02112-GMH

## SECOND AMENDED COMPLAINT

Plaintiff Charles Matiella, through counsel, files this Second Amended Complaint for

$2,298,596 in principal damages, plus punitive damages, costs, and attorneys' fees to be paid by

Defendants Murdock Street LLC ("Murdock"), EWORA, L.L.C. ("EWORA"), IFG Group, LLC ("IFG"), City Concrete Corporation ("City Concrete"), and Luis Construction Inc. ("Luis Construction").

## PARTIES

1. Plaintiff is a natural person, a resident of the District of Columbia, and the record owner of real property located at 770 Princeton Place NW, Apt. B, Washington, DC 20010.

2. Defendant Murdock is a Virginia limited liability company with a principal address of 14000 Thunderbolt Pl, Ste. R, Chantilly, VA 20151 in Loudoun County, VA.

3. Defendant EWORA is a Virginia limited liability company with a principal address of 1311 Mayflower Dr., McLean, VA, 22101 in Fairfax County, VA.

4. Defendant IFG is a Virginia limited liability company with a principal address of 1311 Mayflower Dr., McLean, VA, 22101 in Fairfax County, VA.

5. Defendant City Concrete is a Virginia stock corporation with a principal address of 9284 Corporate Cir., Manassas, VA, 20110 in Fairfax County, VA.

6. Defendant Luis Construction is a currently inactive Virginia stock corporation with a principal address of 501 Williamsburg Rd., Sterling, VA 20164 in Loudon County, Virginia.

## JURISDICTION AND VENUE

7. There is complete diversity between the parties pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of the District of Columbia and all Defendants are citizens of Virginia.

8. Defendant Murdock is a citizen of Virginia, inclusive of all its members. Defendant Murdock has one member, Ercan John Keskin, who is a Virginia resident.

9. Defendants EWORA and IFG are citizens of Virginia, inclusive of all their members. Upon information and belief, Defendants EWORA and IFG are both owned and operated by the same sole member, Fatih Guner, who is a Virginia resident.

10. Defendant City Concrete is a corporation and resident of Virginia.

11. Defendant Luis Construction is a corporation and resident of Virginia.

12. The amount in controversy requirements of 28 U.S.C. § 1332 are satisfied because more than $75,000 is at issue, exclusive of costs, interest and attorneys' fees.

13. This action properly lies in the District of Columbia pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims in this action occurred within this District.

14. The real properties at issue in this case are within the District of Columbia.

15. Venue is appropriate in this court.

## FACTS COMMON TO ALL ALLEGATIONS

16. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set out herein.

17. At all relevant times, Plaintiff has been the owner of a 2,784 square foot multi-family rowhouse located at 770 Princeton Place NW, Apt. B, Washington, DC 20010 ("Plaintiff's Property").

18. The building on Plaintiff's Property sits atop a 1,731 square foot tract of land.

19. Directly adjacent to Plaintiff's Property, to the west, is a 4,699 square foot tract of land with an address of 3619 Georgia Avenue NW, Washington, DC 20018 which has been owned at all relevant times by Defendant Murdock ("Defendant Murdock's Property").

3

20.    In 2019, 2020 and into 2021, construction had been in progress at Defendant Murdock's Property.[1] The construction included excavation, heavy drilling and other major construction activity.

21.    As of May 2021, Defendant Murdock had constructed a new, six-story, 27-unit condominium building with ground floor retail on Defendant Murdock's Property. The building which Defendant Murdock built on Defendant Murdock's Property is named The Exchange. As of May 2021, at least one unit in The Exchange had apparently been sold. The Exchange's website is attached as Ex. A.

22.    During Defendant Murdock's construction of The Exchange on Defendant Murdock's Property, Defendant Murdock or personnel hired by Defendant Murdock, under Defendant Murdock's direction, caused the foundation of Plaintiff's Property to be defective, dislodged, cracked and unsafe. The construction, excavation and drilling on Defendant Murdock's Property, at Defendant Murdock's direction and ordered by Defendant Murdock, caused reverberations of the earth or other elements connected to Plaintiff's Property or on Plaintiff's Property to vibrate. Defendant Murdock's actions directly caused substantial and serious damage to Plaintiff's Property.

23.    The heavy excavation, drilling and other major construction activity involved in developing The Exchange on Defendant Murdock's Property directly caused the damage to Plaintiff's Property.

---

[1] Plaintiff expressly reserves all rights to amend the Second Amended Complaint to include additional co-defendants as necessary. This includes, but is not limited to, Defendant's architect, engineer, and all other unnamed subcontractors.

4

24.     Defendant Murdock failed to protect Plaintiff from the damage to Plaintiff's Property caused by the actions undertaken by Defendant Murdock on Defendant Murdock's Property.

25.     Somewhat to Defendant Murdock's credit, Defendant Murdock admitted that Defendant Murdock's actions caused the damage to Plaintiff's Property. Over the past two years, while acknowledging the damage that Defendant Murdock caused to Plaintiff's Property, Defendant Murdock made remedial attempts to address and rectify the damage to Plaintiff's Property. However, Defendant Murdock's attempts to address and rectify the damage to Plaintiff's Property were insufficient.

26.     Due to Defendant Murdock's continued failure to remedy the problems and the severe damage to Plaintiff's Property, Plaintiff lodged a formal Amended Complaint against Defendant Murdock with the Illegal Construction Unit of the District of Columbia Department of Consumer & Regulatory Affairs ("DCRA").

27.     On May 7, 2021, the Illegal Construction Unit of the DCRA held a meeting to address the protection of Plaintiff's Property.

28.     On May 13, 2021, a report was issued detailing the insufficient remedial measures which Defendant Murdock supposedly had taken to address the damage caused to Plaintiff's Property:

A.     Underpinning the front and courtyard walls to arrest and fix the cracks on the walls of Plaintiff's Property;

B.     Replacing the front stairs of Plaintiff's Property and areas of the front yard;

C.     Replacing the displaced rear deck post footing and restoration of the rear yard, however, this was not completed;

D.      Replacing or fixing the floor cracks observed in the basement's finished floor, however, Defendant Murdock failed to initiate this aspect of its attempts at remediation;

E.      Monitoring the existing building façade to ensure no settling is occurring through the installation of a monitoring device in September 2020; and,

F.      Replacing the cracked façade brick construction.

29.      Defendant Murdock persisted in failing to effectively remedy the damage to Plaintiff's Property and Defendant Murdock's attempts at remediation were drastically insufficient.

30.      At Plaintiff's insistence, a structural engineer evaluated the problems that Defendant Murdock caused at Plaintiff's Property. In the structural engineer's June 7, 2021 report, the structural engineer made the following findings:

Subject: 770 Princeton PL NW, Unit B, Washington, D.C. 20010 (Plaintiff's Property)

A.      An excavation was made immediately adjacent to the existing townhouse. As the excavation progressed a soldier pile and lagging retaining wall was installed. The soldier piles were H-piles of undetermined length and the lagging consisted of wood planks. The soldier piles were installed in pre-drilled holes with concrete placed in the annular space around the H-piles.

B.      A portion of the masonry (brick) foundation wall appears to have fallen out from beneath the townhouse as the excavation progressed.

C.      Settlement of the floor was indicated by light beneath an entry door at the threshold.

D.      Underpinning of the foundation wall was performed. A photo shows that the existing building is supported on a continuous wall footing bearing on soil. Subsequent photos show that the excavation extended below the underpinning. Also, subsequent photos show that the excavation extended below the bottoms of soldier piles used for a soldier pile and lagging retaining wall.

E.      The depth of the excavation is estimated to be 25-feet based on the heights of the personnel shown in the photos. Water was seen in the excavation, but the source is unknown.

6

F.      The soldier pile and lagging retaining wall had no walers, rakers or cross-bracing. The depth of the soldier piles to provide adequate lateral passive earth resistance could not be determined from the photographs. However, the photos did not indicate backfill in the space behind lagging between the walls of the excavation. The backfill closes the void and prevents the lateral movement of the soil into the void space. The lateral movement of the subsoil results in settlement of the structure. Also noted, the soil settled from beneath the sidewalk and the brick planter wall separated from the walk at the entryway.

G.      Another photo shows soil flowing out from beneath the lagging. Other photos show cracks in the masonry bearing walls and settling of a support for the deck. Also, there are cracks around doorways and at lintels.

H.      Photos show interior walls and ceiling with cracks and plastic sheeting above the interior stairs. The plastic sheeting may be indicative of water dripping from the ceiling.

I.       Water dripping from the ceiling may be due to roof leakage. Any roof leakage occurring may be caused by a tear in the membrane roofing material due to settlement and/or outward movement of the building wall.

J.       Some brick restoration work was performed. However, the photos indicated that the front wall of the residence was braced during the restoration. The reason for the bracing is unknown. Additionally, a new entry walk and stairs were provided.

K.      In the opinion of the undersigned, settlement of the building may continue until the soil migrates to fill-in the voids created by the excavation and void space behind the lagging. Continued settlement will result in further structural damage to the building and compromise its structural integrity. Movement of the bearing walls may result in the joists slipping out of their pockets and the floors or roof collapsing. Also, further settlement may adversely affect underground utilities servicing the building.

L.      The building should be closely monitored for further settlement/movement and the underground utilities should be verified for continuity.

The engineer's report is attached as Ex. B.

31.     Despite the DCRA action, Defendant Murdock persisted in failing to fund a meaningful evaluation of the damage to Plaintiff's Property that Defendant Murdock caused.

32.     Plaintiff reasonably believes that Plaintiff's Property has become an unsafe structure and it is currently uninhabitable.

33.     Due to evacuation for safety reasons, due to the damage that Defendant Murdock caused, Plaintiff has lost the use of Plaintiff's Property.

34.     A composite set of photographs of Plaintiff's Property is attached as Ex. C.

35.     Plaintiff does not feel safe living in Plaintiff's Property or for Plaintiff's Property to be inhabited at all.

36.     Plaintiff reasonably believes that the building on Plaintiff's Property will have to be knocked down or razed to ensure the safety and protection of human life as well as property.

37.     Defendant Murdock should be ordered to pay for the demolition and full rebuild of Plaintiff's Property.

38.     Defendant Murdock should be ordered to pay for the loss of use sustained by Plaintiff as to Plaintiff's Property. Upon information and belief, for reasons unknown, Defendant Murdock has failed to properly file an insurance claim which would likely cover the damages to Plaintiff's Property.

39.     Defendant Murdock, or Defendant Murdock's insurer, should be ordered to pay for all damages sustained by Plaintiff including, the mounting out of pocket costs and expenses incurred by Plaintiff as a result of the damage that Defendant Murdock caused to Plaintiff's Property, which includes all litigation-related costs and reasonable attorneys' fees.

40.     District of Columbia Mun. Reg. tit. 12 § A 3307.1 provides as follows:

> Adjoining public and private property shall be protected from damage during construction alteration, repair, demolition or raze of a premises at the expense of the person causing the work. Protection must be provided for lots, and for all elements of a building or other structure, including, but not limited to, footings, foundations, party walls, chimneys, vents, skylights, porches, decks, roofs, roof outlets, roof structures and flashing.

8

Provisions shall be made to control water runoff and erosion during construction or demolition or raze activities.

41. Defendant Murdock violated the above-referenced regulations.

42. Defendant Murdock failed to remedy the dangerous conditions that Defendant Murdock caused to Plaintiff's Property.

43. The work performed on Defendant Murdock's Property is inherently dangerous, as the subject work entails excavation, drilling and other heavy construction activity with heavy equipment.

44. Because the work performed by Defendant Murdock in building The Exchange is inherently dangerous, under the specific factual circumstances, Defendant Murdock's duty of care owed to Plaintiff was non-delegable.

45. Plaintiff adhered to and satisfied all notice and cure requirements of Section 3307, or such requirements were waived.

46. The market value of Plaintiff's Property is approximately $1,000,000 with a safe and structurally-sound building. In the current condition, however, Defendant Murdock's actions have decimated the value of Plaintiff's Property, rendering it virtually non-transferrable.

47. Plaintiff's Property has been rendered unsafe, uninhabitable, unusable and unsaleable. Plaintiff has been wrongly subjected to risk and potential liability to third-parties as a result of the dangerous conditions caused by Defendant Murdock.

### Negligence of General Contractors EWORA and IFG

48. Defendant Murdock used Defendants EWORA and IFG as the general contractors for the construction at Defendant Murdock's Property.

49. In 2017, Defendant Murdock engaged Defendant IFG to develop the condominium complex at The Exchange.

9

50.     In 2017, Defendant Murdock and/or Defendant IFG engaged Defendant EWORA to construct The Exchange. Defendant Murdock refers to EWORA as the "builder." Defendant IFG claims IFG retained EWORA as "to manage the construction activities" at The Exchange.

51.     Both EWORA and IFG are owned and operated by the same principal, Fatih Gunner and are sister companies.

52.     Defendants IFG and EWORA's work at Defendant Murdock's Property included the construction necessary to excavate the land upon which The Exchange would be built.

53.     At all relevant times, Defendants EWORA and IFG were responsible for the construction and development of The Exchange.

54.     Moreover, Defendants EWORA and IFG interfaced with the DCRA regarding issues at Plaintiff's Property and The Exchange.

55.     Together with Defendant Murdock, Defendants EWORA and IFG were involved in and responsible for addressing the numerous Stop Work Orders issued by DCRA regarding the construction work at The Exchange.

56.     Together with Defendant Murdock, Defendants EWORA and IFG were involved in and responsible for addressing the alleged issues at the Plaintiff's Property as it pertains to the DCRA.

57.     Together with Defendant Murdock, Defendants EWORA and IFG were involved in and responsible for addressing the DCRA's May 13, 2021 report detailing remedial measures necessary to address the damages at Plaintiff's Property.

58.     Together with Defendant Murdock, Defendants EWORA and IFG were involved in and responsible for addressing various Visual Monitoring Reports to observe any existing pre-construction and structural damages at the Plaintiff's Property.

59.     Together with Defendant Murdock, Defendants EWORA and IFG were involved in and responsible for submitting plans to the DCRA to obtain the construction permit for Defendant Murdock's Property.

60.     Defendant Murdock has asserted that Defendants EWORA and IFG are directly responsible for any damages to Plaintiff's Property caused by the construction of The Exchange.

## Negligence of Subcontractor City Concrete

61.     On or about October 23, 2017, Defendant EWORA entered into a contract with City Concrete for City Concrete to provide labor and material for the construction of The Exchange at Defendant Murdock's Property.

62.     Thereafter, City Concrete performed construction work at Defendant Murdock's Property.

63.     City Concrete purportedly completed all its work at The Exchange, pursuant to its contract with EWORA and in furtherance of the development of the property for The Exchange.

64.     According to Defendants EWORA and IFG, the construction activities that occurred at Defendant Murdock's Property set forth in this Amended Complaint were "developed, planned, and performed by City Concrete."

65.     According to Defendants EWORA and IFG, "[t]o the extent that Plaintiff's Property was trespassed on and/or otherwise damaged, it was due to the acts or omissions of City Concrete."

66.     Accordingly, along with Defendants Murdock, EWORA and IFG, Defendant City Concrete is responsible for Plaintiff's damages.

11

**Negligence of Subcontractor Luis Construction**

67.     Defendant EWORA asked City Concrete to find a contractor to provide shoring for the construction of The Exchange.

68.     Defendant City Concrete thereafter contracted with Luis Construction to perform shoring work for the construction of The Exchange.

69.     Defendant Luis Construction performed work necessary to construct the soldier pile and lagging retaining walls to shore the earth exposed by the excavation on the construction of The Exchange.

70.     Accordingly, to the extent that any shoring work, or any demolition, excavation, underpinning, or construction of The Exchange performed by Luis Construction caused Plaintiff's damages, Defendant Luis Construction is responsible.

71.     Along with Defendants Murdock, EWORA, IFG, and City Concrete, Defendant Luis Construction is jointly and severally liable for Plaintiff's damages.

**Plaintiff's Principal Damages and Request for Punitive Damages**

72.     After the demolition of the prior building on Defendant Murdock's Property began, Plaintiff started to observe damage to Plaintiff's Property.

73.     Plaintiff promptly notified the Defendant contractors on Defendant Murdock's Property of the damage caused by the demolition and excavation activity at the adjacent Defendant Murdock's Property. Defendant Murdock was made aware as well of this issue.

74.     Yet, the demolition of the adjacent old structure on Defendant Murdock's Property, the excavation work, the underpinning, and the preparations for and construction of the foundation of The Exchange on Defendant Murdock's Property continued without proper

12

modification of the means and methods of construction otherwise necessary to prevent damage to Plaintiff's Property.

75.     Since approximately 1988, the practice of performing pre-construction surveys (also known as "crack and damage" studies) on structures adjacent to planned construction has become commonplace.

76.     Since 1988, the standard custom and practice in the construction industry is to perform a crack and damage survey on any adjacent structures, and otherwise to carefully manage the demolition of the old structure and the design/build of the new structure to avoid excessive vibration causing damages to the adjacent structure.

77.     Defendants failed to perform a pre-construction survey regarding the townhomes on Plaintiff's Property prior to the demolition of the old structure on Defendant Murdock's Property.

78.     Defendants not only knew about the potential damages to Plaintiff's Property but were made aware of actual damage beginning to manifest on Plaintiff's Property. Yet, Defendants knowingly failed to perform a crack and damage survey, knowingly failed to carefully manage the demolition of the old structure on Defendant Murdock's Property, and knowingly failed to carefully manage the design and build of The Exchange in order to avoid vibration and other damages to Plaintiff's adjacent structure.

79.     The damage to Plaintiff's Property is significant, major, and structural in nature. That damage began in September 2017 and Defendants Murdock, EWORA and IFG were placed on notice yet they knowingly failed to protect Plaintiff's rights and safety.

80.     The construction of The Exchange and the installation of underpinning for The Exchange encroached on Plaintiff's Property and now occupies some of the property lines of Plaintiff's Property.

81.     The damage to Plaintiff's Property is significant, major, and structural in nature.

82.     Even after Defendants Murdock, EWORA and IFG had notice that damage began to occur to Plaintiff's Property in September 2017, neither Murdock nor EWORA, or IFG took any actions to assure that the continued construction on Defendant Murdock's Property would be performed in a manner to avoid significant structural damage to Plaintiff's Property.

83.     Defendants Murdock, EWORA, IFG, City Concrete and Luis Construction knew the demolition work and the excavation work was causing damage to Plaintiff's Property, yet they all knowingly failed to make changes to the means and methods of the continuing excavation and construction of the foundation (including shoring/underpinning) of The Exchange.

84.     As a result of the actions and conduct of Defendants, who knowingly caused damages to Plaintiff's Property, Plaintiff's Property is beyond repair.

85.     The structure on Plaintiff's Property will need to be removed and replaced in kind, in accordance with current codes.

86.     Defendants Murdock, EWORA, IFG, City Concrete and Luis Construction not only caused initial damage to Plaintiff's Property, they also failed to prevent additional damage to Plaintiff's Property, and then willfully and fragrantly continued to cause damage to Plaintiff's Property.

87.     As recently as September 20, 2023, Plaintiff's Property continues to suffer significant structural damage. The damage is not cosmetic and cannot be repaired.

88. Defendants should be responsible for the replacement in-kind of Plaintiff's Property.

89. A total removal of the townhomes on Plaintiff's Property is the only practical and logical solution because the two townhomes continue to "settle" as a result of the Murdock building construction.

90. The damage to Plaintiff's Property totals at least $ 2,298,596. The buildings on Plaintiff's Property cannot be effectively repaired, and the buildings will continue to settle because of the adjacent construction of The Exchange on Defendant Murdock's Property.

91. The costs for the replacement of the damaged buildings on Plaintiff's Property include the following:

| | | |
|---|---|---|
| A. | General Contractor Construction Costs | $1,942,631 |
| B. | Unforeseen Excavation/Foundation Issues | $180,000 |
| C. | Construction Administrative Coordination Costs | $175,966 |
| | **Total Cost to Replace Damaged Buildings:** | **$2,298,596** |

92. With knowledge that significant structural damage was occurring to Plaintiff's Property, Defendants knowingly and willfully continued to perform inherently dangerous construction activities on The Exchange without protecting Plaintiff's Property from severe structural damage. Defendants acted with a willful disregard for Plaintiff's rights. Accordingly, punitive damages are appropriate.

93. Plaintiff retained counsel and agreed to pay its counsel's reasonable attorneys' fees.

## COUNT I – NEGLIGENCE

### Against Defendant Murdock

94. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-93 as if fully set out herein.

95. Defendant Murdock owed a duty of care to Plaintiff.

96. Defendant Murdock owed Plaintiff a duty, *inter alia*, to protect Plaintiff because Plaintiff is the owner of adjacent property. Defendant Murdock had a duty to exercise common prudence in maintaining Defendant Murdock's Property in such a way as to prevent injury to Plaintiff as an owner of adjacent property.

97. The work performed by Defendant Murdock or the personnel hired by Defendant Murdock on Defendant Murdock's Property, is inherently dangerous, as the subject work entailed excavation, drilling and other heavy construction activity. Accordingly, Defendant Murdock's duty of care was non-delegable to any third-party.

98. Defendant Murdock breached its duty of care to Plaintiff.

99. Defendant Murdock's breach of duty proximately caused substantial damages to Plaintiff.

100. Plaintiff's principal damages are approximately $2,298,596. Plaintiff also suffered loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

101. Additionally, as set forth above, punitive damages should be assessed against Defendant Murdock due to Defendant Murdock's willful disregard for Plaintiff's rights and safety.

## COUNT II – TRESPASS

### Against Defendant Murdock

102. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-93 as if fully set out herein.

103. Defendant Murdock caused or committed a physical invasion or unauthorized entry of a person or thing onto Plaintiff's Property as described herein.

104. The physical invasion or unauthorized entry resulted in interference with Plaintiff's possessory interest in Plaintiff's Property.

105. Defendant Murdock had at least some control over the inanimate object or objects which invaded Plaintiff's Property.

106. As a result of Defendant Murdock's trespass, Plaintiff was severely damaged.

107. Plaintiff's principal damages are approximately $2,298,596. Plaintiff also suffered loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

108. Additionally, as set forth above, punitive damages should be assessed against Defendant Murdock due to Defendant Murdock's willful disregard for Plaintiff's rights and safety.

## COUNT III – NEGLIGENCE

### Against Defendant EWORA

109. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-93 as if fully set out herein.

110. Defendant EWORA owed a duty of care to Plaintiff.

17

111.    Defendant EWORA owed Plaintiff a duty, *inter alia*, to protect Plaintiff because Plaintiff is the owner of adjacent property. Defendant EWORA had a duty to exercise common prudence in constructing and developing Defendant Murdock's Property in such a way as to prevent injury to Plaintiff as an owner of adjacent property.

112.    The work performed by Defendant EWORA or the personnel hired by Defendant EWORA on Defendant Murdock's Property, is inherently dangerous, as the subject work entailed excavation, drilling and other heavy construction activity. Accordingly, Defendant EWORA's duty of care was non-delegable to any third-party.

113.    Defendant EWORA breached its duty of care to Plaintiff.

114.    Defendant EWORA's breach of duty proximately caused substantial damages to Plaintiff.

115.    Plaintiff's principal damages are approximately $2,298,596. Plaintiff also suffered loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

116.    Additionally, as set forth above, punitive damages should be assessed against Defendant EWORA due to Defendant EWORA's willful disregard for Plaintiff's rights and safety.

### COUNT IV – TRESPASS

### Against Defendant EWORA

117.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-93 as if fully set out herein.

118.    Defendant EWORA caused or committed a physical invasion or unauthorized entry of a person or thing onto Plaintiff's Property as described herein.

119. The physical invasion or unauthorized entry resulted in interference with Plaintiff's possessory interest in Plaintiff's Property.

120. Defendant EWORA had at least some control over the inanimate object or objects which invaded Plaintiff's Property.

121. As a result of Defendant EWORA's trespass, Plaintiff was severely damaged.

122. Plaintiff's principal damages are approximately $2,298,596. Plaintiff also suffered loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

123. Additionally, as set forth above, punitive damages should be assessed against Defendant EWORA due to Defendant EWORA's willful disregard for Plaintiff's rights and safety.

## COUNT V – NEGLIGENCE

### Against Defendant IFG

124. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-93 as if fully set out herein.

125. Defendant IFG owed a duty of care to Plaintiff.

126. Defendant IFG owed Plaintiff a duty, *inter alia*, to protect Plaintiff because Plaintiff is the owner of adjacent property. Defendant IFG had a duty to exercise common prudence in developing and constructing Defendant Murdock's Property in such a way as to prevent injury to Plaintiff as an owner of adjacent property.

127. The work performed by Defendant IFG or the personnel hired by Defendant IFG on Defendant Murdock's Property, is inherently dangerous, as the subject work entailed

19

excavation, drilling and other heavy construction activity. Accordingly, Defendant IFG's duty of care was non-delegable to any third-party.

128. Defendant IFG breached its duty of care to Plaintiff.

129. Defendant IFG's breach of duty proximately caused substantial damages to Plaintiff.

130. Plaintiff's principal damages are approximately $2,298,596. Plaintiff also suffered loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

131. Additionally, as set forth above, punitive damages should be assessed against Defendant IFG due to Defendant IFG's willful disregard for Plaintiff's rights and safety.

## COUNT VI – TRESPASS

### Against Defendant IFG

132. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-93 as if fully set out herein.

133. Defendant IFG caused or committed a physical invasion or unauthorized entry of a person or thing onto Plaintiff's Property as described herein.

134. The physical invasion or unauthorized entry resulted in interference with Plaintiff's possessory interest in Plaintiff's Property.

135. Defendant IFG had at least some control over the inanimate object or objects which invaded Plaintiff's Property.

136. As a result of Defendant IFG's trespass, Plaintiff was severely damaged.

20

137.    Plaintiff's principal damages are approximately $2,298,596. Plaintiff also suffered loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

138.    Additionally, as set forth above, punitive damages should be assessed against Defendant IFG due to Defendant IFG's willful disregard for Plaintiff's rights and safety.

## COUNT VII – NEGLIGENCE

### Against Defendant City Concrete

139.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-93 as if fully set out herein.

140.    Defendant City Concrete owed a duty of care to Plaintiff.

141.    Defendant City Concrete owed Plaintiff a duty, *inter alia*, to protect Plaintiff because Plaintiff is the owner of adjacent property. Defendant City Concrete had a duty to exercise common prudence in developing and constructing Defendant Murdock's Property in such a way as to prevent injury to Plaintiff as an owner of adjacent property.

142.    The work performed by Defendant City Concrete or the personnel hired by Defendant City Concrete on Defendant Murdock's Property, is inherently dangerous, as the subject work entailed excavation, drilling and other heavy construction activity. Accordingly, Defendant City Concrete's duty of care was non-delegable to any third-party.

143.    Defendant City Concrete breached its duty of care to Plaintiff.

144.    Defendant City Concrete's breach of duty proximately caused substantial damages to Plaintiff.

145. Plaintiff's principal damages are approximately $2,298,596. Plaintiff also suffered loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

146. Additionally, as set forth above, punitive damages should be assessed against Defendant City Concrete due to Defendant City Concrete's willful disregard for Plaintiff's rights and safety.

## COUNT VIII – TRESPASS

### Against Defendant City Concrete

147. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-93 as if fully set out herein.

148. Defendant City Concrete caused or committed a physical invasion or unauthorized entry of a person or thing onto Plaintiff's Property as described herein.

149. The physical invasion or unauthorized entry resulted in interference with Plaintiff's possessory interest in Plaintiff's Property.

150. Defendant City Concrete had at least some control over the inanimate object or objects which invaded Plaintiff's Property.

151. As a result of Defendant Murdock's trespass, Plaintiff was severely damaged.

152. Plaintiff's principal damages are approximately $2,298,596. Plaintiff also suffered loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

153. Additionally, as set forth above, punitive damages should be assessed against Defendant City Concrete due to Defendant City Concrete's willful disregard for Plaintiff's rights and safety.

22

## COUNT IX – NEGLIGENCE

### Against Defendant Luis Construction

154. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-93 as if fully set out herein.

155. Defendant Luis Construction owed a duty of care to Plaintiff.

156. Defendant Luis Construction owed Plaintiff a duty, *inter alia*, to protect Plaintiff because Plaintiff is the owner of adjacent property. Defendant Luis Construction had a duty to exercise common prudence in developing and constructing Defendant Murdock's Property in such a way as to prevent injury to Plaintiff as an owner of adjacent property.

157. The work performed by Defendant Luis Construction or the personnel hired by Defendant Luis Construction on Defendant Murdock's Property, is inherently dangerous, as the subject work entailed excavation, drilling and other heavy construction activity. Accordingly, Defendant Luis Construction's duty of care was non-delegable to any third-party.

158. Defendant Luis Construction breached its duty of care to Plaintiff.

159. Defendant Luis Construction's breach of duty proximately caused substantial damages to Plaintiff.

160. Plaintiff's principal damages are approximately $2,298,596. Plaintiff also suffered loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

161. Additionally, as set forth above, punitive damages should be assessed against Defendant Luis Construction due to Defendant Luis Construction's willful disregard for Plaintiff's rights and safety.

## COUNT X – TRESPASS

### Against Defendant Luis Construction

162.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-93 as if fully set out herein.

163.    Defendant Luis Construction caused or committed a physical invasion or unauthorized entry of a person or thing onto Plaintiff's Property as described herein.

164.    The physical invasion or unauthorized entry resulted in interference with Plaintiff's possessory interest in Plaintiff's Property.

165.    Defendant Luis Construction had at least some control over the inanimate object or objects which invaded Plaintiff's Property.

166.    As a result of Defendant Murdock's trespass, Plaintiff was severely damaged.

167.    Plaintiff's principal damages are approximately $2,298,596. Plaintiff also suffered loss of use damages, which are substantial, accruing and likely to ultimately exceed $250,000 in the absence of a prompt resolution.

168.    Additionally, as set forth above, punitive damages should be assessed against Defendant Luis Construction due to Defendant Luis Construction's willful disregard for Plaintiff's rights and safety.

**WHEREFORE**, Plaintiff prays that this Court enter judgment in his favor and against all Defendants, jointly and severally, as follows:

A.  Incidental damages of approximately $2,298,596;

B.  Consequential damages of an amount to be determined;

C.  Punitive damages of an amount to be determined;

D.  Plaintiffs' reasonable attorneys' fees and costs;

24

E.  Prejudgment interest; and,

F.  Such other and further relief as this Court deems just and proper in these circumstances.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By:   */s/ Kenneth E. Chase*
Kenneth E. Chase
Chase Law & Associates, P.A.
1141 71st Street
Miami Beach, FL 33141
Tel: (305) 402-9800
Fax: (305) 402-2725
Email: kchase@chaselaw.com

*Attorneys for Plaintiff Charles Matiella*

## CERTIFICATE OF SERVICE

I, Kenneth E. Chase, hereby certify that I served the foregoing via CM/ECF on December 20, 2023, which serves an electronic copy on all counsel and registered users of record.

By:   */s/ Kenneth E. Chase*
Kenneth E. Chase

# EXHIBIT A

7/21/2021

# THE EXCHANGE



IN PARK VIEW DC

Case 1:21-cv-02021-CMH Document 1-2 Filed 01/06/24 Page 29 of 62

# THE E✕CHANGE

About
Floor Plans
Neighborhood
Contact

**REGISTER**



## CONDOS

one bedroom / one bath

one bedroom + den / one bath

two bedroom / two bath

—

private balconies

private roof decks

private storage

—

ground level retail





# THE E✕CHANGE



# EUROPEAN INSPIRED DESIGN

Striking and unique, these residences have been designed with you in mind.  Sensible and efficient, the floor plans are perfect for an inspiring home office by day and ideal for entertaining by night.

The design team has traveled far and wide to select the finest of European finishes.  The selected materials come together to create residences with an understated elegance.  Not flashy, but bold: just like you.

The floors are crafted of the finest hardwoods.  The bathroom and shower enclosures are built of large format Italian tile stretching to the ceiling.  The floor-to-ceiling windows illuminate the sleek and spacious European kitchens - worthy of the finest design magazines.  Elegance and craftsmanship is at every corner.

Case 1:21-cv-02021-CMH Document 1-8 Filed 01/06/24 Page 31 of 62



About
Floor Plans
Neighborhood
Contact

REGISTER

# FLOOR PLANS

⟨         ⟩

Case 1:21-cv-02021-CJN Document 1-16 The Exchange Filed 01/06/24 Page 32 of 62



About
Floor Plans
Neighborhood
Contact

REGISTER

*Pursuant to the District of Columbia Inclusionary Zoning program, income restricted units are available at this development. Please contact the Department of Housing and Community Development at www.dhcd.dc.gov regarding the availability of such units and requirements for registration in the Inclusionary Zoning program.*



About
Floor Plans
Neighborhood
Contact

REGISTER

Developed by IFG Group, LLC

Sales and Marketing by GreenLine Real Estate - 202.525.5236 - 2216 14th St, NW Washington, DC 20009 - Equal Housing Opportunity

# EXHIBIT B



**A&A CONSULTANTS, INC.**
**1800 Pine Hollow Road, Suite 4A**
**McKees Rocks, PA  15136**

Telephone: (412) 323-2200
Fax: (412) 323-2202

---

**Civil, Structural & Geotechnical Engineers**

To: Gregory Heelan, Program Manager,                                                    June 7, 2021
Illegal Construction Unit
1100 4th St SW, Washington, D.C. 20024

Subject: 770 Princeton PL NW, Unit B, Washington, D.C. 20010

In accordance with your request, photographs and videos of the subject project were reviewed by the undersigned on June 3 and 7, 2021. The results of this review are as follows:

1. An excavation was made immediately adjacent to the existing townhouse. As the excavation progressed a soldier pile and lagging retaining wall was installed. The soldier piles were H-piles of undetermined length and the lagging consisted of wood planks. The soldier piles were installed in pre-drilled holes with concrete placed in the annular space around the H-piles..

2. A portion of the masonry (brick) foundation wall appears to have fallen out from beneath the townhouse as the excavation progressed.

3. Settlement of the floor was indicated by light beneath an entry door at the threshold.

4. Underpinning of the foundation wall was performed. A photo shows that the existing building is supported on a continuous wall footing bearing on soil. Subsequent photos show that the excavation extended below the underpinning. Also, subsequent photos show that the excavation extended below the bottoms of soldier piles used for a soldier pile and lagging retaining wall.

5. The depth of the excavation is estimated to be 25-feet based on the heights of the personnel shown in the photos. Water was seen in the excavation, but the source is unknown.

6. The soldier pile and lagging retaining wall had no walers, rakers or cross-bracing. The depth of the soldier piles to provide adequate lateral passive earth resistance could not be determined from the photographs. However, the photos did not indicate backfill in the space behind lagging between the walls of the excavation. The backfill closes the void and prevents the lateral movement of the soil into the void space. The lateral movement of the subsoil results in settlement of the structure. Also noted, the soil settled from beneath the sidewalk and the brick planter wall separated from the walk at the entryway.

7. Another photo shows soil flowing out from beneath the lagging. Other photos show cracks in the masonry bearing walls and settling of a support for the deck. Also, there are cracks around doorways and at lintels.

8. Photos show interior walls and ceiling with cracks and plastic sheeting above the interior stairs. The plastic sheeting may be indicative of water dripping from the ceiling.

9. Water dripping from the ceiling may be due to roof leakage. Any roof leakage occurring may be caused by a tear in the membrane roofing material due to settlement and/or outward movement of the building wall.

10. Some brick restoration work was performed. However, the photos indicated that the front wall of the residence was braced during the restoration. The reason for the bracing is unknown. Additionally, a new entry walk and stairs were provided.

In the opinion of the undersigned, settlement of the building may continue until the soil migrates to fill-in the voids created by the excavation and void space behind the lagging. Continued settlement will result in further structural damage to the building and compromise its structural integrity. Movement of the bearing walls may result in the joists slipping out of their pockets and the floors or roof collapsing. Also, further settlement may adversely affect underground utilities servicing the building.

The building should be closely monitored for further settlement/movement and the underground utilities should be verified for continuity.


_____        _____
        Al Ahmed, P.E., Ph.D.                          Jack T. Roseman, P.E.

# EXHIBIT C



































  

  

  





































# EXHIBIT D

# TIMOTHY GALARNYK

# PLAINTIFF'S EXPERT REPORT

## *MATIELLA V. MURDOCK STREET, LLC, ET AL*

## 21-CV-2112-TSC-GMH

MATIELLA v. MURDOCK STREET, L.L.C., et al.



**S3800 SILVER SPRING DRIVE • EAU CLAIRE, WI 54701 • PH: 612-366-1904 • FX: 651-330-4865**
*www.safetyinconstruction.com*

# CONSTRUCTION RELATED PROPERTY DAMAGE CLAIM ANALYSIS AND CONCLUSIONS

## December 7, 2023

# CHARLES MATIELLA
# v.
# MURDOCK STREET, L.L.C., et al.

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA
### CIVIL ACTION NUMBER: 21-cv-2112

*Managing the Risks of Construction – Worldwide*

MATIELLA v. MURDOCK STREET, L.L.C., et al.

# INTRODUCTORY CASE STATEMENT

This case involves two in-place, existing residential buildings which was reported to sustain damage resulting from the demolition and construction of a new adjacent condominium building.

This report addresses the investigation, the analysis of the facts and documents and provides conclusions on causation.

# MATERIALS REVIEWED

1. Photographs of Demolition of Old Structure
2. Video of Demolition and Pictures Taken by Charles Matiella
3. Photographs of Construction
4. Photographs of Affected Buildings – Interior and Exterior
5. First Amended Complaint
6. Third Party Complaint Murdock Street v. EWORA, LLC and IFG Group, LLC
7. EWORA, LLC and IRG Group, LLC Cross Claim against City Concrete
8. City Concrete Third Party Cross Claim against Luis Construction
9. A & A Consultants 6/7/2021 Condition Assessment of 770 Princeton Place Unit B
10. Plaintiff's Answers to Defendant Murdock Street's Interrogatories
11. Plaintiff's Answers to Defendant Murdock Street's Requests for Admission
12. Plaintiff's Answers to Defendant Murdock Street's Request for Production of Documents
13. Plaintiff's First Set of Requests to Defendant IFG Group.
14. Plaintiff's First Set of Requests for Production of Documents to Defendant IFG Group
15. Plaintiff's Requests to Admit issued to EWORA and IFG Group
16. Plaintiff's Requests for Production of Documents issued to EWORA and IFG Group
17. EWORA and IFG Group's Responses to Plaintiff's Requests to Admit
18. EWORA and IFG Group's Responses to Plaintiff's Requests to Product Documents
10. Deposition of John Keskin, Owner – Murdock Street - 4/22/2022
11. Deposition of Charles Matiella, Plaintiff - 12/1/2022
12. Discovery from the Department of Consumer and Regulatory Affairs
13. Discovery from Main Street Bank
14. District of Columbia Building Code 2017
15. District of Columbia Building Code for 2023
16. Universal Uniform Residential Building Code for 2017
17. Universal Uniform Residential Building Code for 2023
18. Site Visit and Property Inspection on September 20, 2023

# CASE FACTUAL ANALYSIS

**The factual analysis provided herein is based on the documents reviewed, the independent analysis of the evidence and the identified resources reviewed.**

Timothy G. Galarnyk of Construction Risk Management, Inc. was retained on May 17, 2023, to conduct a forensic investigator and risk management review of the facts and documents in this case. My retention was to conduct an investigation, analyze records, documents, and exhibits, and determine what happened, how it happened, why it happened to the existing structures.

MATIELLA v. MURDOCK STREET, L.L.C., et al.

Over the course of my construction career, I was educated and trained in construction safety, loss causation, loss prevention, and loss mitigation issues related to construction. From 1981 to the present day, I have conducted several hundred building and other structures inspection before, during and after adjacent construction operations to document pre-existing conditions, changing conditions (if any) during adjacent construction, and post adjacent construction. Each of these inspections were necessitated due to concerns for construction related damage issues.

Charles Matiella (Matiella) owned Two - two-story 2 townhome unit buildings at 770 Princeton Place NW in Washington DC (Matiella buildings). Originally constructed in ~ 1935, it is reported that these buildings was renovated in 2001. There are actually two buildings. Each building has two – two story townhomes and also a basement apartment in the basement. The basement of the two buildings are built on spread footings.
**1**

Sometime prior to July 1, 2017, Murdock Street, L.L.C., (Murdock) a property owner from Chantilly, Virginia purchased a building and property situated adjacent to the Matiella buildings. A vacant single-story structure existed on this purchased property at 3619 Georgia Avenue, NW in Washington DC.

On July 1, 2017, Murdock entered into an agreement with EWORA, LLC (EWORA) of McLean Virginia and DILA Construction, LLC (DILA) of Washington DC (Collectively known as OWORA-DILA JV) for EWORA-DILA JV to act as the general contractor for the site work and the construction of a single multi-level 26-unit condominium building on this property.
**2**

On October 23, 2017, EWORA-DILA JV signed a proposal/agreement with City Concrete Corporation (City) of Manassaas, Virginia wherein City agreed to perform the underpinning, shoring, footings, walls, piers, columns, concrete floors and slabs, and the water proofing and termite treatment for the new condo building.

City apparently contracted with Luis Construction (Luis) of Sterling, Virginia wherein Luis agreed to do the shoring work for the new building.

It is unknown which party engaged nor when the demolition contractor was engaged as well as the excavation contractor. This is important because of the work activities which took place during the demolition of the old building and the excavation for the new building prior to the work of City.

Sometime shortly after July 1, 2017, the demolition of the old building began, Matiella observed damage occurring to his property buildings. Matiella notified the contractors on the adjacent project of the damages being caused by the demolition and excavation activity at the adjacent site. The videos of the construction works were reviewed in detail and damage to the Matiella buildings is apparent.

The evidence establishes that Matiella notified the contractors of the adjacent building project of the damages occurring to his properties. However, the demolition of the adjacent old structure, the excavation work, the underpinning, and the preparations for and construction of the foundation continued without modifications to the means and methods of construction to prevent damage to the Matiella buildings.

MATIELLA v. MURDOCK STREET, L.L.C., et al.

# INCIDENT SPECIFIC DISCUSSION

**The incident specific discussion is based on my education, continued education, training, more than 4 decades of construction field experience, career long background in construction, and more than 45 years of incident investigation involving construction incidents, damaging events, and casualties as an "in the field" construction safety, health, risk management, and construction forensic investigator.**

Murdock Street was the owner of the property adjacent to the existing Matiella buildings. EOARA-DILA JV was retained to provide construction services to Murdock for the site work and to build a single house.
3

Charles Matiella owned the adjacent buildings from where the construction activities would occur. There is no evidence that any activities performed by or under the control of Matiella caused or contributed to the damage reported and investigated in this case.

There is no evidence that a pre-construction survey was performed on the Matiella buildings by Murdock, EWORA-DILA JV, nor City prior to the demolition of the old structure on the Murdock property. Since approximately 1988, the practice of performing pre-construction surveys ("crack and damage" studies) on structures adjacent to planned construction began. Since 1988, it has become the custom and practice to either perform such a survey on adjacent structures or to carefully manage the demolition and to design and build the new structure to avoid vibration and damage causing construction means and methods.

Murdock owner John Keskin testified in his deposition that when excavation begin in 2017 or 2018, he was notified by EWORA/IFG that Matiella reported damage to his buildings resulting from construction.
4

Additionally, Keskin testified that his contractor IFG stated to him that "Well, every day we have these inspectors coming and checking the foundation, sheeting and shoring, and that's how it works; and if you're doing it the right way, then this means we did it the right way."
5

When a contractor performs work on a construction project, it may do such work as intended for the project and that the results of the work performed would serve as intended. However, the activity of performing the work can result in damage to adjacent structures or utilities and this is entirely separate from the purpose of the work.

In the agreement between Murdock and EWORA-DILA JV, there are no provisions for indemnification between either party and there are no provisions for responsibility for damage claims as a result of construction activities.
6

On September 28, 2017, photographs taken of the demolition work reflect damage to the Matiella building walls. Matiella observed cracking in the concrete and walls of his buildings on September 30, 2017. Matiella does not recall who he specifically spoke with regarding his observed damages. However, he does recall speaking to Mr. Gunar (Fatih) during late September 2017 regarding his observations.
7

4

MATIELLA v. MURDOCK STREET, L.L.C., et al.

There can be no dispute that the demolition, site work, and the foundation work (excavation/shoring/underpinning) for the Murdock building caused damage to the Matiella buildings. The majority and major damage to the Matiella buildings was acknowledged by Murdock and EWORA-DILA JV. This has become a dispute between Murdock, EWORA-DILA JV, City Concrete, and now, Luis Construction as to which entity or entities are responsible for causing the damage to the Matiella buildings. There is no dispute that Matiella's actions and conduct did not cause or contribute to the damages to his buildings.

# DAMAGE ANALYSIS:

Inspection of the Matiella buildings throughout the construction of the Murdock building as well as on September 20, 2023, verified significant structural damage to the Matiella buildings. The damage was not cosmetic and cannot be repaired. A total removal of the two buildings is the only practical and logical solution because the two buildings continue to "settle" as a result of the Murdock building construction.

On September 15, 2023, an Invitation to Propose for the replacement of the Matiella buildings was sent to three reputable and screened general design-build contractors in the Washington DC area.

On September 16, 2023, the Invitation was amended to include a picture of the Matiella buildings and the property plot map.

On September 20, 2023, a site inspection and project tour was commenced with two of the three contractors responding to the Invitation.

On November 17, 2023, CRM received proposals from two DC contractors:'

1. Harbor Buildings/Lee Design Studios of Baltimore, MD     $ 2,377,620.00
2. Winmar Construction, Inc. of Washington DC     $ 1,942,631.00

Because this is a design-coordinate-construct method of construction and because the two new buildings cannot be a material change to the size and character of the existing buildings, CRM will act as the design-construct coordinator for the removal and construction of the replacement buildings. CRM's administration fee will be added to the most responsible proposal.

After analyzing the proposals, the pre-proposal involvement of the contractors, and the ideas presented by each proposer, Winmar Construction, Inc. is the selected contractor. The costs for the replacement of the damaged buildings are:

A. Winmar Construction, Inc.     $ 1,942,631.00
B. Unforeseen Excavation/Foundation Issues     $ 180,000.00
C. CRM Administrative Coordination Cost     $ 175,966.00
     **Total Cost to Replace Damaged Buildings:**     **$ 2,298,596.00**

5

MATIELLA v. MURDOCK STREET, L.L.C., et al.

# CONCLUSIONS:

**My conclusions expressed herein are to a reasonable degree of safety and risk management certainty.  These conclusions are based on my education, training, continuing education, background, entire career in construction, as a general contractor and as a subcontractor, and more than 45 years of experience in the field of construction, construction means and methods and assessing damage claims related to construction activities.  My conclusions are based on my extensive knowledge, hands-on experience, specific training in construction risk management and damage prevention across the USA, industry customs and practices, and my hands-on interactions in the construction and general industry as a seasoned risk manager and forensic investigator.**

*Based on the site conditions, the evidence, the  documents reviewed, the photographs, the documents regarding this case, the work being performed, and the federal/state regulations, my education, training, 45+ years of experience, I provide the following conclusions:*

1.  Charles Matiella owns the buildings at 770 Princton Place, NW in Washington DC.  The buildings were constructed in 1935.  Matiella completed the purchase of the two buildings in 2007.  The townhome units were reconstructed.  Matiella occupied one townhome and the other townhomes and apartments were rented to others.  The damages to the Matiella buildings were not caused or contributed to by any actions or conduct of Matiella.

2.  Murdock Street, LLC owned the property adjacent to the Matiella building.  This property known as 3619 Georgia Avenue NW in Washington DC had a single-story two unit building with a parking lot.  Murdock contracted to remove the building and to construct a six-story condominium building at this property.  As the owner of the new construction works, Murdock is ultimately responsible for all the activities that occur on or adjacent to the property such as demolition, excavation, and construction work.

3.  Murdock engaged EWORA-DILA JV to provide construction services to prepare the site and to build a six-story 26-unit condominium structure on the property.  The agreement does not contain any provisions regarding which party is responsible for damages resulting from the construction activities on the property, however, it is not disputed that the demolition of the old structure, the excavation for the new building, and the preparation of the foundation work (shoring/underpinning) for the new building caused major and significant damage to the Matiella buildings.

4.  The construction works of the new building and the installation of underpinning encroached on the Matiella building and is now believed to occupy some of the property lines of the Matiella building.

5.  The damage to the Matiella building is significant, major, and structural in nature.  The damage began in September 2017 wherein Murdock and EWORA-DILA JV were placed on notice of damage occurring.

6.  While Murdock and EWORA-DILA JV were on notice of the damage beginning to occur to the Matiella building in September 2017, neither Murdock nor EWORA-DILA JV took any actions to assure that continued construction progress on the Murdock would be done in such a manner as to avoid additional damage to the Matiella building.

7.  Murdock and EWORA-DILA JV knew the demolition work and the excavation work was causing damage to the Matiella building in September 2017.  Murdock and EWOAR-DILA JV failed to make any changes in the means and methods of the continuing excavation and

6

MATIELLA v. MURDOCK STREET, L.L.C., et al.

construction of the foundations (shoring/underpinning) and despite the knowledge of causing damage to the Matiella building, knowingly caused such damage as to result in major, significant, and structural damage.

8. As a result of the actions and conduct of Murdock and EWORA-DILA JV in knowingly causing the majority of damaged to the Matiella building, it is anticipated and believed that the Matiella building is beyond repair. All of a portion of the Matiella building will need to be removed and replaced in kind however, in accordance with current codes.

9. CRM, if requested, intends to solicit qualified design-build contractors to provide estimates on the design and construction of a two-story, four-unit condominium building (or a portion of the current building) to establish the replacement in-kind costs of such construction.

10. Murdock and EWORA-DILA JV (Including City Concrete and Luis Construction) caused the damage to the Matiella building, failed to prevent damage to this building, willfully and fragrantly continued to cause damage to this building and are responsible for the replacement in-kind of all or a portion of this building.

11. The damages to the Matiella buildings total $ 2,298,596.00 and the buildings need to be replaced. The buildings cannot be effectively repaired, and the buildings will continue to settle as a result of the Murdock adjacent construction work,

# ATTACHMENTS

Curriculum Vitae of Timothy G. Galarnyk
Federal Rule 26 – Expert Witness Case Disclosure Listing

# FURTHER WORK – RIGHT TO MODIFY

**As further information, data, evidence, or deposition testimony is produced, I reserve the right to modify, add to, or revise, my conclusions as I determine. I am an employee of Construction Risk Management, Inc., (CRM) and all work performed on this case was performed by me as an agent of and officer of CRM. CRM is an independent firm and performs independent, detailed investigations of cases. I analyze all facts, evidence, statements, history, background, and information and then render my unbiased findings and conclusions on this case. Once I render my conclusions, none are subject to adjustment, modification, editing, or changes by anyone – subject to the above statement. The conclusions reached by me are the same regardless of who retains CRM – and is determined solely by my investigation, the evidence, facts, my education, training, experience, and expertise.**

CONSTRUCTION RISK MANAGEMENT, INC.

*Timothy G. Galarnyk* (electronic signature)

Timothy G. Galarnyk, CEO

1. Matiella Deposition 53:14

2. Keskin Deposition 65:10

3. Construction Contract 1:1

4. Keskin Deposition 74:19

5. Keskin Deposition 90:14

6. Construction Contract

7. Matiella Deposition 157:21 – 160:16, 174:8

7

# TIMOTHY GALARNYK

# CURRICULUM VITAE

## *MATIELLA V. MURDOCK STREET, LLC, ET AL*

## 21-CV-2112-TSC-GMH

## CURRICULUM VITAE (CV)

# TIMOTHY GERARD GALARNYK

**Phone: 888.9000.CRM > Website: www.safetyinconstruction.com > e-mail: timothy@conrskmgmt.com**

**CURRENT EMPLOYMENT:**

**CRM GLOBAL HOLDINGS, L.L.C.** "Managing the Risks of Construction – Worldwide" ®

**1996 - Present**

**CONSTRUCTION RISK MANAGEMENT, INC. - PRESIDENT / CEO**

**Construction Forensic Investigator, Safety Expert.** National/International Expert - Construction Related Issues.

**Traffic Crashes in Construction Work-Zones Related to Traffic Control** - Federal/State **MUTCD** Compliance.

**Bridges, Highway/Heavy Construction,** Commercial, Industrial, Residential, Marine, High-Rise, Pile Driving.

**Construction Equipment,** Cranes, Excavating/Trenching, Scaffolding, Aerial/Fork Lifts, Steel Erection, Concrete.

**Construction Contracts/Subcontracts,** Insurances, Defects, Quality Control, Means & Methods, Workmanship.

**Injury/Fatality Investigation,** Accident Cause Analysis, Falls, Electricity, Struck-By, Collapses, Caught-In,

**Bridge and Structure Collapses** Related to Construction or Under-Construction - Causation.

**2018 - Present**

**GLOBAL RAIL ASSOCIATES, L.L.P. - PARTNER**

Managing Railroad Infrastructure and Railway Affairs Worldwide.
Principal - Management of railway infrastructure, bridges, buildings, track-works. Bridge Design/Needs Evaluation

**PAST EMPLOYMENT:**

**2004 - 2017**

**C. ROMAN COMPANY, INC. - Partner**
810 Yale Street   St. Louis, MO
Rehabilitation, repair, remediation and additions to existing residential homes and commercial properties.

**2000 - 2005**

**BLUE SKY EXCAVATING** Hayward, WI

**THOMPSON SAND & GRAVEL** Hayward, WI

**HOEPPNER BUILDING CORPORATION** Eau Claire, WI

**MEYER CONTRACTING, INC.** Forest Lake, MN

**GREAT GOATS LANDSCAPING, INC.** Edina, MN

**Heavy Equipment Operator, Risk/Safety Manager**
Site Inspections, general construction including structures, underground, excavating, grading, site development, utilities, landscaping.

**1999 - 2000**

**HOFFMAN CONSTRUCTION COMPANY - Corporate Risk/Safety Manager, Project Manager**
Black River Falls, WI
Heavy and Highway construction including excavating, grading sewer, water, site management, training, field supervision for a 100M/year grading contractor.

**1981 – 1999**

**LUNDA CONSTRUCTION COMPANY - Corporate Risk Manager, Manager Railroad Construction Group**
Black River Falls, WI
Construction risk/safety management responsibilities for a 300M/year General Contractor. Safety program creation, project safety inspections, training, reconstruction of incidents, injury and damage investigations on thousands of construction projects. Contract/subcontract creation, construction insurance, construction management.

Construction of thousands of bridges.
Created and managed the Railroad Construction Group. Planning and managing the evaluation and construction of railway bridges and infrastructure for 9 years – 10K to 50M in project size.

**1981 – 1995**

**PHOENIX STEEL, INC. Corporate Risk Manager**
Eau Claire, WI

Corporate Risk Manager for a 50M/year Steel Fabricator. Safety program creation, training, plant inspections, injury investigation and analysis. Steel fabrication/transportation/erection for buildings, bridges and rebar.

**1976 – 1981**

**EDWARD KRAEMER & SONS** Plain, WI

**MEISE CONSTRUCTION COMPANY** Plain, WI

**Construction Laborer, Heavy Equipment Operator, Project Supervisor, Construction Material Testing (QC)**

**EDUCATION:**

**1981 - 1982**

**University of Wisconsin** > Platteville, Wisconsin
Bachelor of Science Degree > College of Industrial Studies > Safety > 1982

**1979 - 1981**

**University of Arkansas** > Little Rock, Arkansas
Associate of Science Degree > Emergency Medical Sciences > 1981
Provides the basis for injury causation, mechanism, impairment, and etiology

**CONTINUING EDUCATION:**

**1976-Present**

➢ Numerous university courses, industry seminars and educational programs relating to EMS, toxicology, medico-legal death investigation, risk management, safety, contracts, bridge design and construction.

➢ Education in the field of construction risk management including safety, contracts, risk financing, insurance, management, defects, buildings, highway and railroad bridge inspections, rail track work and facilities, residential and heavy construction, grading, cranes, rigging, aerial lifts and all construction equipment.

➢ Construction means, methods and practices, human factors, investigation of construction injury and fatality analysis, forensic evaluations, incident reconstruction, traffic crashes in construction work zones involving MUTCD. Construction defects, settlement, mold, water, intrusion, contract plans and specifications.

➢ University of North Florida: Bridge Inspection / Scour Recognition/Prevention Seminar – 2010 (28.00 Hours)

➢ University of Florida: Forensic Science

| CURRICULUM VITAE (CV) | TIMOTHY GERARD GALARNYK |
|---|---|

**MEMBERSHIPS:**

1991 – Present
1987 – Present
1986 – Present
1986 – Present
2004 – Present
2000 – 2005
1986 – 1994

**American Railway Engineering and Maintenance of Way (AREMA)** > Committee 10 > Structures
**American Society of Safety Professionals (ASSP)** > Construction Practice
**National Safety Council (NSC)** > Construction Section
**American Traffic Safety Services Association (ATSSA)**
**International Union of Operating Engineers - Local 139**
**Deputy Director:  Construction Safety Council, Hillside, Illinois**
**A.N.S.I.** > B-10 Committee on Wire Rope, Rigging

**PRESENTATIONS:**

**Numerous National and International presentations relating to Construction Risk Management, Construction Safety and Construction Means and Methods Generally for the Transportation Sector: Including but not limited to:  China, India, Singapore, Hong Kong, Brazil, Malaysia, Morocco, Thailand Czech Republic, Kazakhstan, Russia, UAE, Estonia, USA, Canada  -  1981 to Present**

**REALITY TELEVISION:**

**The History Channel** Reality-Based Television Show Host:   *"INSPECTOR AMERICA"* – 2010 to 2012

**SPECIALIZED TRAINING:**

**Licensed Engineer**:  Country of Estonia: License No:  RA-ELT-027 (Expired 2012)
Supervision, inspection and management of building and bridge construction projects.

**U.S. Department of Labor O.S.H.A. – More than 3 Decades (1982 – 2015) As An Authorized:**

➢ 10 / 30 / 130 Hour Construction Safety Training Instructor / Instructor Trainer
➢ OSHA 10-Hour Roadway Workers Safety Training Instructor / Instructor Trainer

**U.S. Department of Labo**r **M.S.H.A**. – Qualified:  Part 46 MSHA Training / Program Instructor

**AREMA**:   1998 – Bridge Inspection Training Program Completion
         2010 – Railroad Bridge Inspection / Erosion (Scour) Certification Program

**National Commission Certification of Crane Operators (NCCCO)** > Task Force Member for Signal Person Certification > 2007-2008

**American Traffic Safety Services Associations (ATSSA) – CERTIFIED:**

➢ Construction Work Zone Traffic Control Technician
➢ Construction Work Zone Traffic Control Supervisor – No.: 15587 (Exp. 12/2026)
➢ Florida DOT Advanced Construction Work Zone Traffic Control Supervisor – No.: 602948 (Exp.10/2026)
➢ Texas DOT Construction Work Zone Traffic Control Supervisor – No.: 15587 (Exp.12/2026)
➢ Construction Work Zone Traffic Control Designer – No.: 15587 (Exp.12/2026)
➢ Construction Work Zone Flagger Instructor
➢ Construction Work Zone Flagger Instructor Trainer (Exp.11/2026)
➢ Roadway Pavement Marking Technician

➢ **Medico-Legal Forensic Death Investigator** > 2008

**PATENTS:**

**Patent Number 5,427,469** > Double Saddle "Piggy Back" Clip

**TECHNICAL ADVISOR:**

**J.J. Keller and Associates** > Neenah, Wisconsin > 1998 > Construction Site Safety Series: Fall Protection, Jobsite Safety
**State of Wisconsin** > 1997 > Construction Zone Traffic Control Management Video

**AUTHOR/PUBLICATIONS:**

**Numerous publications in the field of construction risk management, safety, bridges, infrastructure, impairment in the workplace, construction equipment, contracts, general and subcontracting, OSHA, work zone traffic control, international construction issues over 4 decades including BNLT:**

**PCI Journal – Precast / Prestressed Concrete Institute (PCI)**
➢ November-December 2007: "*Planning, Prevention and Control for an Effective Risk Management Program*"
➢ January-February 2008: "*Inspection and Maintenance:  Important for Equipment and Facilities."*
➢ July-August 2008: "*Selecting and Hiring Qualified Employees*"
➢ September-October 2008: "*Accidents Raise Awareness About Crane Safety*"
**Construction Employee (and Foreman) Safety Program Handbook** – Reg. No: TX 5-291-487 – © 1982
**Saving Lives** – "Buried in a Trench"/"Caught and Crushed While In Between" ISBN 0-9719234-0-X – © 2002

**Construction Equipment: Cranes** – Multimedia Publication – © 2008
**Construction Equipment: Excavating Equipment** – Multimedia Publication – © 2008
**Construction Equipment: Personnel Hoisting and Material Handling** – Multimedia Publication – © 2008
**Construction Equipment: Power Tools & Small Equipment –** Multimedia Publication – © 2010
**Application for Employment Consideration** – © 1998
**Safety in Bridge Construction** – © 2001
**CONSTRUCTION FATALITIES REPORT (CFR)** – Monthly publication on deaths in construction – © 2009-2013

01/2023

# TIMOTHY GALARNYK

# LIST OF CASES

*MATIELLA V. MURDOCK STREET, LLC, ET AL*

21-CV-2112-TSC-GMH

**DEPOSITION AND TRIAL TESTIMONY - PREVIOUS 4 YEARS**

**TIMOTHY G. GALARNYK**

| DATE | CASE NAME | CASE NUMBER | TESTIMONY |
|---|---|---|---|
| 11/23/2023 | JIRSCHELE, et al., v. CITY OF OWEN | CLARK COUNTY, WI 21 CV 86 | Deposition |
| 10/23/2023 | SANCHEZ v. RUSS DAVIS WHOLESALE, INC., et al. | SANTA FE COUNTY, NM _D-101-CV-2022-00627 | Deposition |
| 9/23/2023 | SMITH v. 154 LAND COMPANY, et al. | STE, GENEVIEVE COUNTY, MO 17GS-CC00152 | Deposition |
| 8/23/2023 | GONZALEZ v. FBG CORPORATION | COOK COUNTY, IL 19 L 003366 | Deposition |
| 8/23/2023 | ERIE INSURNCE v. YITCHOK KALMAN | COOK COUNTY, IL 2016-CH-07939 | TRIAL |
| 8/23/2023 | ERIE INSURNCE v. YITCHOK KALMAN | COOK COUNTY, IL 2016-CH-07939 | Deposition |
| 8/23/2023 | SACHS v. JAMES McHUGH CONSTRUCTION | COOK COUNTY, IL 2020 L 009713 | Deposition |
| 8/23/2023 | NICHOLAS v. METRO EXHIBITS CORP, et al. | COOK COUNTY IL 19 L 4512 | Deposition |
| 8/23/2023 | GRIMALDO v MCM MANAGEMENT CORP, et al | COOK COUNTY, IL 20 L 000059 | Deposition |
| 8/23/2023 | NEWSON v. SCHMIDT READY-MIX, et al. | MILWAUKEE COUNTY, WI 21 CV 7561 | Deposition |
| 6/23/2023 | CUTARELLI v. NATIONAL LIME & STONE | FRANKLIN COUNTY, OH 21CV006895 | Deposition |
| 5/23/2023 | CULLEN v. STONEMARCS, et al. | DANE COUNTY, WI 2022 CV 000947 | Deposition |
| 4/23/2023 | ESTATE OF WILLIAMS v. SAFEWAY TRANSPORT | SUTTON COUNTY, TX CV 06176 | Deposition |
| 3/23/2023 | ROSS v. ICON IDENTITY SOLUTIONS | COOK COUNTY, IL 19 L 009095 | Deposition |
| 1/23/2023 | BEREZAN v. HP VENTURE GROUP, et al. | COOK COUNTY, IL 2019 L 11862 | Deposition |
| | | | |
| 12/22/2022 | GLOWACZ v. SUSTAINABUILD, et al. | COOK COUNTY, IL 19 L 003770 | Deposition |
| 11/22/2022 | LOPEZ v. REVOLUTION BUILDERS CO., INC. | DuPAGE COUNTY, IL 2018L000172 | Deposition |
| 10/22/2022 | McCRAW v. FREEMAN EXIBITIONS, INC. | COOK COUNTY, IL 2018 L 003305 | Deposition |
| 9/22/2022 | HARRIS v. LEWIS-GOETZ, et al. | RAMSEY COUNTY, MN 62-CV-16-4613 | TRIAL |
| 4/22/2022 | MARTINEZ v. MI HOMES, et al. | COOK COUNTY, IL 2019-L-13060 | Deposition |
| | | | |
| 10/21/2021 | BRITO v. TRAPINO BUILDERS, et al | COOK COUNTY, IL 17-L-010722 | TRIAL |
| 10/21/2021 | GUZMAN v. PRAIRIE DEVELOPMENT | COOK COUNTY, IL 2017-L-3510 | Deposition |
| 10/21/2021 | BRYJAK v. Z & R PROPERTIES, et al | COOK COUNTY, IL 2018-L-4551 | Deposition |
| 7/21/2021 | HARRIS v. LEWIS-GOETZ, et al. | RAMSEY COUNTY, MN 62-CV-16-4613 | Deposition |
| 6/21/2021 | GUZMAN v. PRAIRIE DEVELOPMENT | COOK COUNTY, IL 2017-L-3510 | Deposition |
| 4/21/2021 | SMITH, et al., v. 154 LAND COMPANY, et al. | STE. GENEVIEVE COUNTY, MO 17 GS-CC00152 | Deposition |
| 4/21/2021 | STOCKTON v. CATALYST CONSTRUCTION | MILWAUKEE COUNTY, WI 19-CV-7500 | Deposition |
| 4/21/2021 | LOPEZ v. TURNER CONSTRUCTION, et al. | LOS ANGELES COUNTY, CA BC692874 | Deposition |
| 3/21/2021 | ALESHIRE v. CHARTER STEEL | COOK COUNTY, IL 2018 L 7369 | Deposition |
| 3/21/2021 | CRESTWOOD RED LIGHT CITATION CASE | COOK COUNTY,IL 2017 CH 13401 | Deposition |
| 2/21/2021 | NUTLEY v. ONE HOPE UNITED, et.al. | COOK COUNTY, IL 2018 L 004393 | Deposition |
| | | | |
| 12/20/2020 | CALO v. DIAMOND ENTERPRISE, INC. | POINT COUPEE PARISH, LA 47741-D | Deposition |
| 12/20/2020 | GAWLINSKI v. SMITHFIELD CONSTRUCTION | COOK COUNTY, IL 16 L 10130 | Deposition |
| 11/20/2020 | OZUG v. ARCELORMITTAL INDIANA HARBOR, et al. | LAKE COUNTY, IN 45D11-1701-CT-00017 | Deposition |
| 10/20/2020 | JAMES v. BLEIGH CONSTRUCTION CO. | U.S. EASTERN DISTRICT COURT MISSOURI 2:19-CV-00 | Deposition |
| 10/20/2020 | OZUG v. ARCELORMITTAL INDIANA HARBOR, et al. | LAKE COUNTY, IN 45D11-1701-CT-00017 | Deposition |
| 3/20/2020 | ESTATE OF JOHN THOMAS MORAN v. MARK TERRY, et al. | MONTGOMERY COUNTY, MD 464413-V | Deposition |
| 3/20/2020 | ESTATES OF LAWSON AND SHORT v. WEST VIRGINIA PAVING | KANAWHA COUNTY, WV 18-C-835 | Deposition |
| 2/20/2020 | YY ENTERPRISE CORP v. RAYMOND /VALERIE WONG | LAWRENCEVILLE, NJ VII-2019-0010F | ARBITRATION |
| 1/20/2020 | YY ENTERPRISE CORP v. BO SHI & ASSOCIATES | NEW YORK, NY 2019-116-204036 | ARBITRATION |
| | | | |
| 12/19/2019 | ESTATE OF VIVIAN VU v. KELLER CONSTRUCTION | MADISON COUNTY, IL 18-L-301 | Deposition |
| 9/19/2019 | SANCHEZ v. MR. DAVID'S FLOORING, et al. | COOK COUNTY, IL 16 L 0011877 | Deposition |
| 5/19/2019 | ESTATE OF GARZA v. HOLSTEIN | CLINTON COUNTY, IA LACV 044451 | Deposition |
| 1/19/2019 | OZOG v. BEE QUALITY, INC., et al | COOK COUNTY, IL 16 L 0011877 | Deposition |