UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHARLES MATIELLA | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-cv-2112-(TSC/GMH) |
| | : | |
| MURDOCK STREET, LLC | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM OF POINTS & AUTHORITIES AND
STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant, Murdock Street, LLC, by and through undersigned counsel, and in Support of its Motions for Summary Judgment, says:

## I.    INTRODUCTION

This matter arises out of allegations that 770 Princeton Place, N.W., real property owned by the Plaintiff, Charles Matiella, sustained damage during construction activities occurring at 3619 Georgia Avenue N.W., a neighboring property owned by the moving party, Murdock Street, LLC (hereinafter Murdock Street). Plaintiff alleges that Murdock Street retained IFG Group, LLC (hereinafter IFG) and EWORA, LLC (hereinafter EWORA) to serve as the developer and general contractor, respectively, to demolish an existing structure and construct a condominium building to be named The Exchange. Plaintiff further alleges that IFG and/or EWORA subcontracted portions of the work to City Concrete Corporation and Luis Construction, Inc.

## II.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.    That in his Second Amended Complaint Plaintiff alleges that sometime prior to September 2017, excavation occurred at the Georgia Avenue property and that:

The construction, excavation and drilling on Defendant Murdock's Property, at

Defendant Murdock's direction and ordered by Defendant Murdock, caused reverberations of the earth or other elements connected to Plaintiff's Property or on Plaintiff's Property to vibrate. Defendant Murdock's actions directly caused substantial and serious damage to Plaintiff's Property.

(See 2nd Am. Cmplt. ECF No. 140 at ¶ 22, a copy of which is appended hereto as Exhibit 1).

2. Plaintiff further alleges that:

The heavy excavation, drilling and other major construction activity involved in developing The Exchange on Defendant Murdock's Property directly caused the damage to Plaintiff's Property.

(Id. at ¶ 23).

3. In addition, Plaintiff alleges:

Defendant Murdock failed to protect Plaintiff from the damage to Plaintiff's Property caused by the actions undertaken by Defendant Murdock on Defendant Murdock's Property.

(Id. at ¶ 24).

4. In his Second Amended Complaint Plaintiff advances the following claims against Murdock Street: negligence (Count I) and trespass (Count II) (ECF No. 140).

5. That Plaintiff initially had other expert witnesses designated in this matter; however, such persons never authored reports and no opinions were ever disclosed (Please see Plaintiff's Designation of Expert Witnesses, appended hereto as Exhibit 2).

6. Plaintiff subsequently retained Timothy Galarnyk to serve as his sole expert to testify as to liability and damages as to all of his claims, (Please see Plaintiff's Second Supplemental Designation of Expert Witnesses, appended hereto as Exhibit 2, transcript of December 21, 2023, hearing, appended hereto as Exhibit 3 at pg. 17 ". . . MR. CHASE: They're [Craig Moskowitz and Luis Rodriguez] experts as well. But if we needed to designate an expert as a primary expert, we have Craig Moskowitz and Luis Rodríguez. If -- those two folks couldn't get it done as fast as we wanted to, and so we switched. So they've been paid. ***We're happy to let them go. We'll stay with Mr.***

***Galarnyk. That's our expert designation right now.***" (emphasis added)).

7.      That Defendant has contemporaneous to the filing of the instant Motion filed a Motion seeking to exclude Mr. Galarnyk's testimony at trial (<u>see</u> the Court record herein).

8.      That Mr. Galarnyk's opinion as to the cause of the damage was not that there was vibration from construction activities and equipment but that the work caused differential settlement of Plaintiff's property (please see transcript of the deposition of Timothy Galarnyk appended hereto as <u>Exhibit 4</u> at pg. 89; see also pgs. 125-127).

9.      Mr. Galarnyk concludes his report by providing a figure of $2,298,596.00 to make the repairs, concluding that the "buildings cannot be effectively repaired, and the buildings will continue to settle as a result of the Murdock adjacent construction work." He testified that he based this opinion wholly on referring to a proposal from the unidentified persons who worked for Harbor Building and Lee Design Studio. (<u>Exhibit 4</u> at pg. 142). He also testified that he reviewed a separate proposal from Winmar Construction (<u>Exhibit 4</u> at pg. 143). The actual persons who worked for such companies have never been named let alone identified as experts in this litigation.

10.      Mr. Galarnyk acknowledged that each of these figures which appear in his report in regard to the cost to repair were opinions of those unidentified persons who prepared the proposals, not his own. (<u>Id.</u>). These proposals were either never committed to writing by their authors or otherwise were never produced in discovery.

11.      Mr. Galarnyk testified that the opinions in the proposals were held by the persons prepared the proposals and that he made no effort to review or otherwise double-check their opinions. (<u>Id.</u> at pgs. 142; 146-147). Instead, he chose these companies to bid the project based on their licensure and online ratings. (<u>Id.</u> at pgs. 147-148). He stated that he looked to their "history" but could provide no other description other than his belief that they were competent. (<u>Id.</u>). He explained that neither

was charged with considering whether the building had to be demolished or not, only to provide an opinion as to cost for doing so and rebuilding the building. (Id. at pg. 149).

12.    In regard to Harbor Building and Lee Design Studio, Mr. Galarnyk' s testimony that he reviewed a proposal appears to be false. Appended hereto as Exhibit 5 is the complete response to a subpoena undersigned counsel received from Harbor Building and Lee Design Studio. There is no proposal for rebuilding the subject premises. Instead, it includes a proposal for performing the investigation which Mr. Galarnyk testified was already performed.

13.    Murdock Street

## III.    LEGAL ARGUMENT

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56; *Underwater Storage, Inc. v. U. S. Rubber Co.*, 371 F.2d 950 (D.C. Cir. 1966) cert. den. 87 S.Ct. 859, 386 U.S. 911, 17 L.Ed.2d 784, on remand 314 F.Supp. 546.

Contemporaneous to the filing of the instant Motion Defendant has filed a Motion pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579; 113 S. Ct. 2786; 125 L. Ed. 2d 469 (1993) seeking to exclude Plaintiff's sole expert, Timothy Galarnyk. Defendant adopts and incorporates the arguments made therein seeking his exclusion as his testimony is inadmissible.

As discussed by Judge Boasberg, "'While a *Daubert* analysis at the summary judgment stage may seem premature or, at least, unconventional, [a] trial court has discretion to conduct the reliability and helpfulness analysis that Daubert and Rule 702 require in the context of a summary judgment motion, and to exclude expert testimony found wanting from its consideration in ruling on the motion.'" *Arsanjani v. United States*, 2023 U.S. Dist. LEXIS 76702, *10, 2023 WL 3231101 (D.D.C. 2023) citing *Carmichael v. West*, No. 12-1969, 2015 U.S. Dist. LEXIS 193447, 2015 WL

10568893, at *7 (D.D.C. Aug. 31, 2015). Where, as here, an expert has had the opportunity to defend his reports in deposition reviewing this matter in the context of summary judgment should not alter the admissibly analysis. *Id.* In any event, if this Honorable Court were to come to the conclusion that it needs to conduct a *Daubert* hearing before ruling on the Motion seeking to exclude Mr. Galarnyk's testimony than this Honorable Court should hold this matter under advisement until it rules on same. *See Sloan v. Urban Title Servs.*, 770 F. Supp. 2d 227, 238 (D.D.C. 2011)(" The proper vehicle for raising such issues is a motion *in limine* filed in the context of pretrial proceedings and, if necessary, the Court shall consider a request that a *Daubert* hearing be held to evaluate Jacobs' proffered testimony.").

Each of Plaintiff's claims requires a showing by expert testimony, either as to a breach of standard of care, causation or damages. As such, summary judgment should enter in favor of Murdock Street. Further, in regard to Plaintiff's trespass claim, Mr. Galarnyk's opinions only support a claim of differential settlement on Plaintiff's property, not vibrations by heavy machinery. As discussed below, this Honorable Court has already ruled that such theory cannot support a claim of trespass. *See* Memorandum Opinion and Order dated August 28, 2024, ECF No. 168 and July 21, 2023, Memorandum Opinion and Order, ECF No. 93.

### A. Count I, alleging negligence, requires a showing of a standard of care, a breach of that standard, and proximate causation of damages, each of which are absent

To prove negligence, a Plaintiff must establish three elements:

(1)     the defendant owed the plaintiff a duty of care;

(2)     the defendant breached that duty; and

(3)     the defendant's breach proximately caused the plaintiff's harm.

*Whiteru v. Wash. Metro. Area Transit Auth.*, 25 F.4th 1053, 1057 (D.C. Cir. 2022)(citing *Wash.*

*Metro. Area Transit Auth. v. Ferguson*, 977 A.2d 375, 377 (D.C. 2009)).

> As very recently discussed by Judge Leon writing for this Court:
>
> To establish the standard of care, a plaintiff must put on expert testimony if the subject in question is 'so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson.' *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988) (quoting *District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987)). Conversely, expert testimony is not required if the alleged negligent act is 'within the realm of common knowledge and everyday experience.' *Id.* (quoting *District of Columbia v. White*, 442 A.2d 159, 164 (D.C. 1982)). However, '[t]he D.C. Court of Appeals has required expert testimony in a number of cases that, on first blush, appear to be within the realm of common knowledge.' *Briggs v. WMATA*, 481 F.3d 839, 845, 375 U.S. App. D.C. 343 (D.D.C. 2007) (collecting cases). Indeed, '[t]he case law indicates that the "common knowledge" exception to the expert testimony requirement is recognized only in cases in which everyday experience makes it clear that jurors could not reasonably disagree over the care required.' *Id.*

*Mendoza v. Wash. Metro. Area Transit Auth.*, 2024 U.S. Dist. LEXIS 114649, *4-5, 2024 WL 3225981 (D.D.C. Jun. 28, 2024). In regard to those cases where the D.C. Court of Appeals has required expert testimony, despite common familiarity with the subject, the D.C. Circuit has provided the following examples where the D.C. Court of Appeals "has held that the following subjects require expert guidance despite the fact that they might be familiar to jurors":

> . . . maintenance of leaning trees, *Katkish v. District of Columbia*, 763 A.2d 703, 706 (D.C. 2000); application of hair relaxer, *Scott v. James*, 731 A.2d 399, 400 (D.C. 1999); tightness of handcuffs, *Tillman v. Washington Metro. Area Transp. Auth*., 695 A.2d 94, 97 (D.C. 1997); cushioning for the ground underneath playground monkey bars, *Messina* [*v. District of Columbia*,] 663 A.2d [535,] at 538 [(D.C. 1995)]; maintenance of street lights to prevent falling light globes, *Rajabi v. Potomac Elec. Power Co.*, 650 A.2d 1319, 1322 (D.C. 1994); time frame for ordering building materials on a construction project, *Lenkin-N Ltd. P'ship v. Nace*, 568 A.2d 474, 479 (D.C. 1990); response when an arrestee is found hanging in his cell, *Toy v. District of Columbia*, 549 A.2d 1, 7 (D.C. 1988); and installation of 'a crosswalk, instead of a stop sign, light, or crossing guard,' *District of Columbia v. Freeman*, 477 A.2d 713, 719-20 (D.C. 1984). The case law indicates that the 'common knowledge' exception to the expert testimony requirement is recognized only in cases in which everyday experience makes it clear that jurors could not reasonably disagree over the care required. *See, e.g., Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421, 425-26 (D.C. 2000) (holding that no expert testimony was necessary where boards covering a half block long and three foot wide trench were laid so as to produce a six to seven inch gap between boards); *District of Columbia v. Shannon*, 696 A.2d 1359, 1365-66

6

(D.C. 1997) (same where child's thumb was ripped out of her hand after getting caught in an open hole in the metal handrail of a playground slide); *Jimenez v. Hawk*, 683 A.2d 457, 462-63 (D.C. 1996) (same where abandoned tank containing used motor oil led to fire).

*Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 845 (D.C. Cit. 2007).

> **i.    Plaintiff's case clearly requires expert testimony in regard to any duty owed by Defendants, a breach of that duty and damages and Mr. Galarnyk's testimony is inadmissible**

The subject of this case concerns the demolition and construction of a building and the vibration or settlement of surrounding structures and the impact of same. Clearly, such topics are beyond the common experience of lay jurors. As discussed in Murdock Street's Motion *in Limine* seeking the exclusion of Mr. Galarnyk's testimony, he lacks the qualifications to provide such testimony and his testimony and opinions utterly fails the other requirements of Fed. R. Evid. 702 and *Daubert* analysis. Without such testimony Plaintiff cannot prevail on any of his claims. Even with Mr. Galarnyk's testimony, Plaintiff case should fail as his opinions do not actually reach a standard of care, nor explain any breach let alone establish a causal link, let alone properly quantify or substantiate Plaintiff's claim of damages.

> **ii.    Regardless of how this Honorable Court rules as to the admissibility of Mr. Galarnyk's testimony, Plaintiff has failed to come forward with admissible evidence as to any duty owed by Defendants, a breach of that duty or damages**

As discussed above, this Honorable Court should enter summary judgment as to Count I because Plaintiff has not come forward with admissible expert testimony and Murdock Street has contemporaneously filed a Motion seeking the exclusion of Plaintiff's sole expert witness. Assuming *arguendo* that this Honorable Court were to disagree in whole or in part as to the admissibility of his testimony, Murdock Street is still entitled to summary judgment as his testimony fails to address what duties Murdock Street owes, any breach of those duties, actual and

proximate causation and damages.

In regard to duties, Murdock Street was the owner of the project. Mr. Galarnyk has not provided any opinions in regard to the duties owned by an owner of a project to ensure that its contractors and design professionals are fulfilling their responsibilities. Moreover, he has not provided any testimony as to the duties owed by those persons nor any breach.

As discussed in greater detail in Murdock Street's Motion seeking his exclusion, he did not perform any sort of calculation in forming his opinions (See Exhibit 4 at pg. 29, 130, 180) nor could he do so as he did not even make an effort to count the number of cracks in the foundation let alone assess their quality and size. He opines that the alleged damage to Plaintiff's premises was due to the failure to have a proper sheeting and shoring plan. (Exhibit 4 at pgs. 44-45). He testified that, apart from ensuring that the contractor who performed the work was properly licensed, the sheeting and shoring work was improper because the contractor "failed to assess the adjacent structure. . . to determine if there's anything that they need to be concerned of in placing the shoring." (Id. at pg. 160).  Mr. Galarnyk acknowledged that there must have been a sheeting and shoring plan (Id. at pg. 46). Despite his criticism of the sheeting and shoring plan and work, he acknowledged that he never reviewed the plans from the subject work. (Id. at pgs. 46-48; 159; see also 162 "I saw no evidence of it being done by anybody; therefore, I have to conclude since the plan – since it's my impression that the defense is required to submit the documents on what they did and how, when, why, and where, I saw no evidence of any kind of plan."). The sheeting and shoring plan, which is, of course, crucial to Plaintiff's claims that the building settled during excavation, was indeed produced in discovery and is appended hereto as Exhibit 6.  He could offer nothing more than it was, in his opinion, not of "sufficient character." (Id. at pg. 161). Mr. Galarnyk could not describe whether it was too large or small or placed in the wrong location. (Id.).

Mr. Galarnyk also testified that he also saw no evidence of a geotechnical study. (Exhibit 4 at pg. 164). Mr. Galarnyk explained that a geotechnical study is:

> Part of your evaluation of the existing structure and part of the evaluation of the new building is the geotechnical exploration. Once the geotechnical exploration is done, and along with the adjacent building evaluation, then you design a shoring and facilitating structure that prevents damage to the existing building, Matiella's building, and facilitates the installation of the new building.
>
> Whether the geotechnical structure would have supported an auger-cast type of operation, I don't care. 'Cause if it didn't -- if it was hardpan and I needed to drill into rock, I would have done that based upon the existing structure and based upon the geological features of the location of the new structure. That's what I would have done.

(Exhibit 4 at pg. 165). Similar to the sheeting and shoring plan, there was indeed a geotechnical study prepared, which was produced in discovery and which is appended hereto as Exhibit 7.

Further, some of Mr. Galarnyk's opinions are clearly contrary to the evidence. He testified that what is clearly a cut from a grinder or saw was instead evidence of bricks falling away from the subject premises. (Exhibit 4 at pgs. 97-100 and compare to Exhibit 1 at pg. 45, top left photograph). He further testified that what is clearly a tree root was instead a crack. (Exhibit 4 at pgs. 113; 115-116 and compare with Exhibit 2 at pg. 42, bottom left photograph). As explained by both the United States Supreme Court and the D.C. Circuit, "where a party's 'version of events is . . . utterly discredited' by video or photo evidence, courts should believe their eyes." *Scott v. Harris*, 550 U.S. 372, 380-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *Toomer v. Austin*, 2022 U.S. App. LEXIS 3064, *4, 2022 WL 301561 (D.C.C. 2022).

Moreover, Mr. Galarnyk testified that he had no opinion as to causation. His opinions are completely at odds with Plaintiff's theory of the case, as he believes that the alleged damages are due to differential settlement (Exhibit 4 at pg. 89; see also pgs. 125-127) whereas Plaintiff contends that the damage is due to vibration. (Exhibit 1, 2nd Am. Cmplt. ECF No. 140 at ¶¶ 22-24)..

9

Regardless, Mr. Galarnyk was unable to quantify the settlement or movement in any meaningful way. (Exhibit 4 at pgs. 60-92). Nor did he know if there existed any such standards. (Id. at pg. 125).

In regard to damages, Mr. Galarnyk utterly failed to provide an opinion. (Exhibit 4 at pgs. 142; 146-149). Instead, he testified that unknown persons with unknown credentials came up with a figure to demolish and rebuilt the Plaintiff's building. (Id.). What such persons considered, what the purported work would entail, and other than preparing an undisclosed estimate[1] that the work would include demolishing and rebuilding the existing structure, nothing about Plaintiff's damages is known.

### B. Count II, alleging trespass, requires a showing that Defendant indeed trespassed and damage

As previously argued to this Honorable Court, Plaintiff does not allege a physical invasion onto his property. Instead, he alleges vibration from the work occurring at the neighboring property shook his home and damaged it. As noted above, there is absolutely no expert testimony to support such claim. Instead, as discussed above, Mr. Galarnyk testified that he believed that the damage was caused by differential settlement. Murdock Street contends that such testimony is inadmissible for the reasons stated above and in its Motion *in Limine* seeking to exclude him from trial. Leaving aside the admissibility of Mr. Galarnyk's testimony, assuming *arguendo* he can testify, nothing in his opinion's testimony would support a finding of trespass.

"[A] trespass is an unauthorized entry onto property that results in interference with the property owner's possessory interest therein." *Sarete, Inc. v. 1344 U St. Ltd. P'ship*, 871 A.2d 480,

---

[1]    Assuming there is such a document. As discussed in the Motion *in Limine* seeking to exclude Mr. Galarnyk, in responding to a subpoena, Harbor Building and Lee Design Studio produced documents which reflect that no such estimate was ever undertaken much less provided to Mr. Galarnyk.

490-491 (D.C. 2005)(RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 64A.02[1]

at 64A-16, at 64A-16 (Michael A. Wolf ed. 2000). In its July 21, 2023, Memorandum Opinion and

Order, ECF No. 93, this Honorable Court explained that "Plaintiff appears to allege two different

theories of trespass: (1) that Defendant's alleged negligent excavation led to the movement of soil

and settlement of Plaintiff's house, causing cracks and other damage; and (2) that reverberations

and vibrations caused by Defendant's heavy construction, excavation and drilling led to

'substantial and serious damage" to the property.'" (ECF No. 93 at pg. 29). This Honorable Court

ruled that:

> The allegations related to Plaintiff's first theory—that the excavation at Murdock Street's Property resulted in damage caused by the movement of soil under the lagging of the retaining wall—do not state a claim for trespass. At a minimum, District of Columbia law requires a trespass to involve an '*entry upon* someone else's real or personal property.' *Nat'l Tel.*, 38 F. Supp. 2d at 12 (quoting *Balt. Gas and Elec. Co.*, 684 A.2d at 461 (emphasis added)); see also, e.g., *Turpin*, 613 F. Supp. 3d at 215 ('Trespass has three elements: "(i) an *unauthorized entry* (ii) *onto the plaintiff's property* (iii) that interferes with the plaintiff's possessory interest." (emphasis added) (quoting *Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 118 (D.D.C. 2018))). Here, Plaintiff has not alleged an entry onto his property. Instead, the allegations describe an exodus: soil from Plaintiff's property 'flow[ed] out' from beneath the lagging on Murdock Street's Property and possibly moved 'lateral[ly] to "close[] the void" between the lagging and the walls of the excavation. ECF No. 50, ¶ 28.G. As such, Plaintiff has not pleaded the required elements of a cause of action for trespass based on the movement of soil from his property to the adjacent property.

(ECF No. 93 at pgs. 28-29). This Honorable Court reiterated its ruling in its Memorandum Opinion

and Order dated August 28, 2024, ECF No. 168, wherein it noted that it had previously "dismissed

one of Plaintiff's theories of trespass—that the excavation at the construction site had resulted in

damage caused by soil movement under Plaintiff's property—but sustained Plaintiff's theory of

trespass based on vibrations from the excavation, drilling, and heavy construction work, which

Plaintiff alleges caused damage to the foundation of his building." (ECF No. 188 at pg. 10).

 As such, Plaintiff cannot proceed on a claim of trespass for differential movement.

However, this is precisely what Mr. Galarnyk testified he believed occurred. Regardless of whether D.C. law would recognize a claim for an intangible entry onto real property, the only claims which Mr. Galarnyk provided testimony did not concern vibration but instead differential movement of Plaintiff's own property. As such, whether this Honorable Court believes such testimony is admissible or not, this Honorable Court, consistent with D.C. law, has already ruled that such theory is unavailable.

## IV.    CONCLUSION

For the foregoing reasons, Defendant, Murdock Street, LLC, respectfully requests that this Honorable Court GRANT its Motion for Summary Judgment and provide such other relief as it deems just and proper.

Respectfully submitted,

DeCARO, DORAN, SICILIANO,
GALLAGHER & DeBLASIS, LLP

/s/ James S. Liskow
James S. Liskow
DC Bar # 501930
17251 Melford Boulevard, Suite 200
Bowie, Maryland  20715
Tel:    (301) 352-4950
Fax:    (301) 352-8691
jliskow@decarodoran.com

## REQUEST FOR HEARING

Defendant, Murdock Street, LLC, by and through undersigned counsel, respectfully requests a hearing as to all matters herein.

/s/ James S. Liskow
James S. Liskow

12

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, that on this __12th__ day of __November__, 2024, a copy of the

foregoing Memorandum in Support of Motion for Summary Judgment was e-filed to:

Kenneth E. Chase, Esquire
Chase Law & Associates, P.A
1141 71st Street
Miami Beach, FL  33141

Edward P. Trivette, Esquire
Robert E. Worst, Esquire
Kalbaugh Pfund & Messersmith, P.C.
3950 University Drive, Suite 204
Fairfax, VA 22030

W. Benjamin Woody, Esquire
Harman, Claytor, Corrigan & Wellman
1900 Duke Street, Suite 210
Alexandria, Virginia 22314

Brendan P. Bunn, Esquire
Janeen B. Koch, Esquire
Chadwick, Washington, Moriarty, Elmore & Bunn, P.C.
3201 Jermantown Rd., Suite 600
Fairfax, VA 22030

/s/ James S. Liskow<br>
James S. Liskow

i:\common\wp\l4\jsl\2-client files\matiella v. murdock street llc\pleadings\def's memo in support of msj.docx