UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES MATIELLA, <br><br> Plaintiff, <br><br> v. <br><br> MURDOCK STREET LLC, *et al.*, <br><br> Defendants. | Case No. 21-cv-2112 (GMH) |

**MEMORANDUM OPINION AND ORDER**

As the Court explained in an earlier opinion, this negligence and trespass action "concerns whether the construction of a condominium building damaged the townhouses on an adjacent property owned by the Plaintiff, Charles Matiella." *Matiella v. Murdock St., LLC*, No. 21-cv-2112, 2024 WL 3967367, at *1 (D.D.C. Aug. 28, 2024). Plaintiff has sued the owner of the adjacent property, Murdock Street, LLC; the two companies who operated as the general contractor and developer for its construction, EWORA, LLC, and IFG Group, LLC; and two subcontractors allegedly involved in the excavation, City Concrete Corporation and Luis Construction, Inc. Plaintiff has now moved for summary judgment on its negligence claim against Luis Construction.[1] For the following reasons, the motion is **DENIED**.

**I.      BACKGROUND**

The factual background of this case has been laid out in two prior opinions and will not be repeated here. *See Matiella*, 2024 WL 3967367; *Matiella v. Murdock St. LLC*, No. 21-cv-2112,

---

[1] The documents most relevant to this Memorandum Opinion and Order are: (1) Plaintiff's motion for partial summary judgment and its attachments, ECF No. 170 through ECF No. 170-2; (2) Luis Construction's opposition and its attachments, ECF No. 175 through 175-2 and ECF No. 176 through 176-5; (3) Plaintiff's reply, ECF No. 180; and (4) Luis Construction's opposition affidavit, ECF No. 182. The page numbers cited herein are those assigned by the Court's CM/ECF system.

2023 WL 4684854 (D.D.C. July 21, 2023). Except where noted, the following facts are undisputed for the purposes of this motion.[2, 3] Defendant Murdock Street contracted with EWORA as its general contractor for the condominium construction and with IFG as the developer for the project; those two companies contracted with City Concrete to perform construction work on the project,[4] which in turn contracted with Luis Construction to perform shoring work, which included some digging and the use of a drill. *See* ECF No. 170-1, ¶¶ 4–10 (Plaintiff's Statement of Material Facts); ECF No. 176, ¶ 1 (asserting the Luis Construction does not dispute paragraphs 1–9 of Plaintiff's Statement of Material Facts with one clarification, *see* note 4, *supra*); ECF No. 170-2 at 631, ¶¶ 1, 8, 12 (Luis Construction's answers to interrogatories explaining that the work it did involved the use of a large drill and digging soldier piles). Luis Construction did not have a general

---

[2] The only two parties involved in this motion are Plaintiff and Luis Construction. Other parties may dispute, in later proceedings, the facts that are identified herein as undisputed for purposes of the pending motion.

[3] Plaintiff complains that Luis Construction has not properly supported its opposition, objecting to its use of "the interrogatory answers of City Concrete, a party which insists on Luis [Construction's] liability" and of Defendants' "unsworn expert report in which the writer did not attest to personal knowledge," which Luis Construction cites to counter Plaintiff's assertion that Luis Construction performed its work in a negligent manner. ECF No. 180 at 3. The Court sees no issue with Luis Construction's use of City Concrete's sworn interrogatory answers that support its position here. Rule 56(c)(1)(A) explicitly mentions "interrogatory answers" as appropriate to support a fact asserted on summary judgment. Fed. R. Civ. P 56(c)(1)(A). As to Luis Construction's denial of Plaintiff's assertion that the company performed its work in a negligent manner, the evidence *Plaintiff* musters does not support his assertion. Rather, Plaintiff relies largely on his own deposition testimony as to damage to the property, which says nothing about whether Luis Construction's work was negligent and allegations in the operative complaint, which are not proper evidence on summary judgment, *see, e.g.*, *Fleck v. Dep't of Veterans Affs. Off. of Inspector Gen.*, 651 F. Supp. 3d 46, 54 (D.D.C. 2023) ("[A]llegations made only in an unverified complaint generally cannot defeat summary judgment."). *See* ECF No. 170-1, ¶ 14. He also cites two exhibits called "Ex. C" and "Ex. D," *see id.*, which cannot be exhibits to his motion, because those are numbered, not lettered. A court "is under no obligation to sift through the record" to find support for an asserted fact. *Jimenez v. Mayorkas*, No. 21-5193, 2023 WL 2607385, at *2 n.2 (D.C. Cir. Mar. 23, 2023) (quoting *SEC v. Banner Fund Int'l*, 211 F.3d 602, 616 (D.C. Cir. 2000)). And, in any case, Luis Construction has submitted a sworn affidavit from its principal—an affidavit to which Plaintiff has not objected—asserting that its work was not performed negligently. *See* ECF No. 182, ¶ 8. The Court therefore will not deem admitted Plaintiff's allegation that Luis Construction was negligent.

[4] There is some dispute about the scope of the work City Concrete was contracted to do, with Plaintiff alleging the company was to "construct" the project and Luis Construction asserting that City Concrete was to "complete concrete work" and "install a metal deck." ECF No. 170-1, ¶ 7; ECF No. 176, ¶ 1. The scope of City Concrete's work is not material to this dispute.

contractor's license issued by the District of Columbia; the company asserts, without contradiction from Plaintiff, that it had a builder's license from Virginia. ECF No. 176, ¶ 6.

Plaintiff now moves for summary judgment under two theories: negligence per se and *res ipsa loquitur*. ECF No. 170 at 2. He contends that District of Columbia regulations require those performing land development, new construction work, excavation, drilling, and the like, to have a D.C. contractor's license. *See id.* at 4–5; ECF No. 180 at 2–3. He further argues that, because Luis Construction admittedly did not have such a license, it committed negligence per se, which "occurs when the defendant violates a statute or regulation and proximately causes damage to a member of the class of people in the plaintiff's position who the statute was intended to protect." ECF No. 170 at 3 (citing *Rong Yao Zhou v. Jennifer Mall Rest., Inc.*, 534 A.2d 1268, 1273 (D.C. 1987)). As for *res ipsa loquitur*, Plaintiff asserts that he has satisfied the requirements for application of the doctrine because "[t]he damage sustained by Plaintiff is not the kind that ordinarily occurs without someone's negligence," it "was caused by an instrumentality within Luis Construction's exclusive or joint control, and it is not due to any action or contribution by Plaintiff." *Id.* at 7.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Initially, the moving party has the burden of demonstrating the absence of a genuine dispute as to any

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the non-moving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

It is well established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment." *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (quoting *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 604 (D.C. Cir. 2010)). Indeed, a court's role in deciding a summary judgment motion is not to "determine the truth of the matter, but instead [to] decide only whether there is a genuine issue for trial." *Id.* (quoting *Pardo-Kronemann*, 601 F.3d at 604). Where the material facts are not in dispute, entry of summary judgment is appropriate if the moving party has shown it is entitled to judgment as a matter of law. *See, e.g.*, *Mylan Labs., Inc. v. Thompson*, 332 F. Supp. 2d 106, 116 (D.D.C. 2004) (citing Fed. R. Civ. P. 56(c)).

### III. DISCUSSION

#### A. Negligence Per Se

Plaintiff's argument that it is entitled to summary judgment on a theory of negligence per se is founded on the principle that "where a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute, unexplained violation of that standard renders the defendant negligent as a matter of law." *Rong Yao Zhou*, 534 A.2d at 1273 (quoting *Ceco Corp. v. Coleman*, 441 A.2d 940, 945 (D.C. 1982)). Put another way, "[o]ccasionally . . . legislative action fashions applicable standards of conduct which themselves fix the duty of care required[;] [f]ailure to meet these community standards stamps the offender 'negligent,' *i.e.* failing to exercise that degree of care necessary in the particular situation." *Id.*

4

(alterations in original) (quoting *Richardson v. Gregory*, 281 F.2d 626, 629 (D.C. Cir. 1960)). Plaintiff cites various statutes and regulations governing licensing and land development: the D.C. Code provides both that "[n]o person shall practice, attempt to practice, or offer to practice an occupation or profession for which a license, certification, or registration is required under this subchapter without a current valid license, certificate, or registration," D.C. Code § 47-2853.02(a); and that "[a] General Contractor/Construction Manager License shall be required for individuals or businesses engaged in general contracting or construction management," *id.* § 47-2851.03d(b). D.C. municipal regulations repeat the licensing requirement. *See* D.C. Mun. Regs. tit. 17, § 3900.1, https://www.dcregs.dc.gov/Common/DCMR/SectionList.aspx?SectionNumber=17-3900 [https://perma.cc/W7DT-YXFL]; *see also* ECF No. 175-1. They define "general contractor[s]" as "persons engaged in heavy construction (including highway, street, bridge, transmission line, marine facilities, and oil and gas structures construction, and dredging); land development (including blasting, test drilling, landfill, leveling, earthmoving, excavating, land drainage, and other land preparation); and the construction of new buildings." D.C. Mun. Regs. tit. 17, § 3999.1, https://www.dcregs.dc.gov/Common/DCMR/SectionList.aspx?SectionNumber=17-3999 [https://perma.cc/NL2Z-EDR2]; *see also* ECF No. 175-2.[5] Regulations also require that "[a]djoining public and private property shall be protected from damage during construction, alteration, repair, demolition or raze of a premises at the expense of the person causing the work[;] [p]rotection must be provided for lots, and for all elements of a building or other structure." D.C. Mun. Regs. tit. 12-A, § 3307.1, https://www.dcregs.dc.gov/Common/DCMR/SectionList.aspx?

---

[5] Plaintiff does not allege that Luis Construction was a "construction manager" and it is clear from the regulatory definition that it was not: the term denotes "any person who, for a fee, is contracted to supervise and coordinate the work of design professionals and multiple general contractors, while allowing the design professionals and general contractors to control individual operations and the manner of design and construction." D.C. Mun. Regs. tit. 17, § 3999.1 [https://perma.cc/NL2Z-EDR2]; *see also* ECF No. 175-2.

SectionNumber=12-A3307 [https://perma.cc/9LPT-JANL].  Thus, according to Plaintiff, he

> is within the class protected by the District's licensing code and regulations, as his adjoining property was damaged by the excavation and drilling work negligently performed by the unlicensed Luis Construction on the neighboring property. This type of damage to adjoining property is precisely what the licensing laws aim to prevent when contractors perform unlicensed work.

ECF No. 170 at 6.

The Court expresses no opinion on whether Plaintiff has established (1) that the standards he cites were "enacted to protect persons in [his] position or to prevent the type of accident that occurred," (2) "his relationship to the statute," or (3) "that the statutory [or regulatory] violation was the proximate cause of [his] injuries," which is also necessary to prove negligence per se, *Rong Yao Zhou*, 534 A.2d at 1273, 1277, because his argument fails on a more fundamental point: Luis Construction was not required to have a D.C. license for the work it did on the property adjoining Plaintiff's.  It is clear Luis Construction was a subcontractor, engaged by City Concrete, which was itself engaged by general contractor EWORA (and IFG).[6]  *See* ECF No. 170-1, ¶¶ 5-7, 10.  The D.C. regulation defining a general contractor explicitly excludes subcontractors from its purview—a part of the provision Plaintiff conveniently leaves out of his

---

[6] In his reply, Plaintiff asserts, apparently to prove that Luis Construction is *not* a subcontractor, that the company "did not establish or assert that City Concrete or EWORA supervised, monitored, or oversaw any work that Luis Construction performed.  City Concrete denies that it even hired Luis Construction."  ECF No. 180 at 3.  The Court is unpersuaded.  First, Plaintiff himself asserted that City Concrete hired Luis Construction in his Statement of Material Facts and Luis Construction did not dispute that.  *See* ECF No. 170-1, ¶ 10; ECF No. 176, ¶ 1.  Second, Plaintiff provides no authority for his (implicit) proposition that, to be considered a subcontractor, a company must be "supervised, monitored, or over[seen]" by a general contractor or another subcontractor.  ECF No. 180 at 3.  And, indeed, the Supreme Court has asserted that "established by usage in the building trades, a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract," making no mention of supervision and the like.  *Clifford F. MacEvoy Co. v. U.S. ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 108–09 (1944); *see also* Subcontractor, *Black's Law Dictionary* (12th ed. 2024) (defining "subcontractor" as "[s]omeone who is awarded a portion of an existing contract by a contractor, esp. a general contractor").  And the regulatory definition itself allows a subcontractor to "work[] for *or* under the supervision of a general contractor," D.C. Mun. Regs. tit. 17 § 3999.1 (emphasis added) [https://perma.cc/NL2Z-EDR2]; *see also* ECF No. 175-2, indicating that being supervised is not a necessary element of subcontracting.  Thus, the Court finds it undisputed that Luis Construction was a subcontractor.

discussion. For the removal of doubt, the Court reproduces the relevant portion of the regulation in its entirety:

> **General contractor**—means any person who, for a fee, is contracted to do construction on real property owned, controlled, or leased by another person of commercial, industrial, institutional, governmental, residential or accessory use buildings or structures. This also includes the remodeling, repair, improvement or demolition of these buildings or structures.
>
> The term "general contractor" shall also include persons engaged in heavy construction (including highway, street, bridge, transmission line, marine facilities, and oil and gas structures construction, and dredging); land development (including blasting, test drilling, landfill, leveling, earthmoving, excavating, land drainage, and other land preparation); and the construction of new buildings.
>
> *The term "general contractor" does not include*:
>
> (a) *any subcontractor*, employee, or agent working for or under the supervision of a general contractor licensed or required to be licensed under this chapter and acting within the scope of his or her contract, employment, or agency[.]

D.C. Mun. Regs. tit. 17, § 3999.1 (emphasis added) [https://perma.cc/NL2Z-EDR2]; *see also* ECF No. 175-2.

Doubling down in his reply—and, stunningly, again making no reference to the exclusion clause quoted above—Plaintiff insists that because Luis Construction "performed both 'land development' and 'new construction'" it was "as a matter of District of Columbia law . . . a general contractor and a license is required." ECF No. 180 at 2–3. That is simply wrong. The language and structure of the regulation clearly exclude from the definition of "general contractor" a subcontractor *even if* it engages in the types of work the regulation defines as within the purview of a general contractor. *See Cutler v. KBR Luxury, Inc.*, No. 23-cv-2377, 2024 WL 2891621, at *4 n.2 (D.D.C. June 10, 2024) ("Chapter 17-39's definition section excludes from the 'general contractor' definition several types of other licensed person and types of work, . . . excluding, for example, a subcontractor . . . ."). Plaintiff has pointed to no statute or regulation that requires a subcontractor

7

to have a D.C. license—unsurprisingly, because Section 3999.1 indicates that it is the *general contractor* that must do so. See D.C. Mun. Regs. tit. 17, § 3999.1 (excluding a subcontractor "working for or under the supervision of a general contractor licensed or required to be licensed") [https://perma.cc/NL2Z-EDR2]; *see also* ECF No. 175-2. Thus, the foundation of his argument—that Luis Construction violated statutory or regulatory standards by not having a D.C. general contractor's license—crumbles.

Plaintiff is not entitled to summary judgment on his negligence claim against Luis Construction on a theory of negligence per se.

### B.   *Res Ipsa Loquitur*

Plaintiff devotes a single paragraph to the argument that he is entitled to summary judgment on his negligence claim on a theory of *res ipsa loquitur*. He sets out the standard—"[r]es ipsa loquitur applies when (1) the damage is of a kind that ordinarily does not occur without someone's negligence, (2) it is caused by an agency or instrumentality within the defendant's exclusive or joint control, and (3) it is not due to any voluntary action or contribution by the plaintiff," ECF No. 170 at 6 (citing *D.C. Hous. Auth. v. Pinkney*, 970 A.2d 854, 866 (D.C. 2009)); asserts that "[c]ausation is established when, as in this case, foundational and structural damage arises while the adjoining property is undergoing excavation work," *id.* (citing *Washington Metro. Area Transit Auth. v. L'Enfant Plaza Props., Inc.*, 448 A.2d 864, 868 (D.C. 1982)); states that "[t]he damage sustained . . . is not the kind that ordinarily occurs without someone's negligence[,] . . . was caused by an instrumentality within Luis Construction's exclusive or joint control, and it is not due to any

action or contribution by Plaintiff," *id.* at 7; and concludes that *"*the requirements for res ipsa loquitur are satisfied," *id.* at 7.

This "'threadbare recital[] of the elements' of *res ipsa loquitur*, 'supported by mere conclusory statements,'" would not survive a motion to dismiss, *Potomac Elec. Power Co. v. Washington Metro. Area Transit Auth.*, No. 19-cv-2709, 2020 WL 3429738, at *2 (D.D.C. June 22, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), let alone show that Plaintiff is entitled to summary judgment. For example, to establish the first element, "the plaintiff must demonstrate that the occurrence is one where a layperson can infer negligence 'as a matter of common knowledge,' or where expert testimony is presented that such accidents do not occur in the absence of negligence." *Crenshaw v. Washington Metro. Area Transit Auth.*, 731 A.2d 381, 383 (D.C. 1999) (quoting *Quin v. George Washington Univ.,* 407 A.2d 580, 583–84 (D.C. 1979)); *see also Scott v. James,* 731 A.2d 399, 404 (D.C. 1999) ("[*Res ipsa loquitur*] may be invoked only where a lay [person] can infer negligence 'as a matter of common knowledge,' or where expert opinion is presented that such accidents do not occur in the absence of negligence." (second alteration in original) (quoting *Hailey v. Otis Elevator Co.*, 636 A.2d 426, 428 (D.C. 1994)). Plaintiff's evidence on this point is non-existent and his argument is mere *ipse dixit*. His single case citation is unhelpful on this point, given that the plaintiff there relied on the testimony of three experts to show that "that the kind of subsidence which occurred near appellee's property ordinarily does not occur absent the failure to backfill an excavation properly." *L'Enfant Plaza Props.*, 448 A.2d at 868. More, "although the first element requires that the accident be of the kind that does not ordinarily occur in the absence of negligence, the principle does not relieve the plaintiff of showing that the defendant's negligence most probably caused the [damage]." *Bell v. May Dep't Stores Co.*, 866 F.2d 452, 455 (D.C. Cir. 1989). "The indispensable requirement that plaintiff 'bring [the

9

negligence] home to the defendant'" is among the things Plaintiff has failed to establish with facts or argument here, "thus rendering the principle [of *res ipsa loquitur*] inapplicable." *Id.* at 456 (first alteration in original) (citation omitted) (quoting *Prosser and Keeton on the Law of Torts* § 39, at 248 (5th ed. 1984)).  Indeed, "*res ipsa loquitur* 'does not come into play in cases where the cause of the [damage] is unknown.'"  *Owen v. United States*, 899 F. Supp. 2d 71, 81–82 (D.D.C. 2012) (quoting *Jones v. Safeway Stores, Inc.,* 314 A.2d 459, 461 (D.C. 1974); *see also Casanova v. Marathon Corp.*, 570 F. Supp. 2d 53, 57–58 (D.D.C. 2008) ("Significantly, 'the cause of the accident must be known before we can determine that the causal instrument was within the exclusive control of the defendant and that the injury was not due to an act of the plaintiff.'" (quoting *Londono v. Wash. Metro. Area Transit Auth.,* 766 F.2d 569, 571 (D.C. Cir. 1985)).  Plaintiff's motion makes no attempt to present evidence that would allow the Court to determine what caused the damage alleged or which of the many defendants, if any, "most probably" caused it.  Because Plaintiff has not met his burden to adduce undisputed facts or present any non-conclusory argument that might meet even the first requirement for application of *res ipsa loquitur*, his motion for summary judgment resting on that doctrine must be denied.

### IV.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's motion for partial summary judgment, ECF No. 170, is **DENIED**.

**SO ORDERED.**

Date:  March 4, 2025

                                                   G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE