## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHARLES MATIELLA,

        Plaintiff,

    v.

MURDOCK STREET LLC, *et al.*,

        Defendants.

**Case No. 21-cv-2112 (GMH)**

### MEMORANDUM OPINION AND ORDER

This action "concerns whether the construction of a condominium building damaged the townhouses on an adjacent property owned by the Plaintiff, Charles Matiella." *Matiella v. Murdock St., LLC*, No. 21-cv-2112, 2024 WL 3967367, at *1 (D.D.C. Aug. 28, 2024) (footnote omitted) [hereinafter *Matiella II*]; *see also Matiella v. Murdock St., LLC*, No. 21-cv-2112, 2023 WL 4684854, at *1 (D.D.C. July 21, 2023) [hereinafter *Matiella I*]. Plaintiff alleges causes of action for negligence and trespass against the owner of the adjacent property, Murdock Street, LLC; the two companies who operated as the general contractor and developer for the construction of the condominium building, EWORA, LLC, and IFG Group, LLC; and two subcontractors, City Concrete Corporation and Luis Construction, Inc. This Memorandum Opinion and Order resolves each Defendant's motion for summary judgment.[1] For the following reasons, the motions for

---

[1] The documents most relevant to this Memorandum Opinion and Order are: (1) Luis Construction's motion for summary judgment and supporting papers (including papers submitted in reply), ECF No. 195 and ECF No. 196 through ECF No. 196-4; (2) Murdock Street's motion for summary judgment and supporting papers (including papers submitted in reply), ECF No. 198 through ECF No. 198-8 and ECF No. 219; (3) EWORA and IFG's motion for summary judgment and supporting papers (including papers submitted in reply), ECF No. 199 through ECF No. 199-45, ECF No. 203, and ECF No. 217; (4) City Concrete's motion for summary judgment and supporting papers (including papers submitted in reply), ECF No. 200 through ECF No. 200-6 and ECF No. 222; and (5) Plaintiff's omnibus opposition to the preceding motions for summary judgment and supporting papers, ECF No. 215 through ECF No. 215-2. The page numbers cited herein are those assigned by the Court's CM/ECF system.

summary judgment of Murdock Street, Ewora and IFG, City Concrete, and Luis Construction are granted.

## I.    BACKGROUND

### A.    Factual Background[2]

In 2014, real estate firm The Warrenton Group submitted architectural drawings to the District of Columbia Board of Zoning Adjustment for a proposed six-story mixed-use building with 27 residential units at 3619 Georgia Ave., NW (the "Georgia Avenue Property"). *See* ECF No. 203 at 2, 6. The Warrenton Group commissioned a subsurface exploration and geotechnical engineering analysis, which was completed by ECS Mid-Atlantic on February 3, 2016. *See* ECF No. 199-41. In October of that year, the then-owner of the property obtained a permit to raze the existing two-story structure on the property. *See* ECF No. 199-40. Demolition began in July 2017. *See* ECF No. 215-1 at 15, ¶ 5. On September 25, 2017, Murdock Street acquired the Georgia Avenue Property. *See* ECF No. 199-31. EWORA, a limited liability company that Fatih Guner owned along with another individual, was the original general contractor on the project; at some point thereafter, Guner substituted his own company, IFG, as the general contractor. *See* ECF No. 199-44 at 15, 19–20. In October 2017, EWORA hired City Concrete to perform construction activities on the Georgia Avenue Property, including underpinning, shoring, and pouring concrete slabs for the cellar floor, ground floor through sixth floor, and the roof floor. *See* ECF No. 199-33. There is a dispute as to whether City Concrete performed excavation activities at the site. *See* ECF No. 215-1 at 14, ¶ 2. City Concrete, in turn, contracted with Luis Construction to complete

---

[2] Except where noted, the facts below are undisputed (or deemed undisputed) either because they have been admitted in Plaintiff's response to Defendants' statements of material facts or because they appear in the record without contradiction from other evidence in the record.

sheeting and shoring work pursuant to plans provided by City Concrete.[3]  *See* ECF No. 215-1 at 16, ¶ 2.  Construction was to commence in December 2017.  *See* ECF No. 199-32 at 3.  City Concrete completed its underpinning work by February 6, 2018.  *See* ECF No. 215-1 at 14–15, ¶ 4.  Luis Construction commenced and completed its sheeting and shoring work between the end of February 2018 and the beginning of March 2018.  *See id.* at 16, ¶ 2.  City Concrete completed all foundation work on September 14, 2018.  *See id.* at 14–15, ¶ 4.

A third-party inspection and engineering firm, FMC & Associates ("FMC"), provided periodic inspection reports on the construction in 2018 and 2019.  *See* ECF No. 199-43; ECF No. 215-2 at 52.  FMC noted some issues with the construction in 2018.  Specifically, according to a November 2021 internal email among personnel in the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA"), "reports and email correspondence" from FMC reflected that Murdock Street and IFG were notified by the firm to "brace the party wall to prevent lateral movement" in June 2018; that "[s]oil at the party wall by the stairs collapsed" in June 2018 and soil under the sidewalk collapsed in July 2018; and that "[l]ack of bracing and sheeting and shoring" at Plaintiff's property "seems to be the cause of new structural cracks" in the wall shared between the two properties observed in November 2018.  ECF No. 215-2 at 52.  FMC's reports from August and September 2019—the only ones in the record—indicate that construction was then being "performed in accordance with project specifications and approved drawings," *see* ECF No. 199-43 at 2, 7, 11, 14, 18.

Meanwhile, Plaintiff noticed damage to his property in July 2017, shortly after demolition on the Georgia Avenue Property began.  *See* ECF No. 215-1 at 15, ¶ 5.  The bulk of the damage Plaintiff attributes to construction on the Georgia Avenue Property occurred between April 1,

---

[3] "Sheeting and shoring supports the exposed sides of [an] excavation.  Underpinning is the support and stabilization of adjacent buildings from below."  *Levy v. Schnabel Found. Co.*, 584 A.2d 1251, 1252 (D.C. 1991).

2018, and August 5, 2018. *See id.* at 11–12. In May 2018, Plaintiff retained an engineering firm to review the progress of construction on the Georgia Street Property and report on how it would affect Plaintiff's property. *See id.* at 17, ¶ 3; ECF No. 217 at 2, ¶ 3. The May 25, 2018, report authored by engineer Robert A. Wixson opined in relevant part that

> [t]he excavation support for the new construction has not been properly installed. Since there is no backfill between the lagging boards and the adjacent earth the wall is not properly confining the soil below [Plaintiff's] front and rear yards. This has compromised the stability of [Plaintiff's] front walk and the columns that support the second floor deck. . . .
>
> The height of the temporary sheeting wall is greater than normal for an unbraced wall. In similar fashion given the height of the underpinning it is common to place temporary lateral shoring to brace the underpinning during construction.

ECF No. 199-3 at 1–2. He recommended getting the shoring and sheeting engineer to the site to propose remedial work to stabilize Plaintiff's front walk and stairs and to verify that the sheeting wall was installed "per the permit set of plans"; informing "the structural engineer of record for the underpinning" of settlement in Plaintiff's basement so a determination as to whether "the contingency shoring details for the underpinning should be implemented" and whether "lateral shoring is required for the underpinning during construction and if it has been properly installed."[4] *Id.* at 2. Wixson emailed his report to the DCRA. *See* ECF No. 215-1 at 17, ¶ 5; ECF No. 217 at 3, ¶ 5.

During the month of June 2018, Plaintiff corresponded with DCRA representatives regarding damage to his property allegedly caused by construction at the Georgia Avenue Property. *See generally* ECF No. 215-1 at 17–18, ¶¶ 6–10; ECF No. 217 at 3, ¶¶, 6–10.[5] The DCRA issued a

---

[4] Wixson has not been designated as an expert in this case. *See* ECF No. 215-1 at 3–4, ¶ 6. The report and testimony of Plaintiff's only expert, Timothy Galarnyk, has been excluded. *See Matiella v. Murdock St. LLC*, No. 21-cv-2112, 2025 WL 2298614, at *15 (D.D.C. Aug.8, 2025) [hereinafter *Matiella IV*].

[5] The correspondence between June 2018 and November 2021 noted in these following paragraphs is cited in Plaintiff's statement of additional undisputed facts in opposition to EWORA and IFG's motion for summary judgment. *See* ECF No. 17–25, ¶¶ 6–54. In their response, EWORA and IFG "do not dispute the existence of the

stop work order on the Georgia Avenue Property on June 20, 2018. *See* ECF No. 215-2 at 6. Around that same time, Murdock Street retained its own engineer, Dennis Anibaba, to oversee the stabilization of the construction site. *See* ECF No. 215-1 at 18, ¶ 11; ECF No. 217 at 4, ¶ 11. During the month of July, there was correspondence among Plaintiff, Anibaba, and representatives from the DCRA about remediation to stabilize the site, damage to Plaintiff's property, and repairs that the builder performing construction on the Georgia Street Property would make to Plaintiff's property. *See* ECF No. 215-1 at 18–20, ¶¶ 13–24; ECF No. 217 at 4–8, ¶¶ 13–24. The stop work order was lifted on August 1, 2018. *See* ECF No. 215-1 at 20, ¶ 25; ECF No. 217 at 8, ¶ 25.

In November 2018, Plaintiff emailed personnel at DCRA to report additional damage to his property. *See* ECF No. 215-1 at 21, ¶ 27; ECF No. 217 at 8–9, ¶ 27; *see also* ECF No. 215-2 at 52. In early January 2019, Plaintiff emailed IFG principal Guner to remind him to send remediation plans to Plaintiff's engineer. *See* ECF No. 215-1 at 21, ¶ 29; ECF No. 217 at 9, ¶ 29. A DCRA employee also emailed Guner that same day about incomplete remediation work at the Georgia Avenue Property. *See* ECF No. 215-1 at 21–22, ¶¶ 31–32; ECF No. 217 at 9–10, ¶¶ 31–32. Wixson, the engineer Plaintiff hired, sent Plaintiff a new report dated January 2, 2019, which Plaintiff forwarded to Guner, Murdock Street engineer Alibaba, and DCRA personnel, among others. *See* ECF No. 199-37. That report outlined damage on Plaintiff's property, including damage to the stairs and front walk and cracks in walls and floors, which Wixson opined were due to settlement of the foundation caused by the construction at the Georgia Avenue Property, including underpinning of the wall closest to the construction site. *See* ECF No. 199-38 at 1–2. After a meeting among Plaintiff, Wixson, and Anibaba on February 6, 2019, to discuss remediation, the

---

correspondence," but sometimes object to statements made in the correspondence as hearsay and note that no individual included in such correspondence has been designated as an expert in this litigation. *See, e.g.*, ECF No. 217, ¶¶ 6, 9, 10, 13. As will be seen, it is unnecessary to address these objections.

three developed remediation plans over the course of the next few months.  *See* ECF No. 199-39.
It appears that there was some delay on acquiring permits for the remedial underpinning work.  In
June 2019, Guner asked Charles Whitescarver at DCRA to expedite the permits; in August 2019,
Plaintiff emailed Whitescarver asserting that his "home [was] getting more unsafe with every pass-
ing rain" and asking what needed to be done to get approval for the remedial underpinning plans;
Guner also asked Whitescarver to "intervene."  ECF No. 215-2 at 24–25.  DCRA reviewed the
plans in November 2019.  *See* ECF No. 215-1 at 23, ¶ 44; ECF No. 217 at 12, ¶ 44.

Apparently, the plans were approved.  The record includes an email chain from April 2020
through September 2020 including Plaintiff, Wixson, Anibaba, one or more representatives from
City Concrete, and others, discussing the monitoring and remediating the damage to Plaintiff's
property, as well as concerns about its slow progress.  *See* ECF No. 215-2 at 34–46.  On March
17, 2021, Plaintiff emailed Guner and Whitescarver stating that "damage [to his property] contin-
ues to happen."  ECF No. 215-1 at 25, ¶ 53; ECF No. 217 at 13, ¶ 53.  In November 2021, an
internal DCRA email reviewed "reports and email correspondence" from third-party inspection
and engineering firm FMC noting that Murdock Street and IFG were notified by the firm to "brace
the party wall to prevent lateral movement" in June 2018; that "soil at the party wall by the stairs
collapsed" in June 2018 and soil under the sidewalk collapsed in July 2018; and that "[l]ack of
bracing and sheeting and shoring" at Plaintiff's property "seems to be the cause of new structural
cracks" in the party wall observed in November 2018.  ECF No. 215-2 at 52.

## B.    Relevant Procedural History

This case has a lengthy and somewhat complicated procedural history; the relevant events
are outlined here.  Plaintiff filed this action on August 6, 2021, against Murdock Street alleging
negligence and trespass and seeking injunctive relief requiring it to, among other things, cease

construction activity on the Georgia Avenue Property.  *See Matiella I*, 2023 WL 4684854, at *1. In January 2023, the Court granted leave for Plaintiff to file an amended complaint alleging, as relevant here, causes of action for negligence and trespass against Murdock Street, EWORA, IFG, and City Concrete.  *See* ECF No. 50, ¶¶ 66–78, 87–99, 108–120, 129–141.

        1.     *Matiella I*

EWORA, IFG, and City Concrete filed motions to dismiss the amended complaint asserting, among other things, that the claims against them were barred by the statute of limitations and that Plaintiff had failed to state a claim for negligence or trespass.  *See Matiella I*, 2023 WL 4684854, at *4–5.  The Court granted the motions in part and denied them in part.  *See id.* at *1. Specifically, the Court found that those Defendants had not shown that the allegations in the amended complaint "'conclusively' demonstrate[d] that Plaintiff's claims are time barred using the traditional accrual rule," by which a claim accrues when the injury occurs and that, even if they had done so, "it would be improper to dismiss on limitations grounds because whether to apply the discovery rule or continuing tort doctrine in this case raises questions of fact not properly adjudicated at [such an] early stage of the litigation." *Id.* at *7 (quoting *Toggas v. Wachovia Mortg. FSB*, No. 19-cv-3407, 2020 WL 3103966, at *6 (D.D.C. June 11, 2020)); *see also Matiella II*, 2024 WL 3967367, at *5.  It further found that Plaintiff had stated a claim for negligence directly against each of the moving Defendants and against EWORA and IFG based on City Concrete's negligence.  *Matiella I*, 2023 WL 4684854, at *9–12. As to the trespass claims, the Court ruled that Plaintiff had failed to state a claim for trespass related to the "movement of soil" caused by the construction on the Georgia Avenue Property; however, finding that the District of Columbia "would follow the 'modern' theory and recognize that a trespass can occur where intangible invasions, such as 'noise, gas emissions, or vibration intrusions,' have caused serious 'physical

damage' to property," the Court ruled that Plaintiff had stated a claim for trespass based on the intangible intrusion of vibrations from allegedly negligent construction work. *Id.* at *12–15 (quoting *Goldstein v Exxon Mobil Corp.*, No. 17-cv-2477, 2023 WL 3667757, at *5 (C.D. Cal. Feb. 27, 2023)).

        2.    *Matiella II*

        In January 2024, again with leave of Court, Plaintiff filed a second amended complaint, which was "substantially the same" as the prior complaint but added counts of negligence and trespass against Luis Construction. *Matiella II*, 2024 WL 3967367, at *6. Each of the Defendants filed motions attacking the second amended complaint. *See id.* at *1. As to the statute of limitations, the Court first calculated the dates by which Plaintiff's claims would have to have accrued in order to be timely, a task complicated by "a series of orders entered by the Chief Judge of the D.C. Superior Court" that "tolled D.C. Code statutes of limitations between March 18, 2020, and March 31, 2021, inclusive," due to the COVID-19 pandemic. *Id.* at *8 & nn 7–10. That calculation, proposed by EWORA and IFG without contradiction from any other party, *see id.* at *9 n.10, resulted in the following findings: Plaintiff's claims against Murdock Street are timely only if they accrued between "July 23, 2017, through March 31, 2018, or "on or after August 6, 2018"; Plaintiff's claims against EWORA, IFG, and City Concrete are timely only if they accrued on or after January 18, 2020; and Plaintiff's claims against Luis Construction are timely only if they accrued on or after December 20, 2020. *Id.* at *10–12. However, the Court once again found that it could not "determine based only on the pleadings that no injury occurred during the limitations period" and therefore could not "say that th[e] claims are conclusively time-barred." *Id.* at *13. The Court also rejected the Defendants' various arguments that Plaintiff had failed to state claims for negligence or trespass, which included contentions that the Court incorrectly held that the District of

Columbia Court of Appeals would recognize a claim of trespass based on intangible incursions. *See id.* at *14–18.

> 3.    *Matiella III*

In May 2024, Plaintiff filed a motion for partial summary judgment on its negligence claim against Luis Construction, urging two theories: negligence per se and *res ipsa loquitur.   See Matiella v. Murdock St. LLC*, No. 21-cv-2112, 2025 WL 689177, at *1–2 (D.D.C. Mar. 4, 2025) [hereinafter, *Matiella III*].  He maintained that (1) because Luis Construction did not have a District of Columbia contractor's license, its work on the Georgia Avenue Property violated various D.C. statutes and regulations and therefore constituted negligence per se and (2) the damage to Plaintiff's property "is not the kind that ordinarily occurs without someone's negligence, was caused by an instrumentality within Luis Construction's exclusive or joint control, and it is not due to any action or contribution by Plaintiff," such that "the requirements for res ipsa loquitur are satisfied." *Id.* at *2–*4 (citation modified) (quoting the record).  The Court denied the motion.  With respect to the first contention, the Court found that Plaintiff's negligence per se argument foundered on a "fundamental point: Luis Construction was not required to have a D.C. license for the work it did" on the Georgia Avenue Property because it was a subcontractor and, as such, excepted from the licensure requirement. *Id.* at *3.  On the second, it found that Plaintiff had failed to "demonstrate that the occurrence is one where a layperson can infer negligence 'as a matter of common knowledge,'" and failed to point to "evidence that would allow the Court to determine what caused the damage alleged or which of the many defendants, if any, 'most probably' caused it." *Id.* at *4 (first quoting *Crenshaw v. Washington Metro. Area Transit Auth.*, 731 A.2d 381, 383 (D.C. 1999); and then quoting *Bell v. May Dep't Stores Co.*, 866 F.2d 452, 455 (D.C. Cir. 1989)).  Accordingly,

Plaintiff had not met his burden to adduce facts establishing the elements of *res ipsa loquitur*. *See id.* The motion was thus denied in full.[6] *See id.* at *5.

4. *Matiella IV* and Subsequent Events

Finally, in conjunction with the filing of the summary judgment motions at issue here, all Defendants joined in a motion to exclude the testimony and opinions of Plaintiff's single expert, Galarnyk. *See Matiella IV*, 2025 WL 2298614, at *1. The Court found that, although Galarnyk was qualified to offer expert testimony (and was not barred from doing so by D.C. Code §§ 47-2853.133(a)(3) and 47-2853.131), *see id.* at *4–7, his testimony and opinions were nonetheless inadmissible, principally because he had not established that they were reliable under the standard of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. Galarnyk clearly relied on "his years of experience—or, perhaps, experience along with training and education—in construction and related fields" to form his opinion, but he "fail[ed] to explain how that experience, training, and education 'lead to the conclusion reached, why they are a sufficient basis for the opinion, and how they are reliably applied to the facts.'" *Matiella IV*, 2025 WL 2298614, at *8 (citation modified) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments). Additionally, some opinions were also inadmissible because they constituted legal conclusions or would be unhelpful to the triers of fact. *See id.* at *13–15. In short, the Court excluded Galarnyk from providing opinions or testifying at trial. *See id.* at *15. The Court further set a status conference to discuss further proceedings. *See id.* At that status conference on September 17, 2025, the Court sought the parties' input on whether the Court should entertain supplemental

---

[6] Plaintiff filed a second motion for partial summary judgment seeking a ruling that Luis Construction is liable for negligence under the same two theories, that the undisputed facts establish that it is liable for trespass, and that EWORA, IFG, and City Concrete are vicariously liable for Luis Construction's torts. *See* ECF No. 201. That motion is denied in a Memorandum Opinion and Order issued contemporaneously with this one.

briefing in light of the exclusion of Plaintiff's expert.  *See* Minute Entry (Sep. 17, 2025).  All parties elected to stand on the briefing as it then existed.

## II.  LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Initially, the moving party has the burden of demonstrating the absence of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the non-moving party must designate "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

It is well established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment."  *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (quoting *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 604 (D.C. Cir. 2010)).  Indeed, a court's role in deciding a summary judgment motion is not to "determine the truth of the matter, but instead [to] decide only whether there is a genuine issue for trial."  *Id.* (quoting *Pardo-Kronemann*, 601 F.3d at 604).  Where the material facts are not in dispute, entry of summary judgment is appropriate if the moving party has shown it is entitled to judgment as a matter of law.  *See, e.g.*, *Mylan Labs., Inc. v. Thompson*, 332 F. Supp. 2d 106, 116 (D.D.C. 2004) (citing Fed. R. Civ. P. 56(c)).

# III.   DISCUSSION

There are four motions for summary judgment at issue in this Memorandum Opinion.  As a whole, they present two main arguments: (1) that Plaintiff has failed to provide competent expert testimony necessary to establish a prima facie case of negligence and trespass and (2) that Plaintiff's claims are largely barred by the statute of limitations.  Because those are dispositive of all claims at issue, the Court need not and does not address any of the parties' subsidiary arguments.

## A.   Prima Facie Case

### 1.   Negligence

"The plaintiff in a negligence action bears the burden of proof on three issues: the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Williams v. Aviles*, No. 20-cv-931, 2022 WL 2643559, at *5 (D.D.C. July 8, 2022) (quoting *Toy v. District of Columbia,* 549 A.2d 1, 6 (D.C. 1988)); *see also District of Columbia v. Carmichael*, 577 A.2d 312, 314 (D.C. 1990) ("[I]n any negligence action, 'the plaintiff must establish by competent evidence a standard of care; that the defendant violated that standard; and that such violation proximately caused injury to the plaintiff.'" (citation modified) (quoting *Hughes v. District of Columbia*, 425 A.2d 1299, 1302 (D.C. 1981))).  "When the standard of care is 'so distinctly related to some science, profession, or occupation as to be beyond the ken of the average lay juror,' the plaintiff must prove with expert testimony both the standard of care and that the defendant failed to adhere to it." *Williams*, 2022 WL 2643559, at *5 (quoting *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.D.C. 2014)).  Similarly, expert testimony may be required to establish causation.  *See, e.g.*, *Hargraves v. District of Columbia*, 134 F. Supp. 3d 68, 95 (D.D.C. 2015) ("In order to prevail on a negligence cause of action, the plaintiff must prove, using expert testimony on the standard of care, 'the applicable

standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury.'" (quoting *Hill v. Metropolitan African Methodist Episcopal Church,* 779 A.2d 906, 908 (D.C. 2001))).  Whether to require expert testimony on an issue is within the trial court's discretion.[7]  *See, e.g. District of Columbia v. Tulin*, 994 A.2d 788, 795 (D.C. 2010).

At issue here are allegations that Defendants negligently performed excavation work, including installation of a "soldier pile and lagging retaining wall" without "walers, rakers or cross-bracing" or "backfill in the space behind [the] lagging," *Matiella I*, 2023 WL 4684854, at *2, and installed underpinning without "shoring to brace [it] during construction," ECF No. 199-3 at 2.[8] Murdock Street argues that, to make out a prima facie case of negligence against any Defendant, Plaintiff must offer expert testimony.  *See* ECF No. 198-1 at 5–10.  Precedent confirms that.  For example, the plaintiffs in *Levy*, much like Plaintiff here, alleged that the developers of property adjacent to theirs engaged in negligent excavation practices, such as inadequate sheeting, shoring, and underpinning, which caused twisting and cracking of the structure on the plaintiffs' property. 584 A.2d at 1252.  The D.C. Court of Appeals found it "undisputedly true" that "the subject

---

[7] Courts have found that, under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), District of Columbia law on the issue of whether expert testimony is required applies in diversity cases where District of Columbia law supplies the rule of decision.  *See Burke v. Air Serv Int'l, Inc.*, 775 F. Supp. 2d 13, 19–20 (D.D.C. 2011); *see also Briggs v. Washington Metro. Area Transit Auth.*, 481 F.3d 839, 843, 845–46 (D.C. Cir. 2007) (stating that, "[b]ecause it is undisputed that D.C. tort law controls the disposition of this case, the duty of this court 'is to achieve the same outcome [that] would result if the District of Columbia Court of Appeals considered this case'" and looking to D.C. law to determine that expert testimony was required in a negligence case (second alteration in original) (quoting *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006))).

[8] As explained in *Matiella I*, "[a] soldier pile retaining wall system generally consists of piles, which are vertical steel or concrete beams installed at specific spacing intervals to hold 'lagging,' which are wood or concrete planks placed horizontally between the piles.  Together, the piles and lagging form a wall to retain soil as an excavation proceeds"; "[w]alers, rakers, and crossbracing are all methods of supporting the wall of an excavation.  A waler is a beam that runs parallel to the face of the retaining wall to distribute the pressure evenly.  A raker is a beam that supports the wall diagonally from the ground inside the excavation," and "[c]rossbracing involves diagonal bracing to provide internal stability to existing rectangular frames."  2023 WL 4684854, at *2 nn.2–3.  As noted above, sheeting and shoring supports the exposed sides of an excavation and underpinning supports and stabilizes adjacent buildings from below. *See* note 3, *supra*.

presented [was] so distinctly related to some science, profession, or occupation, as to be beyond

the ken of a lay juror," so that the plaintiffs were required to "prove the applicable standard of care

and a deviation therefrom by expert testimony." *Id.* at 1255. In *Massengale v. Washington Met-*

*ropolitan Area Transit Authority*, the plaintiff alleged that negligent excavation by the transit au-

thority "caused considerable shaking to his [adjacent] property" and damaged its structures. 983

F. Supp. 210, 215 (D.D.C. 1997). The court found that the plaintiff had failed to establish negli-

gence because he offered no expert testimony on the standard of care, breach, or causation:

> The plaintiff produced no evidence of the standard of care to be exercised by one
> engaged in the construction of a subway line. Nor did he prove that a breach by the
> defendant of the applicable standard caused him damage. His sole contention is
> that he felt a vibration while standing on his property which he attributed to [the
> defendant's] pounding of reinforcing rods into the ground. [The plaintiff] never
> proffered himself as an expert in construction. His opinion as to the causal rela-
> tionship between the pounding he experienced and the collapse of the roof of his
> building carries no evidentiary weight.

*Id.* The Court thus has no trouble determining that the negligent conduct alleged here did not

"occur in a context 'within the realm of common knowledge and everyday experience,'" and there-

fore "expert testimony is . . . required for the plaintiff to meet [his] burden." *Williams*, 2022 WL

2643559, at *5 (quoting *Night & Day Mgmt.*, 101 A.3d at 1038–39). Plaintiff does not appear to

contend otherwise: He asserts that his "*expert['s] testimony confirms* that Defendants' breaches of

duty directly caused harm to [his] property" and "counters Defendants' assertions that their actions

complied with industry standards and were not causally connected to Plaintiff's injuries."[9] ECF

No. 215 at 12–13 (emphasis added).

---

[9] Plaintiff also asserts that "Defendants' failure to comply with statutory licensing requirements, the inherently dan-
gerous nature of their construction activities, and the progressive damage observed over time all underscore the need
for these factual issues to be resolved by a jury." ECF No. 215 at 13. Plaintiff has twice argued that Luis Construction
was required to have a District of Columbia general contractors license and its failure to procure one rendered its work
on the Georgia Avenue Property negligent per se. *See* ECF No. 170; ECF No. 201. As noted, the Court rejected that
argument in *Matiella III* and again in an opinion issued contemporaneously with this one *see* Section I.B.3 & note 6
*supra*. Assuming without deciding that the construction work Defendants engaged in at the Georgia Avenue Property
could be considered inherently dangerous, the Court finds the question irrelevant here. Plaintiff has cited no authority

Rule 26(a) of the Federal Rules of Civil Procedure governs expert testimony in federal court. The rule requires a litigant to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705," which address the testimony of expert witnesses. Fed. R. Civ. P. 26(a)(2)(A); *see also* Fed. R. Evid. 702, 703, 705. Where the witness is "one retained or specially employed to provide expert testimony in the case," the disclosure "must be accompanied by a written report" that includes, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them," the facts and data on which those opinions are based, and the witness's qualifications. Fed. R. Civ. P. 26(a)(2)(B). If the witness is not "one retained or specially employed to provide expert testimony in the case," a written expert report is not required, but the disclosure still must state "the subject matter on which the witness is expected to present [expert] evidence" and "a summary of the facts and opinions to which the witness is expected to testify." *Id.* 26(a)(2)(B), (C). Where a party fails to follow the mandates of Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

> Rule 37(c)(1) "gives teeth" to the disclosure requirements of Rules 26(a) and (e). It is a "self-executing, automatic sanction," designed to "provide a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at trial, at a hearing, or on a motion, such as one under Rule 56." This is true even when its operation effectively forfeits the non-disclosing party's "entire cause of action or defense."

---

to suggest that, where a defendant engages in performance of inherently dangerous work (as opposed to "abnormally dangerous" activities, for which there may be strict liability *see* Restatement (Second) of Torts, §§ 519, 520), a plaintiff is absolved from establishing the standard of care, which here requires expert testimony. Rather, performance of inherently dangerous work can be the basis for an exception to the general rule that one who engages an independent contractor is not liable for injuries caused by the work of that contractor. *See, e.g.*, *Matiella II*, 2024 WL 3967367, at *13 n.18; *Levy v. Currier*, 587 A.2d 205, 209 (D.C. 1991). Similarly, whether there was "progressive damage observed over time," ECF No. 215 at 13, does not alter Plaintiff's responsibility to establish his prima facie case.

*Lewter v. United States*, No. 10-cv-2390, 2012 WL 13034849, at *7 (S.D. Cal. Aug. 10, 2012) (emphasis omitted) (citations omitted) (first quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001); and then quoting Fed. R. Civ. P. 37 advisory comm. notes to 1993 amendment; and then quoting *Yeti by Molly*, 259 F.3d at 1106). "Federal courts apply this rule strictly and *require* the exclusion of undisclosed evidence absent harmless error or substantial justification." *Hovsepian v. State Farm Mut. Auto. Ins. Co.*, No. 09-cv-8929, 2011 WL 13213900, at *11 n.112 (C.D. Cal. Jan. 12, 2011); *see also, e.g.*, *Daniels v. District of Columbia*, 15 F. Supp. 3d 62, 72 (D.D.C. 2014) ("Under Rule 37, the sanction of exclusion of a witness is automatic and mandatory unless the party to be sanctioned can show that its violation was either substantially justified or harmless." (citation modified) (quoting *Elion v. Jackson,* 544 F. Supp. 2d 1, 6 (D.D.C. 2008))); *Wannall v. Honeywell Int'l*, 292 F.R.D. 26, 35–36 (D.D.C. 2013) (excluding an expert not disclosed prior to summary judgment briefing), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014). "The proponent of the evidence bears the burden of showing that the failure to disclose the evidence was substantially justified or is harmless." *Atlanta Channel v. Solomon*, No. 15-cv-1823, 2020 WL 1984296, at *12 (D.D.C. Apr. 27, 2020)); *see also Wannall*, 775 F.3d at 429–30 (noting, in an opinion affirming the district court's exclusion of a late-disclosed expert report in connection with summary judgment, that among the "'harms' that disclosure deadlines are intended to prevent" are "requiring either the reopening of discovery (and possibly delaying trial) or denying [the opposing party] the opportunity to cross-examine" the undisclosed expert).

Plaintiff offers no admissible expert testimony. He disclosed a single expert—Galarnyk. *See* ECF No. 215-1 at 3–4, ¶ 6 (Plaintiff admitting that he "retained Timothy Galarnyk as his sole expert in this case"). This Court has found Galarnyk's testimony and opinions inadmissible. *See* Section I.B.4, *supra*; *see also Matiella IV*, 2025 WL 2298614, at *7–15. Plaintiff asserts that the

"structural engineer's report prepared by Robert Wixson in May 2018 corroborates [Galarnyk's] findings, attributing soil movement, settlement, and masonry cracks to faulty excavation and shoring practices" and that "[m]onitoring reports submitted to the Department of Consumer and Regulatory Affairs in November 2021 confirm ongoing structural deficiencies, such as cracks and soil erosion, tied to the same inadequate construction techniques."  ECF No. 215 at 15.  But neither Wixson nor the authors of those monitoring reports—who are not identified in the record before the Court, *see* ECF No. 215-2 at 52—were designated as experts under either Rule 26(a)(2)(B) or 26(a)(2)(C).  Not surprisingly, given the absence of required disclosures, it does not appear that any of those individuals were deposed during discovery, which is now closed.  The fact that Wixson's report and the monitoring reports were produced in discovery is irrelevant: "Here, it was *Plaintiff's* burden to comply with th[e] requirements [of Rule 26(a)(2)] in accordance with the schedule set by the Court.  It was *not* . . . Defendant[s'] burden to sift through [his] document productions and assume that certain documents would become the subject of expert testimony." *Jones v. NVR Incorporation*, No. 20-cv-453, 2022 WL 951338, at *10 (D.D.C. Mar. 29, 2022), *aff'd*, No. 22-7064, 2023 WL 4678759 (D.C. Cir. July 21, 2023).  And Plaintiff makes no attempt to establish that his failure to disclose them was substantially justified or harmless.  Exclusion of such opinions is therefore "automatic and mandatory under Rule 37(c)(1)." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004); *see also, e.g.*, *Jones*, 2022 WL 951338, at *10 ("Plaintiff has failed to demonstrate that her failure to timely disclose expert witnesses in accordance with Rule 26(a)(2) was substantially justified or harmless.  Therefore, she is barred from using these witnesses or any accompanying 'reports' as evidence in response to Defendant's motion for summary judgment."); *Montoya v. Jeffreys*, 565 F. Supp. 3d 1045, 1058 (N.D. Ill. 2021) (finding that a party who failed to disclose experts under Rule 26(a) and "ma[de] no effort to meet its

burden" to show substantial justification or harmlessness had "forfeit[ed] the point . . . on sum-mary judgment"). Accordingly, Plaintiff cannot make out a prima facie case of negligence, be-cause he cannot establish, "using expert testimony . . . , 'the applicable standard of care, a devia-tion from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury.'" *Hargraves*, 134 F. Supp. 3d at 95 (quoting *Hill,* 779 A.2d at 908 (D.C. 2001)). That failure is fatal to his negligence claim against each Defendant.

####    2.    Trespass

The lack of expert evidence also fells Plaintiff's trespass claim. Plaintiff alleges that "vi-brations caused by Defendants' negligent excavation and shoring practices . . . resulted in struc-tural damage to Plaintiff's property." ECF No. 215 at 13. This Court has held that, to make out a claim for trespass based on intangible incursions like vibrations, Plaintiff must show that they caused serious physical damage to his property. *See Matiella I*, 2023 WL 4684854, at *15. More, the Court already put Plaintiff on notice that the question of whether vibrations from construction caused the damage to plaintiff's property will "likely require a construction engineer or similar expert to testify." *Matiella II*, 2024 WL 3967367, at *17. And, tellingly, Plaintiff relies on the (now excluded) report of Galarnyk to establish causation for the trespass claim, as well. *See* ECF No. 215 at 14. The view that expert testimony is necessary here is supported by decisions from courts in this district and elsewhere. As noted above, in *Massengale*, the plaintiff asserted that the construction of a subway line near his home—specifically, the "pounding of reinforcing rods into the ground"—"caused considerable shaking to his property and consequential damage." 983 F. Supp. at 215. The Court found that the plaintiff could not establish causation without expert testimony. *See id.*; *see also Holy Name of Jesus Roman Catholic Church v. N.Y.C. Transit Auth.*, 28 A.D.3d 520, 521 (N.Y. App. Div. 2006) (finding that the plaintiff's failure to submit expert

evidence that vibration from the subway caused property damage required dismissal).  Similarly, in *Hoffman v. Vulcan Materials Co.*, the court found that the plaintiffs' trespass claim "that the shocks and vibrations from defendant's blasting ha[d] damaged their homes" could not survive summary judgment where they "ha[d] not introduced any expert testimony as to the cause of that damage."  91 F. Supp. 2d 881, 888–89 (M.D.N.C. 1999); *cf. Trull v. Car.-Va. Well Co.*, 142 S.E.2d 622, 624 (N.C. 1965) (finding the plaintiffs had not established that vibrations from drilling on their property were the "physical cause of the damage to [their] house" where there was no evidence that the vibrations were "responsible for the sudden opening of walls and ceiling" or "sufficient to cause the damage" and no evidence as to whether the strength of the house's foundation or condition of the earth underneath was "such that even normally harmless vibrations would cause" damage).

This case is not like those in which courts have found expert opinion unnecessary to prove that damage was caused by vibration.  For example, in *Hiser v. XTO Energy, Inc.*, the plaintiff claimed that vibrations from the defendant's drilling of a gas well on adjacent property caused damage to her home.  No. 11-cv-517, 2012 WL 3542009, at *1 (E.D. Ark. Aug. 14, 2012).  The court determined that testimony that the plaintiff, as well as guests who stayed in her home, "felt vibrations and heard her house 'crackle' when [the] drill was in use" was sufficient to create a genuine issue of material fact on the issue of causation.  *Id.* at *3.  In *Legendre v. Boh Brothers Construction Co.*, the court found that if "a plaintiff is physically present (with such presence being corroborated) and his home vibrates and shakes to such an extent that cracks and damage immediately appear, and the vibration is readily recognizable as emanating from the negligent use of construction machinery," the plaintiff has presented sufficient proof of causation—but even so suggested that in cases with other factual circumstances expert testimony may well be "necessary

to establish causation." 268 So.2d 514, 518 (La. Ct. App. 1972). Here, there is no similar evidence. Indeed, Plaintiff testified at his deposition that, although he had lived next to the Georgia Avenue Property continuously since October 31, 2001 (except for a "short period" in "2020 or 2021"), he felt vibrations traceable to the construction only once, on September 29, 2017, or thereabouts, when workers demolished a wall from the previous structure on the Georgia Avenue Property. ECF No. 199-13 at 26, 147–50. He specifically acknowledged that he did not feel "[his] house or [his] building move at any other time." *Id.* at 165. He further concedes that the bulk of the damage to his property occurred in the Spring and Summer of 2018. *See* ECF No. 215-1 at 11–12 (asserting the statement that the "alleged defects to [Plaintiff's] property that he contends were caused by construction activities occurring next door . . . occurred generally between April 1, 2018 and August 5, 2018" is "undisputed"). That is, Plaintiff has admitted that he *did not* feel vibrations from the work that he claims caused the damage to his property—"excavation and shoring" work, ECF No. 215 at 13, such as Luis Construction "inserting rebar into the foundation" in 2018, ECF No. 201 at 4; ECF No. 215-1 at 16, ¶ 2. That is a far cry from the evidence of repeated experiences of vibrations and accompanying contemporaneous aural or visual manifestations of cracking that the courts in *Hiser* and *Legendre* found sufficient to create an issue of fact as to causation in the absence of expert testimony. Indeed, here, like in *Trull*, the number of potential explanations for the damage to Plaintiff's property other than vibrations from Defendants' conduct—including, for example, an "extraordinary rain event[ ]" in May 2018, as opined by the expert designated by Murdock Street, EWORA, and IFG, *see* ECF No. 201-2 at 985–86—indicate that without expert guidance a lay factfinder would have to engage in mere speculation to determine causation. *See, e.g.*, *Washington v. Wash. Hosp. Ctr.*, 579 A.2d 177, 181 (D.C. 1990) ("The purpose of expert opinion testimony is to avoid jury findings based on mere speculation or

conjecture."). And, significantly, Plaintiff nowhere counters the argument that determining whether vibrations from excavation and shoring work on the Georgia Avenue Property caused damage requires expert testimony. *See* ECF No. 198-1 at 7. Instead, as noted above, he relies on the opinion testimony of Galarnyk, which the Court has found inadmissible, in part because it is not reliable. *See* ECF No. 215 at 14.

Considering this case law (including the Court's earlier opinion in *Matiella II*), Plaintiff's admissions, and his failure to argue that causation can be proved without expert testimony, the Court finds that whether vibrations from the excavation and shoring on the Georgia Avenue Property caused damage to Plaintiff's property is "beyond the ken of the average lay juror" and therefore requires evidence from an expert. *Williams*, 2022 WL 2643559, at *5 (quoting *Night & Day Mgmt.*, 101 A.3d at 1039). Because Plaintiff has none, he cannot establish causation. Defendants are therefore entitled to summary judgment on Plaintiff's trespass claim.

**B.    Timeliness**

All Defendants other than Murdock Street contend that the claims against them are barred by the statute of limitations.[10] *See* ECF No. 196 at 5–7 (brief of Luis Construction); ECF No. 199-1 at 20–31 (brief of EWORA and IFG); ECF No. 200 at 5–11 (brief of City Concrete). Heeding the D.C. Circuit's caution that "courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint," this Court has twice denied motions to dismiss on timeliness grounds in this case. *Matiella II*, 2024 WL 3967367, at *8 (citation omitted); *Matiella I*, 2023 WL 4684854, at *6 (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C.

---

[10] Generally, a defendant must plead and prove that an action is untimely, and a court should not *sua sponte* raise a statute of limitations defense. *See, e.g.*, *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1107–12 (D.C. Cir. 2019); *see also, e.g.*, *Kubichek v. Unlimited Biking Washington, D.C., LLC*, 330 A.3d 1007, 1011–12 (D.C. 2025). Accordingly, the Court does not address whether the claims against Murdock Street are time-barred.

Cir. 2016) (per curiam)).  Along the way, the Court determined that claims against EWORA, IFG, and City Concrete are timely if they accrued on or after January 18, 2020, and claims against Luis Construction are timely if they accrued on or after December 20, 2020.  *See Matiella II*, 2024 WL 3967367, at *10–12.  Now, with the record fully developed, the Court finds that the claims against each of those Defendants are time-barred.[11]

               1.     The Discovery Rule

As then-District Judge Ketanji Brown Jackson explained in *Kubicki ex rel. Kubicki v. Medtronic Inc.*, "A statute of limitations is the legislatively prescribed time period (usually a period of years) within which an authorized legal claim must be filed.  Claims that are brought beyond the statutory time period are ordinarily barred." 293 F. Supp. 3d 129, 157 (D.D.C. 2019) (citations omitted).  "It is well established that, 'where the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs.'"  *Id.* at 158 (citation modified) (quoting *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) (en banc)).  However,

> if the injury is not apparent, and/or if the causal link between tortious conduct and injury is not immediately clear, District of Columbia courts apply the "discovery rule," which holds that the statute of limitations begins to run not on the date that the injury happened, but "when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing.

*Id.* (citation modified) (quoting *Lee v. Wolfson*, 265 F. Supp. 2d 14, 17 (D.D.C. 2003)).  That is, "[t]he District of Columbia Court of Appeals has made clear that, per the discovery rule, 'the

---

[11] No party argues that the negligence and trespass claims accrued at different times.  This Court cleaves to "the principle of party presentation," i.e., that "the parties know what is best for them[] and are responsible for advancing the facts and arguments entitling them to relief," while the courts serve "as neutral arbiters of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243–44 (2008).  Therefore, the Court does not address the possibility that the two causes of actions might have different accrual dates and deems the parties to have forfeited any argument that they do.

statute of limitation[s] for negligence begins to run at such time a prospective plaintiff gains inquiry notice that wrongdoing may be involved.'" *Id.* at 158 (second alteration in original) (quoting *Bussineau v. President & Dirs. of Georgetown Coll.*, 518 A.2d 423, 427–28 (D.C. 1986))).   Although "[t]he statute of limitations is an affirmative defense on which the defendant ultimately bears the burden of proof," at summary judgment "the plaintiff must point to specific evidence in the record sufficient to justify the factfinder in finding the suit timely under the discovery rule." *Radbod v. Moghim*, 269 A.3d 1035, 1045 (D.C. 2022).   "District of Columbia courts routinely decide, on summary judgment, the date on which a cause of action accrues under the discovery rule." *Nelson v. Am. Nat'l Red Cross*, 26 F.3d 193, 198 (D.C. Cir. 1994).

Here, Plaintiff knew or should have known of the injury, its cause, and some evidence of potential wrongdoing on May 25, 2018, at the latest.   That is the date of Wixson's report detailing the existence of (1) "a large sink hole below [Plaintiff's] front stairs" and (2) "settlement in [the] basement slab at the West wall of [Plaintiff's] home," as well as (3) a lack of "backfill behind the sheeting wall that support[ed] [Plaintiff's] rear yard" and was adjacent to the columns supporting his second floor deck; (4) a lack of "rakers, corner braces or tie backs to support the soldier piles of the sheeting wall"; and (5) a lack of "rakers to brace underpinning during construction."   ECF No. 199-3 at 1.   Wixson concluded that the "excavation support for the new construction [at the Georgia Avenue Property] ha[d] not been properly installed" and had "compromised the stability" of the structures on Plaintiff's property. *Id.*   He recommended "temporary lateral shoring to brace the underpinning," remedial work by the sheeting and shoring engineer to stabilize Plaintiff's front walk and stairs, notification to the "structural engineer of record" about the basement settlement, a report from "the contractor or special inspections engineer" regarding "the results from the monitoring of the underpinning so that any movement of the West Wall of [Plaintiff's residence] can

be quantified," and verification from the "underpinning engineer" concerning whether "lateral shoring is required for the underpinning during construction and if it has been properly installed." *Id.* at 1–2. Thus, Plaintiff knew as of May 25, 2018—over a-year-and-a-half before the earliest day on which any claim against EWORA, IFG, and City Concrete could have accrued in order to be timely and more than two years before the earliest day that a timely claim against Luis Construction could have accrued—that the structural engineer he hired believed inadequate sheeting, shoring, and underpinning related to the excavation at the Georgia Avenue Property was causing damage to Plaintiff's home.

Plaintiff maintains that he "reasonably relied on repeated assurances from contractors, engineers, and regulatory authorities that the damage to his property was being monitored and addressed" but "[d]espite these assurances, the damage to [his] property persisted" until his "reliance on these assurances . . . eroded" in March 2021. ECF No. 215 at 6. The Court fails to see how that could establish he was unaware of the damage, its likely cause, and some evidence of wrongdoing. Indeed, it confirms the opposite: it shows that he knew of the damage, believed it was caused by the construction next door, and suspected tortious conduct. *See Kubicki*, 293 F. Supp. 3d at 157 (noting that a claim accrues and the statute of limitations begins to run when a plaintiff knows or should have known of an injury, its cause, and some evidence of wrongdoing).

A major thrust of Plaintiff's argument is that his claim did not accrue until he knew or could reasonably have discovered "the full extent of the harm [and] the roles of Defendants Luis Construction, EWORA, IFG, and City Concrete." ECF No. 215 at 5–6. That is, he appears to contend that the statute of limitations was tolled until he had notice of "the specific roles and culpability" of those Defendants and of the full extent of the damage allegedly caused by them. *Id.* at 6. That is not the law. *See, e.g.*, *Cevenini v. Archbishop of Washington*, 707 A.2d 768, 771

(D.C. 1998) (rejecting the contention that a claim does not accrue until the plaintiff has "knowledge of each essential element of [a] cause of action").  For example, "it is well established that, while a plaintiff must 'have knowledge of wrongdoing to commence the statute of limitations,' he need not 'have certain knowledge of causation.'"  *Kubicki*, 293 F. Supp. 3d at 160 (citation modified) (first quoting *Bussineau*, 518 A.2d at 432 n.11; and then quoting *Dawson v. Eli Lilly & Co.*, 543 F. Supp. 1330, 1334 (D.D.C. 1982)); *see also id.* at 158 ("[T]he statute of limitations will be deemed to run even if the plaintiff does not fully comprehend the extent to which a potential defendant may have caused the injury.").  Nor will the limitations period be tolled until "the full extent of the wrongdoing is . . . known," as long as a plaintiff "has reason to suspect that the defendant did something wrong."  *Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C. 2004); *see also Zorgani v. District of Columbia*, No. 17-cv-2360, 2022 WL 1491133, at *5 (D.D.C. May 11, 2022) ("Although a claim will not accrue until a plaintiff has '*some* evidence of wrongdoing,' accrual is not delayed merely because the plaintiff does not 'have knowledge of the precise breadth or nature of the tortious action.'" (quoting *Brin v. S.E.W. Invs.*, 902 A.2d 784, 792 (D.C. 2006))).

Likewise, the statute of limitations is not tolled because the plaintiff has not yet "discovered the proper party to sue."  *Gardel v. SK&A Structural Eng'rs PLLC*, 286 F. Supp. 3d 120, 127 (D.D.C. 2017).  Rather, "when multiple defendants may be responsible for a plaintiff's injuries, the cause of action will accrue as to all defendants if a 'reasonable plaintiff with knowledge of the misconduct of one [defendant] would have conducted an investigation as to the other,' and 'that investigation would, as a matter of law, have revealed some evidence of wrongdoing on the part of the other defendant.'"[12]  *Id.* (quoting *Diamond v. Davis*, 680 A.2d 364, 380 (D.C. 1996)); *see*

---

[12] One court in this district applying District of Columbia law has gone further and asserted that a "plaintiff's lack of knowledge as to a defendant's *identity* is irrelevant when he is fully aware of the alleged *injury* he sustained and therefore alert to his cause of action."  *Griffin v. Smith*, No. 24-cv-36, 2025 WL 19000, at *4 (D.D.C. Jan. 2, 2025).

*also Ramey v. Foxhall Urology, Chartered*, 334 A.3d 141, 162 (D.C. 2025) ("[T]he discovery rule is designed to 'not give a plaintiff *carte blanche* to defer legal action indefinitely.' Rather, the discovery rule gives a plaintiff time to identify a plausible causal connection and then seek further information after a suit is initiated, including 'details of the wrongdoing' that could be obtained in discovery." (quoting *Brin*, 982 A.2d at 794)). That is, Plaintiff did not need to know "the[] specific roles [of EWORA, IFG, City Concrete, and Luis Construction] in excavation and shoring activities," ECF No. 215 at 6–7, for his claims to have accrued. He merely needed to have information that would motivate a reasonable person to make a reasonable inquiry that would reveal their involvement. Plaintiff had that information from Wixson's May 25, 2018, report, which identified several potential causes of the damage to his building—i.e., the construction's inadequate sheeting and shoring, and underpinning—and alerted Plaintiff that different entities were likely involved— i.e., the contractor, the structural engineer, the underpinning engineer. *See* ECF No. 199-3 at 2. And Plaintiff admits that he learned the roles of the various players in depositions. *See* ECF No. 215 at 6. In *Gardel*, the court found that, where documents produced in discovery identified one defendant and a deposition of that defendant revealed the involvement of a second defendant, a reasonably inquiry by the plaintiff would have discovered their identities prior to the expiration of the conventional limitations period. 286 F. Supp. 3d at 127. So it is here. Had Plaintiff made reasonable inquiries after his claim accrued on May 25, 2018, he could have discovered the participation of EWORA, IFG, City Concrete, and Luis Construction and asserted timely claims against them. Thus, as in *Gardel*, the Court finds "that a reasonably diligent plaintiff could and would have conducted additional investigation prior to filing suit, and he would have easily discerned some evidence of wrongdoing on the part of the named defendants."[13] *Id.*

---

[13] Plaintiff cites *Commonwealth Land Title Insurance Co. v. KCI Technologies, Inc.*, 922 F.3d 459, 466 (D.C. Cir. 2019), for the proposition that "[t]he discovery rule is particularly relevant in construction cases, where the complex

Finally, Plaintiff's suggestion that a cause of action does not accrue until the plaintiff knows "the full extent of the harm," ECF No. 215 at 8, has been rejected over and over. *See, e.g.*, *Deppner v. United States*, No. 22-CV-680, 2023 WL 4930085, at *3 (D.D.C. Aug. 2, 2023) ("[C]laim accrual does not require that the plaintiff know the full extent of her injury, only that she has sufficient knowledge to bring a cause of action."); *Cevenini*, 707 A.2d at 771 ("The fact that the plaintiff did not initially comprehend the full extent of all possible sequelae does not matter, for the law of limitations requires only that she have inquiry notice of the existence of a cause of action[.]" (citation modified) (quoting *Baker v. A.H. Robins Co.*, 613 F. Supp. 994, 996 (D.D.C. 1985); *see also Nelson v. Am. Nat'l Red Cross*, 26 F.3d 193, 197 (D.C. Cir. 1994) (collecting cases applying D.C. law).

In short, the latest date by which Plaintiff had inquiry notice as to his claims against EWORA, IFG, City Concrete, and Luis Construction was May 25, 2018. The discovery rule therefore does not render them timely.

### 2.    The Continuing Tort Doctrine

An otherwise untimely claim might also be saved by the "continuing tort doctrine," which "allows recovery for extended harms that began outside of the applicable limitations period." *Pleznac v. Equity Residential Mgmt., LLC*, 320 F. Supp. 3d 99, 104 (D.D.C. 2018). "Under District of Columbia law, the doctrine applies only where a plaintiff suffers '(1) a continuous and

---

web of contractors, subcontractors, and regulatory assurances may obscure the true cause and responsible parties." ECF No. 215 at 3–4. *Commonwealth Land Title Insurance Co*. concerned breach of contract and negligence claims against two land title surveyors, one that failed to notice the existence of encroachment on property and one that failed to notice the extent of the encroachment. 922 F.3d at 463. The district court declined to apply the discovery rule and therefore granted motions to dismiss on timeliness grounds. *See id.* at 462. The D.C. Circuit found that the district court had prematurely found the discovery rule inapplicable at the motion to dismiss stage because its application depended on issues of fact. *See id.* at 466–68. That is, contrary to Plaintiff's assertion, *Commonwealth Land Title Insurance Co.* had nothing to do with a "complex web of contractors, subcontractors, and regulatory assurances . . . obscur[ing] the true cause and responsible parties." ECF No. 215 at 3–4. More, the court here did not resolve the statute of limitations issue at the motion to dismiss stage but permitted discovery to go forward with respect to the issues the defense raised.

repetitious wrong, (2) with damages flowing from the act as a whole rather than from each individual act, and (3) at least one injurious act . . . within the limitation period.'" *Id.* (alteration in original) (quoting *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 547–48 (D.C. 2002)). The plaintiff bears the burden to establish those three requirements. *See Bakeir v. Capital City Mortg. Corp.*, 926 F. Supp. 2d 320, 337 (D.D.C. 2013); *see also Lin v. United States*, 690 F. App'x 7, 9 (D.C. Cir. 2017). However, "[o]nce a plaintiff is, or should be, aware of the injury, the rationale for the continuous tort doctrine is inapplicable and the statute of limitations begins to run." *Lin*, 690 F. App'x at 10 (citing *Beard*, 790 A.2d at 548); *see also, e.g.*, *Hendel v. World Plan Exec. Council*, 705 A.2d 656, 667 (D.C. 1997) ("[O]nce the plaintiff has been placed on notice of an injury and the role of the defendants' wrongful conduct in causing it, the policy disfavoring stale claims makes application of the 'continuous tort' doctrine inappropriate."). Thus, as with the discovery rule, under the continuing tort doctrine a claim accrues and the statute of limitations "begins to run once a plaintiff has inquiry notice of a potential cause of action." *Gray v. Staley*, 140 F. Supp. 3d 84, 87 (D.D.C. 2015) (quoting *Jung v. Mundy, Holt & Mance, P.C.*, 372 F.3d 429, 433 (D.C. Cir. 2004)). As the discussion above establishes, *see* Section III.B.1, *supra*, Plaintiff's claims accrued on May 25, 2018, well outside of the applicable limitations periods.

To be sure, "in the case of a continuing tort, filing after the limitations period has run does not mean that there can be no recovery"; rather, the plaintiff may recover "for injuries attributable to the part of the continuing tort that was committed within the limitations period immediately preceding the date on which suit is brought." *Jung*, 372 F.3d at 433. However, Plaintiff has not established a continuing tort:

> For a claim to constitute a continuing tort, it must be "one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during

the limitations period, typically because it is only its cumulative impact . . . that reveals its illegality."

*Fla. Rock Props., Inc. v. Jemal's Buzzards Point LLC*, No. 18-cv-483, 2022 WL 4583523, at *10 (D.D.C. Aug. 20, 2020) (alteration in original) (quoting *Keohane v. United States*, 669 F.3d 325, 329 (D.C. Cir. 2012)).  Plaintiff maintains that "the structural damage to Plaintiff's property resulted from Defendants' collective failures in excavation, shoring, underpinning, and foundational work.  This conduct created a pattern of ongoing harm—including worsening cracks, soil settlement, and structural instability—that persisted until at least 2021."[14]  ECF No. 215 at 9.  Those statements do not suggest, much less create a genuine issue of fact, that the alleged negligence and trespass of EWORA, IFG, City Concrete, or Luis Construction "did not become clear until [they were] repeated during the limitations period" and that the torts were revealed only by their "cumulative impact."  *Fla. Rock Props.*, 2022 WL 4583523, at *10 (quoting *Keohane*, 669 F.3d at 329).  At most, they indicate that damage continued into the limitations period and Defendants failed to remedy it.  That is insufficient, because "'[t]he part of the continuing tort that was committed within the limitations period' preceding the filing of the suit cannot be the 'lingering effect of an unlawful act nor a defendant's failure to right a past wrong,' but must instead be 'injurious acts.'"  *Id.* (quoting *Lin*, 690 F. App'x at 9–10).  Plaintiff cites no evidence of an "injurious act" that occurred within the limitations period.  Indeed, he acknowledges that the work of City Concrete and Luis Construction was completed in 2018.  *See* ECF No. 215-1 at 14–15, ¶ 4; *id.* at 16, ¶ 2.  The evidence he cites in connection with EWORA and IFG consists of an email string about

---

[14] Plaintiff's insistence that the damage persisted until "at least 2021" appears to be based on his claim that "[m]onitoring reports from November 2021 (Exhibit 12) confirmed that inadequate shoring practices contributed to ongoing structural instability, including new cracks in the walls."  ECF No. 215 at 9.  That is a mischaracterization of the record.  Plaintiff's exhibit 12 is, as described above, an internal DCRA email from November 2021 that attaches and summarizes reports that third-party inspection and engineering firm FMC created in *2018*.  ECF No. 215-2 at 52.  It does not support Plaintiff's claim that monitoring reports reflected damage occurring in 2021, or, more pertinently, damage caused by conduct occurring in 2021.

damage occurring in 2018 and 2019, *see* ECF No. 215-2 at 24–29, and an email outlining monitoring reports from 2018, *see id.* at 52; *see also* note 14, *supra*.  None of those supports a finding that one or more injurious acts occurred within the relevant limitations periods, which began on January 18, 2020, for EWORA, IFG, and City Concrete, and on December 20, 2020, for Luis Construction.[15]  *See Matiella II*, 2024 WL 3967367, at *11–12.

Accordingly, Plaintiff has not established a continuing tort and his claims against EWORA, IFG, City Concrete, and Luis Construction are therefore untimely.

---

[15] Plaintiff cites *John McShain, Inc. v. L'Enfant Plaza Properties, Inc.*, 402 A.2d 1222, 1231 n.20 (D.C. 1979), as support for his assertion that, "[i]n construction-related damages, courts recognize continuous harm, such as progressive structural instability or soil movement caused by negligent construction practices, as satisfying the criteria for a continuous tort."  ECF No. 215 at 9.  The cited footnote reads, in its entirety:

> If the continuing tort has a cumulative effect, such that the injury might not have come about but for the Entire course of conduct (E. g., a physical condition brought about by long-term medical treatment), then all damages caused by the tortious conduct are recoverable even though some of the conduct occurred outside the limitations period.  *Fowkes v. Pennsylvania R. Co.*, 264 F.2d 397, 398-99 (3d Cir. 1959).

> If, on the other hand, the continuing tort is of the type that causes a series of separate or recurrent injuries, then only those damages stemming from conduct occurring within the limitations period are recoverable.

*John McShain, Inc.*, 402 A.2d at 1231 n.20.  That is, it does not say what Plaintiff says it says.  Indeed, *John McShain* is not a case about negligent construction practices, but, rather, about "damages due to the delay in a construction project occasioned by the defendant's trespass."  *Id.* at 1223.  The precursor case, *L'Enfant Plaza East, Inc. v. John McShain, Inc.*, was at least a case about a continuing tort, but all it held was that "a continuing unknown encroachment" on property—specifically, a three-foot thick, 240-foot long concrete footing reinforced with steel that "ran along the common boundary line" between two adjacent properties 23 feet below the surface and "extended 1½ to 3½ feet" onto the plaintiff's property—constitutes a "continuing trespass."  359 A.2d 5, 6–7 (D.C. 1976).  The case before the Court is not about an unknown encroachment.  And, as discussed above, Plaintiff has failed to point to any evidence of tortious conduct that occurred within the statute of limitations.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the motions for summary judgment brought by Luis Construction, ECF No. 195; Murdock Street, ECF No. 198; EWORA and IFG, ECF No. 199; and City Concrete, ECF No. 200, are **GRANTED** and Plaintiff's claims against each of them are dismissed.


**SO ORDERED.**

Date:  December 10, 2025

_____

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE