**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHARLES MATIELLA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MURDOCK STREET, LLC, et al.,**<br><br>**Defendants.** | **Case No. 21-cv-2112-GMH** |

**MEMORANDUM OPINION AND ORDER**

Defendant Murdock Street, LLC, owned land located next to Plaintiff Charles Matiella's. Plaintiff alleges that Murdock Street, along with the general contractor it hired to develop the land and two subcontractors, are liable for negligence and trespass that resulted in damage to the structures on Plaintiff's property. In prior decisions, as relevant here, the Court excluded the testimony of Plaintiff's retained expert and thereafter granted summary judgment to all Defendants on Plaintiff's claims against them. Now pending is Plaintiff's motion for reconsideration, which challenges (1) the Court's decision excluding the testimony of Plaintiff's expert and (2) the Court's summary judgment decision, but only as to Murdock Street. The present motion is the thirteenth dispositive

motion directed at Plaintiff's negligence and/or trespass claims the Court has resolved, and—hopefully—the last.[1] For the reasons that follow, the motion is denied.[2]

## I. BACKGROUND

Readers interested in the full saga of this long-running tort action may review *Matiella I* through *Matiella VI*, citations set out in the margin at note 1. For the purposes of this decision, this abridged version should suffice.

In this action, Plaintiff has alleged that the construction of a multi-unit dwelling on a neighboring lot "so damaged the two townhomes on his own property that they are now uninhabitable." *Matiella IV*, 2025 WL 2298614, at *1. He filed claims of negligence and trespass against Murdock Street, which owned the neighboring property; EWORA/IFG, the general contractor and developer of the project on Murdock Street's property; and City Concrete and Luis Construction, which were allegedly involved in the excavation on that property. *See id.* More specifically, Plaintiff contends that inadequate shoring of the earth exposed by the excavation on the building site, which allowed

---

[1] The other dispositive motions addressing Plaintiff's claims the Court has resolved are (1) the motion to dismiss Plaintiff's amended complaint filed by general contractor/developer EWORA, LLC, and IFG Group, LLC (together, "EWORA/IFG") and (2) the motion to dismiss Plaintiff's first amended complaint filed by subcontractor City Concrete Corp., both of which were denied in large part in *Matiella v. Murdock Street, LLC*, No. 21-cv-2112, 2023 WL 4684854 (D.D.C. July 21, 2023) (*Matiella I*); (3) the motion to dismiss Plaintiff's second amended complaint filed by subcontractor Luis Construction, Inc., (4) City Concrete's motion to dismiss the second amended complaint, (5) EWORA/IFG's motion to dismiss the second amended complaint, and (6) Murdock Street's motion for partial judgment on the pleadings, which were denied in large part in *Matiella v. Murdock Street, LLC*, No. 21-cv-2112, 2024 WL 3967367 (D.D.C. Aug. 28, 2024) (*Matiella II*); (7) Plaintiff's motion for partial summary judgment on its negligence claim against Luis Construction, which the Court denied in *Matiella v. Murdock Street, LLC*, No. 21-cv-2112, 2025 WL 689177 (D.D.C. Mar. 4, 2025) (*Matiella III*); (8) Plaintiff's motion for partial summary judgment on its negligence claims against EWORA/IFG, City Concrete, and Luis Construction, which the Court denied in *Matiella v. Murdock Street, LLC*, No. 21-cv-2112, 2025 WL 3533451 (D.D.C. Dec. 10, 2025) (*Matiella V*); and (9) Murdock Street's motion for summary judgment, (10) EWORA/IFG's motion for summary judgment, (11) City Concrete's motion for summary judgment, and (12) Luis Construction's motion for summary judgment, which the Court granted in *Matiella v. Murdock Street, LLC*, No. 21-cv-2112, 2025 WL 3533452 (D.D.C. Dec. 10, 2025) (*Matiella VI*). The Court's decision excluding Plaintiff's expert report is *Matiella v. Murdock Street, LLC*, No. 21-cv-2112, 2025 WL 2298614 (D.D.C. Aug. 8, 2025) (*Matiella IV*). Plaintiff's current motion challenges *Matiella IV* and *Matiella VI* (again, only to the extent that it granted summary judgment in Murdock Street's favor).

[2] The filings most relevant to this Memorandum Opinion and Order are (1) Plaintiff's motion for reconsideration, ECF No. 243; (2) Murdock Street's opposition, ECF No. 245; and (3) Plaintiff's reply, ECF No. 246. The page numbers cited herein are those assigned by the Court's CM/ECF system.

soil under the structures on his property to migrate (the negligence claim), and reverberations from the construction (the trespass claim) caused damage to those structures that rendered them uninhabitable. *See id.* To support his claims, Plaintiff designated an expert—Thomas Galarnyk—who produced an expert report and thereafter sat for a deposition by Defendants. *See id.*; *see also* ECF No. 197-2 at 51–57 (Galarnyk Expert Report); ECF No. 197-3 (Galarnyk Deposition Transcript). All Defendants joined in a motion to exclude Galarnyk's testimony. *Matiella IV*, 2025 WL 2298614, at *1.

As relevant here, the Court reviewed and analyzed Galarnyk's expert report and his deposition testimony. *See id.* at *7–15. Ultimately, it found that Galarnyk's opinions were purportedly "based on his years of experience—or, perhaps, experience along with training and education—in construction and related fields"; however, he failed to explain in his report or his deposition "how that experience, training, and education 'lead to the conclusions reached, why they are a sufficient basis for the opinion, and how they are reliably applied to the facts'" as required by Supreme Court precedent—specifically, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)—and Rule 702 of the Federal Rules of Civil Procedure. *Matiella IV*, 2025 WL 2298614, at *8 (citation modified) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments). The Court observed, for example, that the "explanation of his method or technique in reaching his opinions is sweeping but empty" consisting of "conclusory assertions" that "[n]owhere . . . even gesture toward, let alone explain" how his opinions satisfy the requirements of *Daubert*, *Kumho Tire*, and Rule 702. *Id.* at *9. It further found that "Galarnyk's deposition provide[d] little, if any, illumination as to how his experience informed his opinions"; indeed, when pressed on that issue, he repeatedly cited only his "years of experience doing this kind of work" and similar vague assertions. *Id.* at *10. And, although

Defendants' motion provided "Plaintiff an opportunity to provide evidence and argument buttressing those opinions," he failed to do so, offering no additional evidence and mounting an argument "largely devoid of support and consist[ing] merely of the *ipse dixit* of counsel." *Id.* at *11. The Court excluded Galarnyk's testimony in its entirety. *See id.* at *15.

That exclusion affected the Court's decision on Defendants' motions to dismiss—particularly Murdock Street's motion, which was the only one that did not argue the statute of limitations also barred Plaintiff's suit.[3] In *Matiella VI*, the Court described Plaintiff's negligence claim as alleging "that Defendants negligently performed excavation work, including installation of a 'soldier pile and lagging retaining wall' without 'walers, rakers or crossbracing' or 'backfill in the space behind [the] lagging,' and installed underpinning without 'shoring to brace [it] during construction.'" 2025 WL 3533452, at *6 (citation modified) (first quoting *Matiella I*, 2023 WL 4684854, at *2; and then quoting ECF No. 199-3 at 2). The Court found that, to make out a prima facie case of negligence against any Defendant—that is, to establish "the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury"—Plaintiff was required to present expert testimony. *id.* at *5–6 (quoting *Williams v. Aviles*, No. 20-cv-931, 2022 WL 2643559, at *5 (D.D.C. July 8, 2022)). Indeed, Plaintiff did not argue otherwise. *See id.* at *6. Because Plaintiff had disclosed only one expert—Galarnyk—and the Court had excluded his testimony, Plaintiff could not make out a prima facie case and Defendants, including Murdock Street, were entitled to summary judgment. *See id.* at *6–7.

As to Plaintiff's theory of trespass—that "vibrations caused by Defendants' negligent excavation and shoring practices resulted in structural damage to Plaintiff's property"—the Court

[3] *Matiella VI* also found that Plaintiff's claims against EWORA/IFG, City Concrete, and Luis Construction were time-barred, 2025 WL 3533452, at *9–14, rulings not challenged here.

found that the "lack of expert evidence also fell[ed]" that claim. *Id.* at *8 (citation modified) (quoting ECF No. 215 at 13). Again, the Court noted that Plaintiff had not argued that he could prove his case without expert testimony. *See id.* Canvassing case law from this jurisdiction and others, *Matiella VI* found that courts faced with similar allegations had required expert testimony to establish causation. *See id.* (citing *Massengale v. Wash. Metro. Area Transit Auth.*, 983 F. Supp. 210 (D.D.C. 1997); *Hoffman v. Vulcan Materials Co*., 91 F. Supp. 2d 881, 888–89 (M.D.N.C. 1999); and *Trull v. Car.-Va. Well Co.*, 142 S.E.2d 622, 624 (N.C. 1965)). And the Court expressly distinguished cases alleging damage caused by construction vibrations in which expert testimony was not required. *See id.* (citing *Hiser v. XTO Energy, Inc.*, No. 11-cv-517, 2012 WL 3542009 (E.D. Ark. Aug. 14, 2012); and *Legendre v. Boh Bros. Constr. Co.*, 268 So.2d 518 (La. Ct. App. 1972)). Specifically, those cases found that lay testimony about "repeated experiences of vibrations and contemporaneous aural or visual manifestations of cracking" were sufficient to create a genuine issue of fact as to causation; in this case, however, Plaintiff testified that he felt vibrations from the construction only once—on or about September 29, 2017—which was months before the period in which he claimed construction caused the damage about which he complains. *Id.* Accordingly, the Court granted summary judgment in favor of all Defendants, including Murdock Street. *See id.* at *14. That decision, however, did not dispose of all claims remaining in this case, such as EWORA/IFG's counterclaims against Plaintiff, *see Matiella v. Murdock Street*, No. 21-cv-2112, 2025 WL 3533454 (D.D.C. Dec. 10, 2025), and therefore judgment was not entered at that time and, in light of this motion for reconsideration, still has not been entered.[4]

[4] The Court ultimately granted summary judgment in Plaintiff's favor on EWORA/IFG's claims for breach of contract and tortious interference with prospective business opportunity but allowed the unjust enrichment claim to go forward. *See Matiella* 2025 WL 3533454, at *1. Thereafter, the Court granted EWORA/IFG's request to dismiss its unjust enrichment claim. *See* ECF No. 250.

As noted, Plaintiff now asks the Court to reconsider its exclusion of Galarnyk's testimony or, in the alternative, to reverse its ruling that Plaintiff required expert testimony to make out his negligence and trespass claims. *See* ECF No. 243.

## II. LEGAL STANDARD

Both decisions at issue here are interlocutory orders. *See, e.g.*, *In re E. Palestine Train Derailment*, No. 23-cv-242, 2025 WL 581003, at *8 (N.D. Ohio Feb, 21, 2025) (noting that "*Daubert* rulings" are "interlocutory" (quoting *Campbell v. Boston Scientific Corp.*, No. 12-cv-8633, 2016 WL 5796906, at *16 (S.D.W. Va. Oct. 3, 2016))); *Norris v. PNC Bank, N.A.*, No. 20-cv-3315, 2022 WL 5054099, at *5 (D. Md. Oct. 4, 2022) (noting that a summary judgment decision adjudicating fewer than all claims in an action is interlocutory). Motions for reconsideration of interlocutory orders are governed by Rule 54(b) of the Federal Rules of Civil Procedure, which provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a [final] judgment."

Rule 54(b) does not define a standard for a court to apply when determining a request for reconsideration, but the D.C. Circuit has recognized that a court may "reconsider an interlocutory order 'as justice requires.'" *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22–23 (1st Cir. 1985)). In light of that standard, which "leave[s] a great deal of room for the court's discretion," *Robinson v. District of Columbia*, 296 F. Supp. 3d 189, 192 (D.D.C. 2018) (quoting *Lewis v. District of Columbia*, 736 F. Supp. 2d 98, 102 (D.D.C. 2010)), courts in this Circuit and elsewhere have developed guidelines for the exercise of that discretion derived from bedrock principles of fairness, efficiency, and finality. First, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)); *accord, e.g.*, *U.S. Tobacco Cop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018); *Britt v. Wash. Metro. Area Transit Auth.*, No 23-cv-844, 2024 WL 5106544, at *3 (D.D.C. Dec. 13, 2024); *Henok v. Chase Home Fin., LLC*, 950 F. Supp. 2d 96, 101 (D.D.C. 2013). Second, "in order to promote finality, predictability and economy of judicial resources, 'as a rule a court should be loath[] to revisit its own prior decisions in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 85 (D.D.C. 2009) (citation modified) (quoting *Lederman v. United States,* 539 F.Supp.2d 1, 2 (D.D.C. 2008)); *see also, e.g.*, *Pilkin v. Sony Interactive Ent. LLC*, No. 17-cv-2501, 2020 WL 7339920, at *2 (D.D.C. Dec. 14, 2020) ("Although deciding whether to grant reconsideration lies within the Court's sound discretion, considerations of judicial economy and the obligation of the courts 'to secure the just, speedy, and inexpensive determination of every action and proceeding,' require 'good reason' before reopening matters once resolved." (citations omitted) (first quoting Fed. R. Civ. P. 1; and then quoting *In Def. of Animals v. NIH*, 543 F. Supp. 2d 70, 76 (D.D.C. 2008))). Accordingly, "[m]otions for reconsideration are generally 'disfavored' and granting them [is] an 'unusual measure.'" *Woods v. District of Columbia*, No. 20-cv-782, 2022 WL 17989326, at *2 (D.D.C. Dec. 29, 2022) (quoting *Walsh v. Hagee*, 10 F. Supp. 3d 15, 18 (D.D.C. 2013)); *see also, e.g.*, *Lerner & Rowe PC v. Brown Engstrand & Shelly LLC*, 684 F. Supp. 3d 953, 955 (D. Ariz. 2023) ("Motions for reconsideration are disfavored and should be granted only in rare circumstances.").

A court may reconsider a prior order if the moving party "identif[ies] an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or

prevent manifest injustice.'" *North v. United States Dep't of Just.*, 17 F. Supp. 3d 6, 8 (D.D.C. 2014) (quoting *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996)); *see also, e.g.*, *Acon-Chen v. Duffy*, No. 24-cv-1529, 2026 WL 1998768, at *4 (D.D.C. July 10, 2026) ("[R]easons [warranting reconsideration] might include '(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the Court's previous order.'" (citation modified) (quoting *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90, 96 (D.D.C. 2018))); *United States v. Anand*, No. CR 19-518-1, 2025 WL 2698985, at *3 (E.D. Pa. Sept. 22, 2025) (noting that reconsideration may be granted where "(1) there has been 'an intervening change in the controlling law,' (2) 'new evidence' exists 'that was not available when the court issued its order,' or (3) there is a 'need to correct a clear error of law or prevent manifest injustice.'" (quoting *Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 190 (3d Cir. 2021)); *Cassidy v. State Farm Lloyds*, No. 22-cv-3890, 2025 WL 4231026, at *1 (S.D. Tex. June 11, 2025) (noting reasons to grant reconsideration "include (i) intervening change in law, (ii) availability of previously unavailable new evidence, and (iii) a need to correct a clear legal error or to prevent manifest injustice"); *Int'l Union of Operating Eng'rs, Loc. 150 v. Barrington Excavating, LLC*, No. 23 C 15257, 2024 WL 3888902, at *1 (N.D. Ill. Aug. 21, 2024) ("[A] motion to reconsider is only appropriate where a court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." (quoting *Tapia-Rendon v. United Tape & Finishing Co. Inc.*, No. 21 C 3400, 2024 WL 406513, at *2 (N.D. Ill. Feb. 2, 2024))). Courts widely agree that "[m]otions for reconsideration are not vehicles for either reasserting arguments previously raised and rejected by the court or presenting arguments that should have been

raised previously with the court."[5] *Roggio v. Fed. Deposit Ins. Corp.*, No. 09-cv-1733, 2018 WL 7141320, at *1–2 (D.D.C. Aug. 17, 2018) (quoting *Lovely-Coley v. District of Columbia*, 255 F. Supp. 3d 1, 9 (D.D.C. 2017)); *see also Kirwa v. U.S. Dep't of Def.*, No. 17-cv-1793, 2018 WL 7141989, at *1 (D.D.C. May 23, 2018) ("In this Circuit, it is 'well-established' that motions for reconsideration 'cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.'" (citation modified) (quoting *Dist. Hosp. Partners, L.P. v. Sebelius*, No. 11-cv-0116, 2011 WL 13248160, at *1 (D.D.C. Sept. 1, 2011))); *Robinson*, 296 F. Supp. 3d at 192 ("[I]t is well-established that motions for reconsideration cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier."); *Davis v. D.C. Child & Fam. Servs. Agency*, No. 10-cv-1564, 2014 WL 12802261, at *3 (D.D.C. Oct. 20, 2014) ("[N]ot only does the motion for reconsideration present claims the Court already considered, [the movant's] arguments also were waived and therefore not proper in the first place because a Rule 54(b) motion is not an avenue for raising new arguments that could have, and should have, been brought before a court issued its ruling."). That is, a "motion for reconsideration is not a chance for a do-over," allowing litigants to present argument they could have, but did not, raise in the briefing on the original motion. *Richards v. Eli Lilly & Co.*, No. 23-cv-00242, 2024 WL 6895447, at *2 (S.D. Ind. June 28, 2024) ("A motion for reconsideration is not a chance for a do-over; nor is it a vehicle for raising arguments that could have been raised in the original motion."); *see also, e.g.*, *Fairbank*

---

[5] The Court recognizes that in *Cobell v. Jewell*, the D.C. Circuit found that raising new arguments is not "flat[ly] barred" by Rule 54(b). 802 F.3d 12, 25 (D.C. Cir. 2015). However, that case did not purport to *require* a court to consider new arguments on reconsideration that could—and should—have been raised before or to cabin a district court's wide discretion in addressing a motion for reconsideration. Rather, it reaffirmed that discretion, noting that a court's "approach to the interlocutory presentation of new arguments" under the Rule "can be . . . flexible." *Id.*

*Reconstruction Corp. v. Greater Omaha Packing Co., Inc.*, No. 13-cv-907, 2020 WL 7427025, at *6 (W.D.N.Y. Dec. 18, 2020) ("If the movant had the opportunity to present the evidence or litigate the issue earlier but did not do so, either because of inadvertence or as a strategic maneuver, the Rule 54(b) motion should be denied." (citation modified) (quoting *Vornado Realty Tr. v. Castlton Env't Contractors, LLC*, No. 08-cv-4823, 2013 WL 5719000, at *3 (E.D.N.Y. Oct. 18, 2013))); *Big Chief Plant Servs., LLC v. Panhandle Maint., LLC*, No. 18-cv-1226, 2019 WL 1472321, at *4 (D.N.M. Apr. 3, 2019) ("A movant for reconsideration faces an uphill battle when it 'files a broad motion to reconsider that essentially asks the court to grant the movant a mulligan on its earlier failure to present persuasive argument and evidence.'" (quoting *Patterson v. Nine Energy Serv., LLC*, No. 17-cv-1116, 2018 WL 6250608, at *30 (D.N.M. Nov. 29, 2018))).

## III. DISCUSSION

Plaintiff attempts to show that the Court overlooked pertinent evidence when it excluded Galarnyk's testimony and relevant precedent when it found that expert testimony was necessary for Plaintiff make out a prima facie case for both his negligence claim and his trespass claim. His motion will be denied for two independent reasons. First, he failed to make the arguments he now presents when he had the opportunity and provides no "good reason" for the Court to "reopen[]" these resolved matters. *Pilkin*, 2020 WL 7339920, at *2. He does not, for example, contend that the "legal issues develop[ed] over the course of [the] litigation" to make arguments that would not have been worthwhile at summary judgment appropriate now. *Lin v. District of Columbia*, 47 F.4th 828, 839 (D.C. Cir. 2022); *see also Cobell*, 802 F.2d at 25 (noting that "Rule 54(b)'s approach to the interlocutory presentation of new arguments *as the case evolves* can be . . . flexible" (emphasis added)). The Court will therefore exercise its discretion to deem them forfeited under Rule 54(b)'s "as justice requires" standard. *See, e.g.*, *Richards*, 2024 WL 6895447, at *2;

*Fairbank Reconstruction Corp.*, 2020 WL 7427025, at *6; *Big Chief Plant Servs.*, 2019 WL 1472321, at *4; *Patterson*, 2018 WL 6250608, at *30; *Roggio*, 2018 WL 7141320, at *1–2; *Kirwa*, 2018 WL 7141989, at *1; *Robinson*, 296 F. Supp. 3d at 192; *Lovely-Coley*, 255 F. Supp. 3d at 9; *Davis*, 2014 WL 12802261, at *3; *Vornado Realty Tr.*, 2013 WL 5719000, at *3; *Dist. Hosp. Partners*, 2011 WL 13248160, at *1. Second, the arguments fail on their merits.

### A. *Matiella IV* and the Exclusion of Galarnyk's Expert Testimony

As the Court observed in *Matiella IV*, the purported basis for Galarnyk's opinions was clearly his "years of experience—or, perhaps, experience along with training and education—in construction and related fields." *Matiella IV*, 2025 WL 2298614, at *8. As the Court explained, "[A] witness who relies on 'experience alone, or experience in conjunction with other knowledge, skill, training, or education, *must* explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Id.* (citation modified) (emphasis in original) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments). Defendants' motion to exclude Galarnyk's testimony argued, as relevant here, that his opinions were "nothing more than inadmissible *ipse dixit[s]*," not based on "reliable principles and methods" or a "reliable application of the principles and methods to the facts of the case." ECF No. 197-10 at 6–17. In response, Plaintiff offered this:

> Defendants fail to identify any specific deficiencies in Galarnyk's methodology. His conclusions about differential settlement, inadequate shoring, and resulting structural damage are grounded in well-recognized forensic investigative practices. His reliance on photographic and visual documentation aligns with accepted methods for evaluating causation in construction cases.
>
> Defendants' insistence on numerical quantification or specific measurements misunderstands the nature of Galarnyk's testimony. His qualitative analysis focuses on causal mechanisms and is admissible under Rule 702.[6]

[6] Plaintiff then cites a supposed quotation from *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006): "Daubert does not require a perfect methodology, only a reliable one." That quotation does not appear in *Sandoval-Mendoza* or, as far as the Court can tell, any other opinion issued by a federal court.

ECF No. 216 at 5. Leaving to the side that it is an "argument" so devoid of content as to be useless, *see Simien v. Mayorkas*, No. 23-cv-888, 2026 WL 2410123, at *14 (D.D.C. Aug. 18, 2026) ("It is not the job of the federal courts to develop parties' arguments: 'That is for *them* to do.'" (quoting *United States v. Vásquez Rijos*, 119 F.4th 94, 112 n.12 (1st Cir. 2024))), it emphatically does *not* "explain how [Galarnyk's] experience leads to the conclusion[s] reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note to 2000 amendments). Now, he attempts to do just that, pointing to a single passage from Galarnyk's report and four passages from his deposition to support "three narrowed categories" of opinions: (1) "construction custom and practice for protecting adjacent structures during demolition, excavation, and shoring"; (2) "whether the observed patterns of cracking and structural distress on Plaintiff's property are mechanically consistent with adjacent excavation, inadequate underpinning, and rebar intrusion"; and (3) "the technical feasibility of repair [of the structures on Plaintiff's property] versus replacement." ECF No. 243 at 13–17. But Galarnyk's report and deposition transcript were available at the time Plaintiff opposed Defendants' motion to exclude Galarnyk's testimony. Whether Plaintiff's counsel failed to make the argument he now presses "because of inadvertence or as a strategic maneuver" does not matter: his failure to do so is reason enough to deny his motion to reconsider the exclusion of Galarnyk's testimony, and the Court does so on that basis. *Fairbank Reconstruction Corp.*, 2020 WL 7427025, at *6 (quoting *Vornado Realty Tr.*, 2013 WL 5719000, at *3).

The Court also denies this branch of plaintiff's motion on the independent basis that Plaintiff's newly minted argument does not cure the deficiencies of Galarnyk's testimony. Plaintiff first points to Galarnyk's statement in his report that "[f]rom 1981 to the present day, I have conducted several hundred building and other structures inspection before, during and after adjacent

construction operations to document pre-existing conditions, changing conditions (if any) during adjacent construction, and post adjacent construction. Each of these inspections were necessitated due to concerns for construction related damage issues." ECF No. 243 at 13 (quoting ECF No. 197-2 at 53). That, Plaintiff asserts, establishes "a category of work (inspections of structures adjacent to construction operations), a frequency (several hundred), a duration (forty years), and a subject matter (pre-existing, changing, and post-construction conditions) directly relevant to the analysis [at issue]." *Id.* He then contends that the Court's failure to "quote or address that passage" shows that it missed "controlling data" in the record. *Id.* (citation modified) (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)). But in *Matiella IV*, the Court cited several assertions from Galarnyk's report that set forth materially identical descriptions of his experience. *See* 2025 WL 2298614, at *9. The opinion found that such representations failed to explain "how his experience, education, and training 'lead to the conclusions reached, why they are a sufficient basis for the opinions, and how they are reliably applied to the facts.'" *Id.* (citation modified) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments). Thus, no "controlling data" was missed and the passage Plaintiff points to would not alter the Court's conclusion.

Plaintiff then highlights deposition testimony in which Galarnyk

(1) asserted that he performed "crack and damage stud[ies]," deployed "crack monitors and seismographs," and created hundreds of shoring "sketch[es]" when he was employed by a company called Lunda Construction. ECF No. 243 at 14 (quoting ECF No. 197-3 at 43–45);

(2) testified that a particular crack in the foundation of one of the buildings on Plaintiff's property was not caused by vegetation because he had "seen cracks similar to [it] for 40 years" and it was at the wrong angle and too wide. *Id.* (quoting ECF No. 197-3 at 115);

(3) opined that an "adjacent structure's foundation depth, wall thickness, and wall character should be evaluated before designing the shoring system, so it can be installed

without damaging the existing structure" and described a method of shoring involving augur casting piles and installing lagging. *Id.* at 15 (citing ECF No. 197-3 at 162–165); and

(4) asserted that, after the demolition of an old building on Murdock Street's property, excavation began, then shoring and underpinning were installed, "[a]nd the snowball started at the top of the hill in September [2017] and progressively got worse as the new work was started." *Id.* (quoting ECF No. 197-3 at 196).

Nowhere in that testimony does Galarnyk make explicit how his experience "leads to the conclusion reached, why it is a sufficient basis for the opinion, and how it is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note to 2000 amendments. That is clear from Plaintiff's own motion, which asserts that Galarnyk "grounds his causal opinion in pattern recognition built up over forty years of comparable inspections." ECF No. 243 at 16. Plaintiff fails to explain how that explanation improves upon Galarnyk's repeated recourse during his deposition to conclusory assertions about "the 'totality of the evidence' or . . . his 40 years of experience[,] without offering any *details* on *how* that experience informed his analysis of the evidence or his conclusions."[7] *Matiella IV*, 2025 WL 2298614, at *10 (emphasis added) (cataloguing several instances in Galarnyk's deposition where he fell short of the requirements of Rule 702 by failing to detail how his experience reliably led to his conclusions).

A trial court has "broad discretion in determining whether to admit or exclude expert testimony." *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 895 (D.C. Cir. 2010) (quoting *United States v. Gatling*, 96 F.3d 1511, 1523 (D.C. Cir. 1996)). Likewise, the

[7] Plaintiff argues that Defendants' expert employed "materially the same methodology" as Galarnyk and so the Court erred when it "credited [the expert's] 'extraordinary rain event' opinion at summary judgment." ECF No. 243 at 18–19 (quoting *Matiella VI*, 2025 WL 3533452, at *8). But Plaintiff did not challenge Defendants' expert's testimony as unreliable on that basis and he has cited no authority supporting the position that a trial court may not rely on an expert opinion that has not been challenged. Nor did the Court "rest" its summary judgment opinion on Defendants' expert's opinion that an "extraordinary rain event" caused the damage to Plaintiff's property. ECF No. 246 at 12. Rather, it found that expert testimony was necessary not "'to disprove' or 'rule out'" the possibility that rain caused the damage, *id.* at 7 (quoting *KS Condo*, 302 A.2d at 511), but to help a lay jury determine whether the alleged vibrations caused that damage, *see Matiella VI*, 2025 WL 3533452, at *8–9. The Court's single mention of the rain theory was not the foundation of that ruling.

"as justice requires" standard for granting a motion for reconsideration under Rule 54(b) "leave[s] a great deal of room for the court's discretion." *Robinson*, 296 F. Supp. 3d at 192 (quoting *Lewis*, 736 F. Supp. 2d at 102). By failing to raise them in opposition to Defendants' motion to exclude Galarnyk's testimony, Plaintiff has forfeited the arguments made here that it is admissible and the motion for reconsideration is denied on that basis. More, Plaintiff's attempt to cobble together a coherent argument for its admissibility from disparate snatches of Galarnyk's testimony fails for the same reason the Court originally excluded it in *Matiella IV*: He has not sufficiently shown that it is reliable under Rule 702 of the Federal Rules of Civil Procedure. The motion is therefore denied for that independent reason.

**B. *Matiella VI* and the Grant of Summary Judgment to Murdock Street**

Like his arguments about the admissibility of Galarnyk's opinion testimony, Plaintiff's arguments that expert testimony is unnecessary to his negligence and trespass claims should not be presented on a motion for reconsideration because he failed to make them at the appropriate time—in response to Defendants' motions for summary judgment. They are also substantively deficient.

Some procedural history will be useful here. In compliance with an order of the Court, Defendants each filed a motion for summary judgment on November 12, 2024, along with the motion *in limine* to exclude Galarnyk's testimony. *See* ECF Nos. 195, 197, 198, 199, 200. Murdock Street argued, among other things, that Plaintiff's claims required expert testimony and that, for the reasons outlined in the motion *in limine*, Plaintiff had provided no admissible expert testimony. *See* ECF No. 198-1 at 4–7, 10. In his omnibus opposition to Defendants' motions, Plaintiff relied on Galarnyk's testimony to argue that there was a genuine issue of material fact precluding summary judgment on Plaintiff's claims. *See* ECF No. 215 at 12–14. As the Court noted in

*Matiella VI*, Plaintiff did *not* argue that he could prove his negligence and trespass claims without expert testimony, *see* 2025 WL 3533452, at *6, *9—even in the face of Defendants' then-pending motion to exclude that testimony. Briefing on Defendants' motions for summary judgment and the motion *in limine* was complete on January 25, 2025. *See* ECF Nos. 217, 218, 219, 222.

The Court granted Defendants' motion *in limine* on August 8, 2025. *See Matiella IV*, 2025 WL 2298614. On September 17, 2025, the Court held a status conference to address, among other things, whether supplemental briefing as to summary judgment should be ordered in light of the grant of Defendants' motion *in limine*. Minute Entry (Sep. 17, 2025). No party—not even Plaintiff—believed supplemental briefing necessary. Indeed, Plaintiff's counsel urged the Court to rule on the pending summary judgment motions without supplemental briefing to "give everybody certainty on where [the case] stands."[8] Accordingly, the Court resolved the motions for summary judgment on the briefing as it stood on January 25, 2025—briefing in which Plaintiff had failed to argue that his causes of action could be proved without expert evidence. *See Matiella VI*, 2025 WL 3533452. Now, Plaintiff argues that the Court overlooked controlling authority from the D.C. Court of Appeals, *KS Condo, LLC v. Fairfax Village Condominium VII*, 302 A.2d 503 (D.C. 2023). According to Plaintiff, *KS Condo* establishes that, as to the causation of "two discrete damage categories"—described as "the September 29, 2017 demolition event and the rebar intrusion"—the Court was wrong to require expert testimony. ECF No. 243 at 4–7.

Plaintiff calls *KS Condo* a "recent[]" opinion, but it was issued on September 23, 2023, well before briefing on Defendants' motions for summary judgment began. ECF No. 243 at 6; *see KS Condo*, 302 A.2d at 503. Plaintiff did not cite this purportedly "controlling" authority in his opposition brief or raise any of the other arguments he mounts here to support his contention that

[8] No party ordered a transcript of that hearing; however, the Court has reviewed the recording of it.

expert testimony is unnecessary in this case. Again, the Court will exercise its discretion to deem this argument forfeited under Rule 54(b)'s flexible standard. *See, e.g.*, *Richards*, 2024 WL 6895447, at *2; *Fairbank Reconstruction Corp.*, 2020 WL 7427025, at *6; *Big Chief Plant Servs.*, 2019 WL 1472321, at *4; *Patterson*, 2018 WL 6250608, at *30; *Roggio*, 2018 WL 7141320, at *1–2; *Kirwa*, 2018 WL 7141989, at *1; *Robinson*, 296 F. Supp. 3d at 192; *Lovely-Coley*, 255 F. Supp. 3d at 9; *Davis*, 2014 WL 12802261, at *3; *Vornado Realty Tr.*, 2013 WL 5719000, at *3; *Dist. Hosp. Partners*, 2011 WL 13248160, at *1. Plaintiff's motion for reconsideration of the Court's decision is therefore denied on this ground.

Even had Plaintiff provided some justification for the Court to reopen its summary judgment ruling, the Court would—and does—deny the motion on substantive grounds. Plaintiff admits that his argument relates only to "causation" evidence. ECF No. 243 at 4 ("The Court's summary judgment ruling rests on the proposition that whether vibrations from excavation and shoring caused damage to Plaintiff's property is 'beyond the ken of the average lay juror' and therefore requires expert testimony. That proposition is not wrong as a general matter. But it does not cover two discrete damage categories *relative to causation* . . . ." (emphasis added) (quoting *Matiella VI*, 2025 WL 3533452, at *9)). As to Plaintiff's negligence claim, the Court found that he lacked evidence not only of causation, but also of the standard of care and a breach of that standard. *See Matiella VI*, 2025 WL 3533452, at *7 ("Plaintiff cannot make out a prima facie case of negligence, because he cannot establish, 'using expert testimony, "the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury."'" (citation modified) (quoting *Hargraves v. District of Columbia*, 134 F. Supp. 3d 68, 95 (D.D.C. 2015))). Plaintiff acknowledges that his negligence claim depends on expert testimony on standard of care and causation. *See* ECF No. 246 at 2. So, this new theory could not save that claim.

Nor does Plaintiff's new theory provide a reason to reconsider the Court's decision on the trespass claim. Plaintiff points to lay evidence—testimony from Plaintiff and testimony from Fatih Guner, the owner of developer/general contractor EWORA/IFG—that he contends create a genuine issue of fact as to whether the damage Plaintiff complains of was caused by (1) vibrations from the demolition of a wall on Murdock Street's property on September 29, 2017, and/or (2) vibrations from the "intrusion" of rebar into the foundation of one of the structures on Plaintiff's property. *See* ECF No. 243 at 5. The evidence Plaintiff offers only further proves the Court's point that expert testimony is required.

Plaintiff points to his own deposition testimony that on September 29, 2017, when workers demolished a wall from a previous structure on Murdock Street's property, he "felt the impact" and "saw a crack appear on an interior wall." ECF No. 243 at 5 (citing ECF No. 199-13 at 148–150). The Court noted the limitations of that testimony in *Matiella VI* based on Plaintiff's testimony that he did not feel movement in the structure at any other time and his admission that the bulk of damage to his buildings occurred several months later.[9] 2025 WL 3533452, at *8. That is, the single time he felt vibrations in his house occurred well before the damage that underpins his trespass claim—which, as this Court held in *Matiella I*, must be "serious" damage rather than merely one crack.[10] 2023 WL 4684854, at *15; *see also Matiella II*, 2024 WL 3967367, at *14. Plaintiff cites additional testimony. For example, he testified that a crack appeared in one of the walls of his house when workers "were doing the excavation and the hammering and everything." ECF No. 199-13 at 201;

[9] Plaintiff contends that he did not testify that he never "perceived vibrations or heard the construction or linked the increasing damages" to that construction ECF No. 243 at 8. Perhaps Plaintiff is making a distinction between "perceiving vibrations" and "feeling" them. In any case, in none of the further testimony Plaintiff points to does he assert that he either felt or otherwise perceived vibrations.

[10] Plaintiff asserts that "[a] single qualifying entry of vibrations onto Plaintiff's land is sufficient to support [his] trespass theory." ECF No. 243 at 8. But a single entry of vibrations would be sufficient only if it caused serious physical damage to Plaintiff's property. There is no evidence that vibrations from the demolition of the wall on Murdock Street's property did so.

*see also id.* at 158. He also points to the testimony of EWORA/IFG's principal that drilling rebar into the foundation of one of the structures on Plaintiff's property would cause vibrations. ECF No. 243 at 5 (citing *Matiella V*, 2025 WL 3533451, at *2); *see also* ECF No. 201-2 at 750–51. But the question is not, as Plaintiff would have it, whether a "lay juror" would know that drilling or hammering "causes vibrations." ECF No. 243 at 6. The question is whether it is "within the realm of common knowledge and everyday experience," *Varner v. District of Columbia*, 891 A.2d 260, 265 (D.C. 2006), that vibrations from hammering on a neighboring lot or drilling rebar—vibrations that no evidence indicates were felt by anyone on Plaintiff's property—could cause the serious damage that Plaintiff claims renders the structures on that property uninhabitable. The Court has little trouble determining that is not "within the realm of common knowledge and everyday experience." *Id.*

*KS Condo* does not mandate a different result. In that case, the owner of a condominium in a multi-unit building "sued the condo association for negligent failure to perform necessary maintenance" on a foundation wall that ultimately collapsed. *KS Condo*, 302 A.3d at 505. At a bench trial, the plaintiff "adduced unrefuted evidence showing that while the condo association had been aware of 'serious' and 'urgent' structural deficiencies in the foundation wall for more than two years, it had undertaken no repairs to remedy those conditions." *Id.* The D.C. Court of Appeals reversed the trial judge's ruling that the plaintiff's "failure to offer expert testimony as to the appropriate standard of care and on the question of causation meant as a matter of law that it could not prevail on its claims." *Id.* On the issue of causation—the only issue relevant here—the court found that "a host of facts" supported the conclusion that the defendant's "inaction more than likely caused the foundation to collapse":

> (1) [the defendant] was repeatedly warned, in no uncertain terms, that it must act immediately to remedy a hazardous condition; (2) [it] understood the gravity of the situation and continually described it as an urgent, top priority; (3) [it] nonetheless took years to solicit bids and apply for the necessary funding, with long fallow

> periods scattered throughout the years before the collapse; (4) no work had commenced in the more than two years during which [the defendant] knew of the problem; and (5) the very danger that [the defendant] was repeatedly warned of came to pass.

*Id.* at 511.

In his reply brief, Plaintiff admits that, unlike this case, "*KS Condo* involved unusually explicit warnings predicting the collapse that later occurred." ECF No. 243 at 12. Rather, he cites *KS Condo* for the proposition that "a factfinder may infer causation from circumstantial evidence without expert testimony." *Id.* The Court does not disagree with that as a general proposition. In the majority of cases, expert testimony may not be necessary to establish causation. *See KS Condo*, 302 A.2d at 509 ("Outside the realm of professional malpractice cases . . . 'causes of action that *require* expert testimony are "rare."'" (quoting *Columbus Props., Inc. v. O'Connell*, 644 A.2d 444, 447 (D.C. 1994))). But, for the reasons explained in *Matiella VI* and above, it was required in this case.

Plaintiff then cites evidence of the "warnings" Murdock Street received about damage to Plaintiff's property:

> [Third-party inspection and engineering firm] FMC notified Murdock Street and IFG in June 2018 to brace the party wall. Soil at the party wall and under the sidewalk collapsed. FMC records from November 2018 attributed "new structural cracks" in the shared wall to the "lack of bracing and sheeting and shoring." [Engineer Robert A.] Wixson transmitted his May 25, 2018 report to the [District of Columbia Department of Consumer and Regulatory Affairs ("DCRA")]. And the DCRA stopped the work.

ECF No. 246 at 12–13 (citation modified) (quoting *Matiella VI*, 2025 WL 3533452, at *2). None of those "warnings," however, indicated that vibrations caused the damage to Plaintiff's property.

And, as the Court already ruled, Wixson's opinions are inadmissible because Plaintiff did not disclose him as an expert.[11] *See Matiella VI*, 2025 WL 3533452, at *7.

Finally, Plaintiff cites a Northern District of West Virginia case that purportedly "[c]onfirms" that Plaintiff could establish causation based on lay evidence. ECF No. 243 at 11. In *Hamilton v. Columbia Transmission, LLC*, the plaintiffs claimed that "several months" of "blasting operations" by the defendants, who were constructing a natural gas pipeline, "caused damage to their home." No. 20-cv-86, 2022 WL 822947, at *1. The court excluded the plaintiffs' expert's testimony as "unreliable and irrelevant," but found that exclusion of that expert causation testimony "was not fatal" to the plaintiffs' claims. *Id.* at *3, *5. In doing so, the court relied on the following facts: at least 30 blasts occurred near the plaintiffs' home, during which "many of the vibrations shook the whole house and would often be severe," after which the plaintiffs noticed damage to their home. *Id.* at *5. That is, the plaintiffs offered percipient testimony that the "use of explosives in blasting operations"—an "intrinsically dangerous and extraordinarily hazardous" activity—repeatedly caused the plaintiff's house to violently vibrate. *Id.* at *3, *5 (quoting *Whitney v. Ralph Myers Contracting Corp.*, 118 S.E.2d 622, 622 (W. Va. 1961)). That is a far cry from what Plaintiff has here: a single instance in which he felt vibrations, followed by alleged vibrations—perhaps "perceived" but admittedly not "felt"—from hammering on a neighboring property and drilling rebar. *Hamilton* does not help his cause.

---

[11] Plaintiff admits this in his opening brief and asserts that the "causation record does not turn on the Wixson report." ECF No. 243 at 11–12. It is unclear, then, why he cites the Wixson report in his reply as support for his theory that *KC Condos* mandates reconsideration of the Court's ruling that expert testimony was necessary to establish Plaintiff's trespass claim.

Accordingly, Plaintiff has not shown that there is a substantive reason for the Court to reconsider its finding that Plaintiff was required to present expert evidence of causation to prove his trespass claim.[12]

## IV. CONCLUSION

Plaintiff attempts to use Rule 54(b) to raise new arguments that were available to him when he was opposing Defendants' motions for summary judgment and has not provided any reason, let alone a good reason, for the Court to reopen those matters. His motion papers reveal that he is "simply unhappy with the Court's conclusions. But disagreeing with a court's answer to an argument is not proper cause to pursue reconsideration; that is better left to the appellate process." *Talbot v. U.S. Dep't of State*, 373 F. Supp. 3d 212, 220 (D.D.C. 2018). Indeed, "[w]hen there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources . . . ." *CIT Bank, N.A. v. Howard Transp., Inc.*, No. 17-cv-10767, 2019 WL 3322725, at *1 (E.D. La. July 24, 2019) (quoting *Hightower v. Group 1 Automotive, Inc.*, No. 15-cv-1284, 2016 WL 3430569, at *3 (E.D. La. June 22, 2016)).

[12] One last point bears mentioning. In his opening brief, Plaintiff complains that Murdock Street "asked the Court to retain jurisdiction until the case is fully concluded," which "forestalled (and continue[s] to forestall) Plaintiff's ability to appeal" the grant of summary judgment to Defendants. ECF No. 243 at 22. That's a misstatement of the facts. First, Murdock Street took no position on whether the Court should enter final judgment as to the claims against Defendants while EWORA/IFG's unjust enrichment claim against Plaintiff was still pending. *See* ECF No. 241 (stating that the Court should "enter final judgment as to some or all the claims asserted herein *as it deems appropriate*." (emphasis added)). More significantly, Plaintiff *withdrew* his request for the Court to enter final judgment on his claims against Defendants under Rule 54(b) so he could file this (meritless) motion for reconsideration. *See* ECF No. 242. Had he not done so, it is likely that the Court would have entered judgment as to those claims, which Plaintiff could then have appealed. That is, it was *Plaintiff's* own actions, not Murdock Street's, that "forestalled" his ability to appeal.

Plaintiff's motion for reconsideration, ECF No. 243, is **DENIED**. The Court will presently enter judgment in this case.

**SO ORDERED**.

Date: October 27, 2026

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE